1        **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3      **HONORABLE JOHN W. HOLCOMB, U.S. DISTRICT JUDGE**

4

ENTROPIC COMMUNICATIONS, LLC,          )
5                                       )   Case No.
                    Plaintiff,          )   2:22-cv-07775-JWH-JEM
6                                       )   Related Cases:
          vs.                           )   2:23-cv-01043-JWH-KES
7                                       )   2:23-cv-01049-JWH-KES
DISH NETWORK CORPORATION, et al.,       )   2:23-cv-01048-JWH-KES
8                                       )   2:23-cv-01050-JWH-KES
                    Defendants.         )   2:23-cv-01047-JWH-KES
9    _____)

10

11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
                         MOTION HEARING
                    FRIDAY, JUNE 9, 2023
14                        9:05 A.M.
                    SANTA ANA, CALIFORNIA
15

16

17

18

19

20

21

22   _____

23            **DEBBIE HINO-SPAAN, CSR 7953, CRR**
              FEDERAL OFFICIAL COURT REPORTER
24            411 WEST 4TH STREET, ROOM 1-053
                  SANTA ANA, CA 92701
25                dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

```
1                        APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4            K&L Gates LLP
             BY:  JAMES A. SHIMOTA, ESQ.
5            70 West Madison Street
             Suite 3100
6            Chicago, Illinois 60602
             312-807-4299
7            jim.shimota@klgates.com

8            K&L Gates LLP
             BY:  CHRISTINA N. GOODRICH, ATTORNEY AT LAW
9            10100 Santa Monica Boulevard
             8th Floor
10           Los Angeles, California 90067
             310-552-5000
11           christina.goodrich@klgates.com

12   FOR DEFENDANT COX COMMUNICATIONS (CV-23-1047-JWH):

13           KILPATRICK TOWNSEND
             BY:  SARAH Y. KAMRAN, ATTORNEY AT LAW
14           1801 Century Park East
             Suite 2300
15           Los Angeles, California 90067
             310-310-7015
16           skamran@kilpatricktownsend.com

17   FOR DEFENDANT COMCAST CORPORATION (CV-23-1048-JWH):

18           WINSTON & STRAWN LLP
             BY:  KRISHNAN PADMANABHAN, ESQ.
19           200 Park Avenue
             New York, New York 10166
20           212-294-3564
             kpadmanabhan@wiinston.com
21

22

23

24

25
```

```
1                      APPEARANCES OF COUNSEL
                            (Continued:)
2

3    FOR DEFENDANT DISH NETWORK CORPORATION (CV-22-7775-JWH):

4             PERKINS COIE LLP
              BY:  MATTHEW C. BERNSTEIN, ESQ.
5             1888 Century Park East
              Suite 1700
6             Los Angeles, California 90067-1721
              858-720-5751
7             MBernstein@perkinscoie.com

8    FOR DEFENDANT DISH NETWORK CORPORATION (CV-23-1043-JWH):

9             FISH & RICHARDSON PC
              BY:  CHRISTOPHER S. MARCHESE, ESQ.
10            633 West 5th Street
              26th Floor
11            Los Angeles, California 90071
              213-533-4240
12            marchese@fr.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                **SANTA ANA, CALIFORNIA; FRIDAY, JUNE 9, 2023**

2                         **9:05 A.M.**

3                           **- - -**

4

09:05AM 5        THE COURTROOM DEPUTY:  Calling Item Number 1,

6  Entropic Communications vs. DIRECTV, LLC, et al.; Entropic

7  Communications, LLC vs. DISH Network Corporation, et al.;

8  Entropic Communications, LLC vs. Cox Communications, Inc.,

9  et al.; and Entropic Communications, LLC vs. Comcast

09:05AM 10  Corporation, et al.  Case Numbers 22-0775-JWH, 23-01043-JWH,

11  23-01047-JWH, 23-01048-JWH, 23-01049-JWH, 23-01050-JWH.

12        Counsel, would you please state your appearances,

13  beginning with the plaintiff.

14        MR. SHIMOTA:  Jim Shimota appearing on behalf of

09:06AM 15  Plaintiff Entropic.

16        MS. GOODRICH:  Good morning, Your Honor.  Christina

17  Goodrich, K&L Gates, for plaintiff.

18        THE COURT:  All right.  Mr. Shimota and

19  Ms. Goodrich, good to see you.  Good morning.

09:06AM 20        MR. SHIMOTA:  Good to see you, Your Honor.

21        MR. MARCHESE:  Good morning, Your Honor.  Chris

22  Marchese from Fish & Richardson on behalf of the DISH

23  defendants in the 1043 case.

24        THE COURT:  Hold on one second.  That was in the

09:06AM 25  MOCA case?

1          MR. MARCHESE:  Correct, Your Honor.

2          THE COURT:  Mr. "Marchese," is that the correct

3    pronunciation?

4          MR. MARCHESE:  It is correct.  Thank you.

09:06AM 5          THE COURT:  I will undoubtedly forget it, but

6    correct me if I do.

7          MR. MARCHESE:  Thank you.

8          MS. KAMRAN:  Good morning, Your Honor.  Sarah Kamran

9    from Kilpatrick Townsend representing the Cox defendants.

09:07AM 10          THE COURT:  Hold on a second.  Ms. Kamran; right?

11          MS. KAMRAN:  Yes.

12          THE COURT:  K-a-m-r-a-n?

13          MS. KAMRAN:  Yes, Your Honor.

14          THE COURT:  All right.  Good morning, Ms. Kamran.

09:07AM 15          MS. KAMRAN:  Good morning.

16          MR. BERNSTEIN:  Good Morning, Your Honor.  Matthew

17    Bernstein from Perkins Coie for the DISH defendants in the 7775

18    case.

19          THE COURT:  Okay.  Mr. -- let me find you.  Sorry.

09:07AM 20    There we go.  Mr. Bernstein.  Am I pronouncing that properly?

21          MR. BERNSTEIN:  Correct.

22          THE COURT:  Mr. Bernstein, good morning.

23          MR. PADMANABHAN:  Good morning, Your Honor.

24    Krishnan Padmanabhan of Winston & Strawn on behalf of Comcast

09:08AM 25    in the 1048 and 1050 cases.

1          THE COURT:  Good to see you again.  And help me

2    again with the pronunciation of your name, please.

3          MR. PADMANABHAN:  Sure.  "Padmanabhan."

4          THE COURT:  "Padmanabhan"?

09:08AM 5          MR. PADMANABHAN:  Perfect.

6          THE COURT:  I'll probably botch it, but I'll do my

7    best.  Good to see you.

8          All right.  Counsel, thank you all for being here

9    today.  I'm going to deal with the Local Rule 7.1-1 motion

09:08AM 10   momentarily.  Let me kind of deal with all of the housekeeping

11   issues that are out there first.

12         I set this status conference because last time we

13   were all here, I think back on April 21st, we had discussed

14   consolidation and the appointment of a special master.  And I

09:09AM 15   was under the impression that counsel were going to get

16   together and provide to me proposed orders consolidating the

17   MOCA cases and the cable cases and, also, in all the cases, a

18   proposed order appointing a special master.

19         So I got the -- when I did not receive those

09:09AM 20   proposed orders, I set this status conference because I did not

21   want that to go by the wayside, those two issues.

22         Now, you have since, in the MOCA cases and the cable

23   cases, I believe, filed the proposed order appointing

24   Mr. Keyzer -- am I pronouncing his name properly?  Okay.

09:10AM 25   Everybody's nodding -- Mr. Keyzer as the special master.  I did

1    not see a proposed order in the satellite cases.

2              What's the status, Ms. Goodrich?

3              MS. GOODRICH:  Thank you, Your Honor.  We need to

4    circulate the draft declaration to Mr. Keyzer in that case.

09:10AM  5    And I believe we're in agreement on the stipulation itself.  So

6    once we get the signed declaration from Mr. Keyzer, that --

7    we'll submit that, which hopefully will be early next week at

8    the latest.

9              THE COURT:  All right.  So what I'm going to do on

09:10AM 10    the special master is wait until I receive that, because if

11    there's a hitch, I want the same special master in all these

12    cases.  I think it would be pretty inefficient, for a lot of

13    reasons, if we have different special masters in the different

14    cases.

09:10AM 15              So as soon as I receive that stipulation in the

16    satellite cases, I intend to enter those proposed orders.

17              One thing on the form of the proposed order, I think

18    I referred you to another case where I appointed a special

19    master.  There were some special bells and whistles in that

09:11AM 20    case.  I didn't mean that you had to slavishly follow that

21    pattern, but I assumed it was acceptable because you submitted

22    it to me.

23              Correct, defendants, in the MOCA and cable cases ?

24              MR. MARCHESE:  Yes, Your Honor.  That's correct for

09:11AM 25    the 1043 case with DISH.

1            THE COURT:  Okay.

2            MR. PADMANABHAN:  Correct, Your Honor, for the 1048

3     and 1050 cases for Comcast.

4            MS. KAMRAN:  Yes, Your Honor, that's correct for the

09:11AM 5     1049 and 10- -- or -47 cases for Cox.

6            THE COURT:  Good enough.  Thank you.

7            Now on consolidation, I already consolidated the

8     satellite cases.  When we talked about this back in April, the

9     issue was parties -- I think Entropic wanted to see what the

09:11AM 10    answers and defenses looked like before putting the bells and

11    whistles on a consolidation order.

12            Now some answers have been filed.  I've got

13    12(b)(6), 12(b)(1) motions from some defendants in the MOCA and

14    cable cases.  We'll talk about those in more detail in a

09:12AM 15    minute.  But where are we on consolidation?

16            I guess let me hear from Entropic first.  This is,

17    of course, on the MOCA and cable cases.

18            MS. GOODRICH:  Yes, Your Honor.  The parties still

19    agree on consolidation through Markman.  I invite defendants to

09:12AM 20    weigh in on that, of course.  And we had all agreed to discuss

21    the bells and whistles of what specifically would be done

22    jointly in connection with our Rule 26.

23            And so right now, that is scheduled.  We're working

24    on conducting the conference of counsel on the 22nd or 23rd of

09:12AM 25    June.  And in connection with that, we will be circulating our

```
 1    portion of the joint report, which contains our proposal on the
 2    consolidation.
 3             And we do take Your Honor's comment during the last
 4    hearing to heart in terms of agreeing, as much as possible, so
 5    that the consolidation order does not have competing arguments
 6    in it.
 7             THE COURT:  Okay.  Anybody else care to comment?
 8    You don't have to.
 9             MR. MARCHESE:  I will comment, Your Honor.  Chris
10    Marchese from Fish & Richardson for DISH.
11             We are in agreement with what Ms. Goodrich said.  We
12    do expect to work with them on the bells and whistles in
13    connection with the 26(f) meeting, which is coming up here in a
14    little bit.  And we also expect to agree as much as possible on
15    issues.
16             MR. PADMANABHAN:  Same for Comcast, Your Honor.
17             MS. KAMRAN:  Same for Cox, Your Honor.
18             THE COURT:  Okay.  So what I'm hearing is I should
19    just stand by and get the Rule 26(f) reports and, hopefully, a
20    stipulation for consolidation, and if not, then competing
21    proposals and I can pick one.  But you prefer that I wait until
22    we get to that point for me to consolidate.  Concur?
23             MS. GOODRICH:  Yes, Your Honor.
24             MR. PADMANABHAN:  Yes, Your Honor.
25             MS. KAMRAN:  Yes, Your Honor.
```

1          MR. MARCHESE:  Yes, Your Honor.

2          THE COURT:  All right.  Probably hard for the court

3     reporter to keep track of all this.  But thank you.

4          All right.  Let me turn to -- I mentioned the

09:14AM 5     12(b)(1) and 12(b)(6) motions.  Comcast has filed those in the

6     MOCA and cable cases.  And then Entropic filed a First Amended

7     Complaint.  I did not deeply analyze whether the First Amended

8     Complaint mooted -- well, I think it necessarily moots them,

9     but did it address the issues that Comcast raised in its

09:14AM 10    12(b)(1) and 12(b)(6) motions, or will they be renewed, in a

11    sense?

12          MR. PADMANABHAN:  So, Your Honor, we've actually had

13    an opportunity to discuss.  So we plan to refile our motions.

14    We don't think any of the allegations address either the

09:15AM 15    12(b)(1) or the 12(b)(6), and so we're going to work together

16    on that.  And we have a meet and confer scheduled for Monday.

17    And we'll be responding with the renewed motions.

18          THE COURT:  Okay.

19          MS. GOODRICH:  Our position, unsurprisingly, is that

09:15AM 20    our Amended Complaints do address what was raised in the

21    12(b)(1) and 12(b)(6), but we are meeting and conferring on

22    Monday to go over the basis for the renewed motions.

23          THE COURT:  Okay.  Well, I'll see how that plays

24    out.  Since there is a First Amended Complaint, the Cox

09:15AM 25    entities, they're going to file an Answer to that?  Or do you

1  know how you're going to respond?

2          MS. KAMRAN:  I think that we are still deciding,

3  Your Honor.

4          THE COURT:  Okay.  All right.  I was happy to see

09:16AM  5  that it was just an answer and not a 12(b) motion.  But we'll

6  see what happens.  Okay.  Thank you for that update.

7          So Madam Clerk, a couple of things.  The filing of

8  the First Amended Complaint in the MOCA cases and the cable

9  cases, I think does moot the pending motions to dismiss that

09:16AM 10  Comcast has filed in those cases, specifically in 23-1048.  Our

11  docket -- because portions of these motions were filed under

12  seal, sometimes they come up as two or more ECF numbers.  But

13  Madam Clerk, I think ECF numbers -- so I'm looking at 23-1048.

14  ECF numbers 43, 51, 55, and 58 and 60, I think they're all

09:17AM 15  mooted.

16          Mr. Padmanabhan, concur?

17          MR. PADMANABHAN:  Your Honor, I wish I could check

18  the numbers as quickly as you had laid them out.  The numbers

19  sound correct to me, but correct, there should be two motions

09:17AM 20  for each.  There's a 12(b) -- or two docket entries for the

21  12(b)(6) and 12(b)(1).  And so those would all be mooted.  And

22  we will be renewing the motions in light of the First Amended

23  Complaint.

24          THE COURT:  So sticking with the 1048 case, for some

09:17AM 25  reason, we have five motions identified as awaiting resolution.

1    I think there probably should be four.

2         MR. PADMANABHAN:  Yes, Your Honor.  I can respond to

3    that.  I think there was something that had been -- we had

4    marked it confidential, but the table of contents, something

09:18AM 5    had been left unredacted.  So we fixed that with a new docket

6    entry.

7         THE COURT:  So there was, like, a corrected --

8         MR. PADMANABHAN:  Yeah, exactly.

9         THE COURT:  Okay.  So Madam Clerk, those five ECF

09:18AM 10   numbers had been resolved through plaintiff's filing of a First

11   Amended Complaint.  So our minute order should reflect that.

12   Do you need those again?

13        THE COURTROOM DEPUTY:  I've got them.  Thank you.

14        THE COURT:  Okay.  And the same is true with respect

09:18AM 15   to 23-1050.  I think there were only four docket numbers -- 40,

16   48, 52, and 57 -- that have been resolved, that have been

17   mooted by the filing of the First Amended Complaint.  So our

18   minute order memorializing this hearing should reflect that.

19        Madam Clerk, do you need them again?

09:19AM 20        THE COURTROOM DEPUTY:  I got it.  Thank you.

21        THE COURT:  Okay.  Now, there are also pending

22   stipulations to continue the scheduling conference in the MOCA

23   and cable cases, which is presently set for June 30th.  And I

24   understand -- I forgot who, but somebody was going to be out of

09:19AM 25   town or something.  And for that reason, all the parties wanted

```
 1   to continue those scheduling conferences.  And that's fine with
 2   me.
 3           Remind me what date you wanted them continued to.
 4           MS. GOODRICH:  Your Honor, July 21st.
 5           MR. PADMANABHAN:  That was the date we all ended on,
 6   based on the conflicts, yes.
 7           MR. MARCHESE:  Yes, for DISH.  That's correct,
 8   July 21st.
 9           THE COURT:  Okay.  The minute order will also
10   reflect that the parties' respective -- stipulations to
11   continue the respective scheduling conferences are approved,
12   and the scheduling conferences in the MOCA and cable cases are
13   moved to July 21st -- at 11:00 o'clock?  We'll say
14   11:00 o'clock for right now.  That's when I usually have
15   scheduling conferences.
16           Now, so because we've now moved the scheduling
17   conferences and they're no longer on the 30th, and we've taken
18   care of the 12(b)(1) and 12(b)(6) motions, I think what we
19   still have on the 30th is a hearing -- let's see.  Is it in the
20   MOCA case to -- filed by DISH --
21           MR. MARCHESE:  Yes, Your Honor.
22           THE COURT:  -- the 101 motion?
23           MR. MARCHESE:  Yes.  We -- excuse me.  I didn't mean
24   to interrupt you.
25           THE COURT:  No, go ahead.
```

09:20AM 5
09:20AM 10
09:20AM 15
09:21AM 20
09:21AM 25

1          MR. MARCHESE:  In the 1043 MOCA case with DISH, we

2   have one 101 motion pending on two patents.  It is currently

3   scheduled, based on Your Honor's order a few days ago, pushing

4   it to the 30th of June.  We would -- we haven't discussed this

09:21AM 5   yet with the Entropic team, but we would be willing to hold

6   that altogether on the 21st with the scheduling conference.

7          THE COURT:  That's where I was going.

8          Ms. Goodrich?  Is it a problem?

9          MS. GOODRICH:  No problem here, Your Honor.

09:22AM 10          THE COURT:  Okay.  So the minute order will also

11   continue the hearing on DISH's 101 motion from June 30th to

12   July 21st at 11:00 a.m.

13          Now, I had some -- the reason we're not having that

14   hearing today is because I wanted some additional briefing on a

09:22AM 15   proposed claim construction from Entropic and then a response.

16   The briefing on that -- that claim construction briefing, that

17   supplemental briefing, is a little tight because I wanted to

18   fit this in -- fit the hearing in by the 30th.

19          Now that we're relaxing the schedule a bit, in terms

09:22AM 20   of the hearing, do you want to relax also the briefing?

21          MS. GOODRICH:  I'm all for relaxing the briefing,

22   Your Honor.

23          MR. MARCHESE:  We do not object, Your Honor.

24          THE COURT:  Okay.  I had set Entropic's supplemental

09:23AM 25   brief to be filed on June 16th and DISH's responsive brief for

```
 1    June 30th.  So since we have July 21st now as the hearing date,

 2    if I give myself two weeks to review all that supplemental

 3    briefing, that would mean -- how about the responsive brief

 4    from DISH due July 7th and Entropic's brief due June 30th?  How

 5    does that work?

