# EXHIBIT A

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

## DATA OVER CABLE SERVICE INTERFACE SPECIFICATIONS
## LICENSE AGREEMENT

THIS DATA OVER CABLE SERVICE INTERFACE SPECIFICATIONS LICENSE AGREEMENT (this "Agreement") effective on _Feb 22_ , 2012 (the "Effective Date"), is made by and between Cable Television Laboratories, Inc., a Delaware non-stock membership corporation ("CableLabs"), having a place of business at 858 Coal Creek Circle, Louisville, Colorado 80027-9750, USA, and the Licensor identified below.

WHEREAS, CableLabs ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████

WHEREAS, Licensor ██████████████████████

████████████████████████████████████████████

███████████████

WHEREAS, CableLabs ██ █ ███ ███ ███ ███ ███

████████████████████████████████████████████

██████████

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties have entered into this Agreement and agree to be bound by its terms and conditions, including those contained on the following pages hereof, as of the Effective Date.

| CABLE TELEVISION LABORATORIES, INC. | LICENSOR: MaxLinear Inc |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: Ralph Brown | Name: Adam C. Spice |
| Title: CTO | Title: CFO |

| Licensor address for written notice and for Section 9.9: | Optional address for duplicate written notices: |
|---|---|
| 2051 Palomar Airport Rd Suite 100, Carlsbad, CA 92011 | |
| Fax: 760-444-8598 | Fax: |

1

1.    DEFINITIONS

          For purposes of this Agreement, the terms defined in this Section 1 shall have the respective meanings set forth below:

          1.1    "Affiliate" means an entity controlled by, or under common control with, or controlling a party to this Agreement, such control being exercised through ownership or control, directly or indirectly, of more than fifty percent (50%) of the voting power of the shares entitled to vote for the election of directors or other governing authority, as of the Effective Date or thereafter during the term of this Agreement, provided that such entity shall be considered an Affiliate only for the time during which such ownership or control exists.

          1.2    "Licensed Technology" means Licensor's (and its Affiliates') patents, all issued patents, pending applications and subsequently filed applications essential for compliance with the Specifications and any patented inventions described in the Specifications; all to the extent and only to the extent that Licensor (and its Affiliates) has the right to grant licenses, immunities or other rights thereunder as of the date of this Agreement and all copyrightable subject matter that is contained in the Specifications. Licensed Technology shall not include Licensor's technology or intellectual property related to security, including but not limited to conditional access, nor shall it include technology related to Digital Video Broadcast (DVB) or OpenCable.

          1.3    "Licensed Products" means products or systems utilizing or incorporating the Licensed Technology solely to the extent necessary for purposes of conforming to the Specifications; provided, however, that the licenses granted in this Agreement apply only to the extent that data received or transferred by such products or systems is encapsulated within a DOCSIS MAC frame containing a DOCSIS header, as such terms are set forth in the Specifications. A product or system shall not qualify as a Licensed Product unless it conforms with the Specification (as defined below), as demonstrated by the sublicensee's application for certification in accordance with the procedures set forth on the DOCSIS web site, www.cablemodem.com, and by reasonable continuing efforts towards the same. If a sublicensee incorporates the Licensed Technology in a device which performs functions in addition to those required for conformance with the Specifications, the sublicense granted under this Agreement shall be limited to the technology necessary for compliance that would be required by a standalone device.

          1.4    "Licensors" means all parties which have executed an agreement with CableLabs which is substantially identical to this Agreement.

          1.5    "Specifications" means any and all specifications designated by CableLabs at www.cablemodem.com/specifications/ as part of the Data Over Cable Service Interface Specifications and each subsequent revision of such documents and any new versions of the specifications that become effective pursuant to Section 7 of this Agreement.

2

2.    <u>LICENSE GRANTS.</u>



2.1

2.2

2.3

DOCSIS IPR Agreement Rev. 3 Sept. 5. 2006 *(format only)*



2.4

2.5

2.6

3.     REPRESENTATIONS, WARRANTY AND DISCLAIMER.

     3.1     Representation.   Each party represents and warrants that it has the corporate power and authority to enter into this Agreement and to carry on its business as it is now being conducted.

     3.2     DISCLAIMER OF WARRANTIES.  THE PARTIES DISCLAIM ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, (1) ANY WARRANTY THAT THE LICENSED TECHNOLOGY OR LICENSED PRODUCTS DO NOT INFRINGE ANY PATENTS, COPYRIGHTS, OR OTHER INTELLECTUAL OR INDUSTRIAL PROPERTY RIGHTS, (2) ANY WARRANTY THAT ANY PATENTS INCLUDED IN THE LICENSED TECHNOLOGY ARE VALID OR ENFORCEABLE, (3) ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, OR (4) THAT THE RIGHTS AND LICENSES GRANTED TO CableLabs HEREUNDER COMPRISE ALL THE RIGHTS AND LICENSES NECESSARY OR DESIRABLE TO PRACTICE, DEVELOP, MAKE AND SELL LICENSED PRODUCTS.

