# EXHIBIT C

```
 1              UNITED STATES DISTRICT COURT
 2             CENTRAL DISTRICT OF CALIFORNIA
 3       HONORABLE JOHN W. HOLCOMB, DISTRICT JUDGE
 4  ENTROPIC COMMUNICATIONS, LLC,     )
                                      )
 5                                    )
                  Plaintiff,          )
 6                                    )
                                      )
 7       Vs.                          )
                                      )
 8                                    )  No. LACV23-01043-JWH
    DISH NETWORK CORPORATION, ET AL.; )      LACV23-01050-JWH
 9  COMCAST CORPORATION, ET AL.;      )      LACV23-01049-JWH
    COX COMMUNICATIONS, INC., ET AL;  )      LACV23-01048-JWH
10                                    )
                                      )
11                Defendants.         )
                                      )
12                                    )
                                      )
13  _____     )
14
15
16         REPORTER'S TRANSCRIPT OF PROCEEDINGS
17         MOTION HEARING AND SCHEDULING CONFERENCE
18                  SANTA ANA, CALIFORNIA
19                WEDNESDAY, AUGUST 9, 2023
20
21
22
23           MIRIAM V. BAIRD, CSR 11893, CCRA
              OFFICIAL U.S. DISTRICT COURT REPORTER
24                  350 WEST FIRST STREET
                         FOURTH FLOOR
25              LOS ANGELES, CALIFORNIA 90012
                       MVB11893@aol.com

                  UNITED STATES DISTRICT COURT
```

---

```
 1              A P P E A R A N C E S
 2
 3  ON BEHALF OF THE PLAINTIFF,    CHRISTINA N. GOODRICH
    ENTROPIC COMMUNICATIONS, LLC:  K & L GATES LLP
 4                                 10100 SANTA MONICA
                                   BOULEVARD, 8TH FLOOR
 5                                 LOS ANGELES, CA 90067
 6                                 GEORGE C. SUMMERFIELD
                                   JAMES SHIMOTA
 7                                 K & L GATES LLP
                                   70 WEST MADISON STREET,
 8                                 SUITE 3100
                                   CHICAGO, IL 60602
 9
                                   KENNETH BRIDGES
10                                 BRIDGES IP CONSULTING
                                   2113 19TH AVENUE S
11                                 NASHVILLE, TN 37212
12
13
14
15  ON BEHALF OF THE DEFENDANT,    CHRISTOPHER S. MARCHESE
    DISH NETWORK CORPORATION, ET.  FISH AND RICHARDSON PC
16  AL.:                           633 WEST 5TH STREET, 26TH
                                   FLOOR
17                                 LOS ANGELES, CA 90071
18                                 ADAM R. SHARTZER
                                   FISH AND RICHARDSON PC
19                                 1000 MAINE AVENUE, SW,
                                   SUITE 1000
20                                 WASHINGTON, DC 20024
21
    ON BEHALF OF THE DEFENDANT,    KRISHNAN PADMANABHAN
22  COMCAST CORPORATION, ET AL.:   BRIAN FERGUSON
                                   WINSTON AND STRAWN LLP
23                                 200 PARK AVENUE
                                   NEW YORK, NY 10166
24
25

                  UNITED STATES DISTRICT COURT
```

```
    ON BEHALF OF THE DEFENDANT,    APRIL ELIZABETH ISAACSON
    COX COMMUNICATIONS, INC., ET   KILPATRICK TOWNSEND AND
 2  AL:                            STOCKTON LLP
                                   2 EMBARCADERO CENTER, SUITE
 3                                 1900
                                   SAN FRANCISCO, CA 94111
 4
 5
 6
 7  ALSO APPEARING: SPECIAL MASTER DAVID KEYZER
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                  UNITED STATES DISTRICT COURT
```

---

```
                                                         4
 1    SANTA ANA, CALIFORNIA; WEDNESDAY, AUGUST 9, 2023; 10:09 A.M.
 2                           ---
 3          THE CLERK:  Calling item number one, Entropic case
 4  versus DISH Network, 23-01043.
 5          Calling item number two, Entropic Communications
 6  versus Cox Communications, Inc., et al.  Case number
 7  LACV-23-01047.
 8          Calling item number three, Entropic Communications,
 9  LLC, versus Comcast Corporation, et al.  Case number
10  23-01048.
11          Calling item number four, Entropic Communications
12  versus Cox Communications, Inc., et al.  Case number
13  23-01049.
14          Calling item number five, case number 23-01050,
15  Entropic Communications, LLC, versus Comcast Corporation,
16  et al.
17          Counsel, if you would please state your appearance
18  for the record, beginning with plaintiff.
19          MR. SHIMOTA:  Jim Shimota appearing on behalf of
20  plaintiff Entropic, LLC.
21          MS. GOODRICH:  Christina Goodrich from K&L Gates on
22  behalf of plaintiff Entropic, LLC.  I'm joined today by my
23  colleagues Ken Bridges and Nick Lenning, Cassidy Young, and
24  Kelsi Robinson, all on behalf of plaintiff.
25          I know Your Honor may be asking who is arguing
                  UNITED STATES DISTRICT COURT
```

5

1  which motions. Mr. Bridges will be arguing the Comcast
2  motions. Mr. Shimota will be arguing the 101 motions. I'll
3  be handling the scheduling conference.
4         THE COURT: Got it. Okay. Good morning. Good to
5  see all of you.
6         Who wants to go next?
7         MR. MARCHESE: Good morning, Your Honor. Chris
8  Marchese from Fish & Richardson on behalf of the DISH
9  defendants.
10        THE COURT: Mr. Marchese, good morning.
11        MR. SHARTZER: Your Honor, Adam Shartzer of Fish &
12 Richardson also on behalf of the DISH defendants. With
13 respect to the argument today, Chris will argue the '566
14 patent for DISH. Then the '910 patent, I'll be arguing that
15 one today for DISH.
16        THE COURT: Got it. Okay. Good morning,
17 Mr. Shartzer.
18        MR. SHARTZER: Good morning, Your Honor.
19        MS. ISAACSON: Good morning, Your Honor. April
20 Isaacson from Kilpatrick Townsend on behalf of the Cox
21 defendants. Along with me is my colleague Chris Leah as well
22 as Michael Turton.
23        THE COURT: All right. Good morning, counsel.
24        MR. PADMANABHAN: Good morning, Your Honor.
25 Krishnan Padmanabhan, Winston & Strawn, on behalf of the
                    UNITED STATES DISTRICT COURT

6

1  Comcast defendants.
2         THE COURT: Mr. Padmanabhan, talk into the
3  microphone and say that again.
4         MR. PADMANABHAN: I apologize.
5         THE COURT: That's okay. We just want to make sure
6  the record is complete.
7         MR. PADMANABHAN: Good morning, Your Honor.
8         THE COURT: Good morning.
9         Mr. PADMANABHAN: Krishnan Padmanabhan on behalf of
10 the Comcast -- now it's on.
11        Good morning, Your Honor. Krishnan Padmanabhan of
12 Winston & Strawn on behalf of the Comcast defendants. With
13 me I have Diana Leiden and Saranya Raghavan also of Winston &
14 Strawn. And we have a corporate representative, Mr. Kevin
15 Chung of Comcast.
16        THE COURT: All right. Good morning to all of you.
17 Thank you.
18        MR. SHARTZER: Your Honor, one moment, please. I
19 neglected to also introduce our corporate representative for
20 DISH as well. His name Mr. James Hanft. He's in the back
21 there.
22        THE COURT: All right. Welcome, sir. Good to see
23 you.
24        All right. I've got about two hours this
25 morning -- well, bleeding now into the afternoon, to deal
                    UNITED STATES DISTRICT COURT

