1 | BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
2 | ALEX S. YAP (CA SBN 241400)
ayap@mofo.com
3 | ROSE S. LEE (CA SBN 294658)
roselee@mofo.com
4 | MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
5 | Los Angeles, California 90017-3543
Telephone: (213) 892-5200
6 | Facsimile: (213) 892-5454

7 | [Additional counsel on signature page]

8 | Attorneys for Counter-Defendants,
MAXLINEAR, INC. and MAXLINEAR
9 | COMMUNICATIONS LLC

10 | UNITED STATES DISTRICT COURT

11 | CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12 |

| | |
|---|---|
| 13 ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:23-cv-01049-JWH-KES (Lead Case) |
| 14 Plaintiff, | **COUNTER-DEFENDANTS MAXLINEAR, INC. AND** |
| 15 v. | **MAXLINEAR COMMUNICATIONS LLC'S NOTICE OF MOTION AND** |
| 16 COX COMMUNICATIONS, INC.; COXCOM, LLC; AND COX | **MOTION TO DISMISS COUNTERCLAIMS BY COX** |
| 17 COMMUNICATIONS CALIFORNIA, LLC, | **COMMUNICATIONS, INC., COXCOM, LLC, AND COX** |
| 18 Defendants, | **COMMUNICATIONS CALIFORNIA, LLC** |
| 19 | **JURY TRIAL DEMANDED** |
| 20 COX COMMUNICATIONS, INC.; COXCOM, LLC; AND, COX | Judge: Hon. John W. Holcomb Action Filed: Feb. 10, 2023 |
| 21 COMMUNICATIONS CALIFORNIA, LLC, | Counterclaims Filed: Oct. 6, 2023 |
| 22 | **Hearing:** |
| 23 Counter-Claimants, | Date: February 2, 2024 Time: 9:00 a.m. |
| 24 v. | Place: Courtroom 9D, Santa Ana Judge: Hon. John W. Holcomb |
| 25 ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS | |
| 26 LLC, | |
| 27 Counter-Defendants. | |

28 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 2, 2024, or as soon thereafter as counsel may be heard, in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC move to dismiss the counterclaims by Cox Communications, Inc.; CoxCom, LLC; and Cox Communications California, LLC (collectively, "Cox").

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; all pleadings, files, and records in this action; any reply memorandum; and such other argument or evidence that may be presented at the hearing on this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on December 1, 2023.

Date: December 22, 2023      By:   */s/ Bita Rahebi*
                                    Bita Rahebi

                                    *Attorney for Counter-Defendants*
                                    MAXLINEAR COMMUNICATIONS LLC
                                    AND MAXLINEAR, INC.

# <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ...........................................................................................8

II. SUMMARY OF THE FACTS .....................................................................10

    A. MaxLinear ........................................................................................10

    B. Entropic Lawsuit Against Cox.........................................................10

    C. Cox's Inadequately Pleaded Counterclaims ....................................11

III. LEGAL STANDARD...................................................................................12

    A. Rule 12(b)(1)....................................................................................12

    B. Rule 12(b)(6)....................................................................................13

IV. ARGUMENT ................................................................................................14

    A. The Court Should Dismiss the Counterclaims for Lack of
       Standing and Ripeness Under Rule 12(b)(1) ....................................14

       1. Cox lacks standing since the agreement and its pleadings
          contradict the idea that any breach could—or did—occur........14

       2. Cox lacks standing because it fails to plead any plausible
          damages ...............................................................................15

       3. Cox's alleged injury is unripe....................................................15

    B. Cox's Failure to Properly Plead a Breach of Contract Claim
       Warrants Dismissal Under Rule 12(b)(6) ...........................................17

       1. Cox does not allege its own performance.................................17

       2. Cox does not plausibly allege breach .......................................18

       3. Cox does not allege causation or cognizable damages..............19

       4. Cox neglects to plead privity or third-party beneficiary
          status ...................................................................................20

       5. Cox should be not granted leave to amend................................21

    C. Cox Fails to State a Claim as a Matter of Law for Its
       Counterclaim of Unjust Enrichment ...................................................22

       1. No cause of action for unjust enrichment exists in
          California ..............................................................................22

2.  Cox fails to plead sufficient allegations to assert a plausible claim for enrichment or unjustness ...........................23

3.  Cox lacks standing because it cannot explain how MaxLinear's alleged enrichment injured Cox ...........................23

4.  Cox's unjust enrichment counterclaim is duplicative ..............24

V.  CONCLUSION ...................................................................................24

MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-1049-JWH-KES
sf-5684069

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*34-06 73, LLC v. Seneca Ins. Co.,*
  39 N.Y.3d 44 (2022) ............................................................................................... 17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................. 13, 14, 17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................................... 13, 14

