# EXHIBIT D

1

1  (BE ADVISED THAT ALL ROUGH DRAFTS WILL BE FOLLOWED BY

2     A CERTIFIED COPY AND BILLED APPROPRIATELY)

3

4                    ROUGH DRAFT

5                UNCERTIFIED TRANSCRIPT

6

7          Remote Hearing in the Matter of

8  ENTROPIC COMMUNICATIONS, LLC, AND COX COMMUNICATIONS,

9     INC.; COX.COM, LLC; AND COX COMMUNICATIONS

10                 CALIFORNIA, LLC

11             Wednesday, December 20, 2023

12

13          This realtime draft is unedited and

14  uncertified and may contain untranslated steno, an

15  occasional reporter's note and/or nonsensical English

16  word combinations.  All such entries will be

17  corrected on the final certified transcript, when

18  ordered, upon its delivery in accordance with our

19  standard delivery terms.

20          This realtime draft is intended only for the

21  purpose of augmenting counsel's notes and is not

22  intended to be used or cited in any court

23  proceedings.

24

25

2

1   ZOOM VIDEOCONFERENCE; WEDNESDAY, DECEMBER 20, 2023

2          MORNING SESSION, 7:32 A.M.

3        HON. DAVID M. KEYZER, ARBITRATOR

4                 --o0o--

5

6          SPECIAL MASTER KEYZER:  Let's go on the

7  record.  Hold on just a second.

8          Okay.  We're now on the record.

9          We are here for a discovery hearing in lead

10  Civil Action Number 2:23-cv-01049 in the Central

11  District of California.

12          Today's hearing involves Plaintiff

13  Entropic Communications, LLC, and Defendants Cox

14  Communications, Inc.; Cox.com, LLC; and

15  Cox Communications California, LLC.

16          This hearing is being conducted by

17  videoconference in accordance with Local Rule 83-6.

18          Any audio or video recording of this hearing

19  is prohibited, except for purposes allowed for by the

20  local rule, such as by the reporter for purposes of

21  creating a transcript of this hearing.

22          My name is David Keyzer.  Presiding

23 Judge John W. Holcomb entered orders on July 5, 2023,

24 appointing me to serve as a special master in these

25 cases.  This hearing is open to the public; so please

                                                        3


 1 let me know if any portion of today's proceeding

 2 needs to be sealed.  We can discuss how to handle

 3 that if and when the need arises.

 4          Let's now have announcements on behalf of

 5 the parties, and please let me know who will be

 6 presenting arguments today.  Let's hear from the

 7 plaintiff first.

 8          MS. ALLOR:  Good morning.

 9          Katherine Allor, on behalf of Plaintiff

10 Entropic Communications, Inc.

11          And with me is my colleagues, Cassidy Young

12 and Kyle Kantarek.

13          MR. SAUL:  Good morning, Mr. Keyzer.

14          Andrew Saul, for the Cox defendants, of the

15 law firm Kilpatrick Townsend & Stockton.

16          Also with me today are April Isaacson,

17 Michael Turton, and Chris Leah, also for the Cox

18 defendants, of my firm.

19          SPECIAL MASTER KEYZER:  Okay.  Thank you,

20 counsel.  And thank you for accommodating my schedule

21 this morning.

22          Our time is fairly short; so I want to focus

23 our discussion.  I reviewed your papers, and

24 I understand the issues, and I can handle most of

25 those on the papers, I think, particularly as to the

                                                           4

1 addition of additional accused cable modems.  At this

2 point I am inclined to deny the motion to strike the

3 addition of those, having reviewed your papers.

4          Also, as to the representative charting

5 issue, I think to some extent this might be

6 premature, as has been argued in the responsive

7 letter brief.  At this stage I think that the primary

8 purpose is to give notice of what features are

9 accused, and then whether there is an insufficiency

10 of proof as to particular models, that may be an

11 issue that gets faced down the road.

