1
2
3
4

Krishnan Padmanabhan (SBN: 254220)
kpadmanabhan@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

5

Attorneys for Comcast Defendants.

6

*(Additional counsel information omitted)*

7
8
9
10
11

**UNITED STATES DISTRICT COURT**

12

**CENTRAL DISTRICT OF CALIFORNIA**

13

**SANTA ANA DIVISION**

14

15
16
17

ENTROPIC COMMUNICATIONS, LLC,

    Plaintiff,

    v.

18
19
20
21
22

COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS, LLC; AND COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

    Defendants.

**No. 2:23-cv-1049-JWH-KES (Lead Case)**
**No. 2:23-cv-1050-JWH-KES (Related Case)**

**No. 2:23-cv-1043-JWH-KES (Lead Case)**
**No. 2:23-cv-1048-JWH-KES (Related Case)**

Assigned to Hon. John W. Holcomb

**COMCAST DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Date: January 26, 2024
Time: 9:00 AM
Courtroom: 9D

23
24
25
26
27
28

**<span style="color:red">REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</span>**

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on January 26, 2024, or as soon as this matter may be heard in Courtroom 9D before the Honorable John W. Holcomb, of the above-entitled Court located at 411 West Fourth Street, Santa Ana, California 92701, Defendants Comcast Corporation, Comcast Cable Communications, LLC, and Comcast Cable Communications Management, LLC (collectively, "Comcast") respectfully move the Court for an order dismissing with prejudice Plaintiff Entropic Communications, LLC's ("Entropic") Second Amended Complaint ("SAC") for Patent Infringement, dated December 8, 2023[1], in each of Case Nos. 23-cv-01043 ("1043" Case) and 23-cv-01049 ("1049" Case).[2]

Comcast moves to dismiss Entropic's SAC under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. On November 20, 2023, the Court granted Comcast's motion to dismiss Entropic's First Amended Complaint ("FAC"), with leave to amend. *See* C.A. 23-cv-1048 ("1048" Case) , Dkt. 121[3]; C.A. 23-cv-1050 ("1050" Case), Dkt. 132 ("Order").[4] Entropic's allegations in the SAC fail to overcome

---

[1] Entropic originally filed its SAC in both the 23-cv-1043 and 23-cv-1049 cases on December 8, 2023. At the same time, Entropic moved for leave to supplement its SAC in both cases to include allegations of post-suit conduct. One week later, on December 15, 2023, Entropic filed a "corrected" SAC in both cases, and additionally moved for leave to amend and supplement to add two new patents in a proposed Third Amended Complaint ("TAC") in the 1049 case. Because the allegations in Entropic's pending motions for leave to amend and supplement are already contained in the original SAC, Comcast cites to Entropic's December 8, 2023 SAC in both cases for simplicity. Comcast's motion seeks to dismiss, with prejudice, each of Entropic's SACs and TACs.

[2] The substantive allegations in the SAC in both the 1043 Case and 1049 Case are identical or substantially similar. For simplicity, paragraph citations after "SAC" (e.g., SAC ¶ 10) refer to C.A. 23-cv-1043, Dkt. 192-1. Ex. A includes cross-references to the corresponding paragraphs in the SAC filed in the 1049 Case. Ex. B includes cross-references between the SAC, the "corrected" SAC, and the TAC in the 1049 case and the SAC and the "corrected" SAC in the 1043 case.

[3] Unless stated otherwise, any reference to "Dkt." refers to C.A. 2:23-cv-1043.

[4] The 1048 and 1050 cases have since been consolidated with the 1043 and 1049 Cases respectively.

1  the deficiencies in the FAC as a matter of law. This Court has already held that Entropic

2  took title to the asserted patents subject to a covenant not to sue that is only subject to a

3  narrow exemption for willful infringement that applies on a per-patent basis. Because

4  the SAC again fails to state a plausible claim for willful infringement of any asserted

5  patent, the Court should dismiss the SAC with prejudice.

6      Comcast's motion is based on this notice of motion and motion, the memorandum

7  of points and authorities below, the declaration of K. Padmanabhan ("Padmanabhan

8  Decl.") and its exhibits, the pleadings and papers on file, and any materials and

9  argument presented to the Court at the time of the hearing. This motion is made

10 following the conference of counsel pursuant to L.R. 7-3 that took place on December

11 15th and 18th. Counsel were unable to reach resolution.

12

13 Dated: December 29, 2023          WINSTON & STRAWN LLP

14                                   By:  */s/ Krishnan Padmanabhan*
15                                        K. Padmanabhan (SBN: 254220)
                                          kpadmanabhan@winston.com
16                                        **WINSTON & STRAWN LLP**
                                          200 Park Ave., Fl. 40
17                                        New York City, NY 10166
                                          Tel: (212) 294-6700
18                                        Fax: 212-294-4700

19                                        Diana Hughes Leiden (SBN: 267606)
                                          dhleiden@winston.com
20                                        **WINSTON & STRAWN LLP**
                                          333 S. Grand Ave.
21                                        Los Angeles, CA  90071
                                          Tel: (213) 615-1700
22                                        Fax: (213) 615-1750

23                                        Brian Ferguson (*pro hac vice*)
                                          bferguson@winston.com
24                                        **WINSTON & STRAWN LLP**
                                          1901 L Street NW
25                                        Washington, DC 20036
                                          Tel: (202) 282-5000
26                                        Fax: (202) 282-5100

27                                        Saranya Raghavan (*pro hac vice*)
                                          sraghavan@winston.com
28                                        **WINSTON & STRAWN LLP**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35 West Wacker, Dr.
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312)558-5700

*Attorneys for Comcast Defendants*

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 12

I.      INTRODUCTION ................................................................................... 12

II.     PROCEDURAL BACKGROUND ........................................................ 14

III.    APPLICABLE LAW ............................................................................. 16

    A.    Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction ............................................................................ 16

    B.    Dismissal under Rule 12(b)(6) for failure to state a claim ..................... 17

    C.    The plausibility standard for pleading willful infringement ................... 17

IV.     ARGUMENT ......................................................................................... 19

    A.    The Court already held that its subject matter jurisdiction is limited to claims of willful infringement, which the FAC failed to allege. ............................................................................ 19

    B.    The allegations in the SAC fail to cure the deficiencies in the FAC or otherwise plausibly allege willfulness. ....................................... 21

        1.   Entropic cannot overcome the covenant through its own litigation conduct. ........................................................................ 21

            a.   Entropic's allegations of willfulness based on its own litigation conduct contravene the VSA. ............................. 22

            b.   Entropic's allegations of willfulness based on its own litigation conduct fail as a matter of law. ............................ 23

            c.   Entropic's post-suit assertion of additional patents fails for the same reason as the original patents. ......................... 26

        2.   Entropic cannot plausibly allege that Comcast willfully infringed based on litigation against non-parties. ........................... 28

        3.   Entropic cannot plausibly allege willfulness based on Comcast's relationship with MaxLinear. ....................................... 32

4. Entropic's patent prosecution related allegations still fail. ...........33

5. The Entropic investment and MoCA participation allegations
still fail. ...........................................................................34

C. The Court should dismiss the SAC with prejudice. ..................................36

V. CONCLUSION ...................................................................................36

1

# <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4
*Arbmetrics, LLC v. Dexcom Inc.*,
5
   No. 18-CV-00134-JLS-KSC, 2019 WL 12473781 (S.D. Cal. Feb. 19, 2019) ...................................................................................................24

6
*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
7
   876 F.3d 1350 (Fed. Cir. 2017) ........................................................17

*Ashcroft v. Iqbal*,
8
   556 U.S. 662 (2009).................................................................17, 29

9
*Bayer Healthcare LLC v. Baxalta Inc.*,
10
   989 F.3d 964 (Fed. Cir. 2021) ..........................................................18

*Bell Atl. Corp. v. Twombly*,
11
   550 U.S. 544 (2007).........................................................................17

12
*Boom! Payments, Inc. v. Stripe, Inc.*,
13
   839 F. App'x 528 (Fed. Cir. 2021) ..............................................29, 34

