1   BITA RAHEBI (CA SBN 209351)
    brahebi@mofo.com
2   ALEX S. YAP (CA SBN 241400)
    ayap@mofo.com
3   ROSE S. LEE (CA SBN 294658)
    roselee@mofo.com
4   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard, Suite 6000
5   Los Angeles, California 90017-3543
    Telephone:   (213) 892-5200
6   Facsimile:   (213) 892-5454

7   [Additional counsel on signature page]

8   Attorneys for Counter-Defendants
    MAXLINEAR, INC. AND MAXLINEAR
9   COMMUNICATIONS LLC

10              UNITED STATES DISTRICT COURT

11      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

12  ENTROPIC COMMUNICATIONS,          Case No. 2-23-cv-01049-JWH-KES
    LLC,                              (Lead Case)
13
                                      Judge:  Hon. John W. Holcomb
14            Plaintiff,
                                      **REDACTED VERSION OF**
15       v.                           **DOCUMENT PROPOSED TO BE**
                                      **FILED UNDER SEAL**
16  COX COMMUNICATIONS, INC.;
    COXCOM, LLC; AND COX             **COUNTER-DEFENDANTS**
17  COMMUNICATIONS                    **MAXLINEAR, INC. AND**
    CALIFORNIA, LLC,                  **MAXLINEAR COMMUNICATIONS**
18                                    **LLC'S MOTION TO DISMISS**
              Defendants,             **AMENDED COUNTERCLAIMS BY**
19                                    **COX COMMUNICATIONS, INC.,**
    _____   **COXCOM, LLC, AND COX**
20  COX COMMUNICATIONS, INC.;         **COMMUNICATIONS CALIFORNIA,**
    COXCOM, LLC; AND COX             **LLC**
21  COMMUNICATIONS
    CALIFORNIA, LLC,                  **Hearing:**
22                                    Date:      March 29, 2024
              Counter-Claimants,      Time:      9:00 a.m.
23                                    Place:     Courtroom 9D, Santa Ana
         v.                           Judge:
24
    ENTROPIC COMMUNICATIONS,
25  LLC; MAXLINEAR, INC.; AND
    MAXLINEAR
26  COMMUNICATIONS LLC,

27            Counter-Defendants.

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 29, 2024, at 9:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California, Counter-Defendants MaxLinear, Inc. and MaxLinear Communications LLC ("MaxLinear") move to dismiss all Amended Counterclaims brought against them by Cox Communications, Inc., CoxCom, LLC, and Cox Communications California, LLC (collectively, "Cox").

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; all pleadings, files, and records in this action; any reply memorandum; and such other argument or evidence that may be presented at the hearing on this Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 16, 2024.

Date:  February 6, 2024                    MORRISON & FOERSTER

By: _/s/ Bita Rahebi_
Bita Rahebi

*Attorney for Counter-Defendants*
MAXLINEAR COMMUNICATIONS LLC AND MAXLINEAR, INC.

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 9

II.   SUMMARY OF THE FACTS ............................................................ 11

    A.    MaxLinear, Inc. ........................................................................ 11

    B.    Entropic's Lawsuit Against Cox ............................................... 11

    C.    Cox's Inadequately Pleaded Counterclaims ............................ 11

III.  LEGAL STANDARD ........................................................................ 12

    A.    Rule 12(b)(1) ............................................................................ 12

    B.    Rule 12(b)(6) ............................................................................ 12

IV.   ARGUMENT .................................................................................... 13

    A.    The Court Should Dismiss the Counterclaims for Lack of
        Standing and Ripeness Under Rule 12(b)(1) ........................... 13

        1.    Cox lacks standing due to its failure to show its
              entitlement to rights under the DOCSIS Agreement ................ 14

        2.    Cox lacks standing due to its inability to show that the
              DOCSIS Agreement even applies .............................................. 14

        3.    Cox lacks standing because it does not show what specific
              action(s) MaxLinear took or how they injured Cox ................ 16

        4.    Cox lacks standing because it does not identify a concrete
              and particularized injury capable of redress ............................ 17

        5.    Cox's alleged injury is unripe .................................................. 18

    B.    Cox's Failure to Properly Plead a Breach of Contract Claim
        Warrants Dismissal Under Rule 12(b)(6) ............................... 18

        1.    No contract exists between Cox and MaxLinear, nor is
              Cox a third-party beneficiary of the DOCSIS Agreement ........ 19

            a.    The DOCSIS Agreement reflects the parties' intent
                  to benefit third-party "sublicensees" .............................. 19

            b.    Cox does not claim to be a sublicensee nor has it
                  met the contract's three requirements for third-party
                  beneficiaries ................................................................... 20

            c.    MaxLinear's alleged "intent to benefit" Cox does
                  not confer third-party beneficiary status ........................ 21

3

d. The DOCSIS Agreement's negating clause defeats Cox's third-party beneficiary claim ................................22

2. Cox has not alleged its vendors' performance .........................23

3. Cox does not identify any obligation under the DOCSIS Agreement that MaxLinear failed to perform ...........................24

4. Cox has not alleged damages resulting from MaxLinear's conduct......................................................................................25

5. Cox should not be granted leave to amend...............................26

C. Cox's Pleading Failures and Lack of Standing Preclude It from Requesting a Judgment Voiding the Patent Assignments ..................27

D. Cox's Unjust Enrichment Counterclaim Fails to State a Claim ..........28

1. Cox cannot assert a quasi-contract theory to circumvent the DOCSIS Agreement's provisions.........................................28

2. Cox lacks sufficient allegations to plausibly assert a counterclaim for quasi-contract ................................................29

V. CONCLUSION ...........................................................................................30

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

5

*Area 55, Inc. v. Amazon.com, Inc.*,
   No. 11-cv-145, 2011 WL 13101727 (S.D. Cal. July 25, 2011) .........................27

6

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-cv-1834, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018).............................29

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................12

9

10

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001).............................................................................28

11

12

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010)..........................................................................12

13

14

*Christina Condo. v. Lerner*,
   953 N.Y.S.2d 548 (Sup. Ct. 2012) ...............................................................18, 19

15

16

*Clinton v. Acequia, Inc.*,
   94 F.3d 568 (9th Cir. 1996)..............................................................................18

17

18

*Cole v. Metro. Life Ins. Co.*,
   708 N.Y.S.2d 789 (Sup. Ct. 2000) ...................................................................22

19

20

*Copley v. Natera, Inc.*,
   No. 21-cv-8941, 2023 WL 3772023 (N.D. Cal. May 8, 2023).........................29