 6            MR. MARCHESE:  Your Honor, if I may, we would

 7    receive their brief over the holiday weekend.  Wonder if we can

 8    have a little bit more time for our responsive brief.

 9            THE COURT:  You've got the 4th of July issue.

10            MR. MARCHESE:  Correct.  I think if they file on the

11    30th, then the 4th is falling on that Tuesday.

12            THE COURT:  Right.  Well, what if we do --

13            Ms. Goodrich, how about the 23rd?

14            MS. GOODRICH:  That works, Your Honor.

15            THE COURT:  How about the 26th?  I'll give you the

16    weekend.

17            MS. GOODRICH:  I would appreciate that.

18            THE COURT:  Okay.  So Entropic's supplemental brief

19    pertaining to the -- this 101 motion, which is ECF 50 in the

20    1043 case, one of the MOCA cases, Entropic's supplemental brief

21    is -- the deadline is continued to June 26th, and DISH's

22    responsive brief, the deadline is continued to July 7th.

23            Okay with everybody?

24            MS. GOODRICH:  Thank you, Your Honor.

25            MR. MARCHESE:  Thank you, Your Honor.
```

**UNITED STATES DISTRICT COURT**

1          THE COURT:  And I think I said it, but the hearing

2    is continued to July 21st.

3          All right.  We still have the technology tutorial in

4    the satellite cases coming up on Tuesday, June 27th; correct?

09:25AM 5          MR. SHIMOTA:  That's correct, Your Honor.

6          THE COURT:  I'm looking forward to that.  Seriously.

7    I'm not being facetious.

8          MR. SHIMOTA:  We are as well, Your Honor.

9          THE COURT:  All right.  So we now have nothing set

09:26AM 10   for the 30th.  We have the technology tutorial on June 27th, as

11   I just said.  Claim construction hearing in the satellite

12   cases, July 11th.  And scheduling conferences and hearings on

13   various motions set for July 21st.

14         Everybody concur?  You can just nod.

09:26AM 15         **(No audible response.)**

16         THE COURT:  Okay.  Everybody concurs.

17         And on August 25th, we have the hearing in the MOCA

18   cases on -- let's see.  I think that's DISH's motion to dismiss

19   the case for improper venue?

09:26AM 20         MR. MARCHESE:  Yes, Your Honor.  Three of the DISH

21   defendants have filed for improper venue, and the hearing is on

22   the 25th.

23         THE COURT:  Of August?

24         MR. MARCHESE:  Of August, correct.

09:27AM 25         THE COURT:  Okay.  All right.  That's everything

1   that I have sort of housekeepingwise on all of these motions,

2   except, of course, for the hearing on the -- DISH's motion to

3   compel compliance in the satellite cases.

4            What else, before I turn to that motion?

09:27AM  5            MS. GOODRICH:  Nothing from Entropic, Your Honor.

6            MR. MARCHESE:  Nothing from DISH in the 1043 case,

7   Your Honor.

8            MS. KAMRAN:  Nothing from Cox, Your Honor.

9            MR. PADMANABHAN:  Your Honor, nothing from Comcast

09:27AM 10  for the Court to decide, but hearing the scheduling discussion,

11  we may discuss offline.  Right now we're scheduled to respond

12  to their First Amended Complaint on the 19th.  And we'll meet

13  and confer on Monday, but we may want to discuss scheduling on

14  our briefing, given the July 4th holiday, similarly, for

09:28AM 15  Comcast in the 12(b)(1) and 12(b)(6).

16            THE COURT:  It looks like, if you file on time, you

17  could make the July 21st hearing date.

18            MR. PADMANABHAN:  That was our intention presently,

19  if that's okay with Your Honor.

09:28AM 20            THE COURT:  That seems like a good thing for me, in

21  the sense that I'll have everything on the same day.  And

22  perhaps for you as well, because you all -- you travel here on

23  the same day, get everything accomplished all at once.

24            MR. PADMANABHAN:  That sounds great, Your Honor.

09:28AM 25            THE COURT:  So I don't know if you want to respond,

1    Ms. Goodrich.  You don't have to.

2              MS. GOODRICH:  I would just like to see the motion

3    first.  There was concern that there may be a need for

4    discovery on the 12(b)(1).  And so until we see the motion and

09:28AM 5    whether it's changed substantially from the prior motion,

6    whether we would ask for additional time, that's all.

7              THE COURT:  Okay.  Well, I'll leave it to you.  Meet

8    and confer.  And in a perfect world, I'd like to have the

9    hearing on the 21st.  If that doesn't work, if you want to file

09:29AM 10    a stipulation to do something else, file it and I'll consider

11    it.

12              MR. PADMANABHAN:  No, Your Honor.  We appreciate

13    guidance like that.  So that's great.

14              THE COURT:  Okay.

09:29AM 15              MR. PADMANABHAN:  We'll be ready to go on the 21st.

16    Thank you.

17              THE COURT:  Okay.  So I think that takes care of all

18    of the so-called housekeeping issues on scheduling with all the

19    cases.  And I think all I have left is argument on the motion

09:29AM 20    to compel compliance in the satellite cases.

21              Counsel, you received my tentative; correct?

22              MR. SHIMOTA:  Yes, I did, Your Honor.

23              MR. BERNSTEIN:  Yes, Your Honor.

24              THE COURT:  All right.  So I'll tell you what I

09:29AM 25    always tell parties when I have a tentative, which is true,

UNITED STATES DISTRICT COURT

1    which is it's truly a tentative.  It's a little bit rough, but

2    I wanted to get it to you so you could see what I was thinking.

3    In fact, you can see that it was written as if I was going to

4    issue it without a hearing.  I didn't.  I forgot to take out

09:30AM  5    that line.  But anyway, it got written up, and I decided no,

6    I'd really rather hear from the parties, have the hearing on

7    this as opposed to just issue this.

8           So I'm eager to hear from you, how it's incorrect.

9    Feel free to push back, please.  I want to get this right.

09:30AM 10           So why don't I hear from -- why don't I hear from

11   DISH first, since I don't think you're getting in the tentative

12   precisely what you wanted; correct?

13           MR. BERNSTEIN:  Not precisely.  We're almost there,

14   Your Honor, but not completely.

09:30AM 15           THE COURT:  Okay.  My mind is open.  Tell me what

16   you'd like to tell me, and feel free to push back on this

17   tentative.

18           MR. BERNSTEIN:  Thank you, Your Honor.  Matthew

19   Bernstein for the DISH defendants.

09:31AM 20           So before I start, I'm going to be discussing some

21   information that Entropic has deemed confidential, "attorneys'

22   eyes only."  We don't believe it is.  But for purposes of right

23   now, I think we're all good, but I don't know who -- I don't

24   know who this guy is.  So...

09:31AM 25           THE COURT:  That's -- we have one guest in the

1  courtroom, Mr. Stein, who, as far as I know, is not involved in

2  any of these cases or parties.  He's a local lawyer, perhaps

3  just interested in this patent case.

4            MR. STEIN:  Just in this issue, but happy to leave

09:31AM  5  if that helps things.

6            THE COURT:  Does anybody feel the need to exclude

7  Mr. Stein?

8            MR. SHIMOTA:  Your Honor, I mean, for present

9  purposes, to the extent that they're going to disclose

09:32AM 10  information which has been designated by third a party as

11  outside "counsel's eyes only," I --

12            THE COURT:  So that's a "yes."

13            MR. SHIMOTA:  That's a "yes," Your Honor.  I don't

14  know exactly what Mr. Bernstein is going to argue, but --

09:32AM 15            MR. BERNSTEIN:  I think "yes" is the right answer.

16            THE COURT:  Okay.  Mr. Stein, I'm very sorry.  It's

17  wonderful to see you, as always.

18            THE WITNESS:  Delightful to be here.

19            Good luck to you all.

09:32AM 20            (Mr. Stein exits the courtroom.)

21            MR. BERNSTEIN:  Thank you, Your Honor.

22            So I want to start by just going through a few of

23  the basic facts because I think it underlies the two issues.

24  And they aren't really major issues.  And one of them, I think,

09:32AM 25  is just a point of clarification.

1              But I want to start with the language of 7.1-1

2    itself.  Because I think -- through this briefing, I think

3    maybe everyone at one point or another has lost sight of really

4    the basic, simple language that says if you have a pecuniary

09:33AM  5    interest in the outcome of this litigation, whether you're a

6    person, individual, entity, you need to be disclosed in this

7    7.1-1 disclosure.  It's very straightforward, from our

8    standpoint, the clear language, plain language of the

9    requirement.

09:33AM 10              And I think that's important because Entropic chose

11    to be in this court, Your Honor.  They originally filed in the

12    Eastern District of Texas.  We, DISH, moved to transfer to

13    Colorado.  They said, "No, no, Colorado is no good."  And

14    ultimately what Entropic said was, "Let's go to the Central

09:33AM 15    District of California."  They picked the Central District of

16    California, knowing that the Central District of California has

17    this 7.1-1 requirement to identify anybody who has a pecuniary

18    interest.

19              So that's the first point, that they chose to be

09:33AM 20    here, Your Honor, and they chose to comply with the language of

21    7.1-1.

22              Second, Your Honor, I want to walk through the

23    ownership of the plaintiff.  Entropic Communications, that's

24    the plaintiff.  It's owned 100 percent by a shell company,

09:34AM 25    Entropic Holdings.  It's a shell company.  That's all it does.

1    It's a vehicle created by Fortress, or whoever, to ultimately

2    deliver any judgment assets to the 11 companies who actually

3    own Entropic Holdings.  There's 11 member companies that own

4    Entropic Holdings.

09:34AM  5          THE COURT:  And you know the identity of those 11?

6          MR. BERNSTEIN:  So they have produced in the

7    litigation, it's the LLC agreement of Entropic Holdings.  And

8    it lists those 11 companies, the address of those 11 companies,

9    which are all the same, Fortress in New York.  And then it

09:34AM 10   identifies the percentage of ownership, which is each

11   individual company owns between less than 1 percent up to

12   50 percent.  In fact, two of these companies, two of these

13   member companies, actually own over 80 percent of Entropic

14   Holdings, which is a shell company.

09:35AM 15          So from our view they, for all intents and purposes,

16   own over 80 percent of the plaintiff in this case.  Indirectly,

17   but they do.

18          And that agreement, Your Honor, also sets forth that

19   any funds that are paid, a settlement, a judgment, it's paid to

09:35AM 20   these 11 member companies.  There's other things involved, but

21   ultimately these member companies, the 11 owners of the shell

22   company, are paid based on their percentage of ownership of the

23   shell company.  So it --

24          THE COURT:  Say that last thing again.

09:35AM 25          MR. BERNSTEIN:  Yes.  So, for example, one of

these -- one of the owners, the members of Entropic Holdings,

the company -- one of the companies that owns Entropic Holdings

has a 50 percent ownership in Entropic Holdings.  When there's

a payout, some of it will go to MaxLinear, that's unrelated.

09:36AM  But the payment that goes to the plaintiff goes through the

shell company, and then the member, the owner of the shell

company that owns 50 percent, gets paid based on that

50 percent percentage.

And so the -- from our standpoint, the Rule 7.1-1 is

09:36AM  specifically, explicitly set to identify this company -- all 11

of these companies should be identified.  And it seems from

your tentative that they are going to have to identify some of

them, but not all of them.

THE COURT:  So from my tentative, assuming what

09:36AM  you've said is true about percentage ownership, Entropic, the

plaintiff, would have to identify two of the private investment

funds, the one that owns 50 percent, you say, and the one that

owns, I assume, roughly 30 percent, because you said two of

them together are over 80 percent.

09:37AM  And then I assume that the other nine -- each of the

other nine holds less than 10 percent ownership interest in

Entropic Holdings, LLC; correct?

MR. BERNSTEIN:  That's correct.  That's our

understanding of the documents.

09:37AM  THE COURT:  So bottom line, there would be two

1   investment funds identified?

2              MR. BERNSTEIN:  Correct.  Although I want to take a

3   little issue with this term "investment fund" because this is a

4   term that's used in the declaration of the guy from Entropic,

09:37AM  5   Boris Teksler.  And it's a term that's been used even by some

6   other courts.  But I'm not exactly sure where that come --

7   where that came from and, actually, the evidentiary support in

8   the record that these actually are investment funds, or exactly

9   what that means to be an investment fund.

09:38AM 10              THE COURT:  Let me ask this question.  You know the

11   identity of these 11 entities; correct?

12              MR. BERNSTEIN:  The Court does not.  I do,

13   Your Honor.  Yes.

14              THE COURT:  So what is the nature of those 11

09:38AM 15   entities?  Are they, themselves, LLCs?  Are they corporations?

16   Are they limited partnerships?  Are they individuals?

17              MR. BERNSTEIN:  They are, I believe, LLCs and LPs, a

18   combination of those two corporate -- but exactly what they're

19   doing --

09:38AM 20              THE COURT:  So I want to hear that, but let me dig

21   down a little bit deeper.  The so-called investment fund that

22   owns -- that is a 50 percent member of Entropic Holdings, LLC,

23   what is the nature of that entity?

24              MR. BERNSTEIN:  Let me check, Your Honor.  I believe

09:38AM 25   it's an LLC, but let me -- it's an LP, limited partnership.

1          THE COURT:  So under the order in my tentative --
2     like I said, it's an interesting question.  It's a limited
3     partnership.
4          Is not Entropic, under the tentative order,
09:39AM 5     obligated to identify individuals or entities that own
6     10 percent or more of that limited partnership?
7          MR. BERNSTEIN:  Yeah, I mean -- I believe the order
8     is clear that they would have to identify this entity and the
9     other entity that owns 33 percent of the shell company,
09:39AM 10    Entropic Holdings, yes.
11          THE COURT:  The entity that owns 33 percent of
12    Entropic Holdings, what's the nature of that entity?
13          MR. BERNSTEIN:  So if you're just asking me the
14    corporate --
09:40AM 15          THE COURT:  Yeah.
16          MR. BERNSTEIN:  -- LLC?
17          What they do, anything else, what they -- we don't
18    have that information.  We just have this list, Your Honor.
19          THE COURT:  And do you know who -- who or what is a
09:40AM 20    10 percent or more member of that 33 percent LLC?
21          MR. BERNSTEIN:  That's what we're asking from you,
22    Your Honor.  We don't think your tentative -- we think your --
23    in the body of the tentative, you actually recognized this
24    issue, because that's what I think the *Intel/VLSI* Court in the
09:40AM 25    Northern District of California, they -- there's a statement, I

think it's in the top of page 6 of your tentative order, where there was a statement from that Northern District of California decision where the plaintiffs had, under oath or declaration, said there were no such individuals or entities that actually own more than 10 percent of the investment funds.

So we think -- and this is one of the issues I wanted to clarify.  We think that that's -- if we're going to follow Intel in that Northern District case, we think that's correct, but we think your actual order, your disposition, should say exactly that.  Your disposition order says just individuals who own 10 percent or more of the shell company, Entropic Holdings.  It's not covering both individuals and entities, and it's not covering the actual investment funds.

And so it's too narrow, the actual Point 2 in your order.  And we think that that should be expanded to cover any individual or entity that owns 10 percent or more of any one of these investment funds -- I'll use that word -- or any combination of the investment funds.

THE COURT:  So you covered one of my questions, the sort of mathematical one.  And that is -- so take, for example, the -- I'll call it the 50 percent owner, the limited partnership that owns 50 percent of Entropic Holdings, LLC. You would advocate that if we go with a 10 percent rule, any person or entity that owns more than 10 percent of that limited partnership should be identified, as opposed to if we're

```
 1    talking about 10 percent of the overall plaintiff,

 2    mathematically, the threshold would then be 20 percent or more

 3    of that 50 percent owner.

 4              Do you understand what I'm saying?

 5              MR. BERNSTEIN:  I do.  And that's exactly what we're

 6    saying.  Any --

 7              THE COURT:  And you want it to go 10 percent,

 8    10 percent, 10 percent?

 9              MR. BERNSTEIN:  Correct, Your Honor.

10              THE COURT:  So if -- I'm making this up.  If there

11    was a 10 percent owner of Entropic Holdings, LLC, and some

12    individual or entity owned 10 percent of that 10 percent owner,

13    you want them identified.  So they're essentially a 1 percent

14    holder.  And in fact, you want 10 percent holders of that

15    1 percent holder identified; is that correct?

16              MR. BERNSTEIN:  That -- I wouldn't characterize it

17    the way that you are, but that is effectively what we're

18    saying.  From our standpoint, Entropic Holdings, it is just a

19    shell company.  And so, really, what we should be looking at

20    are these individual -- 11 individual owners.

21              THE COURT:  So you're saying 10 percent is

22    arbitrary.  Let's get the -- let's get the list of persons and

23    entities, bottom line, who have a pecuniary interest in the

24    outcome of this case, however much it may be.

25              MR. BERNSTEIN:  So that is actually what the rule
```

1   says, 7.1-1.  This 10 percent --

2          THE COURT:  So that's my next question, is I know

3   the Federal Rules of Civil Procedure says 10 percent in

4   Rule 7.1.  Where does that -- historically, where does that

09:44AM 5   10 percent come from?  Is there some case or what -- why the

6   magical 10 percent?

7          MR. BERNSTEIN:  I actually -- I don't know off the

8   top of my head where that 10 percent came from.  I think what's

9   significant here is that the -- I think the 7.1.1 or the

09:44AM 10  legislative history says that Courts can have a more strict

11  requirement or more robust identification of interested parties

12  if they want to.  And this Court has chosen to not -- it's not

13  just 10 percent, it's anyone that has a pecuniary interest.

14          But if we're --

09:44AM 15         THE COURT:  When you say "this Court," you're

16  talking about Local Rule 7.1-1?

17          MR. BERNSTEIN:  Correct, Your Honor.

18          THE COURT:  Sorry to interrupt.  Go ahead.

19          MR. BERNSTEIN:  Yeah, no.  I mean, ultimately, this

09:45AM 20  comes down to what you're comfortable with, in the context of

21  the local rule.  I mean, we -- this is -- we're not at the

22  recusal stage.  This isn't a motion for recusal.  This is just

23  to get you the information so you're comfortable, so we're

24  comfortable, really so everyone is comfortable, that there's no

09:45AM 25  bias, there's no appearance of bias.  There's nothing else.