4

4.    OBLIGATIONS OF SUBLICENSEES.



5.    LIMITATION OF LIABILITY.

        IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR
EXEMPLARY, INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES
OF ANY KIND, INCLUDING WITHOUT LIMITATION LOSS OF PROFIT, SAVINGS OR
REVENUE, OR THE CLAIMS OF THIRD PARTIES, WHETHER OR NOT ADVISED OF
THE POSSIBILITY OF SUCH LOSS, HOWEVER CAUSED AND ON ANY THEORY OF
LIABILITY, ARISING OUT OF THIS AGREEMENT.

6.    INFRINGEMENT AND ENFORCEMENT ACTIONS.

        6.1    Notification of Infringement.    CableLabs shall immediately notify
Licensor of any infringement, potential or actual, which may come to CableLabs's attention, of
any Licensed Technology and shall provide Licensor with the available evidence, if any, of such
infringement.

        6.2    Enforcement of Rights in Licensed Technology.    Licensor, at its sole
expense, shall have the right to determine the appropriate course of action to enforce its rights in
Licensed Technology or otherwise abate the infringement thereof, to take (or refrain from
taking) appropriate action to enforce Licensed Technology, to control any litigation or other

5

enforcement action and to enter into, or permit, the settlement of any such litigation or other enforcement action with respect to Licensed Technology. CableLabs shall fully cooperate with Licensor in any action to enforce Licensor's rights in the Licensed Technology, including furnishing, without charge, except out-of-pocket expenses, any evidence, documents and testimony as may be required in such action. If Licensor gives CableLabs notice that an entity has commenced an action involving the Licensed Technology against Licensor or that Licensor has commenced such an action against an entity, CableLabs shall not grant a sublicense hereunder regarding Licensor's Licensed Technology to such entity.

7.   AMENDMENTS FOR FUTURE SPECIFICATIONS

   7.1   Periodic Amendments. CableLabs intends to issue, from time to time, full reprints of the Specifications, with changes, in the form of "Revisions" and to designate such revisions with control numbers such as "Rev. 1.1," and similar designations. Also, between the issuance of "Revisions," CableLabs intends to issue "Change Notices" and to designate the change notices with unique control numbers. CableLabs shall promptly make all revisions available, in full, on CableLabs' www.cablemodem.com web site. CableLabs shall conspicuously mark each Revision as either a Major Change or a Minor Change. CableLabs shall use its best efforts, in good faith, to determine whether a revision is a "Major Change" or a "Minor Change" in accordance with this Section 7.

   7.2   Major Changes. A "Major Change" shall be any revision that is not a Minor Change. All Major Changes posted on CableLabs' www.cablemodem.com web site by 12:00 a.m. on the first day of any calendar month shall become final at 12:00 a.m. on the first day of the next calendar month unless Licensor (or any sublicensee under Section 2.2) provides written notice to CableLabs objecting to the Revision. The sole ground of objection shall be that the Revision includes patents, copyrights, or trade secrets of the objecting party that are not already licensed to CableLabs through this Agreement (for Licensor) or through a similar agreement (for a sublicensee). If CableLabs receives such an objection, CableLabs shall provide written notice to Licensor that the Revision is not effective, and CableLabs shall include a copy of the notice of objection (if from a sublicensee).

   7.3   Minor Changes. A "Minor Change" shall be any Revision that only clarifies or corrects a previous version of the Specifications. Unless CableLabs receives a written notice of objection from Licensor or any sublicensee, all Minor Changes posted on CableLabs' www.cablemodem.com web site by 12:00 a.m. on the 8th day of any calendar month shall become effective on the 15th day of that month. Unless CableLabs receives a written notice of objection from Licensor or any sublicensee, all Minor Changes posted on CableLabs' www.cablemodem.com web site by 12:00 a.m. on the 21st day of any calendar month shall become effective on the 28th day of that month. The sole ground of objection shall be that the Revision includes patents, copyrights, or trade secrets of the objecting party that are not already licensed to CableLabs through this Agreement (for Licensor) or through a similar agreement (for a sublicensee). If CableLabs receives such an objection, CableLabs shall provide written notice to Licensor that the Revision is not effective, and CableLabs shall include a copy of the notice of objection (if from a sublicensee).

6

8.    <u>TERM AND TERMINATION.</u>

        8.1    <u>Term.</u>   This Agreement shall continue in full force and effect until terminated in accordance with its terms.



        8.3    <u>Survival.</u>  Expiration or termination of this Agreement shall not relieve the parties of any obligation accruing prior to such expiration or termination, and the provisions of ~~Section 5 ("Limitation of Liability") and Section 9 ("General") shall survive termination or~~ expiration of this Agreement.