7

1  with all these matters. Here's what I'd like to do. Let's
2  spend about a half an hour on each motion, 15 minutes per
3  side arguing it.
4         Then in the time remaining we'll deal with the
5  scheduling conferences and set -- my hope is to set schedule
6  for the claim construction processes in each of the sets of
7  cases, the MoCA cases and the cable cases.
8         All right. Let's start, please, with the 101
9  motion in the 1043 case involving DISH. I have provided
10 counsel with tentatives on all three of these motions.
11 Anybody did not get the tentative or did not have time to
12 review it? Okay.
13        I'm looking for -- nobody is saying that he or she
14 did not receive it and did not have time to review it, so I'm
15 going to assume that you all received them and you've had
16 sufficient time to process them.
17        I know there are, well, 17 pages, 17 pages, and 13
18 pages. So they're not hideously long, but they're also not
19 -- they have some detail in them. I hope they're helpful.
20        I'll say what I always say when I have tentatives,
21 and that is that it's truly a tentative. Please push back
22 respectfully and tell me where I got it dead wrong. I want
23 to hear that. It's my object. It's my goal to get it right.
24        I think it makes sense on probably all of these
25 motions to start with the plaintiff. I think the plaintiff
                    UNITED STATES DISTRICT COURT

8

1  is on the negative side of each tentative, at least in some
2  sense, so let me hear from plaintiff first. And as I said,
3  let's go -- let's plan to go about 15 minutes. I think you
4  can go pretty fast.
5         MR. SHIMOTA: I can, Your Honor.
6         THE COURT: Okay. In terms of my knowledge and
7  understanding of the patents, I think I have a pretty good
8  grasp, so you don't need to deal with kind of the big issues.
9         I didn't state that in a very clear way. You don't
10 need to start at ground zero, okay? Go ahead, please.
11 Mr. Shimota, you're going to --
12        MR. SHIMOTA: We provided you with our slide
13 presentation, Your Honor. I think we're having a little
14 trouble with the audiovisual equipment, so if I could hand
15 that up to you so I could just have some things you could
16 refer to.
17        THE COURT: Sure. I prefer the hard copy anyway.
18 What do I have here so far? I've got a Cox -- let's see.
19 K&L Gates has provided me with a couple of packets. I've got
20 Entropic's argument in opposition to Comcast's motion. Do I
21 have two copies of the same thing?
22        MS. GOODRICH: Your Honor, those are two separate
23 packets. I'll let Mr. Bridges explain when he argues that
24 motion.
25        THE COURT: Okay. I have four packets. They're
                    UNITED STATES DISTRICT COURT

69

1  MR. SHIMOTA: I will, Your Honor. Thank you.
2  THE COURT: Okay. In the interest of time, let's
3  move to Comcast's motion. I think Entropic probably ought to
4  go first again, so that's Mr. Bridges, right?
5  MR. BRIDGES: Yes, Your Honor.
6  THE COURT: Okay.
7  MR. BRIDGES: Good morning. It's good to see you
8  again. I feel like I was here just last month.
9  To start off, I would ask my colleagues from
10 Comcast if in my argument I stray into anything that you
11 might think is confidential information, if you will stop me
12 as quickly as possible. I'll try to be mindful of that.
13 First of all, Your Honor, with respect to the
14 tentative, there are parts we agree with and parts we don't
15 agree with, unsurprisingly for what seems to be such a
16 complicated issue -- or is it a complicated issue?
17 ==The parties' briefing so far certainly made it seem==
18 ==that way, but I'm here to tell Your Honor that it's actually==
19 ==a much, much simpler issue when Your Honor looks at what he's==
20 ==actually being asked to decide.==
21 So this is relevant. First of all, if you go to
22 your tentative at page 13 and the disposition.
23 THE COURT: Yes.
24 MR. BRIDGES: I just want to be very clear about
25 what it is that Your Honor is being moved to do and what

UNITED STATES DISTRICT COURT

70

1  Your Honor is considering doing.
2  ==So you note here that Comcast's instant motion to==
3  ==dismiss is granted with leave to amend, but the only motion==
4  ==before Your Honor where Comcast is asking for you to dismiss==
5  ==the case, the whole case, is Rule 12(b)(1).==
6  THE COURT: So that -- so I'm -- that should say
7  denied in part and granted in part, because I'm denying -- if
8  I stick with the tentative, which is what we're here to
9  discuss --
10 MR. BRIDGES: Correct.
11 THE COURT: If I stick with the tentative, I'm
12 denying the motion with respect to 12(b)(1).
13 MR. BRIDGES: You're denying the Rule 12(b)(1)
14 motion.
15 THE COURT: Yeah, and granting 12(b)(6) but with
16 leave to amend.
17 MR. BRIDGES: Yes. And then we have to talk about
18 Rule 12(b)(6), what Your Honor is actually being asked to do
19 under rule Rule 12(b)(6). And I made this mistake,
20 Your Honor. I thought that at one point Comcast was asking
21 for the case, for the patent infringement claims to be
22 dismissed under Rule 12(b)(6), but that's not in fact what
23 Comcast is asking for.
24 Your Honor can take a look at --
25 THE COURT: I understood Comcast's -- maybe I

UNITED STATES DISTRICT COURT

71

1  should have started with Comcast. I understood Comcast's
2  fallback position to be if you disagree with Comcast, that
3  Entropic does not have standing. Then --
4  MR. BRIDGES: Well, we could clarify, Your Honor,
5  in their briefing if you'd like. There's actually a fairly
6  clear statement of this in the opening brief at page 2.
7  THE COURT: Hold on one second. I want to eyeball
8  it myself. Okay.
9  MR. BRIDGES: And I would use the elmo, but I'm
10 afraid, Your Honor, of switching between the different
11 channels.
12 THE COURT: It wouldn't be helpful.
13 Okay. I have the briefing. Where should I look?
14 MR. BRIDGES: If you go to page 2, which is the
15 unique --
16 THE COURT: Page 2 of what?
17 MR. BRIDGES: Page 2 of the opening brief. The
18 unique page ID at the top is 3078. The page is titled Notice
19 of Motion and Motion to Dismiss.
20 THE COURT: Okay. I'm at the Notice of Motion and
21 Motion.
22 MR. BRIDGES: Okay. If you go down to line 22,
23 Your Honor.
24 THE COURT: Go.
25 MR. BRIDGES: Here we have the sentence:

UNITED STATES DISTRICT COURT

72

1  Accordingly, even if the Court finds some basis for subject
2  matter jurisdiction, Comcast moves to dismiss Entropic's
3  willfulness claims pursuant to Rule 12(b)(6).
4  THE COURT: Okay.
5  MR. BRIDGES: And if you go on -- it's repeated at
6  the end, Your Honor, at page 37 of the brief, the unique page
7  ID 3113, the last sentence of the conclusion starting on
8  line 13.
9  THE COURT: Okay.
10 MR. BRIDGES: The same thing.
11 So the point here, Your Honor, is just that there
12 is two different motions with two different forms of relief
13 that are being asked for. Only one is to dismiss the case on
14 12(b)(1) grounds.
15 THE COURT: Okay. So in the interest of time, if I
16 stick with the tentative, what should I be saying in the
17 disposition?
18 MR. BRIDGES: I think what Your Honor had said
19 earlier is proper. I think Your Honor should probably say
20 that you're denying the Rule 12(b)(1) motion and that you're
21 retaining subject matter jurisdiction, which, of course,
22 Your Honor would have to do in order to do what is
23 contemplated in item two, which is eventually dismiss with
24 prejudice because, of course, you can't do that if you don't
25 have subject matter jurisdiction.