*Chandler v. State Farm Mut. Auto. Ins. Co.,*
  598 F.3d 1115 (9th Cir. 2010) ............................................................................... 13

*Clinton v. Acequia, Inc.,*
  94 F.3d 568 (9th Cir. 1996) ................................................................................... 16

*Cole v. Metro. Life Ins. Co.,*
  708 N.Y.S.2d 789 (2000) ........................................................................................ 21

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ................................................................................................ 13

*Doe v. Mindgeek USA Inc.,*
  558 F. Supp. 3d 828 (C.D. Cal. 2021) .................................................................. 22

*Hooked Media Grp., Inc. v. Apple Inc.,*
  55 Cal. App. 5th 323 (2020) .................................................................................. 22

*Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.,*
  No. 18-cv-02120, 2019 WL 669770 (D. Ariz. Feb. 19, 2019) .......................... 24

*L.A. Lakers, Inc. v. Fed. Ins. Co.,*
  869 F.3d 795 (9th Cir. 2017) ................................................................................. 13

*Leite v. Crane Co.,*
  749 F.3d 1117 (9th Cir. 2014) ............................................................................... 12

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................... 13, 14, 15

*Lyons v. Coxcom, Inc.,*
    718 F. Supp. 2d 1232 (S.D. Cal. 2009) ............................................ 22

*Melchior v. New Line Prods., Inc.,*
    106 Cal. App. 4th 779 (2003)........................................................ 22

*Mendel v. Henry Phipps Plaza W., Inc.,*
    6 N.Y.3d 783 (2006)..................................................................... 20

*NFA Grp. v. Lotus Rsch., Inc.,*
    120 N.Y.S.3d 75 (2020) ............................................................... 18

*Novak v. United States,*
    795 F.3d 1012 (9th Cir. 2015) ...................................................... 21

*Nunes v. Ashcroft,*
    375 F.3d 805 (9th Cir. 2004) ................................................... 21, 23

*Portland Police Ass'n v. City of Portland,*
    658 F.2d 1272 (9th Cir. 1981) ...................................................... 16

*Richardson v. City & Cty. of Honolulu,*
    124 F.3d 1150 (9th Cir. 1997) ...................................................... 16

*Safari v. Whole Foods Mkt. Servs., Inc.,*
    No. 22-cv-01562, 2023 WL 5506014 (C.D. Cal. July 24, 2023)....................... 12

*In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales
    Practices, & Prods. Liab. Litig.,*
    754 F. Supp. 2d 1145 (C.D. Cal. 2010)............................................ 22

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ...................................................... 13

**Other Authoritites**

U.S. Const. Art. III ..........................................................*passim*

Fed. R. Civ. P.
    8 ............................................................................................. 9, 17, 19
    12(b)(1) .................................................................................. 12, 13, 14
    12(b)(6) ........................................................................... 9, 12, 13, 17
    15 .......................................................................................................... 21

L.R. 7-3 .................................................................................................... 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In February 2023, Entropic Communications, LLC ("Entropic") commenced the underlying patent litigation against Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC (collectively, "Cox"). In October, Cox amended its answer to assert two counterclaims against MaxLinear, Inc. and MaxLinear Communications, LLC (collectively, "MaxLinear"). (*See* Cox's First Am. Answer and Defenses to Compl. and Countercls. (ECF No. 87).)[1]

Cox's two Counterclaims—one for breach of contract and another for unjust enrichment—arise from an alleged licensing agreement between MaxLinear and Cable Television Laboratories, Inc. ("CableLabs"), a non-party to this lawsuit. That licensing agreement concerns the Data Over Cable Service Interface Specification ("DOCSIS") standard. (*See* Counterclaims, Ex. A (the "DOCSIS License Agreement") (ECF No. 87-1).) It permits CableLabs to sublicense its own rights from MaxLinear to other DOCSIS users, albeit under very specific conditions.

Cox invokes the DOCSIS Agreement to claim that MaxLinear supposedly transferred patents to Entropic while seeking "to avoid encumbrances on its patents, including royalty-free, perpetual and irrevocable licenses granted to practice patents applicable to certain standards." (Counterclaims, ¶ 267.) Cox says that MaxLinear gave CableLabs "royalty-free, perpetual and irrevocable licenses to its patents in its (or its affiliates) portfolio that are essential for compliance with, and any patented inventions described in, the DOCSIS specifications." (*Id.*, ¶ 289; *see also id.*, ¶ 286.)

---

[1] This Motion refers to paragraphs 1-266 of Cox's pleading as the "Amended Answer" and to paragraphs 267-319 as the "Counterclaims." By citing to the pleadings in this action, including Entropic's Complaint and Cox's Amended Answer and Counterclaims, MaxLinear does not admit the truth of their allegations. MaxLinear only accepts them as true for purposes of this Motion.