12          I am focused on, for purposes of discovery,

13 whether proper notice is being provided; so I am

14 happy to hear discussion of that issue, if you would

15 like, but that is tentatively how I am viewing that.

16 Perhaps most interested in hearing about the

17 arguments on the specific limitations that the

18 parties feel or that the -- the moving party, the Cox

19 defendants, feel there is some deficiency in the

20 contentions.

21          I did take a look at those in some detail.

22 I had some concern about the '866 patent, the desired

23 television channels, undesired television channels

24 performing functions without providing any of the

25 undesired channels.  Those seemed to me to be

5

1 a little bit thin on the contentions as to how those

2 distinctions are being made.  But in viewing that,

3 I am also considering that we are at an early stage

4 in this case and that the plaintiff's access to

5 information at this point is probably pretty limited,

6 and so I want to hear discussion as well about what

7 the plaintiff needs, what the defendant is providing,

8 and how we have going to move this forward so that

9 the parties are prepared to identify terms for claim

10 construction in February and proposed constructions

11 in March.  I believe this is set for a claim

12 construction hearing July 16th of 2024; so I'm

13 looking at this with an eye toward preparing the

14 parties for claim construction proceedings.

15          And -- and when I look at the docket,

16 I believe that this case has a schedule up to claim

17 construction, at least for purposes of the

18 consolidation.  I'm not sure what happens after that;

19 so I'm focused on what happens over the next six

20 months or so.

21         So with that, I'm happy to hear from the

22 moving party first, which is the Cox defendants.

23         MR. SAUL:  Thank you, Mr. Keyzer.

24         Good morning, again.

25         If I may, also wrapped up in the -- the --

                                                        6

1 the first issue that you listed, the issue of the

2 representative products, it is also a dispute about

3 Entropic's accusations against a vaguely defined

4 category of products that operate in a similar

5 manner.  If you'll permit me, I would like to address

6 that briefly --

7         SPECIAL MASTER KEYZER:  Sure.

8         MR. SAUL:  -- at the outset.

9         On September 15th, more than three months

10 ago, Entropic's infringement contentions were due in

11 this case.  On that day Entropic had an obligation to

12 disclose the accused instrumentalities, at least as

13 it was then aware.

14          The first of the problems with Entropic's

15 infringement contentions, and which remain the

16 problem in the amended charts that you have seen, is

17 Entropic chooses not only a specifically named list

18 of products but also a vague, undefined category of

19 products that operate in a, quote, unquote, similar

20 manner.

21          What does products that work in a similar

22 manner tell us, Mr. Keyzer?  Absolutely nothing.

23          The whole process, as you know, in

24 infringement contentions is set up so that we can

25 understand precisely what Entropic is accusing and so

                                                      7

1 that we can prepare our defenses accordingly.

2          We raised the issue of the -- the -- the --

3 the language in the infringement contentions accusing

4 this vaguely defined category of products that

5 operate in a similar manner to Entropic during the

6 meet and confer, and the response that we got from

7 Entropic in the amended charts was the dumping in of

8 nearly sixty additional cable modems.  I understand

9 Your Honor has made up his mind about that issue.

10          But what remains is that there is still the

11 category at the end of that list of products that

12 additionally products that, quote, unquote, operate

13 in a similar manner are also accused; so it is our

14 position that there is just -- that there is no

15 notice as to the scope of the accused

16 instrumentalities in this case, and we are just -- we

17 are not -- we are not able to -- to -- to understand,

18 you know, what is that category of products that

19 Entropic believes operated in a similar manner?

20          So we'd ask -- we'd ask that you strike the

21 infringing contentions to the extent that they de- --

22 that they accuse products that, quote, unquote,

23 operate in a similar manner.

24          SPECIAL MASTER KEYZER:  Well, if I could

25 hear a response on that issue.  I am inclined to say

                                                    8

1 that whatever is accused needs to be accused

2 specifically, and I don't think that the plaintiff

3 can just leave the door open indefinitely for later

4 accusing something that they say is similar.