14
*Bos. Sci. Corp. v. Nevro Corp.*,
   560 F. Supp. 3d 837 (D. Del. 2021) ................................................24

15
*Castle Creek Tech. Partners v. CellPoint Inc.*,
16
   No. 02-cv-6662-GEL, 2002 WL 31958696 (S.D.N.Y. Dec. 6, 2002) ...............22

17
*Cheetah Omni LLC v. AT&T Servs., Inc.*,
   949 F.3d 691 (Fed. Cir. 2020) ........................................................26

18
*Core Optical Techs., LLC v. Juniper Networks Inc.*,
19
   562 F. Supp. 3d 376 (N.D. Cal. 2021)....................................11, 30, 31

20
*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006).........................................................................16

21
*Dental Monitoring SAS v. Align Tech., Inc.*,
22
   No. C.A. 22-07335 WHA, 2023 WL 4297570 (N.D. Cal. June 30, 2023) ...................................................................................................23

23
*Document Sec. Sys., Inc v. Nichia Corp.*,
24
   2020 WL 3881623 (C.D. Cal. Mar. 4, 2020) ....................................18

25
*Finjan, Inc. v. Cisco Sys. Inc.*,
   No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017)........32, 36

26
*In re Gabapentin Pat. Litig.*,
27
   No. 00-CV-2931-FSH, 2011 WL 1807448 (D.N.J. May 12, 2011).............25, 26

28
*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*,
   651 F.3d 1355 (Fed. Cir. 2011) ........................................................26

*Givati v. Air Techniques, Inc.*,
  104 A.D.3d 644 (N.Y. App. Div. 2013) ........................................................22

*Google LLC v. Princeps Interface Techs.*,
  No. 19-cv-06566-EMC, 2020 WL 1478352 (N.D. Cal. Mar. 26, 2020)...........18

*GoTV Streaming, LLC v. Netflix, Inc.*,
  No. 2:22-cv-07556-RGK-SHK, 2023 WL 2627016 (C.D. Cal. Feb.
  16, 2023) ..................................................................................................24, 25

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
  897 F.2d 508 (Fed. Cir. 1990) ....................................................................17

*iFIT Inc. v. Peloton Interactive, Inc.*,
  No. CV 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022) ....................24

*Island Ests. Mgmt., Inc. v. MBA Manorhaven, LLC*,
  12 Misc. 3d 1194(A), 2006 WL 2337965 (N.Y. Sup. Ct. Aug. 10,
  2006) ............................................................................................................23

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ....................................................................16

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).....................................................................................16

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ......................................................................17

*Orthopaedic Hosp. v. Encore Med. L.P.*,
  2022 WL 254956 (S.D. Cal. Jan. 27, 2022) ...............................................34, 35

*Owen v. City of Hemet*,
  2020 WL 7978503, (C.D. Cal. Dec. 15, 2020).............................................36

*Pact XPP Schweiz AG v. Intel Corp.*,
  No. 1:19-CV-01006-JDW, 2023 WL 2631503 (D. Del. Mar. 24, 2023)...........25

*Radware, Ltd. v. F5 Networks, Inc.*,
  2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ..............................................34

*Ravgen, Inc. v. Quest Diagnostics Inc.*,
  No. 2:21-CV-09011-RGK-GJS, 2022 WL 2047613 (C.D. Cal. Jan. 18,
  2022) ...............................................................................................13, 18, 23

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  556 F.3d 1294 (Fed. Cir. 2009) ..................................................................19

*Richardson Constr., Inc. v. Clark Cnty Sch. Dist.*,
  223 F. App'x 731 (9th Cir. 2007)................................................................36

*S.F. Herring Ass'n v. U.S. Dep't of the Interior*,
  946 F.3d 564 (9th Cir. 2019) ......................................................................36

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020) ........................................................... 29

*Sleep No. Corp. v. Sizewise Rentals, LLC*,
   No. 18-00356-AB, 2018 WL 5263065 (C.D. Cal. June 26, 2018) ................... 18

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
   No. 13-CV-01161-HSG, 2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) ........................................................................................... 23

*Snug Harbor Square Venture v. Never Home Laundry, Inc.*,
   252 A.D.2d 520 (N.Y. App. Div. 1998) ....................................... 13, 22

*Sonos, Inc. v. Google LLC*,
   591 F. Supp. 3d 638 (N.D. Cal. 2022) ........................................ 24, 34

*Splunk Inc. v. Cribl, Inc.*,
   No. 22-07611 WHA, 2023 WL 2562875 ...................................... 24, 25

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .......................................................... 17

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ........................................... 32, 34, 35

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
   No. 11-06638, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ........... 28

*Ward v. TheLadders.com, Inc.*,
   3 F. Supp. 3d 151 (S.D.N.Y. 2014) ................................................... 22

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) .......................................................... 16

*Wrinkl, Inc. v. Facebook, Inc.*,
   No. 20-CV-1345-RGA, 2021 WL 4477022 (D. Del. Sept. 30, 2021) .............. 24

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
   No. 17-cv-03848-RS, 2017 WL 4551519 (N.D. Cal. Oct. 11, 2017) .............. 18

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021) ................................................. 25

**Other Authorities**

Fed. R. Civ. P. 8(a) ...................................................................... 16

Fed. R. Civ. P. 12 ........................................................................ 29

Fed. R. Civ. P. 12(b)(1) .......................................................... 2, 15, 16

Fed. R. Civ. P. 12(b)(6) ...................................................... 2, 15, 16, 17

Fed. R. Civ. P. 15(d) .................................................................... 15

Fed. R. Evid. 411 .................................................................................................... 26

L.R. 7-3 ................................................................................................................... 3

L.R. 7-18 ........................................................................................................ 15, 21

U.S. Const. art. III ............................................................................................. 16

1

2

# **TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Cross Reference Chart Comparing 1043 and 1049 SAC Allegations |
| B | Cross Reference Chart Comparing SAC, "Corrected" SAC, and TAC Allegations |
| C | Assignment of U.S. Patent No. 9,866,438 |
| D | U.S. Patent No. 11,785,275 |
| E | October 29, 2023 Email from Samuel Richey |
| F | November 3, 2023 Email from Raquel Bacchus |
| G | Third Amended Complaint in *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376 (N.D. Cal. 2021) |
| H | April 27, 2022 NY Times Article Cited in the SAC |
| I | MOCA_1038720-1 |
| J | MoCA IPR Policy v1.1 December 2003 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On November 20, 2023, this Court dismissed Entropic's FAC, finding that Entropic "took title to the patents that it asserts in this action subject to [a] covenant not to sue" Comcast, with only a limited "exemption for willful infringement." Order 2.[5] The Court found that "the covenant not to sue includes all of the Asserted Patents and that it runs with the Asserted Patents." Order 6. The Court further found that the covenant applies "on a per-patent basis," such that Entropic can only assert a given patent against Comcast if it adequately pleads that Comcast willfully infringed that particular patent. Order 8. The Court then analyzed the allegations in the FAC and concluded that "Entropic fails plausibly to allege willful infringement" that could invoke the covenant's narrow exemption for any asserted patent. Order 11. Thus, the Court granted Comcast's motion to dismiss the FAC.

Although the Court granted Entropic leave to amend, Entropic's SAC fails for the same reason as the FAC the Court dismissed: Entropic did not and cannot plausibly allege that Comcast *willfully* infringed any asserted patent. Tellingly, the bulk of Entropic's new allegations relate to its own litigation activities that occurred *after* Entropic filed this lawsuit. In a misguided effort to conjure subject matter jurisdiction, Entropic relies on its original complaint, the FAC, and its infringement contentions in these cases to argue Comcast is on notice of the alleged infringement. Yet even assuming that Entropic has leave of Court to raise these post-suit allegations,[6] they fail

---

[5] In C.A. 1048, Entropic has asserted U.S. Patent Nos. 7,295,518 ("'518"), 7,594,249 ("'249"), 7,889,759 ("'759"), 8,085,802 ("'802"), 9,838,213 ("'213"), 10,432,422 ("'422"), 8,631,450 ("'450"), 8,621,539 ("'539"), 8,320,566 ("'0,566"), 10,257,566 ("'7,566"), 8,228,910 ("'910"), and 8,363,681 ("'681").[5] In C.A. 1050, Entropic has asserted U.S. Patent Nos. 8,223,775 ("'775"), 8,284,690 ( "'690"), 8,792,008 ("'008"), 9,210,362 ("'362"), 9,825,826 ("'826"), 10,135,682 ("'682"), 11,381,866 ("'866"), 11,399,206 ("'206"), 11,785,275 ( "'275"), and 9,866,438 ("'438").