21

22

*CWCapital Invs. LLC v. CWCapital Cobalt VR Ltd.*,
   122 N.Y.S.3d 595 (Sup. Ct. 2020) ...............................................................19, 22

23

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ........................................................................................12

24

25

*Dicion v. Mann Mortg., LLC*,
   718 Fed. App'x 476 (9th Cir. 2017)..................................................................28

26

27

*Ebeid ex rel. United States v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010)............................................................................30

28

5

*Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*,
   No. 22-cv-125, ECF Nos. 357, 399 (E.D. Tex. 2023)........................................15

*EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*,
   787 F. App'x 469 (9th Cir. 2019)........................................27

*Hencin v. Avant Diagnostics, Inc.*,
   No. GJH-19-2546, 2020 WL 5526582 (D. Md. Sept. 14, 2020) ......................22

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
   No. 13-cv-519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ..........................26

*Iosilevich v. TD Bank, N.A.*,
   No. 20-cv-1515, 2021 WL 7709508 (E.D.N.Y. Feb. 9, 2021) .........................25

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012) ........................................22

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012)........................................29

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................13

*L.A. Lakers, Inc. v. Fed. Ins. Co.*,
   869 F.3d 795 (9th Cir. 2017)........................................13

*LaSalle Nat'l Bank v. Ernst & Young LLP*,
   729 N.Y.S.2d 671 (Sup. Ct. 2001) ........................................22

*Leadsinger, Inc. v. BMG Music Publishing*,
   429 F. Supp. 2d 1190 (C.D. Cal. 2005)........................................27

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................13, 14, 17

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009) ........................................27

*Mohandas v. Wells Fargo Bank, N.A.*,
   No. 21-cv-3349, 2023 WL 5506004 (C.D. Cal. July 13, 2023)........................29

*Nanomedicon, LLC v. Rsch. Found. of State Univ. of N.Y.*,
   976 N.Y.S.2d 191 (App. Div. 2013) ........................................19, 21

6

*Novak v. United States,*
  795 F.3d 1012 (9th Cir. 2015).............................................................. 27

*Nunes v. Ashcroft,*
  375 F.3d 805 (9th Cir. 2004)................................................................ 26

*Pargett v. Wal-Mart Stores, Inc.,*
  No. 19cv-2157, 2020 WL 5028317 (C.D. Cal. Apr. 10, 2020)........................ 29

*Portland Police Ass'n v. City of Portland,*
  658 F.2d 1272 (9th Cir. 1981).............................................................. 18

*Richardson v. City & Cty. of Honolulu,*
  124 F.3d 1150 (9th Cir. 1997).............................................................. 18

*San Diego Unified Port Dist. v. Monsanto Co.,*
  309 F. Supp. 3d 854 (S.D. Cal. 2018) .................................................... 17

*Sherman v. Pepperidge Farm, Inc.,*
  No. 22-cv-1781, 2023 WL 5207458 (C.D. Cal. Apr. 28, 2023) ...................... 21

*In re Stac Elecs. Sec. Litig.,*
  89 F.3d 1399 (9th Cir. 1996)................................................................ 13

*United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.,*
  145 F. Supp. 3d 932 (C.D. Cal. 2015).................................................... 28

*Valley Nat'l Bank v. Mundo Trucking,*
  No. 21-cv-6079, 2021 WL 6882194 (C.D. Cal. Dec. 29, 2021) ...................... 13

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003).............................................................. 29

*Weinberger v. Vernitron Corp.,*
  No. 89-cv-103692, 1993 WL 148704 (Conn. Super. Ct.
  May 3, 1993)................................................................................... 23

**Other Authorities**

U.S. Const. Art. III ........................................................................ 12, 17

Fed. R. Civ. P

9(b) .................................................................................................. 29, 30

12(b)(1) ............................................................................................. 12, 13

12(b)(6) ............................................................................................. 12, 18

15 ........................................................................................................... 26

1 Witkin, Summary 11th Contracts § 1055 (2023) .................................................. 30

## I.   INTRODUCTION

Cox's Amended Counterclaims[1] fare no better than its original ones.  In its prior motion to dismiss (ECF No. 160), MaxLinear identified multiple defects in Cox's original Counterclaims.  These included Cox's lack of rights under the February 2012 DOCSIS[2] Agreement between MaxLinear and CableLabs, and hence its lack of standing; its failure to allege that the asserted patents are standards-essential, making its counterclaims unripe; its failure to plead damages; its failure to plead performance; and the duplicative nature and legal insufficiency of its unjust enrichment counterclaim.  Rather than correct the various defects that MaxLinear identified, Cox's amendments reinforce that its counterclaims lack merit and remain incurable.

As an initial matter, Cox still lacks standing: it is neither a party nor a third-party beneficiary to the contract on which its Amended Counterclaims rely.  The DOCSIS Agreement was between MaxLinear and CableLabs, not MaxLinear and Cox.  As part of that agreement, MaxLinear and CableLabs exchanged licenses to intellectual property relating to the DOCSIS standard.

Although it never entered into an agreement with or made a similar exchange with MaxLinear, Cox asserts a license under the DOCSIS agreement.  In its original Counterclaims, Cox claimed to be *sublicensed* under the DOCSIS Agreement. After MaxLinear noted multiple, independent defects with that allegation in its prior motion (e.g., Cox's failures to request a sublicense or reciprocally license its patents), Cox abandoned that allegation.  Cox now claims that its purchase of DOCSIS-compliant products immunizes it from infringement as a third-party beneficiary, but the DOCSIS Agreement's express terms contradict that position.

---

[1] In this Motion, MaxLinear refers to paragraphs 1-266 of Cox's pleading as the "Answer" and to paragraphs 267-319 as the "Amended Counterclaims." (*See* ECF No. 189.)  MaxLinear does not admit the truth of Cox's allegations in its pleading, but accepts them as true for purposes of this Motion.
[2] Data Over Cable Service Interface Specifications ("DOCSIS").

Cox also still does not definitively allege that the asserted patents are standards-essential—a basic requirement for the DOCSIS Agreement to be relevant.  Entropic, which owns the asserted patents, likewise denies that they are standards-essential.  Until Cox alleges otherwise and the Court agrees, Cox's injury remains unripe.

Lack of standing and unripeness are not the only issues with Cox's Amended Counterclaims; each suffers from further defects that independently warrant their dismissal.  Cox's breach of contract counterclaim does not:  identify a contract to which both MaxLinear and Cox are parties; adequately allege that MaxLinear and CableLabs intended the DOCSIS Agreement to benefit Cox (as necessary for third-party beneficiary status); allege Cox's or its licensor's performance (e.g., compliance with the marking requirement); explain MaxLinear's alleged breach; or identify Cox's alleged damages with specificity.  Cox's declaratory relief counterclaim mirrors its breach of contract counterclaim and inherits all of these deficiencies.