```
 1              And all we're asking for right now is for there to
 2    be an identification of the actual entities that have an
 3    interest in this litigation, a financial pecuniary interest in
 4    this litigation.  And the actual entities that do are -- it's
 5    not the holding company, it's not the plaintiff, it's these 11
 6    individuals.  They're the ones who are going to get the actual
 7    funds from the judgment, from the litigation.  They're the ones
 8    who are going to spend it.  These are the 11 that are actually
 9    critical.
10              And to the extent you're going to apply a 10 percent
11    rule, it should be applied to these 10 percent -- to these 11
12    companies.  Because they are the owners of, effectively --
13    they're the owners of Entropic Holdings.  They're effectively
14    the indirect owners of the plaintiff, Entropic Communications.
15              THE COURT:  So for recusal purposes -- taking a step
16    back and putting this case aside, in general, what -- it's
17    publicly traded entities that are a big concern.  Perhaps not
18    the only concern, but the biggest concern; right?
19              There was a big scandal, if I can call it that, a
20    few years ago where there were a number of district judges who,
21    turned out, they or family -- close family members owned stock,
22    sometimes very little stock, in companies that were litigants,
23    that were parties in cases appearing -- cases over which those
24    judges presided; correct?
25              MR. BERNSTEIN:  I remember, Your Honor.
```

THE COURT:  Now the reason the disclosure rule
exists, on its face, is to enable the Court to evaluate
possible disqualification.  Shouldn't the disclosure -- so
you've got this 10 percent threshold that's built into the
09:47AM  federal rules.  You've noted there's no 10 percent set forth in
the local rule.  But where I'm going with this is, isn't the
concern publicly traded companies?

I mean, if there's some obscure limited partnership
that nobody's ever heard of because it's kind of secret and you
09:48AM  have to know the special handshake to become a member of it --
I'm not saying that's this case, but -- and that's the funder
and holds a pecuniary interest in the outcome of some case, why
does the judge care?

Again, if it's not an entity that the judge or the
09:48AM  judge's family has any affiliation with, why does that need to
be publicly disclosed?

MR. BERNSTEIN:  So I agree that the concern is more,
and maybe much more, when we're talking about a public company.
But, Your Honor, we don't know anything about these 11
09:48AM  entities.  What if a public company actually owned 10 percent
or more of one of these companies?  I mean, we have not seen --
they have not disclosed who actually owns these companies.

Or what -- what if it's -- this is not maybe
specifically an issue, but what if your next-door neighbor,
09:49AM  what if your good friend was the owner -- 25 percent owner of

1    one of these companies?

2           The point is to provide you with the list, so you

3    can review this and you can make a decision.  And it very well

4    might be the case, Your Honor, that you look at all this stuff

09:49AM  5    and you're, like, "I have nothing to do with this.  I don't

6    know any of this.  I don't own any stock.  My family doesn't

7    own any stock."  That might be the result.

8           But we think the purpose of 7.1-1 is to give you the

9    information so you can make that decision.  So in six months or

09:49AM 10    a year, there's some discovery taken and it turns out that, no,

11    look, there is someone here, and effectively all decisions you

12    have made in the case before then are going to be called into

13    question.  It's better to deal with this now with the

14    disclosure required by Local Rule 7.1-1.

09:50AM 15           And I do -- Your Honor, you jokingly talked about

16    the secret handshake and stuff like that.  And it was a good

17    joke.  I chuckled here.  But it's kind of -- it's kind of one

18    of the overarching issues here, is that Fortress -- Fortress is

19    involved in this whole process somehow.  Nobody knows exactly

09:50AM 20    what they're doing, because those guys are smart.  They're

21    clever.  They set up shell companies.  They create all these

22    LLCs and LLPs to hide who is actually bringing these

23    litigations.

24           THE COURT:  So why does that matter?  It matters --

09:50AM 25    I can answer -- let me -- it's kind of a rhetorical question,

1    at least in part.

2              It matters, in part, because of recusal purposes.

3    If there's some company that I have stock in who is involved in

4    the Fortress group of entities, yes, that's interesting for

09:51AM 5    recusal purposes.  It has to be considered.  So that's one

6    reason that it matters; right?

7              I think you've identified another reason that

8    matters is for jury selection purposes.  We need to know if one

9    of the prospective jurors has a pecuniary interest in the case.

09:51AM 10   He or she should not sit as a juror.

11             MR. BERNSTEIN:  Same for the special master,

12   Your Honor.

13             THE COURT:  Okay.  But where do we draw the line?  I

14   think your -- in your perfect world, I would issue an order

09:51AM 15   saying, "Plaintiff, identify every person and entity that has a

16   pecuniary interest in the outcome of this case."

17             Well, whether it's through an LLC, LLP, the person

18   individually -- what if it's a corporation?  What if it's a

19   nonpublicly traded corporation?  Do you want to know the owners

09:52AM 20   of that corporation?

21             MR. BERNSTEIN:  So, Your Honor, that's a great

22   question.  And I think in an ideal world, yes, I'm sure my

23   client would love to go all the way, no limitation at all.  But

24   I think we can actually use the 10 percent number, and we just

09:52AM 25   apply it to the actual --

1          THE COURT:  So 10 percent of the plaintiff or

2    10 percent --

3          MR. BERNSTEIN:  No.  10 percent -- from our view,

4    the actual owners of the -- you know, this -- the owners of the

09:52AM 5    plaintiff, the people who are going to receive the pecuniary

6    interest are the 11 members.  And so Entropic should have to

7    identify any individual or entity that owns 10 percent of any

8    one of those 11 companies.  Or if they own, like, 5 percent

9    here or 6 percent of another one, if in total it reaches more

09:53AM 10   than 10 percent, they also should be identified.

11         THE COURT:  And that's for recusal purposes?

12         MR. BERNSTEIN:  That is for recusal purposes.  I

13   mean, it is primarily for recusal purposes.  There is also this

14   overarching transparency in your courtroom and everyone else's

09:53AM 15   courtroom, but this is -- as you pointed out, Local Rule 7.1-1

16   is a rule that is meant to deal with recusal.  And we think you

17   need the information that the rule requires.  That's all we're

18   actually asking for.

19         We're actually cutting it back a little bit because

09:53AM 20   we would -- in light of your tentative and the Northern

21   District of California VLSI case, we'd be okay with that.  10

22   percent of the members, 10 percent -- anyone or any entity that

23   owns 10 percent or more of one of these members -- or, you

24   know, they own 10 percent of one or more of these members, they

09:54AM 25   have to be identified.

 1          I think that's actually what the Court in the

 2   Northern District of California VLSI case was suggesting.

 3   That's the top of page 6 of your tentative.

 4          THE COURT:  Okay.  Anything else?

09:54AM 5          MR. BERNSTEIN:  Yes.  So you actually, through that

 6   discussion, got rid of one -- the point of clarification, which

 7   is Point 2 in your proposed order.

 8          The other thing is this -- you cited in the

 9   tentative to this *GoTV Streaming v Netflix* case to, I think,

09:54AM 10   narrow a little bit what was required to be disclosed.  And

11   respectfully, the DISH defendants disagree that that case

12   really is on point.

13          THE COURT:  Judge Kewalramani was dealing with it in

14   a discovery context, and one of the pieces that he looked at

09:55AM 15   was Local Rule 7.1-1.

16          MR. BERNSTEIN:  So -- correct.  So the discovery

17   dispute, Your Honor, actually related to whether work

18   product -- attorney work product related to these litigation

19   funders had to be produced.  So that's different from what's at

09:55AM 20   issue here.

21          But the -- what's at issue here is the

22   identification of entities or individuals.  And in the Netflix

23   case, in a supplemental response to an interrogatory, or second

24   or fifth response to a supplemental interrogatory, the

09:55AM 25   plaintiff actually identified the litigation funders.

1          So those actual litigation funders were identified

2     to at least the defendant.  So that's different here, where

3     we're fighting over identification of relevant entities.

4          But I think more importantly, the Netflix case

09:56AM 5     related to litigation funders.  Like, those are -- I'm sure

6     from private practice, you remember those are entities where

7     you want to, you know, file a case or pursue a litigation, you

8     don't have any money.  You go find these people and they say,

9     "Yeah, here's $2 million.  We want a 20 percent cut of this."

09:56AM 10          That's not what these 11 companies are that own

11    Entropic Holdings.  They're actual owners of Entropic Holdings

12    that ultimately get, you know, paid based on the results of the

13    litigation.  And so I think that's a major distinction.  We're

14    talking about, at least indirectly, who owns the plaintiff in

09:56AM 15    the context of our case, not litigation funders.  We're not

16    talking about random third parties who only have a little cut

17    of the litigation.

18          THE COURT:  So are you talking about champerty?

19          MR. BERNSTEIN:  Yes.

09:57AM 20          THE COURT:  So champerty used to be forbidden, but

21    there are a bunch of exceptions.  One of the, I think, earliest

22    exceptions arose from counsel taking a case on a contingency.

23    That technically, I think, violates champerty rules, historic

24    champerty rules.  But that was ultimately permitted for policy

09:57AM 25    reasons.

1          But I think a big distinction was that counsel --

2     counsel had to be acting in the best interest of the client.

3     And it was the client's decision whether to continue with the

4     litigation, whether to settle, how much to settle for.  That

09:57AM 5     was strictly a client decision.  And I think for a policy

6     reason, that's why American courts -- jurisdictions permitted

7     this violation of historical champerty rules.

8          Now, in the litigation funding context, a big issue

9     that arises is who controls the litigation.  And is that where

09:58AM 10    you're going, that you think that these 11 -- let's take it

11    with respect to this case.  Your concern is these 11 investment

12    funds, or maybe Fortress itself or the individuals who control

13    Fortress, actually control -- are making decisions in this case

14    and you think that you're entitled to know who that is?

09:58AM 15         MR. BERNSTEIN:  Yes.  That's part of it for sure,

16    Your Honor.  We don't know.  Nobody knows.  That's part of the

17    web that Fortress casts, is that who's actually ultimately

18    making decisions?

19         I mean, there's a declaration from Mr. Teksler that

09:58AM 20    says, "Yeah, we're in charge of this."  But the reality is, is

21    they don't -- those individuals, the company, the plaintiff --

22    the money, the judgment, the settlement amounts, it's going

23    elsewhere.  And so I think a reasonable conclusion one could

24    make is that other people are making the decisions because

09:59AM 25    they're the beneficiary of everything that happens.

1          THE COURT:  Okay.  Fair enough.  And so what?  So

2     there's a Mr. Smith or Ms. Jones or whatever who's making these

3     decisions completely unknown to any defendant.  So what?

4          MR. BERNSTEIN:  Yeah.  So this is -- in the -- this

09:59AM 5     was really -- my point was really just to distinguish between a

6     third-party litigation funder that was at issue -- I mean, it's

7     just a different ball game, from my standpoint, to be something

8     like that as opposed to a company -- the actual owners -- the

9     owners of the holding company, the shell holding company, and

10:00AM 10     the owners of, indirectly, the plaintiff.

11          THE COURT:  So are you making the distinction

12     between, like you say, a litigation funder who enjoys the

13     upside, if there is one, but does not control the litigation

14     versus a litigation funder who does control the litigation

10:00AM 15     who's calling the shots?

16          MR. BERNSTEIN:  I mean, I think that would be a

17     distinction.  But I think there's also another distinction as

18     to whether a party that actually owns, even indirectly, a

19     litigant should be disclosed under the local rule, especially

10:00AM 20     when that owner has, you know, significant -- they get the

21     benefit of the payout to the judgment to settlement.

22          I mean, I think to me, at least from my standpoint,

23     actually being an owner of the plaintiff, indirectly or

24     directly, is more significant than just putting in some money

10:01AM 25     into the litigation.  I think there should be more obligations

on the part of someone who actually owns a litigant.  And I think -- I can't -- I can't cite you law exactly on that point, but I think that is part of our process, that there should be some transparency in who's actually bringing a litigation.

10:01AM    THE COURT:  And there should be because why?  It doesn't -- I don't think it affects my recusal process.

MR. BERNSTEIN:  I think all of us, the U.S. judicial system benefits from transparency and openness in who the litigants actually are, especially plaintiffs.  If someone wants to bring a litigation case, great.  I mean, say who you are.  Say who you really are.

THE COURT:  But how far does that go?  I mean, say in a case a litigant is a nonpublicly traded company.  The opposing party doesn't know who within that company is actually calling the shots.  Is it the person who's identified as the president or CEO?  Is it the COO?  Is it the general counsel?  Is it the chairman of the board of directors?  You don't know.  Not you, but opposing party doesn't know.

And I don't -- I don't know that we get all deeply concerned about that.  That's part of what one gets to do when one has a corporation.  Is that not true?

MR. BERNSTEIN:  As a general proposition, it is.  But in our case, we have 11 companies who actually own the shell company who owns Entropic.  We're not -- we're not saying go forever.  We're -- we want those companies identified and

UNITED STATES DISTRICT COURT

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | we -- should I stop?                                         |
|       | 2  | THE COURT:  Yes.  Sorry.                                     |
|       | 3  | Mr. Alekseyeff, good to see you.                             |
|       | 4  | Mr. Alekseyeff is here for the 11:00 o'clock matter.         |
| 10:03AM | 5 | I think we're past disclosing any names.  In fact, I don't  |
|       | 6  | think we did at all.  So can Mr. Alekseyeff stay?           |
|       | 7  | MR. SHIMOTA:  I don't object, Your Honor.  Entropic         |
|       | 8  | doesn't object.                                             |
|       | 9  | THE COURT:  Mr. Alekseyeff, you're welcome to stay          |
| 10:03AM | 10 | or go.  The issue was, we were discussing some confidential |
|       | 11 | issues in this hearing, but I think we're done doing that.  So |
|       | 12 | you're welcome to stay.                                     |
|       | 13 | MR. BERNSTEIN:  Just to finish the point, we don't          |
|       | 14 | have to look beyond everything.  We can just look at our    |
| 10:03AM | 15 | specific case.  These 11 companies own the shell company.  |
|       | 16 | They -- the -- indirectly, they own the plaintiff.  These 11 |
|       | 17 | who have a pecuniary interest in the outcome of the litigation, |
|       | 18 | they should be identified as well as anyone who owns 10 percent |
|       | 19 | or more of them.                                           |
| 10:03AM | 20 | THE COURT:  Because?                                        |
|       | 21 | MR. BERNSTEIN:  Because that will enable you to            |
|       | 22 | fully vet the issue of recusal, Your Honor.                |
|       | 23 | THE COURT:  Okay.  All right.  Thank you.  I'll give       |
|       | 24 | you a brief last word, but we'll see if Mr. Shimota --     |
| 10:04AM | 25 | Am I pronouncing your name right?                           |

1          MR. SHIMOTA:  Exactly right, Your Honor.

2          THE COURT:  Looks like you're going to argue this.

3          MR. SHIMOTA:  I am.  Thank you, Your Honor.  Thank

4     you for hearing on this issue.

10:04AM  5          To start with, right, I mean -- so we received your

6     tentative ruling last night.  What I want to be clear on here,

7     and what we've tried to be clear on from the very beginning, is

8     that while we think our 7.1-1 disclosure was accurate, you're

9     right that this rule is very similar to the Northern District

10:04AM 10    of California's rule here.  And what that rule says is

11    interests that are known.

12          And so what we provided in our 7.1 disclosure is

13    what we knew about.  And so there is -- you know, there is --

14    what we've learned from a production in another case is that

10:04AM 15    Entropic -- there are these 11 funds that own Entropic

16    Holdings, LLC.

17          THE COURT:  Well, I got to tell you, that's not

18    really very compelling.  It's not a very compelling argument to

19    me, what you know.  Because you certainly can know.  I don't

10:05AM 20    know who you're taking your marching orders from, what human

21    being is telling you, "Yes, file this motion.  Don't file that

22    motion.  Make this argument."  There's somebody presumably

23    doing that.  And I'm not asking you to disclose that.  But the

24    point is he or she, if he or she wants to, can find out this

10:05AM 25    information.

**UNITED STATES DISTRICT COURT**

1          MR. SHIMOTA:  Getting to the point then -- so

2    cutting to the chase, I provided, you know, your ruling to --

3    Fortress has its own counsel, who I have been in communication

4    with.  I provided your ruling to them, Your Honor.  We can --

10:05AM 5    by the 23rd, we can certainly disclose the funds that own more

6    than 10 percent of Entropic Holdings.  And we --

7          THE COURT:  Sounds like that would be two.

8          MR. SHIMOTA:  Two companies, right.  In addition to

9    that -- the issue is, as I understand it, that -- these are

10:05AM 10   private funds.  Well, let me take one step back.

11         DISH tries to paint this kind of James

12   "Bondian-like" dark story, like this web of secret Fortress.

13   If you go to the SEC website and type in "Fortress Investment

14   Group," you'll find a Form ADV document that's 2,000 pages long

10:06AM 15   that describes exactly what Fortress does and identifies each

16   and every fund that they manage, including those that own

17   Entropic Holdings.  They're listed as private funds.

18         It's a matter of public record that these public

19   funds are typically owned by pension funds, sovereign wealth

10:06AM 20   funds, high net worth individuals.  So the issue there, that I

21   believe we will be able to resolve, is that there are times

22   where certain investors in these funds have confidentiality

23   obligations with Fortress.

24         So what Fortress's lawyers are doing at this moment

10:06AM 25   is trying to make sure that in order to comply with this

Court's order, the tentative ruling, that it will not run afoul
of any confidentiality obligations.  I don't even know if there
is an individual or entity that owns more than 10 percent of
these two funds.  In all likelihood, there probably isn't, the
10:07AM  way funds are typically structured, but I can't represent that
to Your Honor.

But my understanding is that we would be able to
advise you by next week whether there would be an issue with
compliance with that.  Fortress will tell me, and I would
10:07AM  advise you.  And we will -- we want to move forward and put
this issue behind us and move forward in the merits of the
case.  And so we believe that we will be able to comply with
your order by June 23rd, your tentative ruling, to the extent
that it continues on.

10:07AM  THE COURT:  Where does the -- do you know where the
10 percent rule comes from that's in Federal Rules of Civil
Procedure 7.1?

MR. SHIMOTA:  My understanding is it has to do with
control, Your Honor.  That 10 percent is a number where people
10:07AM  felt that if someone owns 10 percent in a publicly held
corporation, that that is a sufficient amount where they would
be able to exercise some degree of control over the
corporation.  And as a consequence, I think that translates
well to this case as well.

10:08AM  And I think your math is correct.  Right?  I mean,

if someone owns 10 percent of one of these funds, then they're

not in a position even -- I mean, even if they wanted to -- to

control anything in this case.  And DISH itself concedes that

for recusal purposes, indirect investments do not require this

10:08AM 5   Court to recuse themselves.

And I don't want to intrude on your own personal

financial dealings, but I assume that if you or a member of

your family were invested in one of these Fortress funds, you

likely would know it.  And so I suspect that this is an issue

10:08AM 10  that hopefully we can move on from.

There's a few other points, right?  For example,

counsel repeatedly, repeatedly called Entropic Holdings a shell

corporation.  There is no record evidence whatsoever that this

is a shell corporation at all.  None.  There's the LLC

10:09AM 15  agreement, which has been produced in this matter.  We provided

a declaration for Mr. Teksler.

There's no competing evidence whatsoever that this

is a shell corporation or that there is anything nefarious

going on.  It is just counsel -- counsel say-so.  I think there

10:09AM 20  should be evidence before you start making charges of that

kind, that there's -- this company is just a sham or a shell or

something like that.

THE COURT:  What about publicly traded entities?  I

mean, I'm contemplating asking for an identification of any

10:09AM 25  publicly traded entities that are in any way a part of the

1    ownership of Entropic Holdings, LLC.

2              MR. SHIMOTA:  I mean, any public -- a corporation

3    that owns any percentage of any of these funds?

4              THE COURT:  Well, for recusal -- yes, for recusal

10:10AM   5    purposes.  I think that's an interesting thing for a Court,

6    generally, to know.  I mentioned earlier the issue that arose a

7    few years ago where it turned out that district judges owned a

8    tiny piece of entities that were litigating before them.  So

9    using that, perhaps that would be an important thing to -- for

10:10AM  10    plaintiff to disclose.

11              If Acme Corporation has -- you know, owns 1 percent

12    of 1 percent of one of the private investment funds, I would

13    hate to litigate this case heavily and make rulings and then

14    come to find out that I own stock in Acme Corporation and Acme

10:10AM  15    Corporation was in the corporate ownership here.

16              MR. SHIMOTA:  Yeah, I mean, I think no party

17    disputes here, at least DISH does not dispute, that an indirect

18    investment in a fund is not something that requires recusal.

19    Their briefing says that.

10:11AM  20              So if Acme Corporation owned 1 percent of one of

21    these funds that's managed by Fortress, that's the type of

22    indirect investment that does -- you don't control that,

23    Your Honor.  I mean, that's fund -- you know, things that are

24    moving around.  And so it wouldn't --

10:11AM  25              THE COURT:  But I may benefit.  If Acme