7

9.    GENERAL.

9.1    Publicity.    CableLabs and Licensor may make, separately, or jointly, public announcements of this Agreement anytime after the signing of this Agreement. Except as required by law, the timing and content of such announcements by a party shall be subject to the prior written approval of the other party.

9.2    Waiver.    The failure of any party to enforce any of the terms and conditions of this Agreement shall not constitute a waiver of that party's right thereafter to enforce each and every term and condition of this Agreement or upon reasonable notice to require correction of a default previously waived.

9.3    Severability.    Should one or more provisions of this Agreement be or become invalid, the parties shall substitute, by mutual consent, valid provisions for such invalid provisions which valid provisions in their economic effect are sufficiently similar to the invalid provisions that it can be reasonably assumed that the parties would have entered into this Agreement with such provisions. In case such provisions cannot be agreed upon, the invalidity of one or several provisions of this Agreement shall not affect the validity of this Agreement as a whole, unless the invalid provisions are of such essential importance to this Agreement that it can be reasonably assumed that the parties would not have entered into this Agreement without the invalid provisions.

9.4    Governing Law.    This Agreement shall be governed by and interpreted in accordance with laws of the State of New York, excluding its choice of law rules.

9.5    Headings.    The parties acknowledge that the headings to the sections hereof are for reference purposes only and shall not be used in the interpretation of this Agreement.

9.6 

9.7    Notices.    All notices permitted or required under this Agreement shall be in writing and shall be delivered as follows with notice deemed given as indicated: (a) by personal delivery when delivered personally; (b) by overnight courier upon written notification of receipt; (c) by telecopy or facsimile transmission upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, five (5) days after deposit in the mail. All notices must be sent to the following addresses, or to such

8

other address that the receiving party may have provided for the purpose of notice in accordance with this Section:

If to CableLabs:

General Counsel
Cable Television Laboratories, Inc.
858 Coal Creek Circle
Louisville, Colorado  80027-9750

If to Licensor:

The notice address(es) on the front of this Agreement.

9.8    Force Majeure.  Neither party shall be liable hereunder by reason of any failure or delay in the performance of its obligations hereunder on account of strikes, shortages, riots, insurrection, fires, flood, storm, explosions, acts of God, war, governmental action, labor conditions, earthquakes or any other cause which is beyond the reasonable control of such party.

9.9    Consent to Jurisdiction.  CableLabs shall require each sublicensee of the Licensed Technology to irrevocably consent, for the benefit of Licensor, to the personal jurisdiction of the state and federal courts located in the county of the city and state identified in Section 9.7 for Licensor with respect to a dispute involving the licensed technology.  Licensor hereby irrevocably consents, for the benefit of each party granting a license to CableLabs on the same terms and conditions as this Agreement (each, a "Third Party Licensor"), to the personal jurisdiction of the state and federal courts located in the county of the city and state identified in the notice provisions for each such Third Party Licensor with respect to a dispute involving each such Third Party Licensor's intellectual property which is sublicensed to Licensor pursuant to Section 2.3 of this Agreement.  If two pool participants file actions naming each other as defendants in differing jurisdictions under this provision, the actions shall be consolidated in one jurisdiction as follows:  (a) in the jurisdiction of the party who filed the first action, if the party who filed first alleges in good faith the infringement of an issued patent (by patent number) or copyright licensed or sublicensed by such party hereunder; (b) in the jurisdiction of the party who filed the second action, if the party who filed first does not allege the infringement of an issued patent (by patent number) or copyright licensed hereunder and the party who filed the second action does allege in good faith the infringement of an issued patent (by patent number) or copyright licensed or sublicensed by such party hereunder; and (c) in such jurisdiction as determined by the applicable laws of the State of New York, in all other cases.

9.10    Construction of Agreement.  This Agreement shall not be construed for or against any party based on any rule of construction concerning who prepared this Agreement or otherwise.

9.11    Recovery of Litigation Costs.  If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and other costs incurred in connection with that action or proceeding, in addition to any other relief to which it may be entitled.

9

9.12   <u>General Construction</u>.  As used in this Agreement, the plural form and singular form each shall be deemed to include the other in all cases where such form would apply. "Includes" and "including" are not limiting, and "or" is not exclusive.

9.13   <u>Amendments</u>.  No change, modification, extension, termination or waiver of this Agreement, or any of the provisions herein contained, shall be valid unless made in writing and signed by duly authorized representatives of the parties hereto.

9.14   <u>Entire Agreement</u>.  This Agreement sets forth the entire agreement of the parties with respect to its subject matter, and supersedes all prior agreements, commitments, or representations of any kind, oral or written with respect thereto.  There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto relating to the subject matter of this Agreement which are not fully expressed herein.

*****END OF AGREEMENT*****

DOCSIS IPR Agreement Rev. 3 Sept. 5, 2006 *(format only)*