UNITED STATES DISTRICT COURT

73

1  So for consistency purposes, I would just urge
2  that --
3      THE COURT:  I understand.
4      MR. BRIDGES:  -- you work on the disposition.
5      But this actually implicates the bigger issue,
6  Your Honor, of what exactly are you being asked to do.
7  You're only being asked to dismiss this case for lack of
8  subject matter jurisdiction.  The parties, in the interest of
9  time --
10     THE COURT:  In the tentative I'm not doing that.
11     MR. BRIDGES:  In the tentative you're not, but what
12 I want to be clear about in the tentative is how Your Honor
13 gets there.
14     So what happens is that in the tentative Your Honor
15 pursues the path the parties have laid out for you in
16 briefing.  The path that the parties laid out for you in
17 briefing is to do this by trying to interpret the VSA and try
18 to look at all of these complicated provisions.
19     But what happened, Your Honor -- if you have our
20 slide deck --
21     THE COURT:  Yes.
22     MR. BRIDGES:  -- I think it would be instructive to
23 turn to slide 13.
24     THE COURT:  Hold on one second.
25     MR. BRIDGES:  So apologies, Your Honor.  Because of

UNITED STATES DISTRICT COURT

74

1  the fact we weren't sure about tentative, you will have two
2  slide decks for this motion because there were an awful lot
3  of slides.  They are -- the numbers --
4      THE COURT:  Hold on.
5      MR. BRIDGES:  -- page numbers are consecutive.
6      THE COURT:  Hold on.  I'm not sure I have your
7  slide deck here.  Entropic's --
8      MR. BRIDGES:  It is titled, Your Honor, Entropic's
9  argument in opposition to Comcast's motion to dismiss.  It
10 looks like this, Your Honor (indicating).
11     THE COURT:  Okay.  I have it.
12     MR. BRIDGES:  So if you will go forward to slide
13 13, I just wanted to highlight something Comcast pointed
14 out --
15     THE COURT:  I'm there.
16     MR. BRIDGES:  -- in reply.  So Comcast says, well,
17 you're only relying on declaratory judgment cases.  They're
18 inapplicable.  They're declaratory judgment.  And this got us
19 to asking the question, well, wait a minute.  What cases is
20 Comcast citing in its briefing for the proposition that a
21 covenant can possibly deprive the Court of subject matter
22 jurisdiction?
23     And the answer is all of those are DJ cases.  The
24 reason, Your Honor, is because it turns out that in a case
25 where the patent owner maintains a case for infringement, the

UNITED STATES DISTRICT COURT

75

1  subject matter jurisdiction question is done.  There's
2  nothing more to do.
3      There is a case or controversy because there is a
4  case or controversy.  The Federal Circuit has actually
5  decided this issue in a line of cases which we discovered in
6  preparing for oral argument, and we sent these over to
7  Comcast last night when we recognized the importance of this.
8      I mean, obviously the Court wants to get it right
9  exactly, in particular for subject matter jurisdiction.  So
10 if Your Honor will take a look at slide 14, this is the
11 implication.
12     The analysis of case or controversy which the
13 parties have spent a lot of time fighting about actually
14 doesn't in this case need to turn on the VSA at all because
15 it is so simplified, it's automatic.
16     As a matter of law where there is a properly pled
17 complaint for patent infringement, meaning we asked for
18 relief under the Patent Act, whatever covenants or licenses
19 may exist, Your Honor, those are defenses.
20     Your Honor has jurisdiction over claims, not
21 issues.  The claim that Your Honor has jurisdiction over is a
22 patent infringement claim.  That's federal question.  No one
23 doubts it.  Your Honor's jurisdiction.  End of story.  And
24 that is what Air Products says.
25     THE COURT:  Let's take a hypothetical where

UNITED STATES DISTRICT COURT

76

1  plaintiff purported patentee sues alleged infringer, like a
2  one patent that has one claim in it, to make it simple.  When
3  one assigns a patent, one has to assign the right to not
4  merely the patent but the right to sue for infringement.
5      So let's say that the plaintiff was assigned the
6  patent but didn't have an express assignment of the right to
7  sue for infringement.  The defense that the defendant usually
8  raises in those circumstances is a 12(b)(1) type standing
9  defense.
10     MR. BRIDGES:  Uh-huh, but that's not what's being
11 raised here, Your Honor.  That's not what King
12 Pharmaceuticals and those cases are about.  The question
13 isn't standing.  The question is whether there's a case or
14 controversy that the Court can hear.
15     All of those cases like King Pharmaceuticals, the
16 question there is the patent owner doesn't want a case.  The
17 patent owner either never brought a patent infringement case
18 or brought one and then changed its mind.
19     Then in those cases what's happening is that the
20 patent owner is saying we don't want any invalidity or
21 non-infringement counterclaims to have to face.  So here's
22 what we'll do.  We'll provide you a covenant or a license and
23 represent to the Court that we are never going to sue you for
24 patent infringement.
25     That has the effect of removing reasonable

UNITED STATES DISTRICT COURT

77

1  apprehension of suit, so therefore the Court has no
2  jurisdiction.  The reason, Your Honor, is jurisdiction over
3  what?  In those cases the jurisdiction question is over the
4  counterclaims, the DJ-styled counterclaims -- or affirmative
5  DJ claims, as the case may be.
6        Those claims rest on the Declaratory Judgment Act
7  for jurisdiction.  It must meet those requirements, or
8  otherwise there is no case or controversy to be had.
9        THE COURT:  So what's the therefore, what?
10 Therefore, what in this case?
11       MR. BRIDGES:  Exactly.  So in this case the point
12 of this, Your Honor, is simply that instead of issuing a
13 final ruling that attempts to go through the VSA and
14 determine what it means, Your Honor can simply follow the
15 binding authority of Air Products, which is on slide 15, and
16 deny the motion out of hand.
17       In fact, if Your Honor will take a look at
18 slide 15, can you see that -- which is also in our binder at
19 tab one, the Air Products case -- this is a case where we
20 have an unquestioned really, unquestioned license in terms of
21 scope, and the question was just termination.
22       So was the termination of the license effective?
23 And in Air Products the Federal Circuit had quite a lot of
24 analysis here and looked at some old Supreme Court cases and
25 said what you can see on the slide, Your Honor, that the

UNITED STATES DISTRICT COURT

78

1  resolution of state law questions that may even render a
2  federal question moot, even if that happens, it does not
3  deprive Your Honor of subject matter jurisdiction where we
4  have made out a properly pled claim of patent infringement.
5        THE COURT:  So does that mean we would kick the
6  issue of whether the covenant not to sue runs with the patent
7  to Entropic, do we kick that issue down the road?  I mean, it
8  doesn't go away for all time.
9        MR. BRIDGES:  It absolutely does not, and that's
10 precisely the point, Your Honor, that Your Honor shouldn't at
11 the Rule 12 stage be in the business of deciding the contract
12 issue for all time.
13       That's the thing that's a little bit concerning is
14 that if Your Honor had to do that, you would have to do that.
15 But if as a matter of judicial restraint you don't have to do
16 that, then you shouldn't do that.
17       The denial in this case can be as simple,
18 Your Honor, as the Pixton case, which is in tab four, where
19 the Federal Circuit in one paragraph decided jurisdiction
20 applies.
21       So if Your Honor goes to the very end of the Pixton
22 case -- it's very short -- the Federal Circuit in one
23 paragraph simply says that these facts are like Air Products.
24 There's a question about the applicability of a license or
25 covenant defense, and as such we have jurisdiction.