That core allegation fails to state a claim or even supply basic Article III standing for either Counterclaim.  The DOCSIS License Agreement allowed CableLabs to sublicense its own rights from MaxLinear to other DOCSIS users under specified conditions.  To the extent that Cox lacks a sublicense to the asserted patents from CableLabs, the issue would be with CableLabs.  The DOCSIS License Agreement provides instructions and conditions for an entity seeking a sublicense to obtain one.

Confusingly, Cox also alleges that it is *already* "sublicensed to the Asserted Patents to the extent necessary to practice DOCSIS." (*Id.*, ¶ 307.)  If so, Cox loses any basis to assert a cause of action against MaxLinear or recover damages. (*See id.*, ¶¶ 307-309.)  At best, Cox could assert the sublicense as an affirmative defense, but it cannot mutate an affirmative defense into a cause of action against MaxLinear.[2]

Myriad other pleading deficiencies reinforce Cox's lack of standing.  Cox fails to explain how it incurred any harm from MaxLinear's purported license to CableLabs or how MaxLinear's assignments to Entropic affected the alleged rights of CableLabs (or Cox).  Cox further fails to allege any facts supporting its alleged injury.  Absent a concrete and particularized injury, Cox lacks standing.

If its lack of standing were not sufficient for dismissal, Cox's failures to satisfy the basic pleading requirements of Rules 8 and 12(b)(6) are more than adequate.  For its breach of contract counterclaim, Cox has not pleaded the key elements: the existence of a contract; Cox's performance or excuse for nonperformance; MaxLinear's breach; and damages.

Curiously, Cox does not cite a single provision of the DOCSIS License Agreement that MaxLinear supposedly breached.  Per its plain terms, the agreement

---

[2] For the sublicense to qualify as an affirmative defense assumes, among other things, that the DOCSIS Agreement even applies to any of the asserted patents in the first instance—an allegation that Cox completely sidesteps and fails to allege.

9

applies only to patents "essential for compliance" with the DOCSIS specifications. (Agreement, § 1.2.)  Cox does not allege that any asserted claim or patent is essential—and, in fact, takes great pains to avoid stating so.[3]  As to its own performance, Cox fails to allege that it complied with the License Agreement's terms, *e.g.*, by requesting a sublicense without objection and then reciprocally licensing its essential patents to CableLabs.  It also alleges no cognizable damages from MaxLinear's alleged breach.  (*See* Counterclaims, ¶¶ 304-310.)

Cox's unjust enrichment counterclaim fares no better and fails for four independent reasons.  First, California law recognizes no independent cause of action for unjust enrichment.  Second, although Cox alleges that MaxLinear was enriched by its participation in DOCSIS, it pleads no facts suggesting that it was unjust.  Third, Cox fails to plead how MaxLinear's alleged unjust enrichment injured Cox.  Absent an injury-in-fact, Cox again lacks Article III standing.  Fourth, Cox's unjust enrichment counterclaim is duplicative of its breach counterclaim.

For these reasons, MaxLinear asks that the Court dismiss Cox's Counterclaims for lack of subject matter jurisdiction and without leave to amend.

## II.   SUMMARY OF THE FACTS

### A.   MaxLinear

MaxLinear, Inc. is a leading innovator of radiofrequency, analog, digital, and mixed-signal semiconductor solutions.  (Complaint, ¶ 26.)  In 2015, MaxLinear, Inc. acquired Entropic Inc. and its MoCA-related intellectual property, including the asserted patents.  (*Id*.)  MaxLinear, Inc. transferred these and other patents to Entropic, the plaintiff in this action, in 2021.  (*Id*., ¶ 27.)

### B.   Entropic Lawsuit Against Cox

Before filing this lawsuit, Entropic attempted to "engage Cox and/or its agents in good faith licensing discussions regarding Entropic's patent portfolio,"

---

[3] As discussed below, Cox's inability to identify which asserted claims or patent(s) are covered by its alleged sublicense warrants dismissal.

including the asserted patents.  (*Id.*, ¶ 21.)  Cox did not respond to these communications.  (*See* Amended Answer, ¶ 21.)

Accordingly, in February 2023, Entropic sued Cox for patent infringement. Entropic alleges that Cox has used its patented innovations to "provide enhanced and expanded services to customers, which in turn has increased revenues for Cox while at the same time reducing costs."  (Complaint, ¶ 28.)

### C.    Cox's Inadequately Pleaded Counterclaims

Cox does not affirmatively allege that the asserted patents are essential for compliance with the DOCISIS specificications.  In its Counterclaims, however, it asserts that "MaxLinear has sought to avoid encumbrances on its patents in violation of their contractual obligations."  (Counterclaims, ¶ 267.)