5          I do think that the parties will eventually

6 need to face the issue of how to categorize products

7 so that we don't have a trial where there is proof on

8 every individual cable model, model, and sub model

9 because I think that is just not practical.

10          So the issue, I think, at this point is the

11 plaintiff giving notice of the particular models that

12 are accused and then the particular features and how

13 they operate.

14          So let me hear from the plaintiff then.

15          MS. ALLOR:  Thank you, Mr. Keyzer.

16          As we noted in our letter, discovery has

17 just started.  Cox did not produce documents in this

18 case until November 17th, the same day that they sent

19 the letter to you; so we have only just begun

20 receiving documentation on the accused products.

21          As we noted in our letter, there are public

22 databases, but they all differ; so we -- we can't

23 guarantee that everything listed in those databases

24 are correct.  When we met and conferred with Cox,

25 we -- we conveyed that to them and asked them to

                                                    9

1 provide us a list that they could say was correct,

2 and they refused to do that; so I think during

3 discovery we will move to amend our contentions or

4 supplement them with a full list, but we -- we needed

5 to -- we needed the discovery on those items first

6 before we could do that.

7          SPECIAL MASTER KEYZER:  I think that makes

8  sense.  I think that -- so I don't think that the

9  plaintiff can just accuse a category of similar

10  products.  I think the question is going to become

11  what the standard is for the plaintiff to add

12  additional products moving forward, and that is not

13  an issue I can take up at this point except to alert

14  the parties that that may be an issue in the future.

15          And I think I have asked this in related

16  cases, but are there patent local rules that the

17  parties have agreed to adopt in this case or are we

18  just going on whatever documents we have filed -- or

19  whatever rulings the court has filed in this case?

20          Either side can let me know.

21          MR. SAUL:  It is the latter.

22          SPECIAL MASTER KEYZER:  Okay.  So no local

23  rules are in place; so I -- I will look to the

24  parties for guidance on what the standard is going to

25  be as we move forward, but certainly the plaintiff is

                                                    10

1  alerted that, yes.  You need to obtain the discovery

2  you need, but your contentions do need to provide

3  notice on what particular products are accused.

4          So I am inclined to grant the relief the

5  defendants are requesting insofar as the contentions

6 can't just be open ended, but with the understanding

7 that the plaintiff may be able to move for leave to

8 add products if -- you know, if whatever standard is

9 appropriate is met.

10          Okay.  So Mr. Saul, you can go ahead if you

11 wanted to address other issues at this point.

12          MR. SAUL:  Yes.

13          And I think it -- I think it makes sense

14 probably at this point, subject to your preference,

15 to move to the -- the arguments as to the specific

16 limitations.  And I understand you have recognized

17 some -- some potential issues, particularly with

18 respect to the certain elements of the '866 patent;

19 so I'll at least begin there.

20          And I'm referencing Exhibit G, which is

21 Entropic's chart and its amended setup chart for the

22 '866 patent, which I understand you have, Mr. Keyzer.

23          The first -- the first of the limitations

24 which we believe the -- the -- the plaintiff has

25 failed to provide sufficient notice is as to

                                                        11

1 Elements 27A and 41A, which recite the plurality of

2 desired television channels and, separately, the

3 plurality of undesired channels.  And this is an

4  issue that we talked with -- with Entropic over the

5  meet and confer, and we are really just trying to

6  understand what is the theory here?  What is the

7  theory so we can prepare for claim construction so

8  that we can develop our noninfringed defenses?

9          And we asked point blank.  You know, we gave

10  them examples of what potentially, in our mind, could

11  be the plurality of desired television channels and

12  the plurality of undesired channels, and -- and we

13  just didn't -- we didn't get an answer.  And -- and

14  what we heard from -- from Entropic was that, you

15  know, we're -- we're premature in view of the claim

16  construction process.