[6] Comcast opposed Entropic's motion to supplement its pleadings to raise these post-suit allegations. Dkt. 201; 1049, Dkt. 136. Because the Court has not yet ruled on that

to establish any exemption to the covenant not to sue as a matter of law. For one, Entropic's "post-suit" willfulness theory would render the covenant meaningless by allowing Entropic to benefit from its own violation of the covenant's plain terms. Entropic's theory is that it can commit the very act the covenant forbids—sue Comcast for **non**-willful infringement—and then exploit Comcast's knowledge of that forbidden lawsuit to invoke the covenant's limited exemption for willfulness. That theory is facially absurd and contravenes New York law, which governs the covenant. *Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 252 A.D.2d 520, 521 (N.Y. App. Div. 1998) ("a court should not adopt an interpretation which would leave any provision without force and effect" because that would not reflect "the reasonable expectations of the parties").

Even apart from the covenant, courts in this District and across the country have repeatedly rejected theories of "post-suit" willfulness based on the filing of a complaint, which would transform every garden-variety claim of infringement into a willfulness case. Because it would be "beyond the pale to expect every patent defendant to cease all allegedly infringing conduct once a complaint is filed to force them to avoid enhanced damages for willful infringement," courts routinely dismiss willful infringement claims based on such "post-suit knowledge." *Ravgen, Inc. v. Quest Diagnostics Inc.*, No. 2:21-CV-09011-RGK-GJS, 2022 WL 2047613, at *3 (C.D. Cal. Jan. 18, 2022) (quotation, alteration omitted); *infra* § IV.B.1.b.

As for **pre**-suit conduct—the only conduct that could be relevant to evaluate willfulness—Entropic has little to add beyond the allegations that the Court already rejected in the FAC. As before, Entropic tries to rely on lawsuits against unrelated third parties, but this Court has already recognized that "[l]itigation against other defendants provides a sufficient basis for willful infringement only in narrow circumstances" and based on "specific factual allegations." Order 9–10. Although the SAC adds statements

---

motion, Comcast moves in an abundance of caution to dismiss the entire SAC, including its supplemental allegations.

about Entropic's litigation against one non-party, it still does "not plausibly demonstrate knowledge of infringement" beyond mere "conclusory allegation[s]," which fail to state a claim for willful infringement as a matter of law. Order 10.

Entropic also relies on the alleged relationship between Comcast and MaxLinear (the asserted patents' original owner that assigned them to Entropic subject to the covenant not to sue), but Entropic again fails to plausibly allege that MaxLinear put Comcast on notice of any alleged infringement for any specific patent. Entropic's assertions about trade secret counterclaims MaxLinear has asserted against Comcast in the Southern District of New York ("SDNY") are irrelevant and similarly fail to show any "per-patent" willfulness as required by this Court's Order. Order at 8. Entropic's remaining allegations also fail to assert knowledge of infringement of a particular patent and/or have already been rejected by the Court.

Because Entropic has already twice tried—and failed—to adequately plead willful infringement of any patent, the Court should dismiss the SAC with prejudice.

## II.   PROCEDURAL BACKGROUND

On August 1, 2020—almost two years before Entropic filed these cases—MaxLinear entered into a Vendor Service Agreement ("VSA") with Comcast that included a covenant not to sue Comcast for infringement of any patent held by MaxLinear or its affiliates to the extent that Comcast has "not willfully infringed." The following year, in March 2021, MaxLinear assigned the patents at issue to Entropic.

Shortly before filing the lawsuits here, Entropic sent Comcast a licensing offer listing 250-plus patent numbers and stating that some were allegedly essential to the Multimedia over Coax Alliance ("MoCA") standard, but Entropic's letter did not identify any Comcast products in conjunction with any specific patent. Order 9. Entropic did not articulate any theory of infringement for any specific patent against any particular Comcast product at least until it filed the original complaints in the 1048 and 1050 Cases on February 10, 2023. Dkt. 82 at 29-30.

In each case, Comcast moved to dismiss Entropic's original complaint under

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Entropic took title to the asserted patents subject to the VSA's covenant not to sue, and thus lacked standing. Instead of opposing, Entropic filed the FAC, which sought to supplement its willfulness allegations in an attempt to trigger the covenant's exemption. Comcast again moved to dismiss under Rule 12(b)(1) and 12(b)(6) because Entropic lacks standing to sue for alleged non-willful patent infringement, and because the FAC failed to plead a plausible claim of willful infringement for any asserted patent.

On November 20, 2023, this Court granted Comcast's motion to dismiss the FAC, finding that MaxLinear assigned the asserted patents to Entropic subject to the covenant not to sue and that the FAC failed to plausibly allege willful infringement. Order 1. The Court granted Entropic leave to amend, however, to attempt to cure its deficient willful infringement allegations. Order 11–12.

On December 4, 2023, Entropic filed a motion for reconsideration of the Order under Local Rule 7-18. Dkt. 186.[7] Entropic's only (improper) ground for reconsideration was that the Order did not expressly address certain cases that Entropic raised in oral argument and supplemental briefing. *Id*. at 14. Entropic did not seek reconsideration of the Court's findings that the FAC failed to plausibly allege willful infringement, or that the VSA was in effect at the time Entropic filed suit. Comcast opposed Entropic's motion for reconsideration, which remains pending. Dkt. 202.

On December 8, 2023, Entropic filed the SAC. Dkt. 192-1; 1049, Dkt. 130-1. At the same time, Entropic moved to supplement the SAC under Fed. R. Civ. Proc. 15(d) to add allegations of post-suit conduct, which Comcast opposed. Dkt. 193; 1049, Dkt. 131; Dkt. 201; 1049, Dkt. 136. On December 15, 2023, Entropic filed a "corrected" SAC in both cases, which replaced references to alleged "willful infringement" of MaxLinear's trade secrets with alleged "misappropriation," and in the 1049 case, removed allegations relating to the '438 and '275 patents. Concurrently, Entropic also

---

[7] All cites to "Dkt." are to C.A. 23-cv-1043 unless indicated otherwise.

moved for leave to amend and supplement its SAC in the 1049 case to add the '438 and '275 patents and include allegations of post-suit conduct relating to those patents. 1049, Dkt. 143. On December 26, 2023, Comcast filed a notice of non-opposition to the addition of the '438 and '275 patents, explaining that while Entropic's post-suit willfulness allegations are futile for the reasons Comcast explained in its previous opposition, Comcast would address the entirety of Entropic's insufficient allegations in its instant motion to dismiss. 1049, Dkt. 165.

## III.   APPLICABLE LAW

### A.   Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction

As the party seeking to invoke the Court's jurisdiction, the plaintiff has the burden of alleging specific facts sufficient to prove Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When a plaintiff lacks standing, the defendant may move to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The plaintiff bears the burden of demonstrating standing "for each claim" and "for each form of relief" that it seeks. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (citations, quotations omitted). The Court should dismiss an action when the complaint does not demonstrate a basis for standing. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); Fed. R. Civ. P. 8(a) & 12(b)(1).