As for unjust enrichment, Cox still struggles to overcome the legal obstacles to that counterclaim.  Implicitly acknowledging that California does not recognize unjust enrichment as a cause of action, Cox newly pleads a quasi-contract counterclaim for restitution.  The law is clear, however, that Cox cannot simultaneously allege that MaxLinear breached an enforceable contract and raise a quasi-contract counterclaim that denies that an enforceable contract exists.  Its allegations of injustice and MaxLinear's alleged enrichment also remain vague and conclusory; Cox identifies no unique benefit to MaxLinear under the DOCSIS Agreement, much less one that is unjust.  Cox further ignores that its breach of contract and unjust enrichment counterclaims are impermissibly redundant.

Cox had the opportunity to address the defects in its original Counterclaims via its latest amendments but has not done so.  Because Cox's Amended

MaxLinear's Motion to Dismiss Cox's Amended Counterclaims
Case No. 2:23-cv-01049-JWH-KES
sf-5712622

Counterclaims remain legally deficient and further amendment would be futile,
MaxLinear asks that the Court dismiss Counts I, II, and VI with prejudice.

## II.   SUMMARY OF THE FACTS

### A.   MaxLinear, Inc.

MaxLinear is a leading innovator of radiofrequency, analog, digital, and
mixed-signal semiconductor solutions.  (Compl. ¶ 26.)  In 2015, MaxLinear
acquired Entropic Inc. and thereby obtained two of the asserted patents.  (*Id*.)
MaxLinear subsequently transferred these and other patents to Entropic
Communications, LLC, the plaintiff in this action, in 2021.  (*Id*. ¶ 27.)

### B.   Entropic's Lawsuit Against Cox

Before filing suit, Entropic attempted to "engage Cox and/or its agents in
good faith licensing discussions regarding Entropic's patent portfolio," which
included the asserted patents.  (*Id*. ¶ 21.)  Cox did not respond.  (*See* Answer ¶ 21.)
Accordingly, in February 2023, Entropic sued Cox for patent infringement.
Entropic alleges that Cox has used its patented innovations to "provide enhanced
and expanded services to customers, which in turn has increased revenues for Cox
while at the same time reducing costs."  (Compl. ¶ 28.)

### C.   Cox's Inadequately Pleaded Counterclaims

Cox answered Entropic's Complaint on May 8, 2023.  (ECF No. 49.)  It
amended its Answer and added Counterclaims for breach of contract and unjust
enrichment against MaxLinear on October 6, 2023.  (ECF No. 87.)

MaxLinear moved to dismiss Cox's Counterclaims against it on
December 22, 2023.  (ECF No. 160.)  MaxLinear pointed out multiple deficiencies
in Cox's Counterclaims, including:

- Cox's lack of standing based on its failure to plead plausible damages;
- The unripeness of Cox's alleged injury, based on Cox's failure to plead
  standards-essentiality and the contingent nature of any harm;

11

1

- Cox's failure to plead the elements of a breach of contract claim; and

2

- The conclusory and duplicative nature of its unjust enrichment

3

counterclaim.

4       On January 9, 2024, Cox filed Amended Counterclaims (ECF No. 189).

5   Cox's amendments did not rectify the deficiencies that MaxLinear identified in its

6   motion to dismiss, but added a request for declaratory relief.

7   **III.   LEGAL STANDARD**

8       **A.   Rule 12(b)(1)**

9       A counter-defendant may challenge standing under Rule 12(b)(1).  As the

10  party invoking the court's jurisdiction, Cox bears the burden of alleging facts

11  sufficient to prove its Article III standing.  *See Chandler v. State Farm Mut. Auto.*

12  *Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) ("The party asserting federal subject

13  matter jurisdiction bears the burden of proving its existence.").  A counterclaimant

14  must do so for "each claim" and "each form of relief sought."  *DaimlerChrysler*

15  *Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006) (internal citations and quotations

16  omitted).  If it does not, Rule 12(b)(1) allows the dismissal of its counterclaims for

17  lack of subject matter jurisdiction.  *See Chandler*, 598 F.3d at 1122.

18      The doctrine of ripeness allows the court to dismiss a matter that is premature

19  for review, *e.g.*, because the purported injury is too speculative and may never

20  occur.  Because "ripeness pertain[s] to federal courts' subject matter jurisdiction," it

21  may "properly [be] raised in a Rule 12(b)(1) motion to dismiss."  *Id*.

22      **B.   Rule 12(b)(6)**

23      To survive dismissal under Rule 12(b)(6), "a complaint must contain

24  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

25  on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

26  *v. Twombly*, 550 U.S. 544, 570 (2007)).  Dismissal for failure to state a claim is

27  proper "where there is no cognizable legal theory or an absence of sufficient facts

28

alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal citation and quotation omitted).

In assessing a motion to dismiss, the court may consider documents that the complaint references or that are integral to its claims. "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document . . . even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). A court may consider the document in its entirety and not merely the portions mentioned or quoted in the complaint. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). Dismissal is appropriate when a document that forms the basis of a claim negates that claim. *See Valley Nat'l Bank v. Mundo Trucking*, 2021 WL 6882194, at *3 (C.D. Cal. Dec. 29, 2021) ("[W]hen a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations.") (citation omitted).

## IV.   ARGUMENT

### A.   The Court Should Dismiss the Counterclaims for Lack of Standing and Ripeness Under Rule 12(b)(1)

The Court should dismiss all three of Cox's Counterclaims against MaxLinear. All are unripe and lack any plausible injury-in-fact that can be redressed by a favorable decision.

The "irreducible constitutional minimum of standing" requires an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish an injury-in-fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. (citation omitted). It must be "likely" and not "merely 'speculative'" that "the injury will be 'redressed by a favorable decision.'" *Id*. at 561 (citation omitted). Because these are not mere pleading

requirements but an indispensable part of the plaintiff's case, a plaintiff must support its alleged injury-in-fact and redressability "in the same way as any other matter on which [it] bears the burden of proof." *Id.*

**1.    Cox lacks standing due to its failure to show its entitlement to rights under the DOCSIS Agreement**

Cox's three counterclaims for breach of contract, declaratory judgment, and unjust enrichment assume that MaxLinear made commitments to Cox under the DOCSIS Agreement.  (*See* Am. Countercls. ¶¶ 322, 328, 340.)  But the DOCSIS Agreement is between MaxLinear and CableLabs, not MaxLinear and Cox.