```
 1   Corporation -- if you win big in this case and Acme
 2   Corporation, you know, enjoys significant profits because of
 3   it, I could benefit from that, if I owned Acme Corporation and
 4   Acme Corporation was in the ownership structure.
 5           So is that not something that ought to be disclosed,
 6   publicly traded entities?
 7           MR. SHIMOTA:  I just think that that's the type of
 8   indirect investment that is not required to -- that would not
 9   require your recusal.
10           THE COURT:  So you think no --
11           MR. SHIMOTA:  I mean, so let's say, for example,
12   that there was --
13           THE COURT:  Hold on.  I'm asking a different
14   question.
15           MR. SHIMOTA:  Sorry.  Okay.
16           THE COURT:  Is that a knowable -- how easily
17   knowable is that for you?  And are there any?  I mean, you --
18           MR. SHIMOTA:  Candidly, I don't represent Fortress
19   in this matter.  I'm dealing with Fortress's counsel.  I talked
20   with them this morning.  I don't know.  My expectation and
21   belief is that there is no public corporation that is owning
22   any of these funds.  But I simply don't know, Your Honor.
23           And I think to the extent that there was a public
24   corporation that owned, you know, 1 percent of one of these
25   funds, I think that's so attenuated that it's not -- you
```

1       know -- it's just, where does it end?

2               Candidly, I think -- you know, I've seen your

3       disclosures, Your Honor, and you -- there's certain funds -- I

4       think it's more likely that one of your funds owns one of the

10:12AM  5       plaintiffs in this case.  And we don't have a problem with

6       that.  We don't think that that's -- or one of the defendants,

7       excuse me.  You know, they own stock in Comcast or someone like

8       that, rather than one of these funds.  And we don't think

9       that's an issue.

10:13AM 10               And to even emphasize things, DISH talks a lot about

11      how transparency and how this -- you know, sort of the

12      public -- their codefendant in the consolidated part of this

13      case up to Markman, DIRECTV, is owned 33 percent by a private

14      equity fund; right?  They're very similar to a Fortress

10:13AM 15      situation.

16               DISH hasn't said a single word about that.  Who owns

17      DIRECTV?  Who owns these funds?  The public needs to know to be

18      sure about the case.  It's, rather, this is just an effort --

19      you know, DISH is kind of -- DISH -- Mr. Bernstein's colleague,

10:13AM 20      Ms. Tessar, last time she was here before you in court, she

21      wasn't talking about recusal, she was talking about discovery.

22               She said, "We were seeking the ownership who owns --

23      who owns Entropic."  And she said that "We sought this in

24      discovery and they stiffed us."  That was her quote.  And so it

10:14AM 25      wasn't -- it's never been about ethics or recusal.  I suspect

1   there's enough here for Your Honor to determine whether or not

2   you can ethically proceed with this case.  It's always been

3   about discovery and the types of -- the story they want to

4   weave about the nefarious Fortress and this secret web of shell

10:14AM 5   companies.

6           THE COURT:  So I understood Mr. Bernstein to be

7   making the argument that plaintiff should be compelled to

8   disclose the identity of entities that are controlling the

9   course of the litigation as opposed to merely funding the

10:14AM 10   litigation and then sort of passively finding out whether

11   they're going to -- whether the investment is going to pay off

12   or not.

13           So there's -- I understood him making -- to be

14   making a distinction between sort of passive investing and

10:14AM 15   enjoying an upside versus actually controlling the litigation.

16   And those who control the litigation ought to be disclosed.

17           Do you want to respond to that?

18           MR. SHIMOTA:  Well, as I understand the GoTV case,

19   the Court there said that 7.1-1 deals with recusal.  So the

10:15AM 20   Court didn't require production of, you know -- under that

21   rule, of the identity of the litigation funder.

22           There are times where for standing purposes, for

23   example, you may be interested in who actually controls the

24   litigation, who has, quote/unquote, all substantial rights in

10:15AM 25   this matter.  There's never been any argument made that anyone,