UNITED STATES DISTRICT COURT

79

1        THE COURT:  Okay.  Couple things.  So it's kind of
2  kicking the can down the road, and then I adjudicate this
3  issue on a summary judgment motion?
4        MR. BRIDGES:  Yes.  I would expect that to be true,
5  Your Honor.  The reason I want to urge that upon the Court is
6  the other part of my argument, the part of my argument which
7  is that in fact there are an awful lot of issues here which I
8  believe does require some detailed analysis of the VSA and
9  what it means.
10       And there is where we would depart with Your
11 Honor's tentative.  We don't necessarily agree with all of
12 the conclusions that Your Honor draws, right, about various
13 aspects of the VSA.
14       For instance, we don't -- let me give you an
15 example.  Your Honor in the tentative concludes that the VSA
16 is on a patent by patent or, since trademarks, copyrights,
17 and trade secrets are also involved, I suppose on a
18 trademark-by-trademark basis, a copyright-by-copyright basis,
19 et cetera.
20       But there's a perfectly plausible explanation.  I
21 mean, if I allow someone into my home and say, you know, you
22 can come in and use my things but don't steal anything, and
23 they steal one item, it's quite plausible that I might revoke
24 the authorization for everything because they're acting
25 inconsistently with the bargain.  And that's our position on

UNITED STATES DISTRICT COURT

80

1  the VSA.
2        Our position on the VSA is that if Comcast is
3  willfully infringing even on one patent, that's acting
4  inconsistently with the business relationship the VSA
5  establishes.  Remember, Your Honor, the VSA is not a license.
6  It's not about this particular section.  The VSA is a vendor
7  support agreement.  It's about a bigger business relationship
8  between the parties.
9        So I'm sure that Comcast will dispute hotly the
10 particular meanings.  They do, and Your Honor has seen this
11 in the briefing.  Our point is there's an awful lot of
12 material here where the Court would benefit tremendously from
13 having information from discovery to make this decision
14 ultimately.  For example --
15       THE COURT:  But these are kind of new issues that
16 you didn't raise in the briefing.
17       MR. BRIDGES:  No.  We've raised all these issues in
18 terms of interpretation and in terms of what the VSA should
19 mean.
20       THE COURT:  But not these cases and not your --
21       MR. BRIDGES:  No, not -- yes, Your Honor.  We did
22 not -- in this sense we did not do Your Honor a service
23 because what happened, I think honestly, we took the Comcast
24 cases on subject matter jurisdiction, and we were eager to
25 answer all of the challenges that they made to what this

UNITED STATES DISTRICT COURT

81

1  covenant means and the representations, et cetera. And we
2  were concerned that Your Honor might actually on a 12(b)(1)
3  motion think that you had to decide these issues and do it.
4      Once they identified for us the fact that, wait,
5  these are all DJ cases, then it became apparent that we
6  should make sure that we're not giving the Court the wrong
7  authority. At that point we realized, oh, the 12(b)(1)
8  motion is easy. It can be just dismissed almost immediately.
9      Then at that stage the only thing that's left for
10 Your Honor to decide is the 12(b)(6) motion, and the 12(b)(6)
11 motion is only limited to the particular willfulness
12 allegations.
13     THE COURT: So let's go to that. If I stick with
14 the tentative at least in that aspect, that willfulness has
15 not been pleaded sufficiently --
16     MR. BRIDGES: Yes.
17     THE COURT: -- Entropic can fix that?
18     MR. BRIDGES: Yes. Entropic can fix that. And
19 that's not a problem, Your Honor. We don't have a problem
20 with that part, saying, hey, you know, you can amend. What I
21 would say, I would just point out one thing, because I don't
22 want to mislead Your Honor about how this may play out.
23     This case is unique in procedural posture from most
24 cases that have willful infringement as a part of the case.
25     THE COURT: Because?

UNITED STATES DISTRICT COURT

82

1      MR. BRIDGES: Because willful infringement here is
2  an integrated part of Comcast's license or covenant defense.
3  So what we have, Your Honor, is we have an affirmative patent
4  infringement claim.
5      Assume for a moment that Entropic hadn't pled
6  willful infringement at all, didn't plead it. What would
7  happen? Comcast has a defense to that claim of patent
8  infringement. We have a contract. There is, then, of
9  course, a defense to the defense. That would implicate the
10 willful infringement issue. Right?
11     That's going to come in no matter what. It comes
12 in because it is part and parcel of the contract defense.
13     THE COURT: You're saying it doesn't need to be
14 pleaded.
15     MR. BRIDGES: I'm saying that it doesn't need to be
16 pleaded. In fact, it doesn't as a technical matter -- not
17 that we wouldn't. We're happy to because we're happy to
18 engage with that issue. I'm saying that as a technical
19 matter, it doesn't need to be pleaded for purposes of the
20 motions that are in front of Your Honor.
21     If there's a future motion down the road where
22 Your Honor has decided, for example, perhaps at the summary
23 judgment stage that without a showing of willful
24 infringement, there is no claim here, if that happened, I
25 would even at that stage say that we do not have to plead a

UNITED STATES DISTRICT COURT

83

1  defense to a defense. We have to plead an affirmative claim.
2  We will have. We will have pled the willful infringement
3  issue, Your Honor.
4      I'm just warning you ahead of time that I don't
5  want to mislead Your Honor so that in a future dispute you
6  say, well, but at the first hearing you agree that you would
7  amend these things and you would put in willfulness
8  allegations and that everything turns on that. I just want
9  to observe the unique posture here because with willfulness
10 is pulled in as part of the defense.
11     THE COURT: Okay. I appreciate that. I think I
12 understand your point, and I need to think through the
13 implications here.
14     And another point that you made that I don't want
15 to miss is I think you made the point that if you, even under
16 my tentative, if you successfully plead willful infringement
17 with respect to any patent or any claim of any patent, you
18 can proceed with your infringement case with respect to all
19 patents in suit.
20     MR. BRIDGES: Yes. And the reason for that,
21 Your Honor, is that actually both parties seem to agree --
22 they may turn out to say they don't agree, but certainly from
23 their opening brief both parties had agreed that that is
24 exactly what would happen.
25     The reason that they argued that is they wanted

UNITED STATES DISTRICT COURT

84

1  Your Honor to find certain things about the timing of when
2  you would measure willful infringement. They wanted it to
3  only apply to before the VSA was signed, and Your Honor's
4  tentative does not find that. That's why they -- I believe
5  that's why they took the position that what happens is
6  willful infringement negates the covenant. It's gone --
7  which means it was never there. It didn't forbid anything.
8      So all of the patent infringement claims which are
9  being held in abeyance in this covenant like a giant dam
10 holding back the wall, willful infringement breaks the dam.
11 At that point, in our view, because willfulness acts
12 inconsistently with the business relationship MaxLinear and
13 Comcast expected to establish, all bets are off with respect
14 then to claims of infringement. The covenant is negated.
15     As a result of that, right, it would unwind all of
16 that material, which -- and I believe that I'm giving
17 Your Honor a lot to think about, so I don't want to hit too
18 many issues in a row, but I would say that's another point
19 where we feel like your tentative does not engage fully with
20 our arguments of contract interpretation because, for
21 example, that also has a serious effect with respect to
22 whether or not this could authorize acts of infringement.
23     It seemed in places that Your Honor might be
24 suggesting, yeah, this looks like it authorizes Comcast to
25 infringe, but that can't be, Your Honor, because you cannot

UNITED STATES DISTRICT COURT

85

de-authorize an act that you've authorized. We made these points in the brief and you -- you cannot do that.