Cox's Counterclaims invoke the License Agreement between CableLabs and MaxLinear.  (*See, e.g., id.*, ¶¶ 281-303.)  Under this agreement, MaxLinear granted CableLabs a license under its "Licensed Technology" to make "Licensed Products." (Agreement, § 2.1.)  "Licensed Technology" refers to the Licensor's "patents, all issued patents, pending applications and subsequently filed applications ***essential for compliance*** with" the DOCSIS specifications.  (*Id.*, § 1.2 (emphasis added).) "Licensed Products" refers to "products or systems utilizing or incorporating the Licensed Technology ***solely to the extent necessary*** for purposes of conforming to the" DOCSIS specifications.  (*Id.*, § 1.3 (emphasis added).)

Sublicensees may benefit from CableLabs's license upon request "from CableLabs."  (*Id.*, § 2.2.)  Licensors, however, may object.  (*Id.*)  A sublicense may receive a sublicense only if it grants CableLabs a reciprocal license.  That license also must be "on the same terms and conditions" as the License Agreement. (*Id.*, § 2.5.)

In its Counterclaims, Cox does not allege that it sought a sublicense or granted CableLabs a reciprocal license under the same terms and conditions as the

License Agreement.  To the contrary, it ignored Entropic's pre-suit licensing offers. (Complaint, ¶ 21.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) allows the dismissal of a counterclaim for lack of subject matter jurisdiction.  Under this rule, a counter-defendant may challenge a counterclaimant's "jurisdictional allegations in one of two ways"—via a facial attack or a factual attack.  *Safari v. Whole Foods Mkt. Servs., Inc.*, 2023 WL 5506014, at *3 (C.D. Cal. July 24, 2023) (Holcomb, J.) (*quoting Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)).

A facial attack accepts the counter-defendant's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Leite*, 749 at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6).  Accepting the counterclaimant's allegations as true and drawing all reasonable inferences in its favor, the court determines "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

A factual attack, in contrast, contests "the truth of the plaintiff's factual allegations"—typically by introducing evidence outside the pleadings. *Id*.  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id*. (internal citation omitted).  A counterclaimant such as Cox bears the burden of proving, by a preponderance of evidence, that it meets the requirements for subject matter jurisdiction. *See id.*  If the existence of jurisdiction turns on "disputed factual issues," the court may resolve those factual disputes. *Id*. at 1121-22.

A counter-defendant may challenge standing under Rule 12(b)(1).  As the

party invoking the federal court's jurisdiction, a counterclaimant like Cox bears the burden of alleging specific facts sufficient to prove its Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("The party asserting federal subject matter jurisdiction bears the burden of proving its existence.").  A counterclaimant must do so for "each claim" and "each form or relief" that it seeks.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations omitted).  If it does not, Rule 12(b)(1) allows the dismissal of the counterclaims for lack of subject matter jurisdiction. *See Chandler*, 598 F.3d at 1122; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (dismissal is appropriate where face of pleadings does not demonstrate basis for standing).

The related doctrine of ripeness enables a court to dispose of a matter that is premature for review, *e.g.*, because the purported injury is too speculative and may never occur.  Because "ripeness pertain[s] to federal courts' subject matter jurisdiction," it may "properly [be] raised in a Rule 12(b)(1) motion to dismiss." *Chandler*, 598 F.3d at 1122.

**B.      Rule 12(b)(6)**

A counterclaim should be dismissed under Rule 12(b)(6) where counterclaimants fail to assert a cognizable legal theory or the counterclaims contain insufficient facts to support a cognizable legal theory.  *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).  To survive a motion to dismiss, the counterclaim must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The counterclaim must be pleaded with "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that rises "above the speculative

13

level," *Twombly*, 550 U.S. at 555.  A counterclaim has "facial plausibility" when it "pleads factual content that allows the court to draw the reasonable inference that the [counter-]defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Like a complaint, a counterclaim must contain "well-pleaded facts" from which the court can "infer more than the mere possibility of misconduct." *Id*. at 679.

## IV.   ARGUMENT

### A.   The Court Should Dismiss the Counterclaims for Lack of Standing and Ripeness Under Rule 12(b)(1)

Cox's two Counterclaims are unripe and lack any plausible injury-in-fact that can be redressed by a favorable decision.  The Court should dismiss both.  The "irreducible constitutional minimum of standing" requires an injury-in-fact.  *Lujan*, 504 U.S. at 561.  To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Id.* at 560.  Moreover, it must be "'likely'" and not "merely 'speculative'" that "the injury will be 'redressed by a favorable decision.'"  *Id*. at 561.  "Since the[se] are not mere pleading requirements but rather an indispensable part of the plaintiff's case," a plaintiff must support its alleged injury-in-fact and redressability "in the same way as any other matter on which [it] bears the burden of proof."  *Id*.