17          But they have to have some idea in their

18  mind as to what are the plurality of desired

19  television channels and those that are undesired.

20  For example, are they -- are they television channels

21  that have a subscriber subscribes to?  Are those the

22  desired ones?  And the undesired ones are the ones

23  that the subscriber does not subscribe to?  Are the

24  desired television channels the ones that the

25  subscriber is watching at any given moment?

                                                    12

1          We just -- we don't know at this point.

2          You know, there is a key claim limitation in

3 27B, moving on, that the recited step must be

4 performed specifically without providing any of the

5 plurality of undesired channels.  We don't see that

6 anywhere in the chart.

7          And then, finally, you know -- you know,

8 concrete structure here.  The serial interface in

9 Claims 36 and 50.  I think I saw in Entropic's

10 responsive letter to Mr. Keyzer that now, for

11 example, it is a black line.  That would be on, for

12 example, page twelve of the amended chart for the

13 '866 patent.  It is this black line running between

14 an all-digital container and demodulator as well.

15 I don't see that in the chart.  If that is a theory

16 as to the serial interface, it should be in the

17 chart.  And as we all know, the infringement

18 contentions are what controls, you know,

19 plaintiff's -- plaintiff's theory of infringement and

20 what is going to control the expert reports.

21          I can move on to other issues or --

22 Mr. Keyzer, your preference.

23          Should we -- should we have Entropic respond

24 on the '866?

25          SPECIAL MASTER KEYZER:  I would like to hear

13

1 a response on this because this was the one that

2 jumped out at me in my review of the letter briefing

3 and the contentions.

4          So, Ms. Allor, let's address this one, and

5 then if we have some time, we can go to some other

6 issues.

7          MS. ALLOR:  No problem, Mr. Keyzer.

8          In response to what Mr. Saul said, I'm going

9 to take them in reverse, starting with the serial

10 interface; so with respect to interfaces, they are

11 either serial or they are parallel.  And we believe

12 that the diagrams show that there is an interface,

13 and our belief is that it is a serial interface.  And

14 we believe that we have annotated that and provided

15 that in our contentions.  And now that we are

16 receiving technical documents from the defendants, we

17 believe discovery will demonstrate that that is,

18 indeed, a serial interface; so I'm not exactly sure

19 what else the -- the plaintiff -- or the defendant is

20 looking for us to put in the chart with respect to

21 that element since there is only two options.  It is

22 either serial or parallel.  And we believe that we

23 have indicated that there is an interface and that it

24 is a serial interface and that is how the -- the --

25 the boxes operate.

1         With respect to the -- the -- desired versus

2 undesired channels, a -- a user of these boxes is

3 looking for some sort of channel to be displayed to

4 them.  Everyone that is using them knows that there

5 is either tuned or untuned channels coming in, and so

6 we think that there is no more disclosure necessary

7 at this stage for us to indicate specifically if it

8 is the ones -- as Mr. Saul said, we are not going to

9 commit at this point to whether it is the

10 subscriber's subscribed channels or if it is the one

11 that they are watching on the television because

12 we -- we have not received enough discovery to

13 determine exactly how their boxes are operating.

14         And so at this time I think, you know,

15 the -- the documentation is clear that there are

16 tuned channels and there are untuned channels.  And

17 so from that perspective it is -- there is nothing

18 more necessary at this -- at this time to put them on

19 notice that those are the desired versus undesired

20 channels.

21         MR. SAUL:  And, Mr. Keyzer, if I may briefly

22 respond.

23          SPECIAL MASTER KEYZER:  Just a moment.

24  I have a couple thoughts.

25          So I -- I do recognize that some discovery

15

1  is necessary for the plaintiff to understand how the

2  system operates to distinguish between desired and

3  undesired channels.

4          I also think that this is -- I sense that

5  this will be a claim construction issue.  I would be

6  surprised if it is not.