Under Rule 12(b)(1), a defendant may challenge jurisdiction in one of two ways. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A ***facial*** attack accepts the plaintiff's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id*. (quotation omitted). The court resolves a facial attack "as it would a motion to dismiss under Rule 12(b)(6)." *Id*. By contrast, a ***factual*** attack contests "the truth of the plaintiff's factual allegations," typically by introducing evidence outside the pleadings. *Id*. "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context." *Id*. (citation

1    omitted). For both types of challenges, the plaintiff bears the burden of proving—by a

2    preponderance of the evidence—that it meets each of the requirements for subject

3    matter jurisdiction, and if the existence of jurisdiction turns on "disputed factual issues,"

4    then the court itself may resolve those factual disputes. *Id.*

5    **B.     Dismissal under Rule 12(b)(6) for failure to state a claim**

6    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

7    asserted in a complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

8    Although a complaint attacked through a Rule 12(b)(6) motion "does not need detailed

9    factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell*

10   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11   To state a plausible claim for relief, the complaint "must contain sufficient

12   allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d

13   1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief

14   above the speculative level on the assumption that all the allegations in the complaint

15   are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

16   To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

17   accepted as true, to state a claim to relief that is plausible on its face," which means that

18   a plaintiff must plead sufficient factual content to "allow[] the Court to draw the

19   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

20   *v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

21   **C.     The plausibility standard for pleading willful infringement**

22   To plead a claim for willful infringement, a plaintiff must allege that the accused

23   infringer "actually knew or should have known that its actions constituted an

24   unjustifiably high risk of infringement of a valid and enforceable patent." *Arctic Cat*

25   *Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017).

26   First, "a party cannot be found to have 'willfully' infringed a patent of which the party

27   had no knowledge." *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508,

28   511 (Fed. Cir. 1990). Second, "allegations of knowledge alone are not sufficient to state

a claim for willful infringement." *Document Sec. Sys., Inc v. Nichia Corp.*, 2020 WL 3881623, at \*3 (C.D. Cal. Mar. 4, 2020). Rather, to plead willful infringement, a plaintiff must also allege facts showing an "egregious case[] of misconduct beyond typical infringement." *Id*. Thus, as this Court recognized in dismissing the FAC, a plaintiff must, at a minimum, "allege facts to support the conclusion that [1] the defendant knew of the asserted patent ***and*** [2] knew or should have known of its infringement of that patent." Order 9; *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement.").

Importantly, both the knowledge of a patent and knowledge of its infringement refer to ***pre-suit*** knowledge, not merely knowledge of a plaintiff's complaint and litigation filings. *See, e.g.*, *Ravgen*, 2022 WL 2047613, at \*3 (dismissing "willful infringement claims [based] solely on Defendant's post-suit knowledge"); *Sleep No. Corp. v. Sizewise Rentals, LLC*, No. 18-00356-AB (SPx), 2018 WL 5263065, at \*7 (C.D. Cal. June 26, 2018) ("Plaintiff must allege not just knowledge of the patents, but ***pre-suit*** knowledge of infringement") (emphasis altered); *infra* § IV.B.1.b.

Further, "the majority of district courts in the Ninth Circuit" have held that pre-suit "allegations of knowledge and continued infringement alone are insufficient to state a claim for willful infringement," requiring additional "facts suggesting that [the defendant]'s conduct amounts to an 'egregious case[ ] of misconduct beyond typical infringement.'" *Document Sec.*, 2018 WL 2422589, at \*2–3 (quotation omitted) (collecting cases); *accord, e.g.*, *Google LLC v. Princeps Interface Techs.*, No. 19-cv-06566-EMC, 2020 WL 1478352, at \*5-6 (N.D. Cal. Mar. 26, 2020) (dismissing willfulness where amended complaint "does not plausibly show with specificity that [defendant]'s conduct was egregious"); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848-RS, 2017 WL 4551519, at \*6 (N.D. Cal. Oct. 11, 2017).

1    **IV.    ARGUMENT**

2         This Court has already held that it retains subject matter jurisdiction only for

3    claims against Comcast for willful patent infringement and that the FAC failed to state

4    such a claim. Despite receiving leave to amend, Entropic has failed to cure the

5    deficiencies in the FAC or otherwise plausibly allege willful infringement in the SAC.

6    Thus, the Court should dismiss the SAC with prejudice.

7         **A.    The Court already held that its subject matter jurisdiction is limited
                   to claims of willful infringement, which the FAC failed to allege.**

8

9         In dismissing Entropic's FAC, the Court found that the VSA's "covenant not to

10   sue includes all of the Asserted Patents and that it runs with the Asserted Patents." Order

11   6. Specifically, the Court found that "[t]he VSA includes an encumbrance authorizing

12   Comcast to avoid liability for practicing MaxLinear's patents so long as Comcast does

13   not *willfully* infringe the patents," and "the VSA includes a provision that appears to

14   extend its protection to future assigns." Order 5–6. The Court explained: "MaxLinear

15   forfeited its right to pursue Comcast for patent infringement except in the event of

16   willful infringement. Thus, in transferring the patents to Entropic, MaxLinear lacked

17   the ability to transfer the right to pursue a claim of patent infringement, except in the

18   event of willful infringement." Order 6.

19        The Court thus concluded that it retained subject matter jurisdiction over only

20   claims of willful infringement of an asserted patent. The Court observed that "[w]hether

21   a covenant not to sue divests the trial court of jurisdiction depends on what is covered

22   by the covenant." Order 6 (quoting *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,

23   556 F.3d 1294, 1297 (Fed. Cir. 2009)). Because MaxLinear, and thus Entropic, retained

24   the right to sue Comcast only "for willful patent infringement," the Court found that

25   "the VSA does not divest this Court of subject matter jurisdiction for Entropic's claims

26   against Comcast for willful patent infringement." Order 7. However, the Court rejected

27   Entropic's arguments that "any act of willful infringement triggers the exemption with

28   respect to all Asserted Patents" and that it "could invoke the exemption for all patents

1  so long as Comcast had knowledge of merely one patent and its infringement of that

2  patent." Order 8.[8] Instead, the Court found that "the covenant is best understood as

3  applying on a per-patent basis," such that MaxLinear (and now Entropic) "would likely

4  need to provide notice of each patent at issue before the exemption would apply." *Id*.

5      Accordingly, the Court proceeded to analyze whether Entropic adequately pled

6  willful infringement of any asserted patent in the FAC. The Court found it had not.

7  Order 9–11. In so finding, the Court rejected Entropic's reliance on (1) its pre-lawsuit

8  correspondence to Comcast, (2) its litigation activities against third parties, (3) general

9  industry awareness and diligence related to Comcast's investment activity, (4)

10 Comcast's patent prosecution activity, and (5) the alleged knowledge of Patrick

11 Tierney, a named inventor on two asserted patents who later worked at Comcast. *Id*.

12 For each category of allegations, the Court found that Entropic failed to plausibly allege

13 that Comcast had pre-suit knowledge of infringement of any asserted patent. *Id*.

14     Despite the Court's ruling that the allegations in Entropic's FAC fail to plausibly

15 allege willful infringement, Entropic has repeated many of the same allegations (either

16 verbatim or reworded without material factual amendment) in its SAC. Entropic has

17 also repeated many of its failed legal arguments regarding the effect and scope of the

18 covenant not to sue by inserting them in the SAC. These allegations in the SAC all fail

19 for the same reasons the Court articulated when dismissing the FAC.

20     Notably, Entropic moved for reconsideration of the Court's Order, but ***only*** to the

21 extent that the Court did not address certain authority regarding whether a covenant

22 divests the Court of subject matter jurisdiction. Dkt. 186 at 1. Entropic did ***not*** move

23 for reconsideration as to the Court's findings more broadly, and there is no basis to

24

25 ───────────────

26 [8] The Court's opinion also expressly rejected Entropic's arguments seeking to avoid
   application of the covenant, including Entropic's arguments that (i) the covenant does
27 not extend to patents held by MaxLinear's subsidiary MaxLinear LLC (Order 6) and
   (ii) that MaxLinear's attempted termination on May 18, 2023 could cure Entropic's
28 standing deficiency, because it came after Entropic filed suit (Order 7).

disturb the Court's previous findings. *Id.*[9] Accordingly, Comcast will not repeat its arguments concerning those issues here, which apply equally to the SAC. Instead, Comcast will turn to the SAC's new allegations concerning willfulness, which fare no better than those in the FAC and again fail to plausibly allege willful infringement of any asserted patent.

**B.   The allegations in the SAC fail to cure the deficiencies in the FAC or otherwise plausibly allege willfulness.**

The SAC contains allegations regarding (1) Entropic's own litigation conduct in these cases against Comcast; (2) other litigations against non-parties that it previously identified in the FAC; (3) Comcast's relationship with MaxLinear; (4) patent prosecution activities; and (5) Comcast's investment in Entropic Communications, Inc. and its participation in the MoCA Alliance. The vast majority of these allegations simply rehash theories the Court rejected when dismissing the FAC, and the new assertions similarly fail to plausibly plead willful infringement of any asserted patent.