In its Amended Counterclaims, Cox does not explain why it possesses rights under the DOCSIS Agreement.  For example, it does not allege that it signed the DOCSIS Agreement or that it was a party to that agreement.  Although Cox previously alleged in its original Counterclaims that it was a sublicensee, it has since abandoned that allegation with no explanation.  Cox now claims rights as a third-party beneficiary, but the DOCSIS Agreement includes a negating clause that bars such rights: ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████ (DOCSIS Agreement (ECF No. 87-1) § 2.4.) Because Cox has not shown that the DOCSIS Agreement applies to it and provides a means of redress, Cox lacks standing to sue MaxLinear for allegedly failing to adhere to that agreement.  *Lujan*, 504 U.S. at 560 (to have standing, plaintiff must have suffered "invasion of a legally protected interest").

**2.    Cox lacks standing due to its inability to show that the DOCSIS Agreement even applies**

The DOCSIS Agreement applies only to standards-essential patents.  Per its plain terms, ██████████████████████████████████████████████████ ██████████████████. (DOCSIS Agreement § 4.2 (██████████████████

1   ████████████████████████████████████████████████████

2   ████████████████████████████████████████████████████

3   ████████ ).)  Patents that are not essential to practice the DOCSIS standard are

4   outside the agreement's purview.

5          In its Amended Counterclaims, Cox intentionally avoids definitively stating

6   that the asserted patents are essential to practicing the DOCSIS standard.  This

7   presumably is because agreeing that the asserted patents are standards-essential

8   would operate as a concession that its DOCSIS-compliant products infringe.  To

9   avoiding take a clear position, Cox instead points to alleged positions by the

10  asserted patents' current owner, Entropic, in its infringement contentions on

11  standards-essentiality.  (*See, e.g.*, Am. Countercls. ¶¶ 268 ("Plaintiff has admitted,

12  or made assertions in its Complaint and in its infringement contentions that

13  reasonably suggest, that one or more of the Asserted Patents contain claims

14  essential to compliance with [DOCSIS] standards."), 306 ("Based upon Plaintiff's

15  averments in its Complaint, Plaintiff's infringement contentions and/or the DOCSIS

16  specifications themselves, one or more claims from at least the '008, '826 and/or

17  '690 Patents, are essential for compliance with the DOCSIS specifications.  And, as

18  to the '755 and '682 patents, at least in light of Plaintiff's contentions . . . each of

19  those patents plausibly may contain one or more claims that are essential to

20  DOCSIS.").)

21         Entropic's positions, however, lend Cox no aid.  Entropic has repeatedly

22  *denied* that the asserted patents are standards-essential.  Entropic did so in its

23  resolved litigation against Charter Communications, Inc. on the same patents.  *See*

24  *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 22-cv-125, ECF

25  Nos. 357, 399 (E.D. Tex. 2023) (acknowledging that Entropic and Charter dispute

26  whether Charter had plausibly that shown any of the Asserted Patents fall within

27  the meaning of "Licensed Technology," defined as patents "essential for

28

1  compliance with the Specifications").  And Entropic also has done so in this

2  litigation.  (ECF No. 161 at 6-7 & n. 5 ("Entropic's position is that the Asserted

3  Patents are not subject to the DOCSIS License because they are not 'essential for

4  compliance with the [DOCSIS] Specifications.'").)

5      Absent a clear allegation that the asserted patents are essential to practicing

6  the DOCSIS standard, the DOCSIS Agreement cannot apply to Cox or its DOCSIS-

7  compliant products.  Cox therefore lacks standing to assert rights under the

8  DOCSIS Agreement.

9         **3.**    **Cox lacks standing because it does not show what specific
action(s) MaxLinear took or how they injured Cox**

10

11     Under the DOCSIS Agreement, MaxLinear licensed certain patent rights to

12  CableLabs, which in turn could sublicense them to others under specified

13  conditions.  (DOCSIS Agreement § 2.)  MaxLinear then assigned the asserted

14  patents to Entropic.

15     In its Amended Counterclaims, Cox alleges that MaxLinear "sought to avoid

16  encumbrances on its patents" under the DOCSIS Agreement.  (Am. Countercls.

17  ¶¶ 267, 296-98.)  But Cox does not explain how MaxLinear could limit

18  encumbrances in view of the agreement's provisions.  The DOCSIS Agreement

19  permits CableLabs to grant sublicenses to the intellectual property rights that

20  CableLabs received from MaxLinear.

21     To the contrary, Cox's pleadings rebut any claim of breach or injury.  Cox

22  alleges that it has already received the benefit of a sublicense to the asserted patents

23  through its vendors.  (*See, e.g.*, *id*. ¶ 291.)  If so, then MaxLinear "avoided" no

24  "encumbrance," and Cox was not injured.  Cox therefore lacks standing.

25

26

27

28

MAXLINEAR'S MOTION TO DISMISS COX'S AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES
sf-5712622

### 4. Cox lacks standing because it does not identify a concrete and particularized injury capable of redress

In its Amended Counterclaims, Cox does not explain how MaxLinear's patent assignment to Entropic caused it any injury or describe what that injury is in any detail. (*See* Am. Countercls. ¶¶ 325, 333.) Instead, Cox vaguely—and conclusorily—alleges that it "has been injured in [its] business or property, and has suffered and will continue to suffer damages" and that the transfer of patents has "created additional expense and uncertainty for Cox and its business." (*Id*. ¶¶ 333, 340.) But these allegations offer zero facts or details explaining the nature of Cox's purported damages or which "business or property" is at issue. Nor do they provide any clue as to what expenses Cox may have incurred and for what purpose.

Cox speculates that, but for MaxLinear's purported (and unidentified) breach, "this case would not have been filed." (*Id*. ¶ 315.) But the pendency of Entropic's litigation against MaxLinear cannot supply the requisite harm for standing. "Litigation costs are insufficient to establish standing for purposes of Article III." *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 866 (S.D. Cal. 2018) (costs in defending litigation that "would not have been initiated" absent counter-defendant's action does not provide standing).

This makes particular sense here, where Cox will have to bear the costs of litigation and pay damages regardless of who the proper patent owner is. If MaxLinear's patent transfer to Entropic is void, as Cox alleges, that would simply mean that MaxLinear is the patent owner. Cox then would be liable to MaxLinear for any alleged patent infringement, not Entropic—and the purported harm is the same. Because Cox has not articulated a "concrete" and "particularized" injury, the Court should dismiss its Amended Counterclaims for lack of Article III standing. *Lujan*, 504 U.S. at 561.