```
    1    other than Entropic, my client, is who controls this
    2    litigation.
    3            You know, Mr. Teksler provided a -- Mr. Teksler is
    4    an executive who's worked at Apple, who's worked at HP, who's
10:15AM  5    been CEO of lots of corporations.  He's provided testimony
    6    under oath to this Court that he's the one running the show
    7    here.  There's no evidence whatsoever in the record that
    8    there's some secret entity that's running the show here.
    9            And so -- and I agree with you 100 percent that if
10:16AM 10    they want to make an argument and that there is a valid basis
   11    that there's someone else, for standing purposes, that needs to
   12    be discovered, that's a different issue, an entirely different
   13    issue than whether or not you need to recuse yourself in this
   14    matter.
10:16AM 15            You know, they can pursue that, but that doesn't
   16    have anything to do with the public disclosure of who owns, you
   17    know, certain private funds managed by Fortress.
   18            THE COURT:  So I was talking more, I think, about
   19    the champerty issue.  Do you want to address that?
10:16AM 20            MR. SHIMOTA:  Yeah.  So the issue, you know, in
   21    particular as to whether or not, you know -- for litigation
   22    funders typically, typically -- I don't know what the
   23    litigation funding arrangement was in the GoTV case, but they
   24    provide nonrecourse funds.  But nevertheless, the plaintiff
10:16AM 25    still retains the authority to settle.  They simply -- they
```

1  have full authority to resolve the case or not.

2          And I don't still believe that under the rules that

3  someone who has the ability to, you know, necessarily control

4  the case in some way has a pecuniary interest.  They may.  They

10:17AM 5  probably would, but I don't know.

6          So I don't believe that under 7.1-1 that there is

7  any requirement to disclose, you know, someone else who's in

8  control of the case.  But I guess as a practical matter, I

9  would say, Your Honor, there is no one else to disclose.

10:17AM 10  Entropic controls Entropic's day-to-day operations.

11  Mr. Teksler has provided testimony.  I'm sure he'd be happy to

12  come here to this court, if you'd like, to say that he runs the

13  company and he's in control of Entropic, he makes the decisions

14  for it.

10:17AM 15          THE COURT:  Okay.

16          MR. SHIMOTA:  I don't know if you have any further

17  questions.  Thank you for taking the time, Your Honor.

18          THE COURT:  No, that's it.  I'll give Mr. Bernstein

19  a chance to reply, if he'd like to.

10:17AM 20          MR. BERNSTEIN:  Yeah, just very briefly, Your Honor.

21          So from our standpoint, their control and whether

22  there's a pecuniary interest, financial upside, those actually

23  are two separate things, either one of which would give rise to

24  potential recusal.  And so I just wanted to clarify our

10:18AM 25  position.

1       The Local Rule 7.1-1 says if you have a pecuniary

2   interest, identify yourself.  But I think if there is --

3   someone is actually -- like, for example, Fortress, like,

4   what -- they're involved in this stuff.  What are they doing?

10:18AM  5   We don't know.  They've identified Fortress.  Right now we're

6   okay with this.  Really our concern is with these other

7   companies and what's going on with these other companies.  So I

8   just wanted to clarify that distinction.

9       And beyond that, I mean, I appreciate -- I mean, I

10:18AM 10   hadn't thought about champerty in a long time, so I appreciate

11   you bringing it up and giving me an opportunity to talk about

12   it with you.  Thank you, Your Honor.

13       THE COURT:  You're welcome.

14       Okay.  I'm going to take this motion under

10:19AM 15   submission and think about it a little bit more in view of the

16   argument, which I deeply appreciate.

17       Counsel, again, thank you for traveling here for

18   this hearing.  I will see you all on the 21st of July, I think

19   for a number of proceedings, as we have discussed.  I look

10:19AM 20   forward to receiving the special master stipulation and

21   declaration on the satellite case, and then hope to get that

22   order entered.  And look forward to seeing the Rule 26(f)

23   reports and hopefully stipulation on consolidation in the MOCA

24   and cable cases.  And look forward to seeing the supplemental

10:19AM 25   briefing on the 101 motion.  And hopefully we can get the

1    12(b)(1) and 12(b)(6) motions teed up for hearing on July 21st

2    as well.  Again, thank you.

3              Anything else?  Anything we didn't cover?  Am I

4    missing something?

10:20AM  5              MR. SHIMOTA:  No, Your Honor.

6              MS. GOODRICH:  No, Your Honor.

7              THE COURT:  Okay.  Counsel, thank you.  Have a

8    great -- I guess it's Friday, so have a great weekend.  And

9    I'll see you next time.

10:20AM 10              **(The parties collectively responded "Thank you.")**

11              THE COURTROOM DEPUTY:  All rise.  This Court is in

12    recess.

13                   **(Proceedings conclude at 10:20 A.M.)**

14                            **--oOo--**

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3   COUNTY OF LOS ANGELES   )
                             )
 4   STATE OF CALIFORNIA     )

 5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

 6   COURT REPORTER, in and for the United States District Court for

 7   the Central District of California, do hereby certify that

 8   pursuant to Section 753, Title 28, United States Code that the

 9   foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   Date:  July 5, 2023

16

17

18

19                                  /S/ DEBBIE HINO-SPAAN

20                                  Debbie Hino-Spaan, CSR No. 7953
                                    Federal Official Court Reporter
21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**

## /

**/S** [1] - 52:19

## 1

**1** [8] - 4:5, 22:11, 27:13, 27:15, 44:11, 44:12, 44:20, 45:24
**1-053** [1] - 1:24
**10** [46] - 8:5, 23:21, 25:6, 25:20, 26:5, 26:11, 26:16, 26:23, 26:24, 27:1, 27:7, 27:8, 27:11, 27:12, 27:14, 27:21, 28:1, 28:3, 28:5, 28:6, 28:8, 28:13, 29:10, 29:11, 30:4, 30:5, 30:20, 32:24, 33:1, 33:2, 33:3, 33:7, 33:10, 33:21, 33:22, 33:23, 33:24, 39:18, 41:6, 42:3, 42:16, 42:19, 42:20, 43:1
**100** [2] - 21:24, 48:9
**101** [5] - 13:22, 14:2, 14:11, 15:19, 50:25
**10100** [1] - 2:9
**10166** [1] - 2:19
**1043** [5] - 4:23, 7:25, 14:1, 15:20, 17:6
**1048** [3] - 5:25, 8:2, 11:24
**1049** [1] - 8:5
**1050** [2] - 5:25, 8:3
**10:20** [1] - 51:13
**11** [24] - 22:2, 22:3, 22:5, 22:8, 22:20, 22:21, 23:10, 24:11, 24:14, 27:20, 29:5, 29:8, 29:11, 30:19, 33:6, 33:8, 35:10, 36:10, 36:11, 38:23, 39:15, 39:16, 40:15
**11:00** [4] - 13:13, 13:14, 14:12, 39:4
**11th** [1] - 16:12
**12b** [2] - 11:5, 11:20
**12(b)(1** [8] - 8:13, 10:5, 10:10, 10:15, 10:21, 13:18, 17:15, 51:1
**12(b)(1)** [2] - 11:21, 18:4
**12(b)(6** [8] - 8:13, 10:5, 10:10, 10:15, 10:21, 11:21, 13:18, 51:1
**12(b)(6)** [1] - 17:15

**16th** [1] - 14:25
**1700** [1] - 3:5
**1801** [1] - 2:14
**1888** [1] - 3:5
**19th** [1] - 17:12

## 2

**2** [3] - 26:14, 34:7, 35:9
**2,000** [1] - 41:14
**20** [2] - 27:2, 35:9
**200** [1] - 2:19
**2023** [3] - 1:13, 4:1, 52:15
**212-294-3564** [1] - 2:20
**213-533-4240** [1] - 3:11
**21st** [14] - 6:13, 13:4, 13:8, 13:13, 14:6, 14:12, 15:1, 16:2, 16:13, 17:17, 18:9, 18:15, 50:18, 51:1
**22-0775-JWH** [1] - 4:10
**22nd** [1] - 8:24
**23-01043-JWH** [1] - 4:10
**23-01047-JWH** [1] - 4:11
**23-01048-JWH** [1] - 4:11
**23-01049-JWH** [1] - 4:11
**23-01050-JWH** [1] - 4:11
**23-1048** [2] - 11:10, 11:13
**23-1050** [1] - 12:15
**2300** [1] - 2:14
**23rd** [4] - 8:24, 15:13, 41:5, 42:13
**25** [1] - 30:25
**25th** [2] - 16:17, 16:22
**26** [1] - 8:22
**26(f** [3] - 9:13, 9:19, 50:22
**26th** [3] - 3:10, 15:15, 15:21
**27th** [2] - 16:4, 16:10
**28** [1] - 52:8
**2:22-cv-07775-JWH-JEM** [1] - 1:5
**2:23-cv-01043-JWH-KES** [1] - 1:6
**2:23-cv-01047-JWH-KES** [1] - 1:8
**2:23-cv-01048-JWH-KES** [1] - 1:7

## 3

**30** [1] - 23:18
**30th** [10] - 12:23, 13:17, 13:19, 14:4, 14:11, 14:18, 15:1, 15:4, 15:11, 16:10
**310-310-7015** [1] - 2:15
**310-552-5000** [1] - 2:10
**3100** [1] - 2:5
**312-807-4299** [1] - 2:6
**33** [4] - 25:9, 25:11, 25:20, 46:13

## 4

**40** [1] - 12:15
**411** [1] - 1:24
**43** [1] - 11:14
**47** [1] - 8:5
**48** [1] - 12:16
**4th** [3] - 15:9, 15:11, 17:14
**4TH** [1] - 1:24

## 5

**5** [2] - 33:8, 52:15
**50** [10] - 15:19, 22:12, 23:3, 23:7, 23:8, 23:17, 24:22, 26:21, 26:22, 27:3
**51** [1] - 11:14
**52** [1] - 12:16
**55** [1] - 11:14
**57** [1] - 12:16
**58** [1] - 11:14
**5th** [1] - 3:10

## 6

**6** [3] - 26:1, 33:9, 34:3
**60** [1] - 11:14
**60602** [1] - 2:6
**633** [1] - 3:10

## 7

**7.1** [3] - 28:4, 40:12, 42:17
**7.1-1** [16] - 6:9, 21:1, 21:7, 21:17, 21:21, 23:9, 28:1, 28:16,

31:8, 31:14, 33:15, 34:15, 40:8, 47:19, 49:6, 50:1
**7.1.1** [1] - 28:9
**70** [1] - 2:5
**753** [1] - 52:8
**7775** [1] - 5:17
**7953** [2] - 1:23, 52:20
**7th** [2] - 15:4, 15:22

## 8

**80** [3] - 22:13, 22:16, 23:19
**858-720-5751** [1] - 3:6
**8th** [1] - 2:9

## 9

**9** [2] - 1:13, 4:1
**90067** [2] - 2:10, 2:15
**90067-1721** [1] - 3:6
**90071** [1] - 3:11
**92701** [1] - 1:24
**9:05** [2] - 1:14, 4:2

## A

**a.m** [1] - 14:12
**A.M** [3] - 1:14, 4:2, 51:13
**ability** [1] - 49:3
**able** [4] - 41:21, 42:7, 42:12, 42:22
**above-entitled** [1] - 52:11
**acceptable** [1] - 7:21
**accomplished** [1] - 17:23
**accurate** [1] - 40:8
**Acme** [8] - 44:11, 44:14, 44:20, 44:25, 45:1, 45:3, 45:4
**acting** [1] - 36:2
**actual** [11] - 26:9, 26:13, 26:14, 29:2, 29:4, 29:6, 32:25, 33:4, 35:1, 35:11, 37:8
**addition** [1] - 41:8
**additional** [2] - 14:14, 18:6
**address** [5] - 10:9, 10:14, 10:20, 22:8, 48:19
**ADV** [1] - 41:14
**advise** [2] - 42:8, 42:10
**advocate** [1] - 26:23
**affects** [1] - 38:6

**affiliation** [1] - 30:15
**afoul** [1] - 42:1
**ago** [3] - 14:3, 29:20, 44:7
**agree** [4] - 8:19, 9:14, 30:17, 48:9
**agreed** [1] - 8:20
**agreeing** [1] - 9:4
**agreement** [5] - 7:5, 9:11, 22:7, 22:18, 43:15
**ahead** [2] - 13:25, 28:18
**al** [5] - 1:7, 4:6, 4:7, 4:9, 4:10
**Alekseyeff** [4] - 39:3, 39:4, 39:6, 39:9
**allegations** [1] - 10:14
**almost** [1] - 19:13
**altogether** [1] - 14:6
**Amended** [9] - 10:6, 10:7, 10:20, 10:24, 11:8, 11:22, 12:11, 12:17, 17:12
**American** [1] - 36:6
**amount** [1] - 42:21
**amounts** [1] - 36:22
**ANA** [3] - 1:14, 1:24, 4:1
**analyze** [1] - 10:7
**ANGELES** [1] - 52:3
**Angeles** [4] - 2:10, 2:15, 3:6, 3:11
**Answer** [1] - 10:25
**answer** [3] - 11:5, 20:15, 31:25
**answers** [2] - 8:10, 8:12
**anyway** [1] - 19:5
**appearance** [1] - 28:25
**APPEARANCES** [2] - 2:1, 3:1
**appearances** [1] - 4:12
**appearing** [2] - 4:14, 29:23
**Apple** [1] - 48:4
**applied** [1] - 29:11
**apply** [2] - 29:10, 32:25
**appointed** [1] - 7:18
**appointing** [2] - 6:18, 6:23
**appointment** [1] - 6:14
**appreciate** [5] - 15:17, 18:12, 50:9, 50:10, 50:16
**approved** [1] - 13:11

April [2] - 6:13, 8:8
arbitrary [1] - 27:22
argue [2] - 20:14, 40:2
argument [7] - 18:19, 40:18, 40:22, 47:7, 47:25, 48:10, 50:16
arguments [1] - 9:5
arises [1] - 36:9
arose [2] - 35:22, 44:6
arrangement [1] - 48:23
aside [1] - 29:16
assets [1] - 22:2
assume [3] - 23:18, 23:20, 43:7
assumed [1] - 7:21
assuming [1] - 23:14
AT [2] - 2:8, 2:13
attenuated [1] - 45:25
attorney [1] - 34:18
ATTORNEY [2] - 2:8, 2:13
attorneys' [1] - 19:21
audible [1] - 16:15
August [3] - 16:17, 16:23, 16:24
authority [2] - 48:25, 49:1
Avenue [1] - 2:19
awaiting [1] - 11:25

**B**

ball [1] - 37:7
based [5] - 13:6, 14:3, 22:22, 23:7, 35:12
basic [2] - 20:23, 21:4
basis [2] - 10:22, 48:10
become [1] - 30:10
beginning [2] - 4:13, 40:7
behalf [3] - 4:14, 4:22, 5:24
behind [1] - 42:11
belief [1] - 45:21
bells [4] - 7:19, 8:10, 8:21, 9:12
beneficiary [1] - 36:25
benefit [3] - 37:21, 44:25, 45:3
benefits [1] - 38:8
Bernstein [7] - 5:17, 5:20, 5:22, 19:19, 20:14, 47:6, 49:18
BERNSTEIN [43] - 3:4, 5:16, 5:21, 18:23, 19:13, 19:18, 20:15, 20:21, 22:6, 22:25, 23:23, 24:2, 24:12,

24:17, 24:24, 25:7, 25:13, 25:16, 25:21, 27:5, 27:9, 27:16, 27:25, 28:7, 28:17, 28:19, 29:25, 30:17, 32:11, 32:21, 33:3, 33:12, 34:5, 34:16, 35:19, 36:15, 37:4, 37:16, 38:7, 38:22, 39:13, 39:21, 49:20
Bernstein's [1] - 46:19
best [2] - 6:7, 36:2
better [1] - 31:13
between [4] - 22:11, 37:5, 37:12, 47:14
beyond [2] - 39:14, 50:9
bias [2] - 28:25
big [5] - 29:17, 29:19, 36:1, 36:8, 45:1
biggest [1] - 29:18
bit [8] - 9:14, 14:19, 15:8, 19:1, 24:21, 33:19, 34:10, 50:15
board [1] - 38:17
body [1] - 25:23
Bondian [1] - 41:12
Bondian-like [1] - 41:12
Boris [1] - 24:5
botch [1] - 6:6
bottom [2] - 23:25, 27:23
Boulevard [1] - 2:9
brief [10] - 14:25, 15:3, 15:4, 15:7, 15:8, 15:18, 15:20, 15:22, 39:24
briefing [11] - 14:14, 14:16, 14:17, 14:20, 14:21, 15:3, 17:14, 21:2, 44:19, 50:25
briefly [1] - 49:20
bring [1] - 38:10
bringing [3] - 31:22, 38:4, 50:11
built [1] - 30:4
bunch [1] - 35:21
BY [4] - 2:13, 2:18, 3:4, 3:9

**C**

CA [1] - 1:24
cable [10] - 6:17, 6:22, 7:23, 8:14, 8:17, 10:6, 11:8, 12:23, 13:12, 50:24
California [12] - 2:10, 2:15, 3:6, 3:11,

21:15, 21:16, 25:25, 26:2, 33:21, 34:2, 52:7
CALIFORNIA [4] - 1:2, 1:14, 4:1, 52:4
California's [1] - 40:10
candidly [2] - 45:18, 46:2
care [4] - 9:7, 13:18, 18:17, 30:13
Case [1] - 1:5
case [57] - 4:10, 4:23, 4:25, 5:18, 7:4, 7:18, 7:20, 7:25, 11:24, 13:20, 14:1, 15:20, 16:19, 17:6, 20:3, 22:16, 26:8, 27:24, 28:5, 29:16, 30:11, 30:12, 31:4, 31:12, 32:9, 32:16, 33:21, 34:2, 34:9, 34:11, 34:23, 35:4, 35:7, 35:15, 35:22, 36:11, 36:13, 38:10, 38:13, 38:23, 39:15, 40:14, 42:12, 42:24, 43:3, 44:13, 45:1, 46:5, 46:13, 46:18, 47:2, 47:18, 48:23, 49:1, 49:4, 49:8, 50:21