So what you're not allowed to do is give someone a license for a past act and then later say I'm going to take that back and reconvert that authorized act into an infringing act.

You cannot, in other words, perform a Lazarus-type of miracle, Your Honor, on claims that you've surrendered. The Courts don't allow that. That's a no-no because we don't want the chaos that could ensue.

Now, you may be able to terminate a license, change things going forward. But going backward you can't. So what that means is if you can retroactively take it back, which is absolutely what the covenant is meant to do and what the parties seem to agree on, it can't be an authorization in the first place.

THE COURT: So worst case scenario for Entropic, if SDNY says -- now I've forgotten your licensor.

MR. BRIDGES: Oh, the party that originally owned the patents, Your Honor?

THE COURT: Yes.

MR. BRIDGES: MaxLinear.

THE COURT: MaxLinear -- not licensor but your assignor, I guess. SDNY says: MaxLinear, you win. The patents revert to you. I guess that would be the remedy,

UNITED STATES DISTRICT COURT

86

right? What's the remedy -- if MaxLinear wins in the Southern District of New York, what happens?

MR. BRIDGES: Oh. Well, what's at issue in the Southern District of New York actually, Your Honor, is different than what's at issue here, because there what's at issue is Comcast is saying that you have breached this statement of work that's attached to the VSA. So you've breached the VSA because you're not providing us services.

THE COURT: Okay. Just stick with my question. MaxLinear wins in SDNY. What's the remedy?

MR. BRIDGES: If MaxLinear wins, then in MaxLinear's view I believe there is no remedy because they simply are seeking to have nothing happen, that they can end their work under the VSA and that's it. According to, as far as I understand -- I'm sure this is in contention -- they believe that that work has ended, and so nothing happens.

MaxLinear is not asking, nor is Comcast, for the New York Court to do anything to affect whether or not Entropic can do something. It can't. Entropic is not a party to that case. This is a covenant. It's not what's being asked for.

So that is why Your Honor is faced with that issue here.

THE COURT: Okay. I need to move on.

MR. BRIDGES: Absolutely. I understand,

UNITED STATES DISTRICT COURT

87

Your Honor.

THE COURT: Let me hear, please, from Comcast, Mr. Padmanabhan.

MR. PADMANABHAN: Perfect, Your Honor. I think, as Mr. Bridges admitted, we received new cases yesterday evening at 4:30. We promptly read those cases.

THE COURT: And what do you want to do about them?

MR. PADMANABHAN: They have nothing to do with this case, Your Honor. Okay? That's what I'm going to start with.

THE COURT: Okay.

MR. PADMANABHAN: What those cases say -- I'm going to start with Air Products. You can look at Pixton. What they say is that if there are state law questions that doesn't rob a Federal Court of subject matter jurisdiction if there are also patent issues. That's what those cases stand for.

This is a completely different issue. Remember, we need to start with the framework that this is a covenant not to sue. They can't pass go, okay, because there's -- there's a restriction at the outset. They cannot sue Comcast.

One of the things that they said, that Mr. Bridges said, is that, well, we're not required to plead willfulness or show willfulness. That would make the entire covenant empty.

UNITED STATES DISTRICT COURT

88

The only exemption in that covenant not to sue is if a -- with respect to a particular patent if that particular patent is willfully infringed, then they can sue on that. But this idea that they could just say, well, you infringed patents, that would make the entire covenant empty. That's contrary to New York law which says you can't have a contract provision be illusory.

So they haven't addressed that. Actually they don't address that at all in their opposition brief, the fact that their reading of the VSA would render the entire covenant illusory.

So I'm not sure what their intention is or what their thinking is in saying the Court would retain subject matter jurisdiction even if they can't plausibly plead willfulness.

I think what Your Honor certainly found, correctly, is that given two chances, an original complaint and a first amended complaint, and 60 some odd allegations on willfulness, they were not able to plausibly allege willfulness.

So the question, what more is there to do, for them to do? They've had two bites. They've had these patents for years.

THE COURT: You're urging me to, if I stick with the tentative, not grant leave to amend because they've

UNITED STATES DISTRICT COURT

89

1 already amended?
2          MR. PADMANABHAN:  Well, Your Honor, they have
3 already amended.  And I don't think --
4          THE COURT:  Is that what you're doing?
5          MR. BRIDGES:  Your Honor, I would respectfully
6 request that, yeah.
7          THE COURT:  Okay.  I understand that point.
8          MR. PADMANABHAN:  Yeah.  So maybe we can take a
9 step back, because Mr. Brings spoke a lot about the
10 relationship between Comcast and MaxLinear and tried to
11 characterize this as some sort of, you know, noncentral part
12 of this agreement.
13         So let's just take a second and talk about who
14 MaxLinear is and who Comcast is, because I think this is
15 worthwhile.  This is slide 2, Your Honor.  So MaxLinear is --
16         THE COURT:  Hold on one second.
17         MR. PADMANABHAN:  Yes.  Absolutely.
18         THE COURT:  Do I have that up here someplace?  I
19 have about 400 different documents up here.
20         Okay.  Sorry.  I have it in front of me.  What
21 page?
22         MR. PADMANABHAN:  Slide 2, Your Honor.
23         THE COURT:  I'm there.
24         MR. PADMANABHAN:  Okay.  So MaxLinear is one of two
25 major providers of semiconductors in the cable industry.

UNITED STATES DISTRICT COURT

90

1 Okay.  The other one is Broadcom.  And just by way of
2 reference, Your Honor, what's at issue in this lawsuit is
3 they're suing all of these companies over their use of
4 Broadcom chips.  Okay.  Let's just not have any
5 misconceptions about that.
6          So MaxLinear's semiconductors power devices like
7 these cable gateways and cable modems that go into millions
8 of devices that Comcast deploys in their network and that
9 Comcast relies upon to provide internet service, to provide
10 television service.  Okay.
11         And it's only natural -- go to the next slide --
12 that they would come to an agreement where Comcast has
13 assurances that their vendor is going to stand by them, that
14 the vendor is going to stand by their product and do what's
15 necessary to make sure that those products will deliver those
16 high-quality services.
17         Conversely, MaxLinear knows that their industry,
18 their reputation in the industry is going to be upheld, that
19 they're going to stand by their customer.  That's the nature
20 of the vendor support agreement.
21         Part of that relationship is this covenant not to
22 sue, right?  It's natural a customer wouldn't expect their
23 vendor to sue them, right?
24         If you look at the VSA -- let's go to the next
25 slide -- what it says pretty clearly, Your Honor, is that