### 1.   Cox lacks standing since the agreement and its pleadings contradict the idea that any breach could—or did—occur

Cox's allegation that MaxLinear somehow "sought to avoid encumbrances on its patents" under the License Agreement (Counterclaims, ¶ 267) cannot supply a plausible and cognizable injury.  The License Agreement itself and Cox's own pleading contradict that allegation.

Under the License Agreement, MaxLinear licensed certain patent rights to

14

CableLabs—which in turn could sublicense them to others under specific conditions. MaxLinear thus could not have sought (and did not seek) to avoid anything. Cox's assertion that it has *already* received a sublicense further rebuts Cox's allegation. (*See, e.g.*, *id*., ¶ 307.)

Additionally, the License Agreement also applies only to patents "essential" to practicing the DOCSIS specifications. (License Agreement, § 1.2.) Cox, however, makes no factual averments that the asserted patents are essential. Cox thus fails to show that the License Agreement even applies to its Counterclaims.

### 2. Cox lacks standing because it fails to plead any plausible damages

Mirroring its pleadings in a co-pending action,[4] Cox generically says it "has been injured in their business or property, and has suffered and will continue to suffer damages." (Counterclaims, ¶ 310.) In the context of its unjust enrichment counterclaim, Cox further alleges that MaxLinear has somehow "created additional expense and uncertainty for Cox and its business." (*Id*., ¶ 318.)

These generalized allegations of injury do not show a "concrete" and "particularized" injury sufficient for Article III standing. *Lujan*, 504 U.S. at 560. Cox alleges zero facts to support its alleged injury. It does not even identify which "business or property" is at issue. Nor does it provide any clue as to what "additional expense and uncertainty" MaxLinear allegedly has caused it to suffer. That Cox might need to pay licensing fees to Entropic's patents or stop its alleged infringement does not give rise to an injury-in-fact.

### 3. Cox's alleged injury is unripe

The pivotal concern of the ripeness inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed

---

[4] *See* First Am. Answer and Defenses to Compl. and Countercls. (ECF No. 94), *Entropic v. Cox*, Case No. 23-cv-01047-JWH-KES (C.D. Cal. Oct. 6, 2023) (where Cox asserts counterclaims against MaxLinear in the context of MoCA).

may not occur at all." *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997).  Where a dispute hangs on "future contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), it may be too "impermissibly speculative" to present a justiciable controversy.  *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981).

Here, to the extent Cox can allege any injury at all, Cox's counterclaims still would be unripe for adjudication.  The Court would need to determine first whether any asserted patent is "essential" to practicing the DOCSIS specifications.  As noted, the License Agreement applies only to "essential" Patents.  (License Agreement, § 1.2.)  If none of the asserted patents is essential, then the DOCSIS License Agreement no longer applies, and the entire basis for Cox's Counterclaims evaporates.

Importantly, Cox itself does not affirmatively allege that any asserted patent is essential to practice the DOCSIS specifications.  Instead, it relies on purported "averments" in Entropic's Complaint that "one or more of the Asserted Patents are essential to compliance with the DOCSIS specifications."  (Counterclaims, ¶ 299.)  ***Entropic itself, however, never makes that allegation***.  To the contrary, in resolved litigation against Charter Communications, Inc. on the same patents, Entropic has expressly denied that the patents are standards-essential.  *See Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 2:22-cv-125, ECF Nos. 357, 399 (E.D. Tex. 2023).

Cox also alleges that "Plaintiff's averments directly implicate the DOCSIS specifications" because three of the eight asserted patents contain components or technology that are "addressed in DOCSIS."  (Counterclaims, ¶ 300.)  But it does not follow from these products' uses of DOCSIS-compliant or related components or technology that the three identified patents are themselves standards-***essential***.

16

**B.**   **Cox's Failure to Properly Plead a Breach of Contract Claim Warrants Dismissal Under Rule 12(b)(6)**

A cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach. *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022).  Cox's first counterclaim fails to plead any of the required elements.  The failure to plead even one element sufficiently warrants dismissal.  Cox does not allege that the DOCSIS License Agreement applies to this case.

Cox engages in strategic ambiguity.  It avoids taking a position on whether any of the asserted patents are essential to practicing the DOCSIS specifications. Although it devotes ten-plus pages to its Counterclaims, not once does it definitively allege that the License Agreement applies.

The License Agreement expressly applies only "to the extent necessary to practice DOCSIS."  (Counterclaims, ¶ 307.)  Technology licensed under the agreement expressly excludes that "related to Digital Video Broadcast (DVB) or OpenCable."  (DOCSIS License Agreement, § 1.2.)  Cox's intentionally ambiguous pleading therefore fails Rule 8, as it leaves uncertain whether the License Agreement even applies.  *See Iqbal*, 556 U.S. at 678 (complaint insufficient "if it tenders naked assertions devoid of further factual enhancement") (internal quotation and citation omitted).