7          But all that said, I do think at some point

8  the plaintiff will need to articulate specifically

9  what is desired versus what is not desired in the

10  accused systems; so, to me, this is -- so I disagree

11  that the contentions are sufficient as they stand.

12  I think the question is at what point greater

13  specificity will need to be provided.

14          So, Mr. Saul, you can go ahead.

15          But I will need to hear, Ms. Allor, your

16  perspective on what the plaintiff needs and when the

17  plaintiff can provide more specificity on this.

18          So with that, from the defendant first.

19          MR. SAUL:  Thank you, Mr. Keyzer.

20          I think -- I think if we just take a step

21 back, the -- the -- the contentions as to the '866

22 patent, I do want to note for you, Mr. Keyzer, and

23 for the record that the same issues are with respect

24 to the '206 patent.  But -- but this is -- this is

25 a -- sort of an exemplary chart where the -- the --

16

1 the notice that we think we are -- we are -- we

2 deserve at this point does not depend on some sort of

3 low technical document- -- some production of low --

4 low-level technical documentation.  I heard from

5 Ms. Allor that, you know, they are conceding that

6 there are channels that have -- that a subscriber

7 wants and there are channels that a subscriber

8 doesn't want and that there are -- there are channels

9 that are tuned and channels that are not tuned.

10 Well, which is the theory?

11        I don't think the -- the -- the low-level

12 documentation is going to, you know, inform them as

13 to what that theory is.  We all can see that those

14 things exist; that -- that a subscriber desires

15 channels and desires undesired channels -- does not

16 desire undesired channels and that some channels are

17 tuned and some channels are not.

18        And, again, as to the serial interface, this

19 is not present in this chart.

20          And as Ms. Allor noted, we made a document

21 production on November 17th.  I also want to note we

22 made another document production on December 19th.

23 Together, that is a voluminous production of

24 low-level technical documents.  For example,

25 expressing tech plans, meeting notes with

                                                        17

1 specifications folks, documents regarding document

2 compliance policy, installation playbooks, set top

3 box a number of these, data sheets for accused

4 instrumentalities, set top features and roadmaps.  It

5 goes on and on and on.

6          You know, I think that they have what they

7 need in order to disclose a theory as to

8 implementations.  You know, as the -- as I think,

9 Mr. Keyzer, you recognize, the point of the chart is

10 not to marshal all of the evidence.  It is to provide

11 notice as to the infringement theory.  What is the

12 theory as to the desired and undesired channels?

13 What is the theory as to, for example, the first

14 processor and the second processor in another patent?

15          We have the claim construction exchange

16 process, you know, rolling up on February -- I think

17 it is the 16th.  And -- and, you know, we are being

18 prejudiced here by not knowing just the -- the --

19 the -- the first thing about their theory as to

20 certain of these limitations.

21          SPECIAL MASTER KEYZER:  Okay.  Let me turn

22 back to Ms. Allor.

23          So can you give me some sense of -- so

24 I understand it sounds like some documents were

25 produced yesterday.

                                          18


 1          Can you give me some sense of how much time

 2 the plaintiff feels is appropriate to take another

 3 look at providing more specificity and -- and what

 4 can I do to facilitate the process?

 5          MS. ALLOR:  And I -- I apologize.  I have

 6 not had a chance to even download -- I don't think

 7 our paralegals have had a chance to download the

 8 production and load it to start viewing yesterday.

 9          But I did look through the first production

10 that they produced in November and, you know, I think

11 with the holidays, you know, coming up, we would need

12 at least a month to -- to -- to review the documents;

13 you know, revise the contentions; and provide an

14 updated, amended chart.

15          But that being said, I do think if you turn

16  to Element 27B, which is showing the digital front

17  end, there is a diagram showing the digital tuner

18  architecture.  And this is a Broadcomm document.