**1.   Entropic cannot overcome the covenant through its own litigation conduct.**

The SAC adds allegations that Comcast gained the requisite knowledge for willful infringement of all of the asserted patents through Entropic's own actions in initiating and prosecuting these cases.[10] Comcast has opposed Entropic's attempt to supplement its pleadings with such post-suit allegations (Dkt. 201), but even assuming Entropic is granted leave to supplement, the allegations fail to overcome the covenant not to sue—both under any reasonable interpretation of the covenant itself and under

---

[9] Comcast has opposed Entropic's motion for reconsideration, which fails to satisfy any basis for reconsideration under Local Rule 7-18. Dkt. 202.

[10] C.A. 2:23-cv-1043, Dkt. 192-1 at ¶¶ 159-176, 178, 250, 259-261, 291, 300-302, 331, 340-342, 371, 380-382, 411, 420-422, 451, 459-461, 490, 499-501, 530, 538-540, 568, 576-578, 606, 614-616, 644, 652-654, 682, 690-692; C.A. 2:23-cv-1049, Dkt. 130-1 at ¶¶ 163, 166–182, 221, 227–229, 243, 252, 258–260, 273, 282, 287–289, 302, 311, 316–318, 331, 340, 345–347, 360, 369, 374–376, 387, 396, 401–403, 416, 425, 434–436, 441, 450, 458, 466, 475, 480.

the law of willfulness, which requires pre-suit notice.

### a. Entropic's allegations of willfulness based on its own litigation conduct contravene the VSA.

Having failed to state a claim under the covenant's plain terms, Entropic now seeks to assert a new theory that would eviscerate the covenant entirely. At bottom, Entropic argues that it can engage in the very act that the covenant prohibits—suing Comcast for ***non***-willful infringement—and then rely on its own violation to invoke the covenant's willfulness exemption. Entropic's argument flouts both logic and the law.

This Court has already held that the VSA should not be interpreted such that "the willful infringement exemption would be meaningless." Order at 8. Likewise, New York law, which governs the VSA (1048, Dkt. 82-2 at 15-16), upholds "the fundamental contract law principle that a court's interpretation of a contract 'should not read a contract so as to render any term, phrase, or provision meaningless or superfluous.'" *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 162 (S.D.N.Y. 2014) (quoting *Givati v. Air Techniques, Inc.*, 104 A.D.3d 644, 645 (N.Y. App. Div. 2013) (collecting cases)); *see also Snug Harbor Square Venture v. Never Home Laundry, Inc.*, 252 A.D.2d 520, 521 (N.Y. App. Div. 1998) ("a court should not adopt an interpretation which would leave any provision without force and effect" because that would not reflect "the reasonable expectations of the parties").

Here, allowing Entropic to rely on its own improper suit against Comcast to satisfy the willful infringement exemption cannot reflect a correct interpretation of the covenant because it would render the covenant meaningless. Under Entropic's theory, it need only establish that it filed suit against Comcast—in violation of the covenant— to render the covenant inoperable. Under that interpretation, the exception would swallow the rule. Accepting Entropic's argument that it can avoid an explicit contractual provision by running afoul of that same provision would contravene New York law and should be rejected. *Cf. Castle Creek Tech. Partners v. CellPoint Inc.*, No. 02-cv-6662-GEL, 2002 WL 31958696, at *7 (S.D.N.Y. Dec. 6, 2002) ("When a party to a contract

has breached the agreement, [ ] either by acting in bad faith or by violating an express
covenant within the agreement, it may not later rely on that breach to its advantage.");
*Island Ests. Mgmt., Inc. v. MBA Manorhaven, LLC*, 12 Misc. 3d 1194(A), 2006 WL
2337965, at *6 (N.Y. Sup. Ct. Aug. 10, 2006) ("A party cannot use its own breach of a
contract as a basis for cancelling a contract.").

### b.   Entropic's allegations of willfulness based on its own litigation conduct fail as a matter of law.

Even apart from the VSA's covenant, Entropic's post-suit allegations fail to state
a claim for willful infringement because they reflect Entropic's ***own*** conduct in filing
and prosecuting these cases—not any willful conduct by ***Comcast***. Courts in this
District, the Ninth Circuit, and across the country have rejected analogous willfulness
claims based on papers served earlier in the same litigation, which would have the
absurd result of transforming ***every*** infringement claim into one of willful infringement
unless the defendant immediately ceased all accused conduct and effectively agreed to
a preliminary injunction. Indeed, "[i]t seems beyond the pale to expect every patent
defendant to cease all allegedly infringing conduct once a complaint is filed to force
them to avoid enhanced damages for willful infringement." *Ravgen*, 2022 WL 2047613,
at *3 (quotation, alteration omitted). After all, "where a Defendant continues their
allegedly infringing operation after they are sued, they may simply 'subjectively
believe[ ] the plaintiff's patent infringement action has no merit,'" which is consistent
with continuing the accused activities. *Id*. (quoting *Slot Speaker Techs., Inc. v. Apple,
Inc.*, No. 13-CV-01161-HSG, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017)
(rejecting willfulness claim based on "Defendant's post-suit manufacturing and
sales")). For this reason, courts across California have repeatedly reaffirmed the
principle that a complaint cannot provide the knowledge necessary to sustain willful
infringement.[11]

---

[11] *See, e.g.*, *Dental Monitoring SAS v. Align Tech., Inc.*, No. C.A. 22-07335 WHA, 2023
WL 4297570, at *6 (N.D. Cal. June 30, 2023) (dismissing willfulness claims because

1    The fact that Entropic asserts post-suit willfulness in an amended complaint
2  rather than the original complaint does not change the result. For claims that require
3  knowledge, a plaintiff must allege that the defendant had such knowledge "prior to
4  filing the action, regardless of whether that allegation is made in an original complaint
5  or an amended complaint." *GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-
6  RGK-SHK, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023) (dismissing amended
7  complaint alleging induced infringement, which also requires knowledge). To hold
8  otherwise would render any rule against relying on the original complaint meaningless
9  since the patentee could always file an amended complaint to assert willfulness based
10  on knowledge gleaned from the earlier complaint. Again, this would force defendants
11  to "cease all allegedly infringing conduct once a complaint is filed to avoid such claims
12  in the future." *Id.* (quotation omitted); *see also iFIT Inc. v. Peloton Interactive, Inc.*,
13  No. CV 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("[A]n amended
14  complaint cannot rely upon the original complaint as a basis to allege knowledge for a
15  willful infringement claim."); *accord Wrinkl, Inc. v. Facebook, Inc.*, No. 20-CV-1345-
16  RGA, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021); *Bos. Sci. Corp. v. Nevro Corp.*,
17  560 F. Supp. 3d 837, 844–45 (D. Del. 2021) ("[T]he operative complaint in a lawsuit
18  fails to state a claim for willfulness . . . where the defendant's alleged knowledge of the
19  asserted patents is based solely on the content of that complaint or a prior version of the
20  complaint filed in the same lawsuit.").