### 5.    Cox's alleged injury is unripe

The doctrine of ripeness assesses "whether [a] case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Richardson v. City & Cty. of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997) (internal quotation and citation omitted).  Where a dispute hangs on "future contingencies that may or may not occur," *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), it is too "impermissibly speculative" to present a justiciable controversy, and the court should dismiss the case.  *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981).

Here, Cox's Amended Counterclaims are unripe because they are contingent on the asserted patents being standards-essential—a finding that no court has yet made.  Indeed, as noted, Cox refuses to take a definitive position on whether the asserted patents are essential to practicing the DOCSIS standard.  Until a court holds that the asserted patents are essential to practicing the DOCSIS standard, Cox's reliance on the DOCSIS Agreement remains premature and speculative.  The Court therefore should dismiss Cox's Amended Counterclaims, all of which rely on an alleged license under the DOCSIS Agreement.

### B.    Cox's Failure to Properly Plead a Breach of Contract Claim Warrants Dismissal Under Rule 12(b)(6)

Under New York law,[3] a plaintiff must plead four elements to state a breach of contract claim:  (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage.  *Christina Condo. v. Lerner*, 953 N.Y.S.2d 548, at *3 (Sup. Ct. 2012).  Even after amending its Counterclaims, Cox still fails to plead the required elements.  The failure to plead even one element warrants dismissal.

---

[3] Section 9.4 of the DOCSIS Agreement provides a "Governing Law" clause: "This Agreement shall be governed by and interpreted in accordance with laws of the State of New York."

18

**1.    No contract exists between Cox and MaxLinear, nor is Cox a
third-party beneficiary of the DOCSIS Agreement**

To assert a breach of contract counterclaim against MaxLinear, Cox must
first establish the formation of a contract with MaxLinear. *Christina*, 953 N.Y.S.2d
548, at *3. Cox does not. Instead, Cox claims to be a third-party beneficiary under
the DOCSIS Agreement. Its allegations, however, fall far short of the legal and the
express contractual requirements for asserting third-party beneficiary status.

**a.    The DOCSIS Agreement reflects the parties' intent to
benefit third-party "sublicensees"**

Third-party beneficiary status is an exception to the general rule that a
plaintiff must have privity to sue for breach. A party asserting rights as a third-
party beneficiary must establish "that the contract was intended for [its] benefit"
and that the benefit "is sufficiently immediate, rather than incidental, to indicate the
assumption by the contracting parties of a duty to compensate [it] if the benefit is
lost." *Nanomedicon, LLC v. Rsch. Found. of State Univ. of N.Y.*, 976 N.Y.S.2d
191, 194 (App. Div. 2013) (internal quotation and citation omitted). The parties'
intent to benefit the third party "must be apparent from the face of the contract."
*CWCapital Invs. LLC v. CWCapital Cobalt VR Ltd.*, 122 N.Y.S.3d 595, 600 (Sup.
Ct. 2020) (internal quotation and citation omitted).

Here, the DOCSIS Agreement ███████████████████████
████████████████████████████████████████████
███████████████████████ (DOCSIS Agreement at p. 1, ¶ 2.)
It also refers to ████████████████████████████████
████████████████████████. (*Id*. at ¶ 3.)

The DOCSIS Agreement then specifies requirements for a potential
sublicensee to obtain rights to the DOCSIS pool. ████████████████
████████████████████████████████████████████

1  ██████████████████████. (DOCSIS Agreement §§ 2.2, 4.1.)  Cox does not

2  allege that it has done any of these things, and its reliance on its "suppliers" is of no

3  help.

> ### b. Cox does not claim to be a sublicensee nor has it met the contract's three requirements for third-party beneficiaries

6  Although MaxLinear highlighted Cox's failure to plead satisfaction of

7  contractual requirements in its prior motion to dismiss (*see* ECF No. 160 at 17-18),

8  Cox's Amended Counterclaims still do not plead their satisfaction.

9  First, the DOCSIS Agreement states that ████████████████████████

10  ███████████████████████████████ (DOCSIS Agreement

11  § 2.2.)  But nowhere does Cox allege that it requested a sublicense from CableLabs.

12  And even if Cox had done so and CableLabs had denied its request, its grievance

13  would lie with CableLabs, not MaxLinear.

14  Second, Cox's Amended Counterclaims readily concede that obtaining a

15  license to the DOCSIS pool under the DOCSIS Agreement requires a *quid pro quo*.

16  "[T]o participate in the Working Group, a Vendor must make reciprocal

17  commitments to all other Contributors by signing the Contribution Agreement."

18  (Am. Countercls. ¶ 284 (quoting CableLabs' website).)  "Specifically, companies

19  that have signed a DOCSIS license agreement [must have] granted CableLabs a

20  non-transferable, worldwide, non-exclusive, royalty free license, with the right to

21  sublicense" to receive a reciprocal license from CableLabs.  (*Id*. ¶ 286.)  But

22  nowhere in its Amended Counterclaims does Cox allege that it granted a reciprocal

23  license to its own patents to CableLabs.

24  Third, as MaxLinear also explained to Cox in its original motion to dismiss

25  (ECF No. 160 at 17-18), the DOCSIS Agreement obligates each sublicensee to

26  mark its products with the patents to which it is licensed.  (DOCSIS Agreement

27  § 4.1 (██████████████████████████████████████

28

MaxLinear's Motion to Dismiss Cox's Amended Counterclaims
Case No. 2:23-cv-01049-JWH-KES
sf-5712622

1 ██████████████████████████████████████████████████████

2 ██████████████████████████████████████████████████████

3 ████████████████████████████████).)  But nowhere in its Amended

4 Counterclaims does Cox allege that it has ever done so.

5        MaxLinear expects Cox to allege that its third-party beneficiary status does

6 not depend on satisfaction of these requirements.  (*See* ECF No. 187 at 5 (in

7 opposing MaxLinear's prior motion, cryptically alleging that the express

8 requirements are "neither factually accurate nor . . . applicable to third party

9 beneficiaries in California or elsewhere.").)  But Cox cannot dispute that third-party

10 beneficiary status requires proof that an agreement was intended for the alleged

11 beneficiary's benefit.  *Nanomedicon*, 976 N.Y.S.2d at 194 (party alleging third-

12 party beneficiary status must show "contract was intended for [its] benefit");

13 *Sherman v. Pepperidge Farm, Inc.*, 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28,

14 2023) (Holcomb, J.) ("A third-party may qualify as a beneficiary under a contract

15 when the contracting parties intend to benefit the third-party and the intent appears

16 in the terms of the agreement.").  Here, the DOCSIS Agreement makes clear its

17 intent to confer third-party beneficiary status *only* on sublicensees that satisfy

18 express requirements.  Cox has not.