cases [33] - 5:25, 6:17, 6:22, 6:23, 7:1, 7:12, 7:14, 7:16, 7:23, 8:3, 8:5, 8:8, 8:14, 8:17, 10:6, 11:8, 11:9, 11:10, 12:23, 13:12, 15:20, 16:4, 16:12, 16:18, 17:3, 18:19, 18:20, 20:2, 29:23, 50:24
Cases [1] - 1:6
casts [1] - 36:17
Central [4] - 21:14, 21:15, 21:16, 52:7
CENTRAL [1] - 1:2
Century [2] - 2:14, 3:5
CEO [2] - 38:16, 48:5
certain [3] - 41:22, 46:3, 48:17
certainly [2] - 40:19, 41:5
CERTIFICATE [1] - 52:1
certify [1] - 52:7
chairman [1] - 38:17
champerty [7] - 35:18, 35:20, 35:23, 35:24, 36:7, 48:19, 50:10
chance [1] - 49:19
changed [1] - 18:5

characterize [1] - 27:16
charge [1] - 36:20
charges [1] - 43:20
chase [1] - 41:2
check [2] - 11:17, 24:24
Chicago [1] - 2:6
chose [2] - 21:10, 21:19, 21:20
chosen [1] - 28:12
Chris [2] - 4:21, 9:9
CHRISTINA [1] - 2:8
Christina [1] - 4:16
christina.goodrich@ klgates.com [1] - 2:11
CHRISTOPHER [1] - 3:9
chuckled [1] - 31:17
circulate [1] - 7:4
circulating [1] - 8:25
cite [1] - 38:2
cited [1] - 34:8
Civil [2] - 28:3, 42:16
claim [3] - 14:15, 14:16, 16:11
clarification [2] - 20:25, 34:6
clarify [3] - 26:7, 49:24, 50:8
clear [4] - 21:8, 25:8, 40:6, 40:7
Clerk [4] - 11:7, 11:13, 12:9, 12:19
clever [1] - 31:21
client [4] - 32:23, 36:2, 36:5, 48:1
client's [1] - 36:3
close [1] - 29:21
Code [1] - 52:8
codefendant [1] - 46:12
Coie [1] - 5:17
COIE [1] - 3:4
colleague [1] - 46:19
collectively [1] - 51:10
Colorado [1] - 21:13
combination [2] - 24:18, 26:18
Comcast [10] - 4:9, 5:24, 8:3, 9:16, 10:5, 10:9, 11:10, 17:9, 17:15, 46:7
COMCAST [1] - 2:17
comfortable [4] - 28:20, 28:23, 28:24
coming [2] - 9:13, 16:4

comment [3] - 9:3, 9:7, 9:9
communication [1] - 41:3
COMMUNICATIONS [2] - 1:4, 2:12
Communications [7] - 4:6, 4:7, 4:8, 4:9, 21:23, 29:14
companies [26] - 22:2, 22:3, 22:8, 22:12, 22:13, 22:20, 22:21, 23:2, 23:11, 29:12, 29:22, 30:7, 30:21, 30:22, 31:1, 31:21, 33:8, 35:10, 38:23, 38:25, 39:15, 41:8, 47:5, 50:7
company [27] - 21:24, 21:25, 22:11, 22:14, 22:22, 22:23, 23:2, 23:6, 23:7, 23:10, 25:9, 26:11, 27:19, 29:5, 30:18, 30:20, 32:3, 36:21, 37:8, 37:9, 38:13, 38:14, 38:24, 39:15, 43:21, 49:13
compel [2] - 17:3, 18:20
compelled [1] - 47:7
compelling [2] - 40:18
competing [3] - 9:5, 9:20, 43:17
Complaint [8] - 10:7, 10:8, 10:24, 11:8, 11:23, 12:11, 12:17, 17:12
Complaints [1] - 10:20
completely [2] - 19:14, 37:3
compliance [3] - 17:3, 18:20, 42:9
comply [2] - 21:20, 41:25, 42:12
concedes [1] - 43:3
concern [8] - 18:3, 29:17, 29:18, 30:7, 30:17, 36:11, 50:6
concerned [1] - 38:20
conclude [1] - 51:13
conclusion [1] - 36:23
concur [3] - 9:22, 11:16, 16:14
concurs [1] - 16:16
conducting [1] - 8:24
confer [3] - 10:16, 17:13, 18:8
Conference [1] -

52:12
**conference** [5] - 6:12, 6:20, 8:24, 12:22, 14:6
**conferences** [6] - 13:1, 13:11, 13:12, 13:15, 13:17, 16:12
**conferring** [1] - 10:21
**confidential** [3] - 12:4, 19:21, 39:10
**confidentiality** [2] - 41:22, 42:2
**conflicts** [1] - 13:6
**conformance** [1] - 52:12
**connection** [3] - 8:22, 8:25, 9:13
**consequence** [1] - 42:23
**consider** [1] - 18:10
**considered** [1] - 32:5
**consolidate** [1] - 9:22
**consolidated** [2] - 8:7, 46:12
**consolidating** [1] - 6:16
**consolidation** [9] - 6:14, 8:7, 8:11, 8:15, 8:19, 9:2, 9:5, 9:20, 50:23
**construction** [3] - 14:15, 14:16, 16:11
**contains** [1] - 9:1
**contemplating** [1] - 43:24
**contents** [1] - 12:4
**context** [4] - 28:20, 34:14, 35:15, 36:8
**contingency** [1] - 35:22
**continue** [5] - 12:22, 13:1, 13:11, 14:11, 36:3
**Continued** [1] - 3:1
**continued** [4] - 13:3, 15:21, 15:22, 16:2
**continues** [1] - 42:14
**control** [13] - 36:12, 36:13, 37:13, 37:14, 42:19, 42:22, 43:3, 44:22, 47:16, 49:3, 49:8, 49:13, 49:21
**controlling** [2] - 47:8, 47:15
**controls** [4] - 36:9, 47:23, 48:1, 49:10
**COO** [1] - 38:16
**corporate** [3] - 24:18, 25:14, 44:15
**Corporation** [10] - 4:7,

4:10, 44:11, 44:14, 44:15, 44:20, 45:1, 45:2, 45:3, 45:4
**corporation** [12] - 32:18, 32:19, 32:20, 38:21, 42:21, 42:23, 43:13, 43:14, 43:18, 44:2, 45:21, 45:24
**CORPORATION** [4] - 1:7, 2:17, 3:3, 3:8
**corporations** [2] - 24:15, 48:5
**correct** [30] - 5:1, 5:2, 5:4, 5:6, 5:21, 7:23, 7:24, 8:2, 8:4, 11:19, 13:7, 15:10, 16:4, 16:5, 16:24, 18:21, 19:12, 23:22, 23:23, 24:2, 24:11, 26:9, 27:9, 27:15, 28:17, 29:24, 34:16, 42:25, 52:9
**corrected** [1] - 12:7
**counsel** [16] - 4:12, 6:8, 6:15, 8:24, 18:21, 35:22, 36:1, 36:2, 38:16, 41:3, 43:12, 43:19, 45:19, 50:17, 51:7
**COUNSEL** [2] - 2:1, 3:1
**counsel's** [1] - 20:11
**COUNTY** [1] - 52:3
**couple** [1] - 11:7
**course** [4] - 8:17, 8:20, 17:2, 47:9
**COURT** [109] - 1:1, 1:23, 4:18, 4:24, 5:2, 5:5, 5:10, 5:12, 5:14, 5:19, 5:22, 6:1, 6:4, 6:6, 7:9, 8:1, 8:6, 9:7, 9:18, 10:2, 10:18, 10:23, 11:4, 11:24, 12:7, 12:9, 12:14, 12:21, 13:9, 13:22, 13:25, 14:7, 14:10, 14:24, 15:9, 15:12, 15:15, 15:18, 16:1, 16:6, 16:9, 16:16, 16:23, 16:25, 17:16, 17:20, 17:25, 18:7, 18:14, 18:17, 18:24, 19:15, 19:25, 20:6, 20:12, 20:16, 22:5, 22:24, 23:14, 23:25, 24:10, 24:14, 24:20, 25:1, 25:11, 25:15, 25:19, 26:19, 27:7, 27:10, 27:21, 28:2, 28:15, 28:18,

29:15, 30:1, 31:24, 32:13, 33:1, 33:11, 34:4, 34:13, 35:18, 35:20, 37:1, 37:11, 38:5, 38:12, 39:2, 39:9, 39:20, 39:23, 40:2, 40:17, 41:7, 42:15, 43:23, 44:4, 44:25, 45:10, 45:13, 45:16, 47:6, 48:18, 49:15, 49:18, 50:13, 51:7, 52:6
**Court** [15] - 17:10, 24:12, 25:24, 28:12, 28:15, 30:2, 34:1, 43:5, 44:5, 47:19, 47:20, 48:6, 51:11, 52:6, 52:20
**court** [4] - 10:2, 21:11, 46:20, 49:12
**Court's** [1] - 42:1
**courtroom** [4] - 20:1, 20:20, 33:14, 33:15
**COURTROOM** [4] - 4:5, 12:13, 12:20, 51:11
**courts** [2] - 24:6, 36:6
**Courts** [1] - 28:10
**cover** [2] - 26:15, 51:3
**covered** [1] - 26:19
**covering** [2] - 26:12, 26:13
**COX** [1] - 2:12
**Cox** [6] - 4:8, 5:9, 8:5, 9:17, 10:24, 17:8
**create** [1] - 31:21
**created** [1] - 22:1
**critical** [1] - 29:9
**CRR** [1] - 1:23
**CSR** [2] - 1:23, 52:20
**cut** [2] - 35:9, 35:16
**cutting** [1] - 33:19, 41:2
**CV-22-7775-JWH** [1] - 3:3
**CV-23-1043-JWH** [1] - 3:8
**CV-23-1047-JWH** [1] - 2:12
**CV-23-1048-JWH** [1] - 2:17

---

# D

**dark** [1] - 41:12
**Date** [1] - 52:15
**date** [4] - 13:3, 13:5, 15:1, 17:17
**day-to-day** [1] - 49:10
**days** [1] - 14:3

**deadline** [2] - 15:21, 15:22
**deal** [4] - 6:9, 6:10, 31:13, 33:16
**dealing** [2] - 34:13, 45:19
**dealings** [1] - 43:7
**deals** [1] - 47:19
**Debbie** [1] - 52:20
**DEBBIE** [3] - 1:23, 52:5, 52:19
**decide** [1] - 17:10
**decided** [1] - 19:5
**deciding** [1] - 11:2
**decision** [5] - 26:3, 31:3, 31:9, 36:3, 36:5
**decisions** [6] - 31:11, 36:13, 36:18, 36:24, 37:3, 49:13
**declaration** [7] - 7:4, 7:6, 24:4, 26:3, 36:19, 43:16, 50:17
**deemed** [1] - 19:21
**deeper** [1] - 24:21
**deeply** [3] - 10:7, 38:19, 50:16
**DEFENDANT** [4] - 2:12, 2:17, 3:3, 3:8
**defendant** [2] - 35:2, 37:3
**Defendants** [1] - 1:8
**defendants** [10] - 4:23, 5:9, 5:17, 7:23, 8:13, 8:19, 16:21, 19:19, 34:11, 46:6
**defenses** [1] - 8:10
**degree** [1] - 42:22
**delightful** [1] - 20:18
**deliver** [1] - 22:2
**DEPUTY** [4] - 4:5, 12:13, 12:20, 51:11
**describes** [1] - 41:15
**designated** [1] - 20:10
**detail** [1] - 8:14
**determine** [1] - 47:1
**dhinospaan@yahoo.com** [1] - 1:25
**different** [8] - 7:13, 34:19, 35:2, 37:7, 45:13, 48:12
**dig** [1] - 24:20
**directly** [1] - 37:24
**directors** [1] - 38:17
**DIRECTV** [3] - 4:6, 46:13, 46:17
**disagree** [1] - 34:11
**disclose** [7] - 20:9, 40:23, 41:5, 44:10, 47:8, 49:7, 49:9

**disclosed** [7] - 21:6, 30:16, 30:22, 34:10, 37:19, 45:5, 47:16
**disclosing** [1] - 39:5
**disclosure** [7] - 21:7, 30:1, 30:3, 31:14, 40:8, 40:12, 48:16
**disclosures** [1] - 46:3
**discovered** [1] - 48:12
**discovery** [7] - 18:4, 31:10, 34:14, 34:16, 46:21, 46:24, 47:3
**discuss** [4] - 8:20, 10:13, 17:11, 17:13
**discussed** [3] - 6:13, 14:4, 50:19
**discussing** [2] - 19:20, 39:10
**discussion** [2] - 17:10, 34:6
**DISH** [25] - 1:7, 3:3, 3:8, 4:7, 4:22, 5:17, 7:25, 9:10, 13:7, 13:20, 14:1, 15:4, 16:20, 17:6, 19:11, 19:19, 21:12, 34:11, 41:11, 43:3, 44:17, 46:10, 46:16, 46:19
**DISH's** [5] - 14:11, 14:25, 15:21, 16:18, 17:2
**dismiss** [2] - 11:9, 16:18
**disposition** [2] - 26:9, 26:10
**dispute** [2] - 34:17, 44:17
**disputes** [1] - 44:17
**disqualification** [1] - 30:3
**distinction** [7] - 35:13, 36:1, 37:11, 37:17, 47:14, 50:8
**distinguish** [1] - 37:5
**district** [2] - 29:20, 44:7
**District** [12] - 21:12, 21:15, 21:16, 25:25, 26:2, 26:8, 33:21, 34:2, 40:9, 52:6, 52:7
**DISTRICT** [3] - 1:1, 1:2, 1:3
**DIVISION** [1] - 1:2
**docket** [4] - 11:11, 11:20, 12:5, 12:15
**document** [1] - 41:14
**documents** [1] - 23:24
**done** [2] - 8:21, 39:11
**door** [1] - 30:24

**down** [2] - 24:21, 28:20
**draft** [1] - 7:4
**draw** [1] - 32:13
**due** [2] - 15:4
**during** [1] - 9:3

## E

**eager** [1] - 19:8
**earliest** [1] - 35:21
**early** [1] - 7:7
**easily** [1] - 45:16
**East** [2] - 2:14, 3:5
**Eastern** [1] - 21:12
**ECF** [5] - 11:12, 11:13, 11:14, 12:9, 15:19
**effectively** [4] - 27:17, 29:12, 29:13, 31:11
**effort** [1] - 46:18
**either** [2] - 10:14, 49:23
**elsewhere** [1] - 36:23
**emphasize** [1] - 46:10
**enable** [2] - 30:2, 39:21
**end** [1] - 46:1
**ended** [1] - 13:5
**enjoying** [1] - 47:15
**enjoys** [1] - 37:12, 45:2
**enter** [1] - 7:16
**entered** [1] - 50:22
**entirely** [1] - 48:12
**entities** [20] - 10:25, 24:11, 24:15, 25:5, 26:4, 26:13, 27:23, 29:2, 29:4, 29:17, 30:20, 32:4, 34:22, 35:3, 35:6, 43:23, 43:25, 44:8, 45:6, 47:8
**entitled** [2] - 36:14, 52:11
**entity** [15] - 21:6, 24:23, 25:8, 25:9, 25:11, 25:12, 26:16, 26:24, 27:12, 30:14, 32:15, 33:7, 33:22, 42:3, 48:8
**entries** [1] - 11:20
**Entropic** [51] - 4:6, 4:8, 4:9, 4:15, 8:9, 8:16, 10:6, 14:5, 14:15, 17:5, 19:21, 21:10, 21:14, 21:23, 21:25, 22:3, 22:4, 22:7, 22:13, 23:1, 23:2, 23:3, 23:15, 23:22, 24:4, 24:22,

25:4, 25:10, 25:12, 26:12, 26:22, 27:11, 27:18, 29:13, 29:14, 33:6, 35:11, 38:24, 39:7, 40:15, 41:6, 41:17, 43:12, 44:1, 46:23, 48:1, 49:10, 49:13
**ENTROPIC** [1] - 1:4
**Entropic's** [5] - 14:24, 15:4, 15:18, 15:20, 49:10
**entry** [1] - 12:6
**equity** [1] - 46:14
**especially** [2] - 37:19, 38:9
**ESQ** [4] - 2:4, 2:18, 3:4, 3:9
**essentially** [1] - 27:13
**et** [5] - 1:7, 4:6, 4:7, 4:9, 4:10
**ethically** [1] - 47:2
**ethics** [1] - 46:25
**evaluate** [1] - 30:2
**evidence** [4] - 43:13, 43:17, 43:20, 48:7
**evidentiary** [1] - 24:7
**exactly** [11] - 12:8, 20:14, 24:6, 24:8, 24:18, 26:10, 27:5, 31:19, 38:2, 40:1, 41:15
**example** [6] - 22:25, 26:20, 43:11, 45:11, 47:23, 50:3
**except** [1] - 17:2
**exceptions** [2] - 35:21, 35:22
**exclude** [1] - 20:6
**excuse** [2] - 13:23, 46:7
**executive** [1] - 48:4
**exercise** [1] - 42:22
**exists** [1] - 30:2
**exits** [1] - 20:20
**expanded** [1] - 26:15
**expect** [2] - 9:12, 9:14
**expectation** [1] - 45:20
**explicitly** [1] - 23:10
**extent** [4] - 20:9, 29:10, 42:13, 45:23
**eyes** [2] - 19:22, 20:11

## F

**face** [1] - 30:2
**facetious** [1] - 16:7
**fact** [4] - 19:3, 22:12, 27:14, 39:5

**facts** [1] - 20:23
**fair** [1] - 37:1
**falling** [1] - 15:11
**family** [5] - 27:9, 30:15, 31:6, 43:8
**far** [2] - 20:1, 38:12
**FEDERAL** [2] - 1:23, 52:5
**Federal** [3] - 28:3, 42:16, 52:20
**federal** [1] - 30:5
**felt** [1] - 42:20
**few** [5] - 14:3, 20:22, 29:20, 43:11, 44:7
**fifth** [1] - 34:24
**fighting** [1] - 44:13
**file** [8] - 10:25, 15:10, 17:16, 18:9, 18:10, 35:7, 40:21
**filed** [10] - 6:23, 8:12, 10:5, 10:6, 11:10, 11:11, 13:20, 14:25, 16:21, 21:11
**filing** [3] - 11:7, 12:10, 12:17
**financial** [3] - 29:3, 43:7, 49:22
**fine** [1] - 13:1
**finish** [1] - 39:13
**First** [8] - 10:6, 10:7, 10:24, 11:8, 11:22, 12:10, 12:17, 17:12
**first** [5] - 6:11, 8:16, 18:3, 19:11, 21:19
**FISH** [1] - 3:9
**Fish** [2] - 4:22, 9:10
**fit** [2] - 14:18
**five** [2] - 11:25, 12:9
**fixed** [1] - 12:5
**Floor** [2] - 2:9, 3:10
**follow** [1] - 7:20, 26:8
**FOR** [5] - 2:3, 2:12, 2:17, 3:3, 3:8
**forbidden** [1] - 35:20
**foregoing** [1] - 52:9
**forever** [1] - 38:25
**forget** [1] - 5:5
**forgot** [2] - 12:24, 19:4
**form** [1] - 7:17
**Form** [1] - 41:14
**format** [1] - 52:11
**forth** [2] - 22:18, 30:5
**Fortress** [21] - 22:1, 22:9, 31:18, 32:4, 36:12, 36:13, 36:17, 41:3, 41:12, 41:13, 41:15, 41:23, 43:8, 44:21, 45:18, 46:14, 47:4, 48:17, 50:3, 50:5

**fortress** [1] - 42:9
**Fortress's** [2] - 41:24, 45:19
**forward** [6] - 16:6, 42:10, 42:11, 50:20, 50:22, 50:24
**four** [2] - 12:1, 12:15
**free** [2] - 19:9, 19:16
**Friday** [1] - 51:8
**FRIDAY** [2] - 1:13, 4:1
**friend** [1] - 30:25
**full** [1] - 49:1
**fully** [1] - 39:22
**fund** [7] - 24:3, 24:9, 24:21, 41:16, 44:18, 44:23, 46:14
**funder** [5] - 30:11, 37:6, 37:12, 37:14, 47:21
**funders** [6] - 34:19, 34:25, 35:1, 35:5, 35:15, 48:22
**funding** [3] - 36:8, 47:9, 48:23
**funds** [33] - 22:19, 23:17, 24:1, 24:8, 26:5, 26:13, 26:17, 26:18, 29:7, 36:12, 40:15, 41:5, 41:10, 41:17, 41:19, 41:20, 41:22, 42:4, 42:5, 43:1, 43:8, 44:3, 44:12, 44:21, 45:22, 45:25, 46:3, 46:4, 46:8, 46:17, 48:17, 48:24

## G

**game** [1] - 37:7
**Gates** [3] - 2:4, 2:8, 4:17
**general** [3] - 29:16, 38:16, 38:22
**generally** [1] - 44:6
**given** [1] - 17:14
**Goodrich** [7] - 4:17, 4:19, 7:2, 9:11, 14:8, 15:13, 18:1
**GOODRICH** [15] - 2:8, 4:16, 7:3, 8:18, 9:23, 10:19, 13:4, 14:9, 14:21, 15:14, 15:17, 15:24, 17:5, 18:2, 51:6
**GoTV** [3] - 34:9, 47:18, 48:23
**great** [6] - 17:24, 18:13, 32:21, 38:10, 51:8

**Group** [1] - 41:14
**group** [1] - 32:4
**guess** [3] - 8:16, 49:8, 51:8
**guest** [1] - 19:25
**guidance** [1] - 18:13
**guy** [1] - 19:24, 24:4
**guys** [1] - 31:20

## H

**handshake** [2] - 30:10, 31:16
**happy** [1] - 11:4, 20:4, 49:11
**hard** [1] - 10:2
**hate** [1] - 44:13
**head** [1] - 28:8
**hear** [6] - 8:16, 19:6, 19:8, 19:10, 24:20
**heard** [1] - 30:9
**HEARING** [1] - 1:13
**hearing** [23] - 9:4, 9:18, 12:18, 13:19, 14:11, 14:14, 18:18, 14:20, 15:1, 16:1, 16:11, 16:17, 16:21, 17:2, 17:10, 17:17, 18:9, 19:4, 19:6, 39:11, 40:4, 50:18, 51:1
**hearings** [1] - 16:12
**heart** [1] - 9:4
**heavily** [1] - 44:13
**held** [2] - 42:20, 52:10
**help** [1] - 6:1
**helps** [1] - 20:5
**hereby** [1] - 52:7
**hide** [1] - 31:22
**high** [1] - 41:20