UNITED STATES DISTRICT COURT

91

1 during the term MaxLinear will not sue Comcast with respect
2 to patent infringement and keeps -- it has this exemption for
3 willfulness.
4          We talked about the timing, and Mr. Bridges said,
5 well, we think that, you know, if you -- he used an analogy.
6 It doesn't have any root in any case law, but he used the
7 analogy:  Well, if I let someone come into my house and they
8 steal one thing, well, then, I wouldn't let them come in at
9 all.
10         As Your Honor recognizes in the tentative, willful
11 infringement requires at least two things:  knowledge of the
12 patent and knowledge that you're infringing.  It's a
13 patent-by-patent analysis.  Okay.  That -- it only makes
14 sense that this willfulness exemption would apply on a
15 patent-by-patent basis.
16         There is an additional piece of this, okay, which
17 is that -- if we can go to the slide with -- yes, exactly.
18 Go up a little bit to the second part of the covenant.
19         There's an additional piece of this.  And,
20 Your Honor, I think in your deck this is going to be -- I
21 apologize.  We rearranged these in anticipation.  So it's
22 going to be slide 31 of your deck, Your Honor.
23         THE COURT:  Okay.  I'm there.
24         MR. PADMANABHAN:  Yeah.  So the second part of the
25 covenant not to sue does allow MaxLinear to pursue other

UNITED STATES DISTRICT COURT

92

1 vendors.  So they have relief.  What they don't have and why
2 this is a subject matter question, they don't have relief
3 against Comcast.  They can't sue Comcast.  They could go sue
4 Broadcom.  They've chosen not to do that, and there's nothing
5 they can do to get around that.
6          So if Entropic were to go back and try to formulate
7 a complaint just alleging infringement without willfulness,
8 that would make the covenant not to sue empty.  That's
9 contrary to New York law.  They've tried to plead
10 willfulness.  They've been unable to do that in two attempts.
11 Okay.
12         So it's not clear what they would replead at this
13 point.  They've had the patents for years.  And by the way,
14 they have access to MaxLinear's information because
15 MaxLinear, as Your Honor has heard at length in previous
16 lawsuits -- I'm sorry, previous hearings with respect to the
17 Rule 71 issue, MaxLinear is a financial beneficiary in these
18 cases.
19         MaxLinear is working with Entropic.  Entropic has
20 access to MaxLinear's information.  If there was an
21 allegation of infringement against Comcast, MaxLinear would
22 know; Entropic would know.  They could have pled it in any of
23 those two instances, the original complaint and the first
24 amended complaint.  They haven't done it.
25         At this point they haven't been able to show the

UNITED STATES DISTRICT COURT

## Page 93

1  exemption is invoked.  There's no basis to allege
2  infringement.  They don't have subject matter jurisdiction to
3  allege infringement without a willfulness allegation.  We're
4  not sure that there's much left to decide, Your Honor.
5      THE COURT:  I'm -- even if I stick with the
6  tentative, I'm not likely to say no leave to amend.  I think
7  the law on Rule 15 is pretty clear that Courts should bend
8  over backwards when problems with pleadings are pointed out,
9  bend over backwards to allow a party to replead and try to
10  fix the problem.
11      So I hear you, but that is -- but you may not want
12  to push that point much more.
13      MR. PADMANABHAN:  Fully understand, Your Honor.
14      With respect to the tentative, obviously the result
15  that there is no plausible allegation of willfulness, that
16  makes a lot of sense.  The fact that, as Your Honor --
17  Your Honor, I think, essentially changed the conclusion in
18  that allowing them to amend denied without prejudice
19  Comcast's 12(b)(1) motion.
20      THE COURT:  I can tell you that the disposition is
21  the last thing that I did.  And even if I stick with the
22  concepts in the tentative, I'm going to redo that.
23      MR. PADMANABHAN:  Understood, Your Honor.
24      THE COURT:  And by the way, I know the caption is
25  wrong, too, because it's -- the 1050 case is also against

UNITED STATES DISTRICT COURT

## Page 94

1  Comcast entities.
2      In any event --
3      MR. PADMANABHAN:  Understood, Your Honor.  I guess
4  my point is that -- we understand that.  It makes sense to
5  us.
6      With respect to the rest of the tentative, I think
7  there is this idea that the timing could be at any time does
8  not make sense.
9      So, for example, could MaxLinear, after entering
10  the VSA, send Comcast a letter saying we think you infringed
11  these patents; the covenant is no longer applicable.  That
12  would render it illusory.  That's contrary to New York law,
13  which we've cited in our briefing.
14      We've got it up here, Your Honor.  And my eyes are
15  going to fail me.  I can't read off the prompter, but we
16  cited a number of cases that would say that you couldn't --
17      THE COURT:  What page are you on?
18      MR. PADMANABHAN:  Let me find it, Your Honor.  Give
19  me one moment.  So it's page 18, Your Honor, of the slide
20  deck.  So this idea -- yes, that one.  Correct.
21      So this idea that Entropic could send us a letter
22  or MaxLinear could send Comcast a letter and say, well,
23  you're infringing this patent; the covenant no longer
24  applies, would hold the covenant as being empty, being an
25  illusory promise.

UNITED STATES DISTRICT COURT

## Page 95

1  That would mean that they never intended to honor
2  the covenant in the first place.  That's contrary to New York
3  law.  There's no response citing New York law from Entropic
4  on this point.
5      Secondly, a number of their allegations -- and I
6  think Your Honor recognizes this in the tentative -- rely on
7  information that was in their possession at the time they
8  entered the VSA.  For example, Comcast's involvement in the
9  MoCA alliance or investment in the legacy Entropic entity in
10  2003 and 2006, those are things that they knew when they
11  entered the VSA.
12      If they expected those things to invoke the
13  exemption, that means that they never intended to honor the
14  covenant to begin with.  That's contrary to New York law.
15      The one thing that's really missing, Your Honor,
16  from Entropic's opposition -- and maybe that's why
17  Mr. Bridges wants to sidestep it altogether and, just trying
18  to, you know, give us a lesson on civil procedure as opposed
19  to dealing with the VSA, wants to kick the can on that is
20  because they haven't cited New York law.
21      They haven't addressed the law which would hold
22  that the covenant must have force; it must have been entered
23  with intention.  And the only way that they can make it apply
24  -- I'm sorry, that they can get past it is if they can show
25  that the exemption is applicable with respect to a particular

UNITED STATES DISTRICT COURT

## Page 96

1  patent.
2      They haven't done that.
3      THE COURT:  It's got to be done on a
4  patent-by-patent basis.
5      MR. PADMANABHAN:  Absolutely, Your Honor.
6  Otherwise it would make no sense.  They could submarine an
7  entity.  There could be some subsidiary of MaxLinear that
8  we've never heard of that sends us some letter, sends Comcast
9  some letter, and they could, you know, allege infringement on
10  that.  And we wouldn't know that this would be even impacting
11  the VSA.
12      What they're saying is that essentially they could
13  hide the information.  They could hide the fact that there's
14  an allegation of infringement that impacts the force of this
15  covenant.  That can't be right.
16      It's -- the two parties have got to be on all
17  fours.  They've got to say, well, look, you're infringing
18  this patent, so the VSA is not applicable.  As Your Honor's
19  tentative recognizes, that information should be in
20  MaxLinear's possession.  It should be pretty straightforward.
21  And as such, it should be in Entropic's possession.
22      THE COURT:  Let me move to a slightly different
23  question.  The New York case, does the outcome of the
24  New York case affect this case in any way?
25      MR. PADMANABHAN:  So, Your Honor, I don't want to

UNITED STATES DISTRICT COURT

97

speak for a district court judge in New York, just as I wouldn't presume to speak for any judge. What I'll say is that it appears that the parties in New York are discussing the issue of whether the vendor support agreement continues to be enforced, whether or not Entropic -- sorry. MaxLinear provided a termination letter that we received on May 23rd -- whether that termination is actually effective.