**1.**   **Cox does not allege its own performance**

Cox has failed to allege that it performed all conditions on its part or was excused from performance. *34-06 73, LLC*, 39 N.Y.3d at 52.  It does not allege that it ever requested a sublicense, marked its products, or certified their compliance.

The License Agreement obligates a "potential sublicensee" to first "request a sublicense to the License Technology."  (License Agreement, § 2.2.)  It also

17

obligates sublicensees to "mark each Licensed Product in the form, manner and location agreed between Licensor and such sublicensee, ***with one or more patent numbers of patents*** *in such countries under, which a license is granted . . . .*" (*Id.*, § 4.1 (emphasis added).)  It further requires sublicensees to "use [their] best efforts to certify each Licensed Product in accordance with the certification procedures posted on the DOCSIS web site." (*Id.*, § 4.3.)  Problematically, Cox neglects to plead that it complied with any of those requirements.[5]  Even though the purportedly Licensed Products are in its possession, it does not allege or attach exhibits to show that they have been marked with the Asserted Patent numbers.

To the extent that Cox relies on performance by its vendors, it does not identify which products are supposedly licensed.  Nor does Cox explain whether those vendors requested a sublicense, marked their products, or certified their compliance.

### 2.    Cox does not plausibly allege breach

A telltale sign of inadequate pleading is a party's inability to identify the text or section at issue.  *See NFA Grp. v. Lotus Rsch., Inc.*, 120 N.Y.S.3d 75, 76 (2020) (dismissing complaint where plaintiff "failed to specify the provisions of the parties' agreement that were allegedly breached").  In its Counterclaims, Cox nowhere identifies the specific provision of the License Agreement that MaxLinear allegedly violated.  (*See, e.g.*, Counterclaims, ¶¶ 304-314.)  It therefore has failed to adequately plead MaxLinear's breach.

Cox alleges only that MaxLinear breached its contractual obligations by "accepting an interest in the outcome of this suit." (Counterclaims, ¶ 309.)  But Cox points to no provision in the License Agreement that prohibits acceptance of an interest in a lawsuit's outcome.  To the contrary, it expressly allows MaxLinear "to determine the appropriate course of action to enforce its rights in Licensed

---

[5] Cox attaches as Exhibit B to its Counterclaims a "list of DOCSIS IPR Agreement Signatories."  (ECF No. 87-2.)  Cox itself is not on the list.

Technology," "to control any litigation or other enforcement action," and "to enter into, or permit, the settlement of any such litigation or other enforcement action with respect to Licensed Technology." (License Agreement, § 6.2.)

Cox also suggests that MaxLinear's "attempt[] to assign the Asserted Patents free of any encumbrances" constitutes a breach of the License Agreement. (Counterclaims, ¶ 309.) Per Cox, when transferring the patents to Entropic, MaxLinear failed to "ensur[e] that Entropic would honor MaxLinear's royalty-free licensing obligations as a purported successor-in-interest." (*Id*.)

Those allegations are insufficient to show an alleged breach for four reasons.

First, as a threshold matter, Cox does not identify what in the License Agreement imposed this obligation to "ensure that Entropic would honor MaxLinear's royalty-free licensing obligations" on MaxLinear. Second, an "attempted" breach is not itself a breach. Third, Cox fails to identify facts indicating when and how this "attempt" occurred. Fourth, Cox's allegation that it is already sublicensed to the asserted patents contradicts any claim of breach.[6] (*See id.*, ¶ 307.) For any and all of these reasons, Cox's breach claim fails.

### 3.    Cox does not allege causation or cognizable damages

Cox fails to plausibly allege damages or explain how MaxLinear's acts or omissions caused those damages. Cox merely alleges that it "has been injured in their business or property," "has suffered and will continue to suffer damages," and has endured "additional expense and uncertainty." (Counterclaims ¶¶ 310, 318.) As noted above, those vague and conclusory allegations are insufficient under Rule 8 and cannot confer Article III standing. Critically, Cox does not tie MaxLinear's alleged "attempt[] to assign the Asserted Patents free of any encumbrances" or

---

[6] To the extent that Cox seeks to rely upon alleged MaxLinear's breach of alleged sublicenses to Cox's vendors, Cox does not identify those vendors. The same deficiencies as to its breach claims also would still apply.

alleged failure to "ensur[e] that Entropic would honor MaxLinear's royalty-free licensing obligations" to any injury to Cox.  (*Id.*, ¶ 309.)

Cox's inconsistent allegations render its damages allegations all the more implausible.  On the one hand, Cox avers that MaxLinear somehow breached the License Agreement by failing to require that Entropic license the transferred patents on a royalty-free basis.  On the other hand, Cox expressly pleads that it is already "sublicensed to the Asserted Patents to the extent necessary to practice DOCSIS" and that "no action on those patents [therefore] can be maintained against Cox" on the basis of "license[] or exhaust[ion]."  (*Id.*, ¶ 307.)  If Cox is already licensed to the patents as it alleges, then it has suffered no damages.