19  I believe we produced this, and it is a public

20  document.  And this is showing that there is

21  a digital tuner and that the tuner is choosing

22  desired and undesired channels.

23          And so -- so I don't think Mr. Saul can say

24  that he doesn't know what the desired versus

25  undesired channels are.  We heard him say he knows

19

1  there are tuned versus untuned channels; so -- so at

2  least with this element I think they are on notice

3  that the digital tuner is selecting desired channels,

4  and the undesired channels are not being selected.

5  And so -- so -- so while we are amenable to

6  supplementing the contentions, and we intend to now

7  that they have produced documents after we can review

8  them, I do think we have put them on notice of our

9  theories, so....

10          SPECIAL MASTER KEYZER:  Okay.  So I have

11  about three or four minutes left here.  I have

12  heard -- I have looked at this in advance of the

13 hearing this morning, and I have heard what I need to

14 hear this morning.

15          So I am going to require the plaintiff to --

16 to amend their infringement contentions.  And I am

17 inclined to say thirty days, but I'm going to look at

18 a calendar now and be more specific.  And

19 I appreciate the parties' input as well; so let's

20 see; so I think thirty days would be January 19th, if

21 I am counting correctly, which is a Friday.  If you

22 would like a couple more days, that would be fine,

23 but I'm open to suggestions.

24          MS. ALLOR:  Yeah.

25          I would appreciate a few more days just

                                                       20

1 because of there is, you know, the Christmas holiday

2 and New Years holiday and Martin Luther King Day; so

3 if -- if we could agree on the 26th, the following

4 Friday, I think that would be reasonable.

5          SPECIAL MASTER KEYZER:  Okay.  And then

6 the -- the exchange of terms for claim construction

7 is -- what was that date again, Mr. Saul?

8          MR. SAUL:  Mr. Keyzer, I have confirmed that

9 that is February 16th; so I am a little concerned

10 about the -- the drift of time between the

11 supplementation of charts and the additional

12 exchange.

13          SPECIAL MASTER KEYZER:  Okay.  I will set

14 the deadline for January 24th, and that will be by

15 end of day.  January 24th, 2024 --

16          MS. ALLOR:  Thank you.

17          SPECIAL MASTER KEYZER:  -- for amended

18 infringement contentions.  Let me just write this

19 down.

20          And I will enter a written order reflecting

21 what I have set forth this morning.  If there is any

22 confusion or need for clarification, feel free to

23 contact me, and I will do what I can to help.

24          I'm also happy, if the parties need a status

25 conference or anything else to raise issues

                                                    21

1 informally, or if anything is needed after those

2 contentions come through, please feel free to let me

3 know that an expedited resolution is necessary before

4 the exchange of claim construction terms, and I will

5 do everything I can take help the parties make that

6 process move efficiently.

7          So with that said, is there anything else

8 I can do for the parties this morning?

9          MS. ALLOR:  Nothing from plaintiff.

10          SPECIAL MASTER KEYZER:  Okay.  On the

11 defendants' side?

12          MR. SAUL:  Nothing for the defendants.

13          Thank you, Mr. Keyzer.

14          SPECIAL MASTER KEYZER:  Okay.  Just one

15 moment.

16          Okay.  Thank you for your arguments today.

17          The parties should please order the

18 transcript and split the cost between the parties.

19 Please ensure that I receive a copy of the final

20 transcript, as well as a copy of any rough transcript

21 that the reporter may provide to the parties.  In

22 short, I would just like to have a copy of whatever

23 the parties have.

24          With that, this -- that concludes this

25 morning's hearings.

                                                22

1          We are now off the record.

2          THE REPORTER:  Are both sides ordering

3 a rough?

4          MS. ALLOR:  Yes, please.

5          MR. SAUL:  We'll take a rough.  Thank you.

6          THE REPORTER:  What do you want the final?

7        MS. ALLOR:  The 28th will be fine.

8        MR. SAUL:  Yes.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25