21    There are sound policy reasons for rejecting reliance on the complaint and other

22  _____

23  "the filing of a complaint cannot, standing alone, serve as notice for purposes of willful
and indirect infringement"); *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 646 (N.D.
24  Cal. 2022) (joining "district courts that do not generally allow the complaint to serve as
notice"); *Splunk Inc. v. Cribl, Inc.*, No. 22-07611 WHA, 2023 WL 2562875, at *4
25  (holding "the complaint will generally not be adequate to serve as notice for either
26  willful or indirect infringement") (citation omitted); *Arbmetrics, LLC v. Dexcom Inc.*,
No. 18-CV-00134-JLS-KSC, 2019 WL 12473781, at *4 (S.D. Cal. Feb. 19, 2019)
27  (holding that "continuing post-suit manufacturing and sales [ ] cannot be the sole
28  evidence to support a willful infringement claim").

litigation papers to show willfulness in addition to the fact that it would convert every garden-variety infringement case into a willfulness case. Fundamentally, "[t]he purpose of a complaint is to obtain relief from an existing claim and not to create a claim." *GoTV*, 2023 WL 2627016, at *3 (quotation omitted). "The limited authority vested in our courts by the Constitution and the limited resources made available to our courts by Congress counsel against encouraging plaintiffs to create claims by filing claims," and it is "neither wise nor consistent with principles of judicial economy to allow court dockets to serve as notice boards for future legal claims for . . . enhanced damages." *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 251 (D. Del. 2021); *see also Pact XPP Schweiz AG v. Intel Corp.*, No. 1:19-CV-01006-JDW, 2023 WL 2631503, at *5 (D. Del. Mar. 24, 2023) ("There are many reasons why a complaint can't constitute the basis for willful infringement, among them that a complaint can't constitute an element of a claim that it purports to raise, and that it would mean all infringement suits involve willful infringement."). By contrast, limiting willfulness to "pre-suit knowledge through a cease-and-desist letter that calls out patent claims and how accused products infringe should be encouraged" to promote resolution of disputes and ease burdens on courts. *Splunk*, 2023 WL 2562875, at *3.

In sum, Entropic cannot rely on its ***own*** filing and prosecution of these cases to allege any culpable conduct by ***Comcast***, which is simply defending itself from patent infringement claims without agreeing to a preliminary injunction, as it is entitled to do.

Similarly, Entropic cannot rely on the fact that Comcast allegedly sought indemnification from third-party vendors ***after*** the filing of the initial complaint in these actions. SAC ¶¶ 89-90. The law is clear that this cannot support a claim for willful infringement: a defendant's insurance or indemnification against liability is not evidence of misconduct. *See In re Gabapentin Pat. Litig.*, No. 00-CV-2931-FSH, 2011 WL 1807448, at *9 (D.N.J. May 12, 2011) (excluding "evidence of liability insurance and indemnification" where "Plaintiffs do not cite a single case in which a court permitted the use of such evidence to establish willfulness," which "runs afoul of

[Federal] Rule [of Evidence] 411"); Fed. R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."); *Gabapentin*, 2011 WL 1807448, at *9 n.33 ("Indemnification agreements are treated like liability insurance under Rule 411.").

### c.   Entropic's post-suit assertion of additional patents fails for the same reason as the original patents.

The SAC in the 1049 case adds two more patents—the '438 and '275 patents—to what was already a set of 20, and seeks to assert willful infringement for those two patents based on the interactions between outside counsel that occurred after Entropic stated its intent to add them this litigation. 1049, Dkt. 130-1 at 35 n.13; *id.* at ¶¶ 440-486. Entropic's allegations for these patents fail to overcome the covenant for the same reasons as the originally asserted patents.

First, these newly asserted patents are subject to the same encumbrance that precludes Entropic from asserting non-willful infringement against Comcast. MaxLinear owned the '438 patent as of August 1, 2020—the effective date of the VSA—and then assigned it to Entropic Communications, LLC on March 31, 2021, along with the several of the originally asserted patents. Ex. C ('438 assignment). The '275 patent is a continuation of patents owned by MaxLinear as of August 1, 2010.[12] The Court has already found that covenant not to sue applies to both categories of patents—(1) patents owned by MaxLinear as of August 1, 2020, and (2) continuations of patents owned by MaxLinear as of August 1, 2020. Order 3, 6.[13]

Second, Entropic does not and cannot allege that Comcast had any pre-suit notice

---

[12] This includes U.S. Patent Nos. 8,526,898; 9,100,622; 9,210,363; 9,819,992; 10,313,733; and 10,972,781. Ex. D ('275 patent).

[13] For instance, the Court found that the covenant not to sue applies to the originally asserted '866 and '206 patents, both of which are continuations of patents owned by MaxLinear as of August 1, 2020. Order 3; *see also Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011) (a license to a patent is presumed to apply to continuations of that patent); *Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020) (extending license to continuations).

of alleged infringement of either patent. Indeed, the '275 patent did not issue until after Entropic filed this lawsuit. Entropic first raised both patents on October 29, 2023, when Entropic's outside counsel informed Comcast's outside counsel that "Entropic intends to seek leave in the 1050 case to add U.S. Patent Nos. 9,866,438 and 11,785,275." Ex. E (Richey Oct. 29 email). On November 1, 2023, counsel for Comcast explained that Comcast would consent to Entropic amending its pleadings to add these patents so long as Entropic's amendment included any additional allegations related to willfulness so that Comcast could all of the amended allegations at the same time in its renewed motions to dismiss. Dkt. 201-3. Entropic did not do so. Instead, at almost midnight on November 3, 2023, outside counsel for Entropic sent "exemplary infringement charts" for the '438 and '275 patents to outside counsel for Comcast and, on November 13, 2023, filed a motion to amend the FAC to add these two patents to the case. Ex. F (Bacchus Nov. 3 email); 1049, Dkt. 115.

The assertion in the SAC that Comcast "has known of or has been willfully blind to the ['275 Patent and '438 Patent] since. . . November 3, 2023" (1049, Dkt. 130-1 at ¶¶ 458, 480) is thus absurd. Entropic had only identified the patents to Comcast's outside counsel days earlier, and it did so not to provide Comcast with pre-suit notice of alleged infringement for Comcast to consider but rather to "add" them to the already-filed 1049 Case. Ex. E (Richey Oct. 29 email). Entropic's willfulness allegations for the '438 and '275 patents thus reflect its own litigation conduct and are no different than its allegations concerning the patents asserted in the original complaint. Entropic cannot meet the covenant's willfulness exemption by notifying Comcast's outside counsel that it is adding the patents to a lawsuit that the covenant not to sue prohibits or else the covenant would have no effect. And Entropic cannot establish willfulness based on infringement contentions that it provided after stating its intent to add the patents to this case without impermissibly converting Comcast's defense of the lawsuit (which Comcast is entitled to pursue) into willful infringement.

Entropic's only other allegation concerning the new patents is based on

Comcast's alleged knowledge of other, related patents, which is insufficient as a matter of law. 1049, Dkt. 130-1, ¶¶ 459, 481. *See Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. 11-06638, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) ("The requisite knowledge of the patent . . . cannot be inferred from mere knowledge of other patents, even if somewhat similar . . . because it is the allowed claims, not the specification, that put potential infringers on notice of the scope of protection.").

### 2. Entropic cannot plausibly allege that Comcast willfully infringed based on litigation against non-parties.

As this Court has recognized, "[l]itigation against other defendants provides a sufficient basis for willful infringement only in narrow circumstances" and based on "specific factual allegations." Order at 9–10. Like the FAC, the SAC fails to plead such "narrow" and "specific" circumstances. The SAC relies on lawsuits against the same four defendants that Entropic previously relied on in the FAC: Charter, DISH, DirecTV, and ViXS. Order 10; SAC ¶¶ 68-93, 115, 153-158; 1049, Dkt. 130-1 at ¶¶ 71-97, 157-162. With respect to three out of four of these non-parties—DISH, DirecTV, and ViXS—the SAC's allegations are materially identical to the FAC's allegations and thus fail to plausibly allege willfulness for the same reasons that the Court previously found.

The SAC's only substantive additions relate to Entropic's litigations against Charter. Specifically, the SAC adds allegations concerning (1) Case No. 23-cv-52 in the Eastern District of Texas ("EDTX"), in which Entropic asserted the '866, '206, '775, and '438 patents; and (2) EDTX Case No. 22-cv-125, which Entropic previously cited in the FAC and in which Entropic asserted the '775, '690, '008, '362, '826, and '682 patents. C.A. 23-cv-1048, Dkt. 69-1 at ¶¶ 69-75; C.A. 23-cv-1050, Dkt. 65-1 at ¶¶ 61-67, 101. However, the SAC's new allegations regarding these cases again fail to meet the requirements for plausibly alleging willful infringement.