19              **c.    MaxLinear's alleged "intent to benefit" Cox does not
                        confer third-party beneficiary status**
20

21        Straining to justify its entitlement to a license under the DOCSIS Agreement,

22 Cox vaguely alleges that MaxLinear "knew . . . that Cox was a beneficiary of the

23 DOCSIS License Agreements" and made promises for its benefit.  (Am.

24 Countercls. ¶ 303.)  Per Cox, MaxLinear's promises ██████████████████

25 ██████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████

27 ████████████████████████████████ (*Id.*)

28

MAXLINEAR'S MOTION TO DISMISS COX'S AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES
sf-5712622

1      But Cox offers nothing to support these claims of "knowledge," and the

2   DOCSIS Agreement likewise offers none.  Cox does not explain how MaxLinear

3   allegedly "knew" of any licensee's or sublicensee's association with Cox or

4   "vendors to Cox."  And nowhere does the DOCSIS Agreement ███████████

5   ████████████████████████████████████████████████████████████████████

6   ███████████████████████████.  (*See* DOCSIS Agreement § 2.5.)  "[A]bsent

7   clear contractual language evincing such intent, New York courts have

8   demonstrated a reluctance to interpret circumstances to construe such an intent."

9   *CWCapital Invs.*, 122 N.Y.S.3d at 600 (internal quotation and citation omitted).

10      Although Cox may qualify as an incidental beneficiary, *i.e.*, "a third party

11   who may derive a benefit from the performance of a contract though [it] is neither

12   the promise nor the one to whom performance is to be rendered," the DOCSIS

13   Agreement makes clear it is not an intended beneficiary.  *Cole v. Metro. Life Ins.*

14   *Co.*, 708 N.Y.S.2d 789, 790 (Sup. Ct. 2000) (physician not intended beneficiary of

15   insurance plan that excluded non-participating providers from receiving direct

16   benefits) (internal quotation and citation omitted).  Because it is not an intended

17   beneficiary, Cox lacks standing to bring suit.  *See LaSalle Nat'l Bank v. Ernst &*

18   *Young LLP*, 729 N.Y.S.2d 671, 676 (Sup. Ct. 2001) ("A non-party may sue for

19   breach of contract only if it is an intended, and not a mere incidental, beneficiary").

20            **d.      The DOCSIS Agreement's negating clause defeats**
                        **Cox's third-party beneficiary claim**
21

22      Courts in New York strictly enforce negating clauses that bar a third party

23   from claiming an agreement's benefits.  *See Hencin v. Avant Diagnostics, Inc.*,

24   2020 WL 5526582, at *4 (D. Md. Sept. 14, 2020)) ("It is well-settled under New

25   York Law, the law that governs the Agreement in this case, that a clause precluding

26   third-parties from claiming rights under a contract is fully enforceable as a matter of

27   law") (internal quotation and citation omitted); *Katz v. Pershing, LLC*, 672 F.3d 64,

28

73 (1st Cir. 2012) ("The plaintiff has not pointed to any New York case in which an explicit disclaimer of third-party beneficiary claims has been overlooked for any reason, and our research has revealed none.").

Here, the DOCSIS Agreement includes such a clause: ███████████

███████████████████████████████████████████

███████████████████████████████████████

(DOCSIS Agreement § 2.4 (emphasis added).)  This clause bars Cox from claiming third-party beneficiary status.

### 2. Cox has not alleged its vendors' performance

████████████████████████████████████████████

████████████████████████. (Am. Countercls. ¶¶ 289, 291.) Even if Cox was a third-party beneficiary under the DOCSIS Agreement via these unidentified vendors (it is not), Cox would still need to plead the elements of a breach of contract claim.  This includes its vendors' performance.  "To render a promisor liable on a contract[,] it is incumbent on the part of a third party beneficiary to show due performance of the conditions by the promisee for only in that event would the promisor be liable." *Weinberger v. Vernitron Corp.*, 1993 WL 148704, at *4 (Conn. Super. Ct. May 3, 1993) (quoting *Gen. Accident Fire & Life Assurance Corp. v. Margolis*, 116 N.Y.S.2d 209, 211 (Sup. Ct. 1952)).

Cox does not do so; nowhere in its Amended Counterclaims does Cox allege that its "vendors" (or other "licensees" and "sublicensees") complied with the DOCSIS Agreement's requirements for a license or sublicense.  As noted, these include ████████████████████████████████████████

███████████████████████████████████. (DOCSIS Agreement §§ 2.2, 4.1.)  Absent an allegation that its vendors (or other licensees or sublicensees) performed under the DOCSIS Agreement, Cox cannot rely on their license or sublicense, and Cox's Amended Counterclaims fail to state a claim.

**3.     Cox does not identify any obligation under the DOCSIS Agreement that MaxLinear failed to perform**

Cox's Counterclaims identify three alleged breaches by MaxLinear: (1) accepting an interest in the present litigation, (2) attempting to assign the asserted patents free of any encumbrances, and (3) transferring patents to Entropic without ensuring that it would honor MaxLinear's obligations under the DOCSIS license.  (Am. Countercls. ¶ 324.)  But Cox does not explain why these actions qualify as breaches of the DOCSIS Agreement.

First, Cox does not cite any provision that prohibits MaxLinear from accepting an interest in a lawsuit's outcome.  To the contrary, the DOCSIS Agreement expressly ███████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████ (DOCSIS Agreement § 6.2.)

Second, Cox does not cite any provision that prohibits MaxLinear from attempting to assign its patents free of encumbrances.  To the contrary, the DOCSIS Agreement ████████████████████████████████████████████████ ████████████████████████████████████████ (*Id.* § 9.6 (emphasis added).)

Although Cox points to the "Patent Purchase Agreement" between MaxLinear and Entropic, Cox does not explain how that agreement contravenes any obligation under the DOCSIS Agreement.  (Am. Countercls. ¶¶ 298, 338.)  It does not.  And Cox itself pled that Entropic knew of the DOCSIS standard and license terms.  (*Id.* ¶ 302.).  This inconsistency in the pleading alone renders Cox's allegations implausible.  And the ████████████████████████████████ ███████████████████████████████████████████████ ██████.  (*See* Request for Judicial Notice, filed concurrently, Ex. 1 at § 5.7,

MAXLINEAR'S MOTION TO DISMISS COX'S AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES
sf-5712622

1  Ex. I.)  It also acknowledges that MaxLinear has ███████████████

2  ███████████.  (*Id.* § 5.7.)