**Hino** [1] - 52:20
**HINO** [3] - 1:23, 52:5, 52:19
**Hino-Spaan** [1] - 52:20
**HINO-SPAAN** [3] - 1:23, 52:5, 52:19
**historic** [1] - 35:23
**historical** [1] - 36:7
**historically** [1] - 28:4
**history** [1] - 28:10
**hitch** [1] - 7:11
**HOLCOMB** [1] - 1:3
**hold** [4] - 4:24, 5:10, 14:5, 45:13
**holder** [2] - 27:14, 27:15
**holders** [1] - 27:14
**holding** [3] - 29:5, 37:9

**Holdings** [24] - 21:25, 22:3, 22:4, 22:7, 22:14, 23:1, 23:2, 23:3, 23:22, 24:22, 25:10, 25:12, 26:12, 26:22, 27:11, 27:18, 29:13, 35:11, 40:16, 41:6, 41:17, 43:12, 44:1
**holds** [2] - 23:21, 30:12
**holiday** [2] - 15:7, 17:14
**Honor** [85] - 4:16, 4:20, 4:21, 5:1, 5:8, 5:13, 5:16, 5:23, 7:3, 7:24, 8:2, 8:4, 8:18, 9:9, 9:16, 9:17, 9:23, 9:24, 9:25, 10:1, 10:12, 11:3, 11:17, 12:2, 13:4, 13:21, 14:9, 14:22, 14:23, 15:6, 15:14, 15:24, 15:25, 16:5, 16:8, 16:20, 17:5, 17:7, 17:8, 17:9, 17:19, 17:24, 18:12, 18:22, 18:23, 19:14, 19:18, 20:8, 20:13, 20:21, 21:11, 21:20, 21:22, 22:18, 24:13, 24:24, 25:18, 25:22, 27:9, 28:17, 29:25, 30:19, 31:4, 31:15, 32:12, 32:21, 34:17, 36:16, 39:7, 39:22, 40:1, 40:3, 41:4, 42:6, 42:19, 44:23, 45:22, 46:3, 47:1, 49:9, 49:17, 49:20, 50:12, 51:5, 51:6
**Honor's** [2] - 9:3, 14:3
**HONORABLE** [1] - 1:3
**hope** [1] - 50:21
**hopefully** [5] - 7:7, 9:19, 43:10, 50:23, 50:25
**housekeeping** [2] - 6:10, 18:18
**housekeepingwise** [1] - 17:1
**HP** [1] - 48:4
**human** [1] - 40:20

**I**

**ideal** [1] - 32:22
**identification** [5] - 28:11, 29:2, 34:22, 35:3, 43:24

**identified** [15] - 11:25, 23:11, 24:1, 26:25, 27:13, 27:15, 32:7, 33:10, 33:25, 34:25, 35:1, 38:15, 38:25, 39:18, 50:5
**identifies** [2] - 22:10, 41:15
**identify** [9] - 21:17, 23:10, 23:12, 23:16, 25:5, 25:8, 32:15, 33:7, 50:2
**identity** [4] - 22:5, 24:11, 47:8, 47:21
**Illinois** [1] - 2:6
**important** [2] - 21:10, 44:9
**importantly** [1] - 35:4
**impression** [1] - 6:15
**improper** [2] - 16:19, 16:21
**Inc** [1] - 4:8
**including** [1] - 41:16
**incorrect** [1] - 19:8
**indirect** [5] - 29:14, 43:4, 44:17, 44:22, 45:8
**indirectly** [6] - 22:16, 35:14, 37:10, 37:18, 37:23, 39:16
**individual** [8] - 21:6, 22:11, 26:16, 27:12, 27:20, 33:7, 42:3
**individually** [1] - 32:18
**individuals** [10] - 24:16, 25:5, 26:4, 26:11, 26:12, 29:6, 34:22, 36:12, 36:21, 41:20
**inefficient** [1] - 7:12
**information** [7] - 19:21, 20:10, 25:18, 28:23, 31:9, 33:17, 40:25
**Intel** [1] - 26:8
**Intel/VLSI** [1] - 25:24
**intend** [1] - 7:16
**intention** [1] - 17:18
**intents** [1] - 22:15
**interest** [16] - 21:5, 21:18, 23:21, 27:23, 28:13, 29:3, 30:12, 32:9, 32:16, 33:6, 36:2, 39:17, 49:4, 49:22, 50:2
**interested** [3] - 20:3, 28:11, 47:23
**interesting** [3] - 25:2, 32:4, 44:5

**interests** [1] - 40:11
**interrogatory** [2] - 34:23, 34:24
**interrupt** [2] - 13:24, 28:18
**intrude** [1] - 43:6
**invested** [1] - 43:8
**investing** [1] - 47:14
**investment** [16] - 23:16, 24:1, 24:3, 24:8, 24:9, 24:21, 26:5, 26:13, 26:17, 26:18, 36:11, 44:12, 44:18, 44:22, 45:8, 47:11
**Investment** [1] - 41:13
**investments** [1] - 43:4
**investors** [1] - 41:22
**invite** [1] - 8:19
**involved** [5] - 20:1, 22:20, 31:19, 32:3, 50:4
**issue** [27] - 8:9, 15:9, 19:4, 19:7, 20:4, 24:3, 25:24, 30:24, 32:14, 34:20, 34:21, 36:8, 37:6, 39:10, 39:22, 40:4, 41:9, 41:20, 42:8, 42:11, 43:9, 44:6, 46:9, 48:12, 48:13, 48:19, 48:20
**issues** [10] - 6:11, 6:21, 9:15, 10:9, 18:18, 20:23, 20:24, 26:6, 31:18, 39:11
**Item** [1] - 4:5
**itself** [4] - 7:5, 21:2, 36:12, 43:3

**J**

**James** [1] - 41:11
**JAMES** [1] - 2:4
**Jim** [1] - 4:14
**jim.shimota@ klgates.com** [1] - 2:7
**JOHN** [1] - 1:3
**joint** [1] - 9:1
**jointly** [1] - 8:22
**joke** [1] - 31:17
**jokingly** [1] - 31:15
**Jones** [1] - 37:2
**judge** [3] - 30:13, 30:14, 34:13
**JUDGE** [1] - 1:3
**judge's** [1] - 30:15
**judges** [3] - 29:20, 29:24, 44:7
**judgment** [5] - 22:2,

22:19, 29:7, 36:22, 37:21
**Judicial** [1] - 52:12
**judicial** [1] - 38:7
**July** [16] - 13:4, 13:8, 13:13, 14:12, 15:1, 15:4, 15:9, 15:22, 16:2, 16:12, 16:13, 17:14, 17:17, 50:18, 51:1, 52:15
**June** [11] - 8:25, 12:23, 14:4, 14:11, 14:25, 15:1, 15:4, 15:21, 16:4, 16:10, 42:13
**JUNE** [2] - 1:13, 4:1
**jurisdictions** [1] - 36:6
**juror** [1] - 32:10
**jurors** [1] - 32:9
**jury** [1] - 32:8

**K**

**K&L** [3] - 2:4, 2:8, 4:17
**Kamran** [3] - 5:8, 5:10, 5:14
**KAMRAN** [11] - 2:13, 5:8, 5:11, 5:12, 5:13, 5:15, 8:4, 9:17, 9:25, 11:2, 17:8
**keep** [1] - 10:3
**Kewalramani** [1] - 34:13
**keyzer** [1] - 6:24
**Keyzer** [3] - 6:25, 7:4, 7:6
**KILPATRICK** [1] - 2:13
**Kilpatrick** [1] - 5:9
**kind** [8] - 6:10, 30:9, 31:17, 31:25, 41:11, 43:21, 46:19
**knowable** [2] - 45:16, 45:17
**knowing** [1] - 21:16
**known** [1] - 40:11
**knows** [2] - 31:19, 36:16
**kpadmanabhan@ wiinston.com** [1] - 2:20
**KRISHNAN** [1] - 2:18
**Krishnan** [1] - 5:24

**L**

**laid** [1] - 11:18
**language** [5] - 21:1, 21:4, 21:8, 21:20
**last** [6] - 6:12, 9:3,

22:24, 39:24, 40:6, 46:20
**latest** [1] - 7:8
**law** [1] - 38:2
**LAW** [2] - 2:8, 2:13
**lawyer** [1] - 20:2
**lawyers** [1] - 41:24
**learned** [1] - 40:14
**least** [5] - 32:1, 35:2, 35:14, 37:22, 44:17
**leave** [2] - 18:7, 20:4
**left** [2] - 12:5, 18:19
**legislative** [1] - 28:10
**less** [2] - 22:11, 23:21
**light** [2] - 11:22, 33:20
**likelihood** [1] - 42:4
**likely** [2] - 43:9, 46:4
**limitation** [1] - 32:23
**limited** [7] - 24:16, 24:25, 25:2, 25:6, 26:21, 26:24, 30:8
**line** [4] - 19:5, 23:25, 27:23, 32:13
**list** [3] - 25:18, 27:22, 31:2
**listed** [1] - 41:17
**lists** [1] - 22:8
**litigant** [3] - 37:19, 38:1, 38:13
**litigants** [2] - 29:22, 38:9
**litigate** [1] - 44:13
**litigating** [1] - 44:8
**litigation** [34] - 21:5, 22:7, 29:3, 29:4, 29:7, 34:18, 34:25, 35:1, 35:5, 35:7, 35:13, 35:15, 35:17, 36:4, 36:8, 36:9, 37:6, 37:12, 37:13, 37:14, 37:25, 38:4, 38:10, 39:17, 47:9, 47:10, 47:15, 47:16, 47:21, 47:24, 48:2, 48:21, 48:23
**litigations** [1] - 31:23
**LLC** [17] - 1:4, 4:6, 4:7, 4:8, 4:9, 22:7, 23:22, 24:22, 24:25, 25:16, 25:20, 26:22, 27:11, 32:17, 40:16, 43:14, 44:1
**LLCs** [3] - 24:15, 24:17, 31:22
**LLP** [5] - 2:4, 2:8, 2:18, 3:4, 32:17
**LLPs** [1] - 31:22
**Local** [6] - 6:9, 28:16, 31:14, 33:15, 34:15, 50:1

**local** [4] - 20:2, 28:21, 30:6, 37:19
**look** [7] - 31:4, 31:11, 39:14, 50:19, 50:22, 50:24
**looked** [2] - 8:10, 34:14
**looking** [3] - 11:13, 16:6, 27:19
**looks** [2] - 17:16, 40:2
**Los** [4] - 2:10, 2:15, 3:6, 3:11
**LOS** [1] - 52:3
**lost** [1] - 21:3
**love** [1] - 32:23
**LP** [1] - 24:25
**LPs** [1] - 24:17
**luck** [1] - 20:19

**M**

**madam** [1] - 12:19
**Madam** [1] - 11:7, 11:13, 12:9
**Madison** [1] - 2:5
**magical** [1] - 28:6
**major** [2] - 20:24, 35:13
**manage** [1] - 41:16
**managed** [2] - 44:21, 48:17
**Marchese** [3] - 4:22, 5:2, 9:10
**MARCHESE** [19] - 3:9, 4:21, 5:1, 5:4, 5:7, 7:24, 9:9, 10:1, 13:7, 13:21, 13:23, 14:1, 14:23, 15:6, 15:10, 15:25, 16:20, 16:24, 17:6
**marchese@fr.com** [1] - 3:12
**marching** [1] - 40:20
**marked** [1] - 12:4
**Markman** [2] - 8:19, 46:13
**master** [8] - 6:14, 6:18, 6:25, 7:10, 7:11, 7:19, 32:11, 50:20
**masters** [1] - 7:13
**math** [1] - 42:25
**mathematical** [1] - 26:20
**mathematically** [1] - 27:2
**matter** [9] - 31:24, 39:4, 41:18, 43:15, 45:19, 47:25, 48:14, 49:8, 52:11

**matters** [4] - 31:24, 32:2, 32:6, 32:8
**MATTHEW** [1] - 3:4
**Matthew** [2] - 5:16, 19:18
**MaxLinear** [1] - 23:4
**MBernstein@ perkinscoie.com** [1] - 3:7
**mean** [27] - 7:20, 13:23, 15:3, 20:8, 25:7, 28:19, 28:21, 30:8, 30:21, 33:13, 36:19, 37:6, 37:16, 37:22, 38:10, 38:12, 40:5, 42:25, 43:2, 43:24, 44:2, 44:16, 44:23, 45:11, 45:17, 50:9
**means** [1] - 24:9
**meant** [1] - 33:16
**meet** [3] - 10:16, 17:12, 18:7
**meeting** [2] - 9:13, 10:21
**member** [9] - 22:3, 22:13, 22:20, 22:21, 23:6, 24:22, 25:20, 30:10, 43:7
**members** [6] - 23:1, 29:21, 33:6, 33:22, 33:23, 33:24
**memorializing** [1] - 12:18
**mentioned** [2] - 10:4, 44:6
**merely** [1] - 47:9
**merits** [1] - 42:11
**might** [2] - 31:4, 31:7
**million** [1] - 35:9
**mind** [1] - 19:15
**minute** [5] - 8:15, 12:11, 12:18, 13:9, 14:10
**missing** [1] - 51:4
**MOCA** [15] - 4:25, 6:17, 6:22, 7:23, 8:13, 8:17, 10:6, 11:8, 12:22, 13:12, 13:20, 14:1, 15:20, 16:17, 50:23
**moment** [1] - 41:24
**momentarily** [1] - 6:10
**Monday** [3] - 10:16, 10:22, 17:13
**money** [3] - 35:8, 36:22, 37:24
**Monica** [1] - 2:9
**months** [1] - 31:9
**moot** [1] - 11:9

**mooted** [4] - 10:8, 11:15, 11:21, 12:17
**moots** [1] - 10:8
**morning** [9] - 4:16, 4:19, 4:21, 5:8, 5:14, 5:15, 5:22, 5:23, 45:20
**Morning** [1] - 5:16
**MOTION** [1] - 1:13
**motion** [18] - 6:9, 11:5, 13:22, 14:2, 14:11, 15:19, 16:18, 17:2, 17:4, 18:2, 18:4, 18:5, 18:19, 28:22, 40:21, 40:22, 50:14, 50:25
**motions** [15] - 8:13, 10:5, 10:10, 10:13, 10:17, 10:22, 11:9, 11:11, 11:19, 11:22, 11:25, 13:18, 16:13, 17:1, 51:1
**move** [3] - 42:10, 42:11, 43:10
**moved** [3] - 13:13, 13:16, 21:12
**moving** [1] - 44:24
**MR** [100] - 4:14, 4:20, 4:21, 5:1, 5:4, 5:7, 5:16, 5:21, 5:23, 6:3, 6:5, 7:24, 8:2, 9:9, 9:16, 9:24, 10:1, 10:12, 11:17, 12:2, 12:8, 13:5, 13:7, 13:21, 13:23, 14:1, 14:23, 15:6, 15:10, 15:25, 16:5, 16:8, 16:20, 16:24, 17:6, 17:9, 17:18, 17:24, 18:12, 18:15, 18:22, 18:23, 19:13, 19:18, 20:4, 20:8, 20:13, 20:15, 20:21, 22:6, 22:25, 23:23, 24:2, 24:12, 24:17, 24:24, 25:7, 25:13, 25:16, 25:21, 27:5, 27:9, 27:16, 27:25, 28:7, 28:17, 28:19, 29:25, 30:17, 32:11, 32:21, 33:3, 33:12, 34:5, 34:16, 35:19, 36:15, 37:4, 37:16, 38:7, 38:22, 39:7, 39:13, 39:21, 40:1, 40:3, 41:1, 41:8, 42:18, 44:2, 44:16, 45:7, 45:11, 45:15, 45:18, 47:18, 48:20, 49:16, 49:20, 51:5

**MS** [23] - 4:16, 5:8, 5:11, 5:13, 5:15, 7:3, 8:4, 8:18, 9:17, 9:23, 9:25, 10:19, 11:2, 13:4, 14:9, 14:21, 15:14, 15:17, 15:24, 17:5, 17:8, 18:2, 51:6

**N**

**name** [3] - 6:2, 6:24, 39:25
**names** [1] - 39:5
**narrow** [2] - 26:14, 34:10
**nature** [3] - 24:14, 24:23, 25:12
**necessarily** [2] - 10:8, 49:3
**need** [10] - 7:3, 12:12, 12:19, 18:3, 20:6, 21:6, 30:15, 32:8, 33:17, 48:13
**needs** [2] - 46:17, 48:11
**nefarious** [1] - 43:18, 47:4
**neighbor** [1] - 30:24
**net** [1] - 41:20
**Netflix** [3] - 34:9, 34:22, 35:4
**Network** [1] - 4:7
**NETWORK** [1] - 1:7, 3:3, 3:8
**never** [2] - 46:25, 47:25
**nevertheless** [1] - 48:24
**New** [3] - 2:19, 22:9
**new** [1] - 12:5
**next** [5] - 7:7, 28:2, 30:24, 42:8, 51:9
**next-door** [1] - 30:24
**night** [1] - 40:6
**nine** [2] - 23:20, 23:21
**nobody** [2] - 31:19, 36:16
**nobody's** [1] - 30:9
**none** [1] - 43:14
**nonpublicly** [2] - 32:19, 38:13
**nonrecourse** [1] - 48:24
**Northern** [6] - 25:25, 26:2, 26:8, 33:20, 34:2, 40:9
**noted** [1] - 30:5
**nothing** [7] - 16:9, 17:5, 17:6, 17:8,

17:9, 28:25, 31:5
**Number** [1] - 4:5
**number** [4] - 29:20, 32:24, 42:19, 50:19
**Numbers** [1] - 4:10
**numbers** [7] - 11:12, 11:13, 11:14, 11:18, 12:10, 12:15

**O**

**o'clock** [3] - 13:13, 13:14, 39:4
**oath** [2] - 26:3, 48:6
**object** [3] - 14:23, 39:7, 39:8
**obligated** [1] - 25:5
**obligations** [3] - 37:25, 41:23, 42:2
**obscure** [1] - 30:8
**OF** [7] - 1:2, 1:12, 2:1, 3:1, 52:1, 52:3, 52:4
**Official** [1] - 52:20
**OFFICIAL** [1] - 1:23, 52:1, 52:5
**offline** [1] - 17:11
**once** [2] - 7:6, 17:23
**one** [46] - 4:24, 7:17, 9:21, 14:2, 15:20, 19:25, 20:24, 21:3, 22:25, 23:1, 23:2, 23:17, 26:6, 26:16, 26:19, 26:20, 30:21, 31:1, 31:17, 32:5, 32:8, 33:8, 33:9, 33:23, 33:24, 34:6, 34:14, 35:21, 36:23, 37:13, 38:20, 38:21, 41:10, 43:1, 43:8, 44:12, 44:20, 45:24, 46:4, 46:6, 46:8, 48:6, 49:9, 49:23
**ones** [2] - 29:6, 29:7
**oOo** [1] - 51:14
**open** [1] - 19:15
**openness** [1] - 38:8
**operations** [1] - 49:10
**opportunity** [2] - 10:13, 50:11
**opposed** [4] - 19:7, 26:25, 37:8, 47:9
**opposing** [2] - 38:14, 38:18
**order** [24] - 6:18, 6:23, 7:1, 7:17, 8:11, 9:5, 12:11, 12:18, 13:9, 14:3, 14:10, 25:1, 25:4, 25:7, 26:1, 26:9, 26:10, 26:15, 32:14, 34:7, 41:25,

42:1, 42:13, 50:22
**orders** [4] - 6:16, 6:20, 7:16, 40:20
**originally** [1] - 21:11
**ought** [2] - 45:5, 47:16
**outcome** [5] - 21:5, 27:24, 30:12, 32:16, 39:17
**outside** [1] - 20:11
**overall** [1] - 27:1
**overarching** [2] - 31:18, 33:14
**own** [22] - 22:3, 22:13, 22:16, 25:5, 26:5, 26:11, 31:6, 31:7, 33:8, 33:24, 35:10, 38:23, 39:15, 39:16, 40:15, 41:3, 41:5, 41:16, 43:6, 44:14, 46:7
**owned** [10] - 21:24, 27:12, 29:21, 30:20, 41:19, 44:7, 44:20, 45:3, 45:24, 46:13
**owner** [9] - 23:6, 26:21, 27:3, 27:11, 27:12, 30:25, 37:20, 37:23
**owners** [13] - 22:21, 23:1, 27:20, 29:12, 29:13, 29:14, 32:19, 33:4, 35:11, 37:8, 37:9, 37:10
**ownership** [10] - 21:23, 22:10, 22:22, 23:3, 23:15, 23:21, 44:1, 44:15, 45:4, 46:22
**owning** [1] - 45:21
**owns** [30] - 22:11, 23:2, 23:7, 23:17, 23:18, 24:22, 25:9, 25:11, 26:16, 26:22, 26:24, 30:22, 33:7, 33:23, 35:14, 37:18, 38:1, 38:24, 39:18, 42:3, 42:20, 43:1, 44:3, 44:11, 46:4, 46:16, 46:17, 46:22, 46:23, 48:16

## P

**Padmanabhan** [4] - 5:24, 6:3, 6:4, 11:16
**PADMANABHAN** [17] - 2:18, 5:23, 6:3, 6:5, 8:2, 9:16, 9:24, 10:12, 11:17, 12:2, 12:8, 13:5, 17:9,

17:18, 17:24, 18:12, 18:15
**page** [3] - 26:1, 34:3, 52:11
**pages** [1] - 41:14
**paid** [5] - 22:19, 22:22, 23:7, 35:12
**paint** [1] - 41:11
**Park** [3] - 2:14, 2:19, 3:5
**part** [9] - 32:1, 32:2, 36:15, 36:16, 38:1, 38:3, 38:20, 43:25, 46:12
**particular** [1] - 48:21
**parties** [6] - 8:9, 8:18, 12:25, 18:25, 19:6, 20:2, 28:11, 29:23, 35:16, 51:10
**parties'** [1] - 13:10
**partnership** [6] - 24:25, 25:3, 25:6, 26:22, 26:25, 30:8
**partnerships** [1] - 24:16
**party** [6] - 20:10, 37:6, 37:18, 38:14, 38:18, 44:16
**passive** [1] - 47:14
**passively** [1] - 47:10
**past** [1] - 39:5
**patent** [1] - 20:3
**patents** [1] - 14:2
**pattern** [1] - 7:21
**pay** [1] - 47:11
**payment** [1] - 23:5
**payout** [2] - 23:4, 37:21
**PC** [1] - 3:9
**pecuniary** [13] - 21:4, 21:17, 27:23, 28:13, 29:3, 30:12, 32:9, 32:16, 33:5, 39:17, 49:4, 49:22, 50:1
**pending** [3] - 11:9, 12:21, 14:2
**pension** [1] - 41:19
**people** [3] - 4:5, 35:8, 36:24, 42:19
**percent** [76] - 21:24, 22:11, 22:12, 22:13, 22:16, 23:3, 23:7, 23:8, 23:17, 23:18, 23:19, 23:21, 24:22, 25:6, 25:9, 25:11, 25:20, 26:5, 26:11, 26:16, 26:21, 26:22, 26:23, 26:24, 27:1, 27:2, 27:3, 27:7, 27:8, 27:11, 27:12,

27:13, 27:14, 27:15, 27:21, 28:1, 28:3, 28:5, 28:6, 28:8, 28:13, 29:10, 29:11, 30:4, 30:5, 30:20, 30:25, 32:24, 33:1, 33:2, 33:3, 33:7, 33:8, 33:9, 33:10, 33:22, 33:23, 33:24, 35:9, 39:18, 41:6, 42:3, 42:16, 42:19, 42:20, 43:1, 44:11, 44:12, 44:20, 45:24, 46:13, 48:9