Now, this Court obviously does not need to decide those issues because there's no subject matter jurisdiction at the outset, and they would need subject matter jurisdiction at the outset in order for this case to continue.

That being said, for context the only case that Entropic cites regarding the issue of termination would say that the termination could not be effective for two years and three months.

So in New York -- and that is because if you send a termination preemptively or early, under New York law what occurs is that the termination will be effective as of the earliest date allowed under the contract. And under the contract there's a requirement essentially that there be a year notice before the statement of work is canceled or terminated and then a further one year and three months of notice from the termination of the last statement of work before the VSA can be terminated.

98

So that totals two years and three months.

THE COURT: So let's say MaxLinear prevails in New York and gets a judgment in its favor. Are you saying there's no effect on this case because that judgment would essentially provide that the VSA is not terminated until two years and three months from the date of the initiation of the SDNY lawsuit?

MR. PADMANABHAN: So let me break it down, Your Honor. I apologize. We've been trying to go very quickly. So --

THE COURT: My question is pretty simple.

MR. PADMANABHAN: Right.

THE COURT: Say MaxLinear wins in New York.

MR. PADMANABHAN: Right.

THE COURT: What does that do to this case, if anything?

MR. PADMANABHAN: I'm getting there, Your Honor. My apologies.

So it appears that MaxLinear's view of what constitutes winning in New York would be termination sometime before that two years and three months.

When that is, is subject to the Court in the Southern District of New York. What we would submit, what Comcast would submit is that in the meantime there's no basis for Entropic to hold Comcast hostage in this litigation where

99

what Comcast has as of today is a covenant not to sue that's in force, that's in effect. That keeps them from passing go. It keeps them from starting the case because we can't be sued.

THE COURT: I understand you're saying that, but put that aside for a moment. Again, MaxLinear wins in New York on MaxLinear's theories, which I guess necessarily does not include your two-year, three-month issue. MaxLinear wins --

MR. PADMANABHAN: Right.

THE COURT: -- on all its theories.

MR. PADMANABHAN: Right. Your Honor, at that point we would say that Entropic would come back. At that point if they were to win and the vendor support agreement is terminated, then the covenant not to sue is not in place and then Entropic has a basis to file a lawsuit against Comcast. But that's not today. That's what I'm trying to say. I hope that's clear.

THE COURT: And if that happens, what is affected is the period of infringement, the period that damages would accrue, again assuming Entropic prevails on its patent infringement?

MR. PADMANABHAN: I want to be careful here, Your Honor. I want to answer your question, but I also want to make I'm not -- that it's not taken out of context later. So

100

we would say that Entropic does not -- does not have subject matter jurisdiction until that vendor support agreement is terminated. So that's step one.

But, yes, that would also impact the damages period. But they don't get to even file a case against us until that termination is effected.

THE COURT: I understand your position. That's helpful.

Okay. I kind of took us aside. What else? I really need to wrap this up.

MR. PADMANABHAN: Absolutely, Your Honor. I actually think that -- you know, before we close out, let's just talk about the issue of -- if we can go to the Dobrova case. So this idea -- and I want to just make sure our record is clear on this because the briefing is very clear.

Mr. Bridges got up and he said that -- and this actually, Your Honor, is not in the deck. We added it in response to your tentative this morning, but the cases are cited in our briefing.

So Mr. Bridges got up and he said, without citing any case law, he said, well, you know, we think you could -- the timing of when a willfulness allegation doesn't matter. But that's not what the present perfect tense means. We found New York case law dead on point. They have no response. They haven't responded with any case law

**101**

1 interpreting contract language under New York law.
2      So the case law says that this phrase means it's
3 got to be an allegation of willful infringement before the
4 VSA was entered.  That makes sense, because the whole point
5 of the vendor support agreement is a vendor and its customer
6 coming together and saying we're going to work together and
7 we'd like to keep the peace.
8      So it's consistent with both the law and it's
9 consistent with the pragmatic consideration that Mr. Bridges
10 raised, although not discussing the specificity of the two
11 parties.
12      So with that, Your Honor, I'll take my seat.
13      THE COURT:  Okay.  Thank you very much.  You've
14 given me a lot to think about.
15      Do you want to -- does Comcast want to file a
16 supplemental brief in response to all these new cases that
17 Entropic has now called to my attention?  I mean, I need to
18 get this right.  If there's -- if there are -- if there is
19 case law that points us, points me in the right direction, I
20 need to consider them.
21      MR. PADMANABHAN:  Yeah, exactly.
22      THE COURT:  Do you want to file a brief in
23 response?
24      MR. PADMANABHAN:  You know, Your Honor, let me make
25 a comment which I probably should have done at the lectern.

**102**

1 I'll return to the lectern for a moment, because one thing
2 that Mr. Bridges said, he said, well, they talk about DJ
3 cases, and then we realized the DJ cases are wrong as well.
4      No.  What we said about the declaratory judgment
5 cases was that their characterization of those cases was
6 wrong.  They read the declaratory judgment cases as saying
7 that unless a covenant has no exceptions, it does not take
8 away subject matter jurisdiction.  That is not what those
9 cases say.
10      What those cases say in each of those instances, as
11 Mr. Bridges noted, a patentholder who's a declaratory
12 judgment defendant gave a covenant not to sue in order to try
13 and get out of the litigation.  Then that covenant not to sue
14 had a gaping hole in it.  Okay.  It did not apply.
15      In this case there's no reasonable argument that
16 this covenant not to sue does not apply to each of the 20
17 patents in this case.  The only way that they would not apply
18 is if Entropic could plausibly allege willfulness with
19 respect to one of those patents, which they cannot.
20      THE COURT:  You're not answering my question.
21      MR. PADMANABHAN:  Yeah.
22      THE COURT:  Do you want to file a supplemental
23 brief?
24      MR. PADMANABHAN:  I apologize, Your Honor.  We
25 don't know what they actually have said about those cases.

**103**

1 We heard Mr. Bridges, but they haven't actually sought leave
2 or explained why those cases --
3      THE COURT:  Is that a no?
4      MR. PADMANABHAN:  I just don't know what I would be
5 filing a supplemental brief on, Your Honor.
6      THE COURT:  Let me ask Entropic.
7      Do you want to file a supplemental brief now that
8 you've found these cases?
9      MR. BRIDGES:  I mean, if it's helpful to
10 Your Honor, particularly with subject matter jurisdiction,
11 the Court has to get it right.  I would prefer Your Honor to
12 be in possession of more information than less, so we're
13 happy to do that.
14      If Comcast is absolutely against it, it seems to me
15 that perhaps the most rational thing to do, Your Honor, would
16 be to say to the parties:  You can have a couple of pages.  I
17 mean, this should be fairly short and to the point, and then
18 maybe they respond to what we said.
19      THE COURT:  Yes.  So this is an important issue.
20 It's a constitutional issue of standing.  It's kind of how I
21 view it.  Well, it's how Comcast has teed it up.  So I need
22 to get it right, so why don't -- why doesn't Entropic file a
23 five-page -- is five pages sufficient?
24      MR. BRIDGES:  I think that's absolutely adequate,
25 Your Honor.