### 4.    Cox neglects to plead privity or third-party beneficiary status

Finally, Cox does not allege that it directly entered into an agreement with MaxLinear.  Instead, Cox suggests it is the third-party beneficiary under the License Agreement.  (*See* Counterclaims, ¶ 287.)  This contention fails.

Third-party beneficiary status is an exception to the general rule that a plaintiff must have privity to sue for breach.  It requires proof that the parties to the underlying agreement ***intended*** to benefit the alleged third-party beneficiary.  "Parties asserting third-party beneficiary rights under a contract must establish the existence of a valid and binding contract between other parties, that the contract was intended for their benefit and that the benefit to them is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost."  *Mendel v. Henry Phipps Plaza W., Inc.*, 6 N.Y.3d 783, 784 (2006).  "One is an intended beneficiary if one's right to performance is appropriate to effectuate the intention of the parties' to the contract *and* . . . the circumstances indicate that the promisee intends to give the beneficiary

the benefit of the promised performance." *Cole v. Metro. Life Ins. Co.*, 708 N.Y.S.2d 789, 790 (2000) (internal quotation and citation omitted).

Cox does not plead facts showing its intended third-party beneficiary status.[7] It is also unclear which Cox entities it is alleging had a sublicense.  Worse, the terms of the DOCSIS License Agreement contradict that contention.  Hardly a no-strings-attached royalty-free sublicense, the License Agreement expressly limits its benefits to sublicensees.  Among other things, a prospective sublicensee must first "request a sublicense . . . from CableLabs" and also reciprocally license its own patents.  (License Agreement, §§ 2.2, 2.5.)  As noted, Cox has made no showing that it has complied with either requirement.

### 5.   Cox should be not granted leave to amend

The dismissal of Cox's counterclaims should be without leave to amend. Courts consider five factors when considering whether to allow amendment under Rule 15: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) the futility of amendment, and (5) whether the plaintiff has previously amended its complaint.  *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

As discussed above, Cox does not allege facts showing that MaxLinear breached the License Agreement, and there is no reason to think that Cox can cure its pleading defects.  If Cox already enjoyed a sublicense to the patents as it alleges, then it has no claim against MaxLinear.  On the other hand, if Cox contends that it is entitled to a sublicense that it has not yet received, then its issue is with CableLabs, not MaxLinear.  The futility of Cox's anticipated amendments warrants denying leave to amend.  *See Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.").

---

[7] If anything, Cox's own exhibit throws cold water on the idea that it could be a third-party beneficiary because no Cox Counterclaimant is listed there as a DOCSIS IPR signatory.  (*See* Counterclaims, Ex. B (ECF No. 87-2).)

Cox's prior amendment to its Answer and its sophistication also weigh against amendment.  Cox is no *pro se* plaintiff; it knows how to state a claim for breach of contract and how to identify a faulty one.  *See Lyons v. Coxcom, Inc*., 718 F. Supp. 2d 1232, 1239 (S.D. Cal. 2009) (where Cox successfully moved to dismiss an insufficiently pleaded breach of contract claim).  Cox's failure to plead an adequate breach claim from the get-go suggests that it cannot, that it knows this, and that the sole aim of its counterclaims is leverage.

Cox does not deserve another bite at the apple.  Aside from being futile, further amendments would increase litigation costs, add delay, and consume additional judicial resources.  Dismissal without leave to amend is warranted here.

## C.   Cox Fails to State a Claim as a Matter of Law for Its Counterclaim of Unjust Enrichment

### 1.   No cause of action for unjust enrichment exists in California

"The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so."  *Melchior v. New Line Prods., Inc*., 106 Cal. App. 4th 779, 793 (2003) (internal citations and quotations omitted).  Accordingly, "there is no cause of action in California for unjust enrichment."  *Id.*; *accord In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D. Cal. 2010) ("Courts consistently have held that unjust enrichment is not a proper cause of action under California law.").

Consistent with other California courts to address the same issue, the Court should dismiss Cox's counterclaim for unjust enrichment for failure to state a claim.  *See id.* (dismissing unjust enrichment claim with prejudice under Rule 12(b)(6)); *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 844 (C.D. Cal. 2021) (Carney, J.) ("Like many other courts in this district, the Court believes that unjust enrichment is not a separate cause of action in California"); *Hooked Media Grp.,*

*Inc. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020) ("Summary adjudication . . . [is] proper because California does not recognize a cause of action for unjust enrichment"). As no amendment can cure this defect, amendment would be futile. *See Nunes*, 375 F.3d at 808.