First, the SAC admits that Entropic filed the newly identified lawsuit (EDTX C.A. 23-cv-52) on February 10, 2023—the same day that Entropic sued Comcast in these actions. SAC at ¶ 69. Thus, that lawsuit cannot plausibly show that Comcast had

1  ***pre-suit*** knowledge of any patent, let alone pre-suit knowledge of its alleged

2  infringement, as is required. *Infra* § B.1.b. In fact, the SAC admits that Entropic first

3  asserted the '275 and '438 patents in that lawsuit on October 31, 2023, months ***after*** it

4  sued Comcast. SAC at ¶ 69. Thus, the SAC's allegations about the Charter litigation

5  cannot show that Comcast had the requisite knowledge for willfulness for the '866,

6  '206, '275, and '438 patents.

7  Second, the SAC fails to add sufficient factual allegations concerning the

8  previously identified Charter case (EDTX C.A. 22-cv-125) to justify a departure from

9  the Court's Order, which rejected the FAC's reliance on that lawsuit. Order 10. As to

10  the '775 and '690 patents, the SAC simply repeats the allegation from the FAC that

11  Entropic previously asserted them against Charter. It does not add ***any*** new allegations

12  about the patents or the products accused of infringing them. *Compare* SAC, ¶ 68 *with*

13  1050, Dkt. 65-1, ¶ 61. Thus, the SAC fails to allege willful infringement of the '775 and

14  '690 patents for the exact same reasons as the FAC. Order 10.

15  As to the '682, '008, and '826 patents, the SAC adds only conclusory statements

16  that "Comcast's PMA implementation infringes the '682 Patent in substantially the

17  same manner as Charter's PMA implementation," and "Comcast's implementation of

18  remote spectrum monitoring functionality in its Proactive Network Maintenance

19  ('PNM') system infringes the '008 and '826 Patents in substantially the same manner

20  as Charter's implementation of remote spectrum monitoring in its PNM system." SAC

21  ¶ 73. The SAC fails to explain any basis for these bare conclusions, and this Court has

22  made clear that such "a conclusory allegation of similarity would likely not satisfy the

23  willful infringement pleading standard. Rather, Entropic would need to identify

24  products and services accused in the other action and detail their similarities with the

25  accused products and services." Order 10–11; *see also Ashcroft v. Iqbal*, 556 U.S. 662,

26  678 (2009); *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir.

27  2021) (Court need not accept conclusory allegations in assessing a Rule 12 motion)

28  (citing *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir.

2020). Thus, the SAC's conclusory allegations of similarity fail to plausibly allege willful infringement of the '682, '008, and '826 patents.

The only patent asserted against Charter before the filing of this lawsuit for which Entropic attempts to identify purported similarities in accused products with specificity is the '362 patent. For that patent, Entropic relies on "full band capture-enabled cable modems and STBs" that it alleges are similar between Comcast's and Charter's respective offerings. SAC ¶ 74. However, even assuming that Charter's and Comcast's accused products are "similar" in the manner Entropic alleges, the SAC still fails to plead willful infringement because Entropic does not and cannot allege that Charter ever told Comcast about the patent or alleged infringement. This missing allegation is critical and distinguishes Entropic's sole authority in which other litigation sustained an allegation of willful infringement, *Core Optical Techs., LLC v. Juniper Networks Inc.*, 562 F. Supp. 3d 376 (N.D. Cal. 2021).

As this Court recognized, the plaintiff in *Core Optical* "alleged that the defendant maintained a close connection with a key industry player *known to have disclosed the patent* to others." Order at 9 (emphasis added) (citing *Core Optical*, 562 F. Supp. 3d at 381). In that case, the plaintiff (Core) alleged that the defendant (Juniper) learned about the sole asserted patent from its designated "Elite/Select partner" (Fujitsu), which Core had previously sued for infringing the same patent. Ex. G (*Core Optical* Compl.) ¶ 102. But Core did not just allege that Juniper and Fujitsu were partners and stop there. The mere fact that they were partners, without more, would not have plausibly shown that Juniper *knew* about the asserted patent. The only reason Core was able to plausibly allege that Juniper knew about the patent was because Juniper's co-defendant, Cisco, "admitted that its customer *Fujitsu informed it* of the patent on or about July 7, 2016, shortly after Core filed its suit against Fujitsu." *Id*. (emphasis added). Based on that admission, Core alleged that "because Fujitsu notified Cisco of the patent, Fujitsu must have also notified its 'Elite/Select partner' Juniper of that patent," and thus "Juniper learned of the existence and relevance of the patent sometime in or about July 7, 2016,

1    when it was likely informed the patent by Fujitsu." *Id.*

2           By contrast, here there is no allegation—let alone an explicit admission—that

3    Charter ever told ***anyone*** about the '362 patent (or any other asserted patent, for that

4    matter). *Core Optical* is inapposite for this crucial reason.[14]

5           Finally, Entropic's allegations that Charter and Comcast are part of a "tight knit"

6    industry also fail to create any plausible basis to allege that the Charter litigation

7    provided Comcast knowledge of any patent infringement. Specifically, Entropic alleges

8    that both Charter and Comcast personnel attended the SCTE conference and sat on

9    panels together. But the SCTE conference is attended by 8,000 to 10,000 people

10   annually, and Entropic does not allege that any Comcast panelist had knowledge of the

11   Charter litigation, let alone shared that knowledge with a Comcast panelist. Further, the

12   joint venture that Entropic identifies in its allegations relates to video streaming, not the

13   DOCSIS and MoCA functionality accused in the SAC. Ex. H (NY Times article cited

14   in the SAC).[15] The mere fact that two companies, each with over 100,000 employees,

15   have some employees that attend the same conference, or that the two companies

16   engage in business unrelated to the accused technologies, does not create a plausible

17   basis to allege that one company notified the other regarding specific patent

18   infringement claim.

19

20   _____

21   [14] While Entropic alleges that the same supplier, ARRIS, provides the same set top box
     to Charter and Comcast, Entropic alleges the box is sold to Charter as DCX3600 and to

22   Comcast as XG1-A. The SAC thus provides no basis to infer that Comcast would,
     without prompting, look to a lawsuit against another company, see a complaint asserting

23   multiple patents against numerous products, and pick out a product with a different
     name to understand that one of the patents would be asserted against a differently named

24   Comcast product. By contrast, *Core Optical* involved a single asserted patent.

25   [15] The streaming box that is the subject of the Charter-Comcast joint venture, and

26   pictured in Entropic's cited NY Times article, does not even have a coaxial port, and

27   thus cannot infringe any of the asserted patents, which are all asserted against DOCSIS
     and MoCA functionality that require a coaxial port. Notably, Entropic does not allege

28   that it accused the joint venture technology in the Charter cases or in the present case.

### 3.   Entropic cannot plausibly allege willfulness based on Comcast's relationship with MaxLinear.

The SAC includes a new section titled "Comcast's Relationship with MaxLinear" (SAC at 21:8), but the allegations in this section either rehash allegations that the Court has already found insufficient or add only generic allegations that are untethered to any asserted patent, let alone to any infringement (willful or otherwise) of any patent.

Entropic first rehashes its allegations about Comcast hiring Mr. Tierney, a named inventor of the '008 and '826 patents. SAC ¶ 94-98. Yet the Court has already rejected these allegations, making clear that "the Court is not convinced that his personal knowledge from his prior employment can be imputed to Comcast as a whole" and, "even if it could," the allegations about Mr. Tierney "do not plausibly demonstrate knowledge of infringement." Order 11. The SAC adds only high-level speculation, on information and belief, that Mr. Tierney and Comcast discussed product "technology," "functionality," and "operation," (SAC ¶ 99), but fails to allege any factual basis for Entropic's belief or that Mr. Tierney put Comcast on notice that it infringed any patent.