3      Third, Cox does not cite any provision that requires MaxLinear to ensure

4  Entropic's compliance with the Agreement.  To the contrary, and as noted, the

5  DOCSIS Agreement ████████████████████████████████████████████

6  ███████████  (DOCSIS Agreement § 9.6.)  Although the DOCSIS Agreement

7  further states that █████████████████████████████████

8  ██████████████████████  (*id.*), that is an obligation of Entropic—not

9  MaxLinear.  Should a party to the DOCSIS Agreement believe that Entropic is not

10  abiding by its obligations, it should raise its grievances with Entropic or CableLabs.

11  **4.    Cox has not alleged damages resulting from MaxLinear's conduct**

12

13      Cox's alleged damages stem from its own conduct, not MaxLinear's.  Cox

14  asserts that "MaxLinear's and Plaintiff's actions have resulted in Cox not receiving

15  the intended benefits of the DOCSIS licenses and standards, including the right to

16  enjoy its purchase and use of manufactured products compliant with DOCSIS free

17  from any claims of infringement by DOCSIS Licensors such as MaxLinear."  (Am.

18  Countercls. ¶ 317.)  As noted, however, Cox has taken no action to secure any

19  benefits as a "sublicensee" under the DOCSIS Agreement.  It cannot suffer harm

20  from something to which it has no right.

21      Cox's damages allegations also fail on causation.  "Causation is an essential

22  element of damages in a breach of contract action."  *Iosilevich v. TD Bank, N.A.*,

23  2021 WL 7709508, at *2 (E.D.N.Y. Feb. 9, 2021) (quoting *Nat'l Mkt. Share, Inc. v.*

24  *Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004)).  "[A] plaintiff must allege

25  that 'a defendant's breach directly and proximately caused his or her damages.'"

26  *Id.*  Cox does not do this.  It does not explain how MaxLinear's acceptance of an

27  interest in the outcome of this litigation has damaged it.  Nor does it explain how

28

MaxLinear's patent assignment to Entropic has caused it any harm.  Cox remains liable for its patent infringement regardless of whether MaxLinear has an interest in this litigation and regardless of whether MaxLinear's patent assignment to Entropic is valid.  If the assignment to Entropic were void, Cox would simply owe damages to MaxLinear instead.

"In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *10 (S.D.N.Y. Mar. 31, 2014) (internal quotation and citation omitted).  Because Cox has not adequately pled damages, its Amended Counterclaims must be dismissed.

### 5.    Cox should not be granted leave to amend

The Court should dismiss Cox's Amended Counterclaims without leave to amend.  Courts deciding whether to allow amendment under Rule 15 consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) the futility of amendment; and (5) whether the plaintiff has previously amended [its] complaint." *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

Cox has already had multiple opportunities to amend; its Amended Counterclaims are its *third* response to Entropic's Complaint.  Cox first filed its Answer on May 8, 2023.  (ECF No. 49).  It then filed its Amended Answer and asserted Counterclaims against Entropic and MaxLinear on October 6, 2023.  (ECF No. 87.)  Most recently, it amended its Answer and filed First Amended Counterclaims on January 9, 2024.  (ECF No. 189)  Its latest amendments (which followed MaxLinear's prior motion to dismiss) still do not cure the many deficiencies that MaxLinear identified with its Counterclaims.

At this juncture, there is no reason to think that Cox can cure its pleading defects, especially regarding privity and standing.  Cox has backed away from its prior claim to be a sublicensee and now claims third-party beneficiary status.  But

1   its related allegations are conclusory, legally insufficient, and contrary to the

2   express provisions of the DOCSIS Agreement.  The futility of Cox's anticipated

3   future amendments warrants denial of leave to amend.  *See Novak v. United States*,

4   795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to

5   grant leave to amend.").

6          Cox's prior amendments to its Answer and Counterclaims and its

7   sophistication further disfavor allowing further amendment.  Cox is no *pro se*

8   plaintiff; it knows how to state a claim for breach of contract and how to identify a

9   faulty one.  *See, e.g.*, *Lyons v. Coxcom, Inc*., 718 F. Supp. 2d 1232, 1239 (S.D. Cal.

10  2009) (Cox successfully moving to dismiss an insufficiently pled breach claim).

11  Cox's failure to plead an adequate breach claim despite multiple attempts confirms

12  that it cannot do so.

13         Cox does not deserve another chance.  Aside from being futile, further

14  amendments would increase the parties' litigation costs, add delay, and consume

15  additional judicial resources.  Dismissal without leave to amend is warranted.

16  **C.     Cox's Pleading Failures and Lack of Standing Preclude It from**
            **Requesting a Judgment Voiding the Patent Assignments**
17

18         For declaratory relief, "the actual controversy between the parties must relate

19  to a claim upon which relief can be granted."  *Leadsinger, Inc. v. BMG Music*

20  *Publishing*, 429 F. Supp. 2d 1190, 1193 (C.D. Cal. 2005).  Here, Cox's request for

21  declaratory relief depends entirely on the same facts and issues as its breach of

22  contract counterclaim.  Because that claim is deficient, and the declaratory

23  judgment claim is nothing more than a duplication of the breach claim, the Court

24  should dismiss Cox's declaratory relief request with prejudice.  *See Area 55, Inc. v.*

25  *Amazon.com, Inc.*, 2011 WL 13101727, at *3 (S.D. Cal. July 25, 2011) (dismissing

26  declaratory judgment counterclaim where "no valid breach of contract claim ha[d]

27  been stated"); *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 787 F. App'x

28

469, 471 (9th Cir. 2019) (affirming dismissal of declaratory judgment claim where dismissal of breach of contract claims meant there was no actual controversy); *United Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015) (dismissing with prejudice declaratory relief claim as "merely duplicative recitations of [plaintiffs'] breach of contract claim").

Cox's declaratory relief request also fails for lack of standing. "[T]hird parties do not have enforceable contract rights unless they are intended third party beneficiaries." *Dicion v. Mann Mortg., LLC*, 718 Fed. App'x 476, 478 (9th Cir. 2017) (internal quotation and citation omitted). As noted, Cox is not a third-party beneficiary under the DOCSIS Agreement. It has never requested a sub-license from CableLabs, reciprocally licensed its patents, or marked its products. Because Cox's declaratory relief counterclaim falsely assumes that it has rights under the DOCSIS Agreement, it should be dismissed.