**percentage** [5] - 22:10, 22:22, 23:8, 23:15, 44:3
**Perfect** [1] - 6:5
**perfect** [2] - 18:8, 32:14
**perhaps** [4] - 17:22, 20:2, 29:17, 44:9
**PERKINS** [1] - 3:4
**Perkins** [1] - 5:17
**permitted** [2] - 35:24, 36:6
**person** [5] - 21:6, 26:24, 32:15, 32:17, 38:15
**personal** [1] - 43:6
**persons** [1] - 27:22
**pertaining** [1] - 15:19
**pick** [1] - 9:21
**picked** [1] - 21:15
**piece** [1] - 44:8
**pieces** [1] - 34:14
**plain** [1] - 21:8
**PLAINTIFF** [1] - 2:3
**Plaintiff** [3] - 1:5, 4:15, 32:15
**plaintiff** [21] - 4:13, 4:17, 21:23, 21:24, 22:16, 23:5, 23:16, 27:1, 29:5, 29:14, 33:1, 33:5, 34:25, 35:14, 36:21, 37:10, 37:23, 39:16, 44:10, 47:7, 48:24
**plaintiff's** [1] - 12:10
**plaintiffs** [3] - 26:3, 38:9, 46:5
**plan** [1] - 10:13
**plays** [1] - 10:23
**Point** [2] - 26:14, 34:7
**point** [12] - 9:22, 20:25, 21:3, 21:19, 31:2, 34:6, 34:12, 37:5, 38:2, 39:13, 40:24, 41:1
**pointed** [1] - 33:15

**points** [1] - 43:11
**policy** [2] - 35:24, 36:5
**portion** [1] - 9:1
**portions** [1] - 11:11
**position** [3] - 10:19, 43:2, 49:25
**possible** [3] - 9:4, 9:14, 30:3
**potential** [1] - 49:24
**practical** [1] - 49:8
**practice** [1] - 35:6
**precisely** [2] - 19:12, 19:13
**prefer** [1] - 9:21
**present** [1] - 20:8
**presently** [2] - 12:23, 17:18
**presided** [1] - 29:24
**president** [1] - 38:16
**presumably** [1] - 40:22
**pretty** [1] - 7:12
**primarily** [1] - 33:13
**private** [7] - 23:16, 35:6, 41:10, 41:17, 44:12, 46:13, 48:17
**problem** [3] - 14:8, 14:9, 46:5
**Procedure** [2] - 28:3, 42:17
**proceed** [1] - 47:2
**proceedings** [2] - 50:19, 52:10
**PROCEEDINGS** [1] - 1:12
**Proceedings** [1] - 51:13
**process** [3] - 31:19, 38:3, 38:6
**produced** [3] - 22:6, 34:19, 43:15
**product** [2] - 34:18
**production** [2] - 40:14, 47:20
**profits** [1] - 45:2
**pronouncing** [3] - 5:20, 6:24, 39:25
**pronunciation** [2] - 5:3, 6:2
**properly** [2] - 5:20, 6:24
**proposal** [1] - 9:1
**proposals** [1] - 9:21
**proposed** [9] - 6:16, 6:18, 6:20, 6:23, 7:1, 7:16, 7:17, 14:15, 34:7
**proposition** [1] - 38:22
**prospective** [1] - 32:9

**provide** [3] - 6:16, 31:2, 48:24
**provided** [7] - 40:12, 41:2, 41:4, 43:15, 48:3, 48:5, 49:11
**public** [10] - 30:18, 30:20, 41:18, 44:2, 45:21, 45:23, 46:12, 46:17, 48:16
**publicly** [7] - 29:17, 30:7, 30:16, 42:20, 43:23, 43:25, 45:6
**purpose** [1] - 31:8
**purposes** [14] - 19:22, 20:9, 22:15, 29:15, 32:2, 32:5, 32:8, 33:11, 33:12, 33:13, 43:4, 44:5, 47:22, 48:11
**pursuant** [1] - 52:8
**pursue** [2] - 35:7, 48:15
**push** [2] - 19:9, 19:16
**pushing** [1] - 14:3
**put** [1] - 42:10
**putting** [3] - 8:10, 29:16, 37:24

## Q

**questions** [2] - 26:19, 49:17
**quickly** [1] - 11:18
**quote** [1] - 46:24
**quote/unquote** [1] - 47:24

## R

**raised** [2] - 10:9, 10:20
**random** [1] - 35:16
**rather** [3] - 19:6, 46:8, 46:18
**reaches** [1] - 33:9
**ready** [1] - 18:15
**reality** [1] - 36:20
**really** [11] - 19:6, 20:24, 21:3, 27:19, 28:24, 34:12, 37:5, 38:11, 40:18, 50:6
**REALTIME** [1] - 52:5
**reason** [7] - 11:25, 12:25, 14:13, 30:1, 32:6, 32:7, 36:6
**reasonable** [1] - 36:23
**reasons** [2] - 7:13, 35:25
**receive** [5] - 6:19, 7:10, 7:15, 15:7,

33:5
**received** [2] - 18:21, 40:5
**receiving** [1] - 50:20
**recess** [1] - 51:12
**recognized** [1] - 25:23
**record** [4] - 24:8, 41:18, 43:13, 48:7
**recusal** [20] - 28:22, 29:15, 32:2, 32:5, 33:11, 33:12, 33:13, 33:16, 38:6, 39:22, 43:4, 44:4, 44:18, 45:9, 46:21, 46:25, 47:19, 49:24
**recuse** [2] - 43:5, 48:13
**referred** [1] - 7:18
**refile** [1] - 10:13
**reflect** [3] - 12:11, 12:18, 13:10
**regulations** [1] - 52:12
**related** [3] - 34:17, 34:18, 35:5
**Related** [1] - 1:6
**relax** [1] - 14:20
**relaxing** [2] - 14:19, 14:21
**relevant** [1] - 35:3
**remember** [2] - 29:25, 35:6
**remind** [1] - 13:3
**renewed** [3] - 10:10, 10:17, 10:22
**renewing** [1] - 11:22
**repeatedly** [2] - 43:12
**reply** [1] - 49:19
**report** [1] - 9:1
**reported** [1] - 52:10
**REPORTER** [3] - 1:23, 52:1, 52:6
**reporter** [1] - 10:3
**Reporter** [1] - 52:20
**REPORTER'S** [1] - 1:12
**reports** [2] - 9:19, 50:23
**represent** [2] - 42:5, 45:18
**representing** [1] - 5:9
**require** [3] - 43:4, 45:9, 47:20
**required** [3] - 31:14, 34:10, 45:8
**requirement** [4] - 21:9, 21:17, 28:11, 49:7
**requires** [2] - 33:17, 44:18
**resolution** [1] - 11:25

**resolve** [2] - 41:21, 49:1
**resolved** [2] - 12:10, 12:16
**respect** [2] - 12:14, 36:11
**respectfully** [1] - 34:11
**respective** [2] - 13:10, 13:11
**respond** [5] - 11:1, 12:2, 17:11, 17:25, 47:17
**responded** [1] - 51:10
**responding** [1] - 10:17
**response** [4] - 14:15, 16:15, 34:23, 34:24
**responsive** [4] - 14:25, 15:3, 15:8, 15:22
**result** [1] - 31:7
**results** [1] - 35:12
**retains** [1] - 48:25
**review** [2] - 15:2, 31:3
**rhetorical** [1] - 31:25
**RICHARDSON** [1] - 3:9
**Richardson** [2] - 4:22, 9:10
**rid** [1] - 34:6
**rights** [1] - 47:24
**rise** [2] - 49:23, 51:11
**robust** [1] - 28:11
**ROOM** [1] - 1:24
**rough** [1] - 19:1
**roughly** [1] - 23:18
**Rule** [11] - 6:9, 8:22, 9:19, 23:9, 28:4, 28:16, 31:14, 33:15, 34:15, 50:1, 50:22
**rule** [14] - 26:23, 27:25, 28:21, 29:11, 30:1, 30:6, 33:16, 33:17, 37:19, 40:9, 40:10, 42:16, 47:21
**rules** [5] - 30:5, 35:23, 35:24, 36:7, 49:2
**Rules** [2] - 28:3, 42:16
**ruling** [5] - 40:6, 41:2, 41:4, 42:1, 42:13
**rulings** [1] - 44:13
**run** [1] - 42:1
**running** [2] - 48:6, 48:8
**runs** [1] - 49:12

# S

**Santa** [1] - 2:9

**SANTA** [3] - 1:14, 1:24, 4:1
**Sarah** [1] - 5:8
**SARAH** [1] - 2:13
**satellite** [8] - 7:1, 7:16, 8:8, 16:4, 16:11, 17:3, 18:20, 50:21
**say-so** [1] - 43:19
**scandal** [1] - 29:19
**schedule** [1] - 14:19
**scheduled** [4] - 8:23, 10:16, 14:3, 17:11
**scheduling** [11] - 12:22, 13:1, 13:11, 13:12, 13:15, 13:16, 14:6, 16:12, 17:10, 17:13, 18:18
**seal** [1] - 11:12
**SEC** [1] - 41:13
**second** [4] - 4:24, 5:10, 21:22, 34:23
**secret** [5] - 30:9, 31:16, 41:12, 47:4, 48:8
**Section** [1] - 52:8
**see** [20] - 4:19, 4:20, 6:1, 6:7, 7:1, 8:9, 10:23, 11:4, 11:6, 13:19, 16:18, 18:2, 18:4, 19:2, 19:3, 20:17, 39:3, 39:24, 50:18, 51:9
**seeing** [2] - 50:22, 50:24
**seeking** [1] - 46:22
**selection** [1] - 32:8
**sense** [2] - 10:11, 17:21
**separate** [1] - 49:23
**seriously** [1] - 16:6
**set** [9] - 6:12, 6:20, 12:23, 14:24, 16:9, 16:13, 23:10, 30:5, 31:21
**sets** [1] - 22:18
**settle** [1] - 36:4, 48:25
**settlement** [3] - 22:19, 36:22, 37:21
**sham** [1] - 43:21
**shell** [19] - 21:24, 21:25, 22:14, 22:21, 22:23, 23:6, 25:9, 26:11, 27:19, 31:21, 37:9, 38:24, 39:15, 43:12, 43:14, 43:18, 43:21, 47:4
**Shimota** [3] - 4:14, 3:19, 39:24
**SHIMOTA** [24] - 2:4, 4:14, 4:20, 16:5,

16:8, 18:22, 20:8, 20:13, 39:7, 40:1, 40:3, 41:1, 41:8, 42:18, 44:2, 44:16, 45:7, 45:11, 45:15, 45:18, 47:18, 48:20, 49:16, 51:5
**shots** [2] - 37:15, 38:15
**show** [2] - 48:6, 48:8
**sight** [1] - 21:3
**signed** [1] - 7:6
**significant** [4] - 28:9, 37:20, 37:24, 45:2
**similar** [2] - 40:9, 46:14
**similarly** [1] - 17:14
**simple** [1] - 21:4
**simply** [2] - 45:22, 48:25
**single** [1] - 46:16
**sit** [1] - 32:10
**situation** [1] - 46:15
**six** [1] - 31:9
**skamran@ kilpatricktownsend .com** [1] - 2:16
**slavishly** [1] - 7:20
**smart** [1] - 31:20
**Smith** [1] - 37:2
**so-called** [2] - 18:18, 24:21
**so..** [1] - 19:24
**someone** [10] - 31:11, 38:1, 38:9, 42:20, 43:1, 46:7, 48:11, 49:3, 49:7, 50:3
**sometimes** [2] - 11:12, 29:22
**soon** [1] - 7:15
**sorry** [5] - 5:19, 20:16, 28:18, 39:2, 45:15
**sort** [5] - 17:1, 26:20, 46:11, 47:10, 47:14
**sought** [1] - 46:23
**sound** [1] - 11:19
**sounds** [2] - 17:24, 41:7
**sovereign** [1] - 41:19
**SPAAN** [3] - 1:23, 52:5, 52:19
**Spaan** [1] - 52:20
**special** [11] - 6:14, 6:18, 6:25, 7:10, 7:11, 7:13, 7:18, 7:19, 30:10, 32:11, 50:20
**specific** [1] - 39:15
**specifically** [4] - 8:21, 11:10, 23:10, 30:24

**spend** [1] - 29:8
**stage** [1] - 28:22
**stand** [1] - 9:19
**standing** [2] - 47:22, 48:11
**standpoint** [6] - 21:8, 23:9, 27:18, 37:7, 37:22, 49:21
**start** [5] - 19:20, 20:22, 21:1, 40:5, 43:20
**STATE** [1] - 52:4
**state** [1] - 4:12
**statement** [2] - 25:25, 26:2
**STATES** [1] - 1:1
**States** [3] - 52:6, 52:8, 52:13
**status** [3] - 6:12, 6:20, 7:2
**stay** [3] - 39:6, 39:9, 39:12
**Stein** [4] - 20:1, 20:7, 20:16, 20:20
**STEIN** [1] - 20:4
**stenographically** [1] - 52:10
**step** [2] - 29:15, 41:10
**sticking** [1] - 11:24
**stiffed** [1] - 46:24
**still** [6] - 8:18, 11:2, 13:19, 16:3, 48:25, 49:2
**stipulation** [6] - 7:5, 7:15, 9:20, 18:10, 50:20, 50:23
**stipulations** [2] - 12:22, 13:10
**stock** [7] - 29:21, 29:22, 31:6, 31:7, 32:3, 44:14, 46:7
**stop** [1] - 39:1
**story** [2] - 41:12, 47:3
**straightforward** [1] - 21:7
**Strawn** [1] - 5:24
**STRAWN** [1] - 2:18
**Streaming** [1] - 34:9
**Street** [2] - 2:5, 3:10
**STREET** [1] - 1:24
**strict** [1] - 28:10
**strictly** [1] - 36:5
**structure** [1] - 45:4
**structured** [1] - 42:5
**stuff** [3] - 31:4, 31:16, 50:4
**submission** [1] - 50:15
**submit** [1] - 7:7
**submitted** [1] - 7:21

**substantial** [1] - 47:24
**substantially** [1] - 18:5
**sufficient** [1] - 42:21
**suggesting** [1] - 34:2
**Suite** [3] - 2:5, 2:14, 3:5
**supplemental** [8] - 14:17, 14:24, 15:2, 15:18, 15:20, 34:23, 34:24, 50:24
**support** [1] - 24:7
**suspect** [2] - 43:9, 46:25
**system** [1] - 38:8

## T

**table** [1] - 12:4
**talks** [1] - 46:10
**team** [1] - 14:5
**technically** [1] - 35:23
**technology** [2] - 16:3, 16:10
**teed** [1] - 51:1
**Teksler** [6] - 24:5, 36:19, 43:16, 48:3, 49:11
**tentative** [18] - 18:21, 18:25, 19:1, 19:11, 19:17, 23:12, 23:14, 25:1, 25:4, 25:22, 25:23, 26:1, 33:20, 34:3, 34:9, 40:6, 42:1, 42:13
**term** [3] - 24:3, 24:4, 24:5
**terms** [2] - 9:4, 14:19
**tessar** [1] - 46:20
**testimony** [2] - 48:5, 49:11
**Texas** [1] - 21:12
**THE** [111] - 4:5, 4:18, 4:24, 5:2, 5:5, 5:10, 5:12, 5:14, 5:19, 5:22, 6:1, 6:4, 6:6, 7:9, 8:1, 8:6, 9:7, 9:18, 10:2, 10:18, 10:23, 11:4, 11:24, 12:7, 12:9, 12:13, 12:14, 12:20, 12:21, 13:9, 13:22, 13:25, 14:7, 14:10, 14:24, 15:9, 15:12, 15:15, 15:18, 16:1, 16:6, 16:9, 16:16, 16:23, 16:25, 17:16, 17:20, 17:25, 18:7, 18:14, 18:17, 18:24, 19:15, 19:25, 20:6, 20:12,

20:16, 20:18, 22:5, 22:24, 23:14, 23:25, 24:10, 24:14, 24:20, 25:1, 25:11, 25:15, 25:19, 26:19, 27:7, 27:10, 27:21, 28:2, 28:15, 28:18, 29:15, 30:1, 31:24, 32:13, 33:1, 33:11, 34:4, 34:13, 35:18, 35:20, 37:1, 37:11, 38:5, 38:12, 39:2, 39:9, 39:20, 39:23, 40:2, 40:17, 41:7, 42:15, 43:23, 44:4, 44:25, 45:10, 45:13, 45:16, 47:6, 48:18, 49:15, 49:18, 50:13, 51:7, 51:11
**themselves** [2] - 24:15, 43:5
**they've** [1] - 50:5
**thinking** [1] - 19:2
**third** [2] - 20:10, 35:16, 37:6
**third-party** [1] - 37:6
**three** [1] - 16:20
**threshold** [2] - 27:2, 30:4
**tight** [1] - 14:17
**tiny** [1] - 44:8
**Title** [1] - 52:8
**today** [2] - 6:9, 14:14
**together** [3] - 6:16, 10:15, 23:19
**top** [3] - 26:1, 28:8, 34:3
**total** [1] - 33:9
**town** [1] - 12:25
**Townsend** [1] - 5:9
**TOWNSEND** [1] - 2:13
**track** [1] - 10:3
**traded** [7] - 29:17, 30:7, 32:19, 38:13, 43:23, 43:25, 45:6
**TRANSCRIPT** [1] - 1:12
**transcript** [2] - 52:9, 52:11
**transfer** [1] - 21:12
**translates** [1] - 42:23
**transparency** [4] - 33:14, 38:4, 38:8, 46:11
**travel** [1] - 17:22
**traveling** [1] - 50:17
**tried** [1] - 40:7
**tries** [1] - 41:11
**true** [5] - 12:14, 18:25, 23:15, 38:21, 52:9

**truly** [1] - 19:1
**trying** [1] - 41:25
**Tuesday** [2] - 15:11, 16:4
**turn** [2] - 10:4, 17:4
**turned** [2] - 29:21, 44:7
**turns** [1] - 31:10
**tutorial** [2] - 16:3, 16:10
**two** [17] - 6:21, 11:12, 11:19, 11:20, 14:2, 15:2, 20:23, 22:12, 23:16, 23:18, 23:25, 24:18, 41:7, 41:8, 42:4, 49:23
**type** [2] - 41:13, 44:21, 45:7
**types** [1] - 47:3
**typically** [4] - 41:19, 42:5, 48:22

## U

**U.S** [2] - 1:3, 38:7
**ultimately** [7] - 21:14, 22:1, 22:21, 28:19, 35:12, 35:24, 36:17
**under** [11] - 6:15, 11:11, 25:1, 25:4, 26:3, 37:19, 47:20, 48:6, 49:2, 49:6, 50:14
**underlies** [1] - 20:23
**understood** [2] - 47:6, 47:13
**undoubtedly** [1] - 5:5
**United** [3] - 52:6, 52:8, 52:13
**UNITED** [1] - 1:1
**unknown** [1] - 37:3
**unredacted** [1] - 12:5
**unrelated** [1] - 23:4
**unsurprisingly** [1] - 10:19
**up** [10] - 9:13, 11:12, 16:4, 19:5, 22:11, 27:10, 31:21, 46:13, 50:11, 51:1
**update** [1] - 11:6
**upside** [3] - 37:13, 47:15, 49:22

## V

**valid** [1] - 48:10
**various** [1] - 16:13
**vehicle** [1] - 22:1
**venue** [2] - 16:19, 16:21

**versus** [2] - 37:14, 47:15
**vet** [1] - 39:22
**view** [3] - 22:15, 33:3, 50:15
**violates** [1] - 35:23
**violation** [1] - 36:7
**VLSI** [2] - 33:21, 34:2
**vs** [5] - 1:6, 4:6, 4:7, 4:8, 4:9

## W

**wait** [2] - 7:10, 9:21
**walk** [1] - 21:22
**wants** [2] - 38:10, 40:24
**wayside** [1] - 6:21
**wealth** [1] - 41:19
**weave** [1] - 47:4
**web** [3] - 36:17, 41:12, 47:4
**website** [1] - 41:13
**week** [2] - 7:7, 42:8
**weekend** [3] - 15:7, 15:16, 51:8
**weeks** [1] - 15:2
**weigh** [1] - 8:20
**welcome** [3] - 39:9, 39:12, 50:13
**WEST** [1] - 1:24
**West** [2] - 2:5, 3:10
**WESTERN** [1] - 1:2
**whatsoever** [3] - 43:13, 43:17, 48:7
**whistles** [4] - 7:19, 8:11, 8:21, 9:12
**whole** [1] - 31:19
**willing** [1] - 14:5
**win** [1] - 45:1
**Winston** [1] - 5:24
**WINSTON** [1] - 2:18
**wish** [1] - 11:17
**WITNESS** [1] - 20:18
**wonder** [1] - 15:7
**wonderful** [1] - 20:17
**word** [2] - 26:17, 39:24, 46:16
**works** [1] - 15:14
**world** [3] - 18:8, 32:14, 32:22
**worth** [1] - 41:20
**written** [2] - 19:3, 19:5

## Y

**year** [1] - 31:10
**years** [2] - 29:20, 44:7
**York** [3] - 2:19, 22:9
**yourself** [2] - 48:13,

50:2