**104**

1      THE COURT:  Five-page supplemental brief by -- how
2 quickly can you get it?  A week from Friday?
3      MR. BRIDGES:  That's no problem at all, Your Honor.
4      THE COURT:  So deadline of August 18th for
5 Entropic's supplemental brief hopefully explaining these
6 eight cases and why you think they're relevant.
7      And then is two weeks sufficient, Mr. Padmanabhan?
8      MR. PADMANABHAN:  Absolutely, Your Honor.
9      THE COURT:  So that's September 1st, deadline for
10 response of supplemental brief.  I'll call it that.  And then
11 that's it.
12      MR. PADMANABHAN:  That would be great, Your Honor.
13      THE COURT:  So I'll refrain from deciding this
14 motion until I get those supplemental briefs.  Okay.
15      MR. PADMANABHAN:  Thank you, Your Honor.
16      THE COURT:  Thank you.  Now I'm not going to take
17 any more argument this.
18      Let's move to the scheduling conferences.  I need
19 to set a claim construction schedule.  I'm thinking of it as
20 the MoCA cases on the one hand and the cable cases on the
21 other hand.  I think you have provided me with Rule 26(f)
22 reports along those lines.
23      Let me talk about the MoCA cases first.  I'm
24 looking at ECF 106 filed in the 1048 case.  I'm not sure why
25 I'm looking at this particular one.

**109**

1  MS. GOODRICH: I believe it's September 8th,
2  Your Honor.
3  THE COURT: All right. Well, hopefully DirecTV
4  will retain counsel soon so DirecTV can meaningfully
5  participate in the discussion about case schedules.
6  How soon can you file a stipulation in the cable
7  cases for a claim construction schedule?
8  Everybody is here; that is, everybody is before the
9  Court.
10  MS. GOODRICH: I would say within a week, if not
11  less.
12  MR. PADMANABHAN: That should be fine. I mean,
13  we're just deciding a schedule, so it should be fine.
14  THE COURT: Deadline of August 18th for the parties
15  in the cable cases to file a stipulation for a claim
16  construction schedule. Like I said, the events that you've
17  identified are fine. The relative time between events in
18  general is fine. Just pick a final date that's between that
19  February 27th and October 22nd date.
20  MS. ISAACSON: Yes, Your Honor. Thank you.
21  THE COURT: Okay. And then I will see -- everybody
22  involved in the MoCA cases, are you all coming to the
23  September 8th scheduling conference, or is that just Entropic
24  and DirecTV? I have forgotten where we are.
25  MS. GOODRICH: It's just Entropic and DirecTV,

UNITED STATES DISTRICT COURT

**110**

1  Your Honor.
2  THE COURT: Okay. Well, my hope is when we have
3  that scheduling conference, those two sets of parties can
4  represent on behalf of everybody in the MoCA cases that
5  you've reached a consensus on a case schedule that will trail
6  the cable cases case schedule.
7  MS. GOODRICH: Understood, Your Honor.
8  THE COURT: All right. I really need to get going.
9  What else do we need to accomplish here today?
10  MR. PADMANABHAN: We had one point of
11  clarification, Your Honor. So based on your tentative and
12  the posture of the Comcast case, we understood that there is
13  no discovery in that case pending resolution of the 12(b)(1)
14  issue.
15  THE COURT: There's no jurisdictional discovery.
16  MR. PADMANABHAN: Okay. Understood, Your Honor.
17  THE COURT: Well, that's what the tentative said.
18  MS. GOODRICH: If I may, Your Honor, discovery has
19  been open for weeks now. We did serve discovery on Comcast
20  that is directed to some of the issues raised in the motion
21  to dismiss.
22  Those responses are also due on August 28th. We're
23  hoping that we get responses and documents which might inform
24  the supplemental briefing. If not, amendment if that's
25  necessary.

UNITED STATES DISTRICT COURT

**111**

1  MR. PADMANABHAN: Your Honor, as you can guess, our
2  position is that they're fishing for some basis to allege
3  willfulness, which they should have put in the original
4  complaint.
5  THE COURT: ==Okay. Well, I'm not going to rule on==
6  ==that. The status quo is what it is in terms of discovery.==
7  ==I'm not ruling -- I don't think I need to say any more than==
8  ==that. If you refuse to respond and there's a discovery==
9  ==dispute, I'm sure that that will bubble up through the==
10  ==Special Master.==
11  Is the Special Master here? Yes. Mr. Kaiser, good
12  to see you. So you got say two words. That's good. On the
13  record. It's good to see you here, though. I appreciate it.
14  So that's an issue for you to deal with if that
15  happens. Mr. Kaiser, do you want any more guidance on that
16  right now?
17  MR. KAISER: No, Your Honor.
18  THE COURT: Okay. That's three more words.
19  And again I'm teasing Mr. Kaiser. I'm very happy
20  that he's involved in this case, and I appreciate his
21  service.
22  Okay. What else do we have to deal with today?
23  MS. GOODRICH: Your Honor, just to circle back to
24  something we deal with at the end. You asked if the MoCA
25  standard was in the record. It is attached to the claim

UNITED STATES DISTRICT COURT

**112**

1  charts to the MoCA complaints at Exhibit 4, P and R.
2  THE COURT: Exhibit 4 P --
3  MS. GOODRICH: Excuse me. Exhibits B, P as in
4  Paul, and R to the complaints.
5  THE COURT: Exhibits Bravo, Papa, and Romeo?
6  MS. GOODRICH: Yes.
7  THE COURT: To the complaints in the MoCA cases?
8  MS. GOODRICH: Correct, with claim charts with
9  definitions of the network coordinator citing the MoCA
10  standard.
11  THE COURT: Got it. Okay. Good. Thank you. That
12  answers that question.
13  What else do we need to accomplish today?
14  MS. GOODRICH: Nothing from plaintiff, Your Honor.
15  MS. ISAACSON: Nothing from Cox, Your Honor.
16  MR. PADMANABHAN: Nothing from Comcast, Your Honor.
17  MR. SHARTZER: Nothing from DISH, Your Honor.
18  THE COURT: Okay.
19  Counsel, thank you all very much. I enjoy this
20  case. I will take, of course, all the motions that are
21  pending under submission. I've made -- my minute order
22  memorializing this hearing will reflect the briefing schedule
23  that we talked about and reflect my request that you file
24  those stipulations for the claim construction schedules.
25  I appreciate all of the briefing. Oh, I think --

UNITED STATES DISTRICT COURT

```
 1  comes.
 2          MR. SHARTZER:  Right.  Thank you.
 3          THE COURT:  Okay.  Anything else?
 4          All right.  Counsel, thank you very much.  Special
 5  Master, thank you very much.  I'll see some of you on
 6  September 8th, and I look forward to receiving all the
 7  documents that we talked about you filing with me.
 8          Thank you.
 9          (Proceedings concluded at 1:02 p.m.)
10                      CERTIFICATE
11  I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT
12  TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN
13  THE ABOVE MATTER.
14  FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE
15  REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE
16  REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.
17
18  /s/ Miriam V. Baird        08/17/2023
19  MIRIAM V. BAIRD                  DATE
    OFFICIAL REPORTER
20
21
22
23
24
25
                UNITED STATES DISTRICT COURT
```