### 2.    Cox fails to plead sufficient allegations to assert a plausible claim for enrichment or unjustness

The prior analysis should end the inquiry. But even if a claim for unjust enrichment did exist in California, Cox's allegations would be insufficient.

Although Cox alleges that MaxLinear's participation in the DOCSIS license pool enriched it, its related allegations are conclusory. Cox offers no details as to how or why MaxLinear was more greatly "enriched" than any other participant. As Cox has failed to plead facts showing that MaxLinear was "enriched" and "unjustly" so, the Court should dismiss its unjust enrichment counterclaim.

Moreover, as explained above, Cox does not even plead facts showing that the asserted patents are essential to practicing the DOCSIS specifications. Absent that showing, the License Agreement is inapplicable—and MaxLinear's alleged enrichment via that agreement is nonsensical.

### 3.    Cox lacks standing because it cannot explain how MaxLinear's alleged enrichment injured Cox

Cox's failure to plead how MaxLinear's alleged enrichment injured Cox further warrants dismissal for lack of standing. Although Cox alleges that it has incurred "expenses" as a result of MaxLinear's alleged unjust enrichment, it offers no details as to what those expenses are or how or why those unnamed "expenses" somehow enriched MaxLinear. (Counterclaims, ¶ 318.) Their implicit "unjustness" also is highly doubtful, as it has made no showing that it ever complied with the License Agreement's requirements for sublicensees and refused to engage in pre-suit license negotiations with Entropic.

23

Nor does Cox's allegation that MaxLinear's patent transfers to Entropic have created "uncertainty for Cox and its business" help it. (*Id*.) Cox does not explain how MaxLinear's transfer of patents to Entropic creates any uncertainty for Cox, when the DOCSIS License Agreement does not bar such transfers.

As noted above, Cox's claim to ***already*** be licensed to Entropic's patents undermines any claim of injury. (*See id.*, ¶ 307.) The absence of an injury-in-fact further warrants dismissal of its unjust enrichment counterclaim.

### 4.    Cox's unjust enrichment counterclaim is duplicative

Cox's unjust enrichment counterclaim is nothing more than a rehash of its breach of contract counterclaim: it alleges in substance that MaxLinear's transfer of patents somehow runs afoul of the DOCSIS License Agreement.

As Cox itself has successfully argued before another federal court, the Court should dismiss its unjust enrichment claim as entirely redundant. *See Kenneth Eisen & Assocs., Ltd. v. CoxCom, Inc.*, 2019 WL 669770, at *4 (D. Ariz. Feb. 19, 2019) (dismissing the unjust enrichment claim as redundant in Arizona, a jurisdiction that recognizes such claim). In *Kenneth Eisen*, the court explained that "an unjust enrichment claim that relies on a contract cannot stand" because it necessarily assumes that "no contractual remedy exists." *Id.* That logic warrants dismissal of Cox's unjust enrichment claim here. Either (1) a contract exists and the unjust enrichment counterclaim is duplicative, or (2) no contract exists and any related unjust enrichment claim also must fall.

## V.    CONCLUSION

Cox's breach of contract counterclaim suffers from numerous incurable deficiencies, and its unjust enrichment counterclaim fares no better. MaxLinear therefore asks that the Court dismiss with prejudice the counterclaims against it for lack of jurisdiction and Cox's failure to state a claim.

1  Dated:        December 22, 2023            MORRISON & FOERSTER LLP

2

3                                            By:   /s/ Bita Rahebi
                                                   Bita Rahebi
4
                                             BITA RAHEBI (CA SBN 209351)
5                                            brahebi@mofo.com
                                             ALEX S. YAP (CA SBN 241400)
6                                            ayap@mofo.com
                                             ROSE S. LEE (CA SBN 294658)
7                                            roselee@mofo.com
                                             MORRISON & FOERSTER LLP
8                                            707 Wilshire Boulevard, Suite 6000
                                             Los Angeles, California 90017-3543
9                                            Telephone:    (213) 892-5200
                                             Facsimile:    (213) 892-5454
10
                                             RICHARD S.J. HUNG (CA SBN
11                                           197425)
                                             rhung@mofo.com
12                                           MORRISON & FOERSTER LLP
                                             425 Market Street,
13                                           San Francisco, California 94105-
                                             2482
14                                           Palo Alto, California 94304-1018
                                             Telephone:    (415) 268-7000
15                                           Facsimile:    (415) 268-7522

16                                           Attorneys for Counter-Defendants
                                             MAXLINEAR, INC. and
17                                           MAXLINEAR
                                             COMMUNICATIONS LLC
18

19

20

21

22

23

24

25

26

27

28

                                       25

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 5146 words, which complies with the word limit of L.R. 11-6.1

Dated:        December 22, 2023          By: */s/ Bita Rahebi*
                                              Bita Rahebi