Similarly, the SAC alleges that Comcast "learned about the *functionality* of the Patents-in-Suit through other events it attended," including a convention (SAC ¶ 100) (emphasis added), but it does not assert that Comcast actually learned of the *patents themselves*, let alone any alleged infringement. *See also* SAC ¶ 101. The closest the SAC comes is to allege that MaxLinear gave a presentation to Comcast and stated that "much of this technology was covered by '[a]lmost 2000 issued and pending patents.'" SAC ¶ 102. But the statement that "much" of the technology was patented only begs the question of which technology was patented and which was not—a question the SAC fails to answer—and the notion that MaxLinear possessed some combination of 2,000 issued and pending patents at most suggests "knowledge of a patent portfolio, as opposed to a specific, issued patent, [which] does not support a claim for willful infringement." Order 11 (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017

1   WL 2462423, at *5 (N.D. Cal. June 7, 2017).

2          Entropic also states that Mr. Tierney met with a Comcast employee in late 2012

3   and early 2013, less than a month before the '566 Patent (1049, ¶ 101) and '681 Patent

4   (1049, ¶ 102) respectively issued. *But Mr. Tierney was employed by MaxLinear in 2012-*

5   *2013, which did not own either the '566 Patent or '681 Patent at that time*. MaxLinear

6   did not acquire those patents until 2015, when it acquired Entropic Communications,

7   Inc. 1048, Dkt. 82-1 at 16 and Dkt. 83-9 (Ex. I). There is thus no basis to infer that Mr.

8   Tierney told Comcast about patents on which he is not an inventor and which were not

9   owned by his employer at the time of his alleged meetings.

10          Lastly, the SAC includes statements relating to counterclaims recently asserted

11   by MaxLinear in its litigation against Comcast in SDNY. SAC ¶¶ 103-112; 179–182.

12   These allegations are irrelevant (and untrue). MaxLinear's purported **trade secret**

13   counterclaims in another case have nothing to do with whether Entropic plausibly

14   asserts willful infringement of an asserted **patent** in this case. This Court has already

15   held, at Entropic's insistence, that the covenant not to sue "distinguishes among the

16   types of intellectual property" at issue—"i.e., patents, trademarks, copyrights, and trade

17   secrets" Order at 8 (citing 1048, Dkt. 96-1 (Entropic Opp.) at 14:3–21). Thus, Entropic

18   must plead "notice of each patent at issue before the exemption would apply." *Id*.

19   MaxLinear's counterclaims, and the allegations in the SAC based on them, do not tie

20   the alleged trade secrets to **any** patent, let alone an asserted patent. Thus, they have no

21   bearing on the willful infringement of any asserted patent and are irrelevant to

22   Entropic's lack of standing to bring non-willful patent infringement claims.

23                    **4.    Entropic's patent prosecution related allegations still fail.**

24          Entropic makes only minor, and irrelevant, modifications to its allegations related

25   to alleged notice based on Comcast's patent prosecution activities. Specifically,

26   Entropic now alleges that Comcast patents cite *a parent* to the '682 patent, that is

27   "closely related." SAC ¶¶ 116-119; 1049, ¶¶ 120-123, 380-382. But the Court has

28   already ruled that "absen[t] [] additional factual allegations, prosecution activity cannot

be the basis for a willful infringement claim." Order at 11 (citing *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, at *4 (N.D. Cal. Aug. 22, 2016)); *see also Sonos*, 591 F. Supp. at 643 ("Mere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough."). Entropic also alleges that Comcast filed a patent the same month as the '682 patent, and that Comcast must have become "aware of the '682 [p]atent based on the investigation it undertook during the application and prosecution process." Such conclusory allegations should be awarded no weight. *Boom! Payments*, 839 F. App'x at 533. These allegations also contradict both logic and the law. Patent applications are confidential for 18 months after filing, so it is unclear how Comcast would have found the '682 patent application. Regardless, notice of a patent application does not provide sufficient notice *of the resulting patent* to provide a basis to allege willfulness. *State Indus.*, 751 F.2d at 1236; *Orthopaedic Hosp. v. Encore Med. L.P.*, 2022 WL 254956, at *26 (S.D. Cal. Jan. 27, 2022) ("knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim").

### 5.    The Entropic investment and MoCA participation allegations still fail.

Entropic's amendments related to Comcast's investment in Entropic Communications, Inc. (SAC ¶¶ 113-114, 120-121) and its involvement in the MoCA Alliance still fail to plausibly allege that Comcast had specific knowledge of any asserted patent, let alone infringement of such patent. The Court previously found that "knowledge of a patent portfolio, as opposed to a specific, issued patent, does not support a claim of willful infringement." Order at 11 (citation omitted). Yet all Entropic adds in the SAC is that Comcast "helped to develop the MoCA standard," that it would have been "knowledgeable about the technology essential to the practice of the standard," and that Comcast would have thus had knowledge of the filing of six asserted patents. SAC ¶¶ 126-129, 132, 258, 299, 339, 379, 419, 498. There is no factual basis on which to make the final inference. But even if taken as true, knowledge of a patent

application does not provide a basis to allege willfulness. *See State Indus.*, 751 F.2d at 1236*; Orthopaedic Hosp.*, 2022 WL 254956, at *26 ("knowledge of a patent application alone is insufficient to meet the knowledge requirement for either a willful or induced infringement claim"). And Entropic's conclusory allegations, on information and belief, that Comcast monitored Entropic's patent portfolio are identical to the allegations in the FAC the Court has already rejected. SAC ¶ 130.

The only MoCA-related allegations in the SAC that are tied to a specific patent are those concerning an October 2008 email sent from Anton Monk to the MoCA Alliance Board ("MoCA Board") that allegedly claimed the '518 patent was essential to the MoCA Standard. The SAC asserts that Comcast was on the MoCA Board and therefore received notice of the '518 patent as well as the '759 patent, which is a continuation of the '518 patent. SAC ¶¶ 134–141, 265, 346. But even these more tailored allegations fail to plausibly allege willful infringement of either patent.



1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4 ████████████████████████████████████████

5 ████████████████████████████████████████

6 ████████████████████████████████████████

7 ████████████████████████████████████████

8 ████████████████████████████████████████

9 ████████████████████████████████████████

10 ███████████████ *Finjan*, 2017 WL 2462423, at *5) (willfulness requires knowledge of

11 a specific issued patent).

### C.   The Court should dismiss the SAC with prejudice.

Even on its third try, Entropic fails to plausibly allege willful infringement for any patent. There is no reason to give Entropic yet another bite at the apple and the Court should now dismiss this case with prejudice. *S.F. Herring Ass'n v. U.S. Dep't of the Interior*, 946 F.3d 564, 582 (9th Cir. 2019) ("discretion to deny leave to amend is particularly broad where the plaintiff has previously amended the complaint"); *Owen v. City of Hemet*, 2020 WL 7978503, (C.D. Cal. Dec. 15, 2020) (Holcomb, J.); *Richardson Constr., Inc. v. Clark Cnty. Sch. Dist.*, 223 F. App'x 731, 732 (9th Cir. 2007) (holding dismissal with prejudice is proper where amended complaint "failed to cure" deficiencies identified with prior complaints).

### V.   CONCLUSION

Because the SAC fails to plausibly allege willful infringement of any asserted patent—the only relevant exemption to the VSA's covenant not to sue—the Court should dismiss the SAC with prejudice and without further leave to amend.

1

Dated: December 29, 2023                    WINSTON & STRAWN LLP

2

By: */s/ Krishnan Padmanabhan*

3

K. Padmanabhan (SBN: 254220)
kpadmanabhan@winston.com

4

**WINSTON & STRAWN LLP**
200 Park Ave., Fl. 40

5

New York City, NY 10166
Tel: (212) 294-6700

6

Fax: 212-294-4700

7

Diana Hughes Leiden (SBN: 267606)
dhleiden@winston.com

8

**WINSTON & STRAWN LLP**
333 S. Grand Ave.

9

Los Angeles, CA  90071
Tel: (213) 615-1700

10

Fax: (213) 615-1750

11

Brian Ferguson (*pro hac vice*)
bferguson@winston.com

12

**WINSTON & STRAWN LLP**
1901 L Street NW

13

Washington, DC 20036
Tel: (202) 282-5000

14

Fax: (202) 282-5100

15

Saranya Raghavan (*pro hac vice*)
sraghavan@winston.com

16

**WINSTON & STRAWN LLP**
35 West Wacker, Dr.

17

Chicago, IL 60601
Tel: (312) 558-5600

18

Fax: (312)558-5700

19

*Attorneys for Comcast Defendants*

20

21

22

23

24

25

26

27

28