### D.   Cox's Unjust Enrichment Counterclaim Fails to State a Claim

#### 1.   Cox cannot assert a quasi-contract theory to circumvent the DOCSIS Agreement's provisions

In its original motion to dismiss, MaxLinear explained that California courts do not recognize unjust enrichment as a cause of action. (*See* ECF No. 160 at 22-23.) In response, Cox has attempted to re-characterize its counterclaim as one for "Quasi-Contract for Restitution/Unjust Enrichment." (Am. Countercls. ¶¶ 334-341 (Count IV).)

Recharacterization cannot save Cox's counterclaim. A valid contract—the DOCSIS Agreement—already defines MaxLinear's obligations. "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' right." *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001). Because Cox does not dispute the validity of the DOCSIS Agreement, it cannot

1  raise a quasi-contract claim.  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th

2  1342, 1389-90 (2012) (although plaintiff may plead inconsistent claims, it may not

3  plead a claim for quasi-contract without denying existence of enforceable contract);

4  *Mohandas v. Wells Fargo Bank, N.A.*, 2023 WL 5506004, at *18 (C.D. Cal. July

5  13, 2023) (same).

### 2.  Cox lacks sufficient allegations to plausibly assert a counterclaim for quasi-contract

8  Cox broadly asserts that MaxLinear benefited from Cox's support of the

9  DOCSIS standard.  (*See* Am. Countercls, ¶¶ 335-40.)  Those allegations do not

10  state a claim for quasi-contract for three reasons.

11  First, allegations that MaxLinear benefited from DOCSIS (*e.g.*, learning of

12  draft DOCSIS specifications, selling DOCSIS compliant equipment without claim

13  of infringement) do not entitle Cox to seek relief from MaxLinear.  MaxLinear was

14  a DOCSIS Licensor, so any benefit received was not unjust.  "[T]he person

15  receiving the [alleged] benefit is required to make restitution only if the

16  circumstances are such that, as between the two individuals, it is *unjust* for the

17  person to retain it."  *Copley v. Natera, Inc.*, 2023 WL 3772023, at *5 (N.D. Cal.

18  May 8, 2023) (internal quotation and citation omitted).

19  Second, to state this counterclaim, Cox must allege that MaxLinear "has been

20  unjustly conferred a benefit through mistake, fraud, coercion, or request."  *Pargett*

21  *v. Wal-Mart Stores, Inc.*, 2020 WL 5028317, at *6 (C.D. Cal. Apr. 10, 2020)

22  (internal quotation and citation omitted).  Cox says MaxLinear made "false,

23  misleading and/or mistaken representations and requests."  (Am. Countercls.

24  ¶ 337.)  Because those allegations "sound in fraud," Cox must meet the heightened

25  pleading standard of Federal Rule of Civil Procedure 9(b).  *Vess v. Ciba-Geigy*

26  *Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also In re Arris Cable Modem*

27  *Consumer Litig.*, 2018 WL 288085, at *10 (N.D. Cal. Jan. 4, 2018) (dismissing

28

29

quasi-contract claim for failure to satisfy Rule 9(b)).  Cox falls well short of Rule 9(b)'s heightened standard because it never precisely identifies which statements were false or misleading, how they could be false or misleading (especially when the DOCSIS Agreement permits patent assignment), or when they occurred.  *See Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Third, Cox cannot sue for quasi-contract without alleging that it directly conferred a benefit to MaxLinear.  *See* 1 Witkin, Summary 11th Contracts § 1055 (2023) (collecting cases).  Here, however, Cox only alleges it conferred benefits to DOCSIS, e.g., devoting "money and resources in connection with supporting the DOCSIS standards development" and "purchas[ing] and deploy[ing] DOCSIS-compliant equipment."  (Am. Countercls, ¶¶ 316, 340.)  Since the benefits were to MoCA, not MaxLinear, Cox's quasi-contract counterclaim against MaxLinear fails.

Here, MaxLinear's participation in the DOCSIS license pool could not have unjustly enriched it; MaxLinear received the same benefits as other participants.  As Cox has failed to plead facts showing that MaxLinear was "enriched," much less "unjustly," or that any benefit Cox conferred was to MaxLinear, the Court should dismiss its unjust enrichment counterclaim.

## V.   CONCLUSION

Despite multiple amendments—and MaxLinear's identification of issues with Cox's Counterclaims in a prior motion to dismiss—Cox still cannot justify its standing or state a plausible counterclaim.  Cox's breach of contract counterclaim continues to suffer from multiple independent and incurable defects, and its declaratory judgment counterclaim fails for the same reasons.  As for Cox's unjust enrichment counterclaim, it remains legally defective and redundant with Cox's breach of contract counterclaim.  MaxLinear therefore asks that the Court dismiss the counterclaims against it with prejudice.

MAXLINEAR'S MOTION TO DISMISS COX'S AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES
sf-5712622

1    Dated:       February 6, 2024          MORRISON & FOERSTER LLP

2

3                                           By: */s/ Bita Rahebi*
                                               Bita Rahebi
4

5                                              BITA RAHEBI (CA SBN 209351)
                                               brahebi@mofo.com
6                                              ALEX S. YAP (CA SBN 241400)
                                               ayap@mofo.com
7                                              ROSE S. LEE (CA SBN 294658)
                                               roselee@mofo.com
8                                              MORRISON & FOERSTER LLP
                                               707 Wilshire Boulevard, Suite 6000
9                                              Los Angeles, California 90017-3543
                                               Telephone: (213) 892-5200
10                                             Facsimile:  (213) 892-5454
11

12                                             RICHARD S.J. HUNG (CA SBN
                                               197425)
13                                             rhung@mofo.com
                                               MORRISON & FOERSTER LLP
14                                             425 Market Street
                                               San Francisco, California 94105-
15                                             2482
                                               Telephone: (415) 268-7000
16                                             Facsimile:  (415) 268-7522
17
                                               Attorneys for Counter-Defendants
18                                             MAXLINEAR, INC. and
                                               MAXLINEAR
19                                             COMMUNICATIONS LLC
20

21

22

23

24

25

26

27

28

31

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 6626 words, which complies with the word limit of L.R. 11-6.1

Dated:        February 6, 2024                    By: _/s/ Bita Rahebi_
                                                                        Bita Rahebi

MAXLINEAR'S MOTION TO DISMISS COX'S AMENDED COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES
sf-5712022