1  KILPATRICK TOWNSEND & STOCKTON LLP
   April E. Isaacson (SBN 180638)
2  aisaacson@kilpatricktownsend.com
   Two Embarcadero Center, Suite 1900
3  San Francisco CA 94111
   (415) 273 8306
4
   Sarah Y. Kamran (SBN 347617)
5  skamran@kilpatricktownsend.com
   1801 Century Park East, Suite 2300
6  Los Angeles CA 90067
   (310) 777 3733
7
   Mitchell G. Stockwell (*pro hac vice*)
8  mstockwell@kilpatricktownsend.com
   Vaibhav P. Kadaba (*pro hac vice*)
9  wkadaba@kilpatricktownsend.com
   Michael J. Turton (*pro hac vice*)
10 mturton@kilpatricktownsend.com
   Courtney S. Dabbiere (*pro hac vice*)
11 cdabbiere@kilpatricktownsend.com
   Christopher S. Leah (*pro hac vice*)
12 cleah@kilpatricktownsend.com
   1100 Peachtree Street, NE, Suite 2800
13 Atlanta GA 30309
   (404) 815 6500
14
   *Attorneys for Defendants*
15 *Cox Communications, Inc.; CoxCom, LLC; and*
   *Cox Communications California, LLC*
16

17            UNITED STATES DISTRICT COURT

18            CENTRAL DISTRICT OF CALIFORNIA

19
   ENTROPIC COMMUNICATIONS,        Case No. 2:23-cv-01049-JWH-KES
20 LLC,
                                   **COX COMMUNICATIONS, INC.,**
21          Plaintiff,             **COXCOM, LLC AND COX**
                                   **COMMUNICATIONS**
22       v.                        **CALIFORNIA, LLC'S RESPONSE**
                                   **TO MAXLINEAR'S MOTION TO**
23 COX COMMUNICATIONS, INC.;       **DISMISS COX'S**
   COXCOM, LLC; and COX            **COUNTERCLAIMS**
24 COMMUNICATIONS CALIFORNIA,
   LLC,
25
           Defendants.
26

27       **REDACTED VERSION SOUGHT TO BE SEALED**

28

1
2
3

COX COMMUNICATIONS, INC.;
COXCOM, LLC; AND COX
COMMUNICATIONS CALIFORNIA,
LLC,

4                        Counter-Claimants,

5        v.

6
7
8

ENTROPIC COMMUNICATIONS,
LLC; MAXLINEAR, INC.; AND
MAXLINEAR COMMUNICATIONS
LLC,

9                        Counter-Defendants.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................10

II.     LEGAL STANDARD .........................................................................11

III.    ARGUMENT ....................................................................................12

    A.  Cox Has Standing to Assert its Counterclaims that Are Ripe .....................................................................................12

        1.  MaxLinear's Privity Point has Nothing to do with Standing ...............................................................12

        2.  MaxLinear's Factual Challenge to the Pleadings on Essentiality is Irrelevant and Incorrect ...........................13

        3.  The Counterclaims Both Provide Notice of MaxLinear's Actions that Injured Cox, and Detail Harms that Demonstrate Standing .................15

        4.  Cox's Counterclaims are Ripe ...................................18

    B.  Cox Properly Pled a Breach of Contract Claim ............................19

        1.  Cox Plausibly Alleges it is a Third Party Beneficiary ............................................................20

        2.  Cox Addressed its Vendors' Status as DOCSIS Participants ............................................................24

        3.  Cox Identified MaxLinear's Breaches .........................25

        4.  Cox Pled Damages from MaxLinear's Conduct .............27

    C.  Cox's Declaratory Judgment States a Cognizable Claim .....................................................................................28

    D.  Cox's Unjust Enrichment Claim is Cognizable and Proper ..................................................................................29

        1.  Colorado Law Applies if the Conflict MaxLinear Advocates Exists ............................................................29

        2.  Cox's Alternative Claim is Properly Pled Under Rule 8, Even Under California Law ...........................30

        3.  Cox Pled Sufficient Allegations for its Alternative Claim of Unjust Enrichment (or Quasi-Contract) .......................................................31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT
      COX LEAVE TO AMEND...........................................................................33

V.    CONCLUSION .......................................................................................34

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. Honda Motor Co., Inc. v. LKQ Corp.*,

5
    2022 WL 4596559 (C.D. Cal. Aug. 11, 2022) ....................................................34

6

*Ashcroft v. Iqbal*,

7
    556 U.S. 662 (2009)................................................................................................11

8

*Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*,

9
    692 F.3d 42 (2d Cir. 2012) ....................................................................................24

10

*Bell Atl. Corp. v. Twombly*,

11
    550 U.S. 544 (2007)................................................................................................11

12

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012) .............................................................................14

13

*Bot M8 LLC v. Sony Corp. of Am.*,

14
    4 F.4th 1342 (Fed. Cir. 2021) ..........................................................................14, 15

15

*Bowles v. Reade*,

16
    198 F.3d 752 (9th Cir. 1999) .................................................................................33

17

*Brandt v. Superior Court*,

18
    693 P.2d 796 (Cal. 1985)..................................................................................17, 28

19

*Cal. Pro-Life Council, Inc. v. Getman*,

20
    328 F.3d 1088 (9th Cir. 2003) ...............................................................................18

21

*Cassirer v. Thyssen-Bornemisza Collection Found.*,

22
    69 F.4th 554 (9th Cir. 2023) .............................................................................29, 30

23

*Copenbarger v. Morris Cerullo World Evangelism, Inc.*,
    239 Cal. Rptr. 3d 838 (2018)...........................................................................17, 28

24

*Copley v. Natera, Inc.*,

25
    2023 WL 3772023 (N.D. Cal. May 8, 2023).........................................................31

26

*CWCapital Invs. LLC v. CWCapital Cobalt VR Ltd.*,

27
    122 N.Y.S.3d 595 (2020)........................................................................................21

28

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987) ................................................................34

*Empire Merchants, LLC v. Merinoff*,
    2017 WL 5176384 (S.D.N.Y. Nov. 8, 2017) ......................................28

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .......................................................16, 17

*Foman v. Davis*,
    371 U.S. 178 (1962)............................................................................34

*FSI Architecture, P.C. v. Acheson Doyle Partners Architecture, P.C.*,
    2022 WL 170646 (S.D.N.Y. Jan. 19, 2022) ..................................20, 21

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012)..........................................................................30

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997), and 12(b)(6) .......................................11

*Guerra v. Sutton*,
    783 F.2d 1371 (9th Cir. 1986) ............................................................29

*Henneberry v. Sumitomo Corp. of Am.*,
    2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) ......................................20

*In re Houbigant Inc.*,
    914 F. Supp. 964 (S.D.N.Y. 1995) .....................................................20

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
    2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) ...................................16

*Katz v. Pershing, LLC*,
    672 F.3d 64(1st Cir. 2012)..................................................................23

*Korpak, Ltd. v. Williams Lea Inc.*,
    2022 WL 375543 (S.D.N.Y. Feb. 7, 2022) ........................................28

*Lee v. Hum. Biostar, Inc.*,
    2013 WL 12130258 (C.D. Cal. Jan. 28, 2013)...................................18

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................12

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ...................................................................34

*Nanomedicon, LLC v. Rsch. Found. of State Univ. of New York*,
   976 N.Y.S.2d 191 (2013) ........................................................................21

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) .............................................22, 23

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
   2019 WL 1409854 (S.D. Cal. March 27, 2019) .....................................34

*Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*,
   2011 WL 3962515 (S.D.N.Y. Sept. 7, 2011) ........................................28

*Realtek Semiconductor Corp. v. LSI Corp.*,
   2012 WL 4845628 (N.D. Calif. Oct. 10, 2012) .....................................19

*Robinson v. Colorado State Lottery Div.*,
   179 P.3d 998 (Colo. 2008) ......................................................................30

*Safari v. Whole Foods Mkt. Servs., Inc.*,
    No. 8:22-cv-01562-JWH-KES, 2023 WL 5506014
   (C.D. Cal. July 24, 2023) (Holcomb, J.) ...........................................12, 18

*Safer Chems., Healthy Families v. EPA*,
   943 F.3d 397 (9th Cir. 2019) ..................................................................18

*San Diego Unified Port Dist. v. Monsanto Co.*,
   309 F. Supp. 3d 854 (S.D. Cal. 2018) ....................................................17

*Sherman v. Pepperidge Farm, Inc.*,
   No. 8:22-cv-01781-JWH-ADS, 2023 WL 5207458
   (C.D. Cal. Apr. 28, 2023) .......................................................................21

*Spindelfabrik Suessen–Schurr v. Schubert & Salzer*,
   829 F.2d 1075 (Fed. Cir. 1987) ..............................................................25

*Spokeo v. Robins*,
   578 U.S. 330 (2016)................................................................................13

*Stark v. Patreon, Inc.*,
   635 F. Supp. 3d 841 (N.D. Cal. 2022).....................................................30

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998)...................................................................................17

*Steen v. Am. Nat'l Ins. Co.,*
  609 F. Supp. 3d 1066 (C.D. Cal. 2022) ..................................................29

*Taurus IP, LLC v. DaimlerChrysler Corp.,*
  726 F.3d 1306 (Fed. Cir. 2013) .........................................................18, 28

*TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM*
  *Ericsson,*
  No. SACV 14-00341 JVS (ANx), 2014 WL 12588293
  (C.D. Cal. Sept. 30, 2014) .......................................................................19

*Thompson v. Davis,*
  295 F.3d 890 (9th Cir. 2002) ...................................................................11

*Toretto v. Donnelley Fin. Sols., Inc.,*
  523 F. Supp. 3d 464 (S.D.N.Y. 2021) ......................................................20

*In re Tracht Gut, LLC,*
  836 F.3d 1146 (9th Cir. 2016) .................................................................12

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021).................................................................................12

*United States v. City of Redwood City,*
  640 F.2d 963 (9th Cir.1981) ....................................................................11

*Ebeid ex rel. United States v. Lungwitz,*
  616 F.3d 993 (9th Cir. 2010) ...................................................................31

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.,*
  341 F. Supp. 2d 258 (S.D.N.Y. 2004) ......................................................27

**Statutes**

35 U.S.C. § 285 ..............................................................................................17

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................11, 12, 19, 30

Fed. R. Civ. P. 9 ..................................................................................31, 32

1

Fed. R. Civ. P. 12 .............................................................................12, 19

Fed. R. Civ. P. 15 .............................................................................33, 34

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

Cox's counterclaims arise out of the fact that the original owners of the asserted patents—the MaxLinear entities—participated in the development of DOCSIS standards through CableLabs. Cox was a founder of CableLabs, which aimed to develop DOCSIS standards for equipment to be used by Cox and interoperable among the various vendors Cox used. To participate in CableLabs' initiative, MaxLinear executed the DOCSIS License, through which MaxLinear granted irrevocable and perpetual licenses to any DOCSIS essential patents on a royalty-free basis to participants in the DOCSIS patent pool. Those participants were Cox's vendors and the entire point of the patent pool was to ensure that Cox, as a founder of CableLabs and a purchaser and user of DOCSIS-compliant products, would receive implied licenses or rights via patent exhaustion to use and sell all such equipment free of any claim of infringement of MaxLinear's DOCSIS essential patents.

MaxLinear knew that it could not monetize the asserted patents against Cox under the DOCSIS License. So MaxLinear transferred numerous patents, including the asserted patents, to Plaintiff via assignments seeking to strip out the DOCSIS License encumbrances in exchange for upfront payments and an interest in any profits Plaintiff may receive from assertion of the patents. Through this transfer, MaxLinear breached the DOCSIS License terms by denying Cox the benefit of the fully paid-up license as well as assignment obligations, resulting in voidance of the assignment. MaxLinear's breach caused and is causing significant harm to Cox.

Cox thus asserted claims for breach of contract and unjust enrichment against MaxLinear (Counts I and IV), a declaratory judgment claim against both parties that the assignment of the asserted patents was void (Count II) and a claim for tortious

interference with contract against Plaintiff (Count III).[1] MaxLinear argues an absence of standing and ripeness, but these constitutional doctrines are no bar to the traditional breach of contract, unjust enrichment, and declaratory judgment claims Cox raises.

Forced to face the consequences of its actions, MaxLinear alternatively argues Cox failed to state a claim for relief. MaxLinear seeks to muddle the issues by deliberately misreading the counterclaims and raising purported factual disputes that are inappropriate on a motion to dismiss. Cox's pleading speaks for itself—Cox more than adequately pleads the relevant counts. MaxLinear repeatedly challenges the truth of Cox's allegations rather than their sufficiency. That is improper, particularly when coupled with MaxLinear's repeated efforts to raise legal points that are simply inapplicable. Accordingly, MaxLinear's Motion should be denied.

## II.    LEGAL STANDARD

Motions to dismiss for failure to state a claim are disfavored, *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are proper only in "extraordinary" cases. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

Federal Rule 8 "requires only a plausible 'short and plain' statement of the plaintiff's claim showing that the pleader is entitled to relief," which requires that the complaint "'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need merely plead "enough factual matter" that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 570; *Ashcroft*

---

[1] Entropic separately moved to dismiss this Count. Cox incorporates by reference the general summary of its counterclaims set forth in its response to that motion. *See* Cox Communications, Inc., CoxCom LLC and Cox Communications California, LLC's Response to Entropic's Motion to Dismiss Cox's Counterclaims, at § II.

1   *v. Iqbal*, 556 U.S. 662, 679 (2009). In deciding a motion to dismiss, this Court must
2   credit all factual (but not legal) assertions made in the complaint, draw all reasonable
3   factual inferences in favor of Cox, and use those factual assertions and inferences to
4   determine whether Cox is plausibly entitled to relief. Fed. R. Civ. P. 8(a), 12(b)(6);
5   *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150-51 (9th Cir. 2016); *Maya v. Centex Corp.*,
6   658 F.3d 1060, 1068 (9th Cir. 2011).

7   **III.   ARGUMENT**

8       **A.   Cox Has Standing to Assert its Counterclaims that Are Ripe**

9           MaxLinear makes meritless standing and ripeness objections to Cox's
10  counterclaims. As this Court explained in *Safari v. Whole Foods Mkt. Servs., Inc.*,
11  "injuries that have a close relationship to harms traditionally recognized 'as providing
12  a basis for a lawsuit in American courts' may be considered 'concrete for purposes of
13  Article III [ ].'" 2023 WL 5506014, at \*3 (C.D. Cal. July 24, 2023) (quoting
14  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)). *TransUnion*, in fact, instructs
15  that judges should look to "history and tradition" as a "guide to the types of cases that
16  Article III empowers federal courts to consider." 594 U.S. at 424. Such an inquiry
17  considers "whether plaintiffs have identified a close historical or common-law
18  analogue for their asserted injury." *Id*. That is the case here and MaxLinear's standing
19  and related ripeness arguments are meritless.

20      **1.   MaxLinear's Privity Point has Nothing to do with Standing**

21          MaxLinear asserts that all of Cox's claims flow from an agreement between
22  "MaxLinear and CableLabs, not MaxLinear and Cox," and that there is a negating
23  clause foreclosing any third-party beneficiary claim. (DE 235 at 14). From these
24  points, MaxLinear somehow reasons that there is a lack of standing. But, in truth,
25  these are just challenges to Cox's pleading under Rule 12(b)(6). They are incorrect
26  for the reasons discussed *infra*. But, independently, MaxLinear's attack on the
27  pleadings has nothing to do with standing. Breach of contract actions are

28

1  quintessential common-law analogues and are the type of actions that confirm
2  standing. *See, e.g.*, *Spokeo v. Robins*, 578 U.S. 330, 344 (2016) ("Historically,
3  common-law courts possessed broad power to adjudicate suits involving the alleged
4  violation of private rights, even when plaintiffs alleged only the violation of those
5  rights and nothing more….'Private rights' have traditionally included…contract
6  rights."). Cox's claims for unjust enrichment and declaratory relief present claims that
7  identify concrete injuries capable of address.

8              **2.    MaxLinear's Factual Challenge to the Pleadings on**
9                        **Essentiality is Irrelevant and Incorrect**

10        MaxLinear next argues that the DOCSIS License applies only to standards-
11  essential patents and then challenges the sufficiency of the pleadings on this point.
12  Again, this has nothing to do with standing, and it is also wrong.

13        The counterclaims detail how (1) Plaintiff's Complaint compares its claims to
14  various DOCSIS compliant equipment and "reference[s] various aspects of
15  DOCSIS"; (2) Plaintiff's Complaint "directly implicate the DOCSIS specifications,"
16  with specific examples given of how the '775, '690 and '682 patent concern a
17  DOCSIS controller, DOCSIS MAC processor, Cable Modem Termination System
18  and Cable Modem, which are each "addressed in DOCSIS"; (3) Plaintiff's
19  infringement contentions rely on and accuse DOCSIS equipment and functionalities;
20  and (4) Plaintiff's correspondence represented it had patents, including the asserted
21  patents, that applied to various standards. (DE 189-1, ¶¶ 304-07). MaxLinear ignores
22  these averments and even speculates that Cox somehow seeks to avoid saying the
23  patents apply to DOCSIS – which automatically results in a royalty free license to
24  Cox. But MaxLinear's arguments and speculation are incorrect. Paragraph 306 states
25  that "as to the '775 and '682 patents, at least in light of Plaintiff's contentions and
26  because the '775 patent has claims specifically to DOCSIS components and the '682
27  patent claims messaging addressed in DOCSIS, each of those patents plausibly may

28

contain one or more claims that are essential to DOCSIS." It further explains that Plaintiff's positions "**and/or the DOCSIS specifications** themselves showed one or more claims from at least the '008, '826 and/or '690 Patents, are essential for compliance with the DOCSIS specifications." (DE 189-1, ¶ 306). That is, the DOCSIS specifications by themselves demonstrate essentiality for these three patents.

These averments plausibly establish that multiple of the asserted patents are DOCSIS essential. No further detail is required, as confirmed by examining the analogous situation concerning pleading patent infringement. In doing so, it is not necessary for "a plaintiff to plead facts establishing that each element of an asserted claim is met," there need only be "enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331-41 (Fed. Cir. 2012) (citation omitted); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021). So too it is enough for Cox to point to Plaintiff's own admissions, accusations and positions, the character of the asserted patents, and/or the DOCSIS specifications to plausibly show essentiality.

MaxLinear says the plausible averments Cox made are somehow overcome by Entropic's denials or another court's decision following full discovery and summary judgment decisions. While Entropic may now seek to skirt the DOCSIS standards and try to deny essentiality and avoid the royalty-free, irrevocable and paid-up license Cox has, the counterclaims suffice to provide notice of this claim. Likewise, MaxLinear cannot point to the Charter Texas case as help here. (DE 235 at 15). First, following full discovery and summary judgment practice the court nonetheless, found triable issues on essentiality of the '690 patent. (DE 229-1). Second, it found Charter did not put even contest some essentiality on some patents and failed to marshal sufficient evidence as to other patents (*id.*). But that failure of proof on Charter's part is simply not binding on Cox, who has had no chance to conduct discovery and

marshal its evidence on this point.

### 3. The Counterclaims Both Provide Notice of MaxLinear's Actions that Injured Cox, and Detail Harms that Demonstrate Standing

Once again, MaxLinear simply ignores or attacks the pleadings, arguing that it really did nothing to cause injury to Cox and therefore there is no standing.

The counterclaims detail MaxLinear's participation in DOCSIS, CableLabs' desire to standardize cable equipment for operators like Cox to reduce costs, the work that went into the DOCSIS specifications by cable operators like Cox, the creation of a royalty-free pool of licensed essential patents for Cox, its vendors and other industry participants and MaxLinear's joining of that pool. (DE 189-1, ¶¶ 282-95). The pool works only if all the participants honor the royalty-free license granted to patents essential to DOCSIS. (*Id.*). Doing so "facilitate[s] widespread implementation of CableLabs Specifications, and reduce overall costs for Vendors, Cable Operators, and consumers." (*Id.*, ¶ 284). Despite MaxLinear accepting all the benefits that participation in DOCSIS and the patent pool provided (*id.*, ¶¶ 294-95), MaxLinear chose to accept payments from Entropic, represent that there were no encumbrances, and transfer the asserted patents free of any encumbrances in violation of the DOCSIS License. (*Id.*, ¶¶ 291-93, 297-301, 308-311). Only by virtue of these breaches was this suit brought, as a result of which Cox's substantial investments in DOCSIS are thwarted, Cox did not receive the benefit of the DOCSIS license and standards, and has instead been forced to address Plaintiff's claims. (*Id.*, ¶¶ 313-18).

MaxLinear dismisses all of these averments and harms with the suggestion that because MaxLinear already granted licenses, there is no harm. But it is MaxLinear that told Entropic the patents were free of relevant encumbrances. And it was MaxLinear that enjoyed all the benefits of DOCSIS, while denying Cox the benefit of its reliance on the royalty-free nature of DOCSIS. The harms that flow from

MaxLinear's breaches are precisely the ones that courts have recognized represent the concrete and particularized injury required. S*ee, e.g.*, *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 6617795, at *4–5 (E.D. Tex. Dec. 17, 2018) (finding deprivation of contractual right to FRAND license supported existence of an injury in fact).

Independently, the counterclaims establish that MaxLinear was unjustly enriched by its actions – which again is such a routine common law harm that establishes standing that MaxLinear does not even argue otherwise. For example, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020), addressed claims that Facebook's tracking and collection practices resulted in various common law and statutory violations. Facebook challenged plaintiffs' standing, arguing that "unjust enrichment is not sufficient to confer standing." *Id*. The Ninth Circuit held otherwise, explaining "state law can create interests that support standing in federal courts," and, specifically, that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *Id*. Facebook's unjust enrichment and standing were sufficiently shown by averments that plaintiffs' browsing histories had financial value, and Facebook's sale of such information despite contrary representations. *Id*. at 600-01.

Here, Cox similarly averred that MaxLinear made false representations and executed the DOCSIS License to confirm its compliance with the DOCSIS patent pool, which induced Cox and others to believe that MaxLinear would fully honor its commitments. (DE 189-1, ¶¶ 294-95). These misleading representations allowed MaxLinear to participate in standards development, obtain its own licenses, and deploy and market DOCSIS-compliant equipment. (*Id*., ¶¶ 287-91, 294-95, 335-336). And, the counterclaims explain how the representations were false and misleading. (*Id*., ¶¶ 337-39). MaxLinear's unjust enrichment from its misrepresentations

1  accordingly provides standing, just as in *Facebook*.

2  MaxLinear's obviously concerted effort to ignore Cox's actual pleadings alone

3  suffices to dismiss its standing arguments. MaxLinear's only other actual argument—

4  that Cox's expenses of addressing Entropic's improper suit cannot support standing—

5  is also incorrect. MaxLinear says *San Diego Unified Port Dist. v. Monsanto Co*., 309

6  F. Supp. 3d 854, 866 (S.D. Cal. 2018), shows that litigation costs for defending a

7  plaintiff's claim do not establish standing for a counterclaim against that plaintiff. *San*

8  *Diego Unified Port Dist.* cited to *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

9  107 (1998) for the proposition MaxLinear advances, but *Steel Co*. made plain that "a

10 plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the

11 cost of bringing suit" because, in that case, the expenses plaintiff sought were only

12 reimbursable under the relevant environmental statute that was being litigated. *Id*.

13 But these rules are inapplicable. Standing here is not grounded on some

14 recovery by Cox from Entropic under, for example, 35 U.S.C. § 285, or even on Cox's

15 recovery of expenses defending some claim advanced by MaxLinear. Cox instead

16 asserts a breach of contract counterclaim not against Entropic—the plaintiff in this

17 case—but against MaxLinear, the third party whose breach of contract caused

18 Entropic to assert patents, demand royalties and bring suit.

19 The costs of responding to Entropic's assertions count as damages for

20 MaxLinear's breach of contract. Courts have long recognized such expenses are

21 contractual damages under these circumstances. *Copenbarger v. Morris Cerullo*

22 *World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 844-847 (2018), for example,

23 addressed whether attorneys' fees incurred in defending an action brought in breach

24 of a settlement agreement constituted damages for purposes of the breach of contract

25 claim. *Copenbarger* expressly held that under *Brandt v. Superior Court*, 693 P.2d 796

26 (Cal. 1985), "the principle that attorney fees qua damages are recoverable as damages,

27 and not as costs of suit, applies equally to breach of contract." 239 Cal. Rptr. 3d at

28

COX DEFENDANTS' RESPONSE TO MAXLINEAR'S MOTION TO DISMISS COX'S
COUNTERCLAIMS                                                                              17
CASE NO. 2:23-CV-01049-JWH-KES

845; *see also Lee v. Hum. Biostar, Inc*., 2013 WL 12130258, at *2 (C.D. Cal. Jan. 28, 2013)(finding breach of contract counterclaim pled sufficient merit where it averred damages were "costs incurred defending [the] action, which would not exist but for" a suit filed in breach of the contracts). The Federal Circuit has recognized the same. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1341-43 (Fed. Cir. 2013).

Cox's counterclaims are, both generally and in their particulars, precisely the type of claims and "injuries that have a close relationship to harms traditionally recognized 'as providing a basis for a lawsuit in American courts' may be considered 'concrete for purposes of Article III [].'" *Safari,* 2023 WL 5506014, at *3. MaxLinear's Motion should thus be denied.

### 4.   Cox's Counterclaims are Ripe

MaxLinear's ripeness argument once again ignores the actual pleadings and claims, and is legally flawed. As a preliminary matter, "[t]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citation omitted). Yet, as established above the counterclaims present issues that "are definite and concrete, not hypothetical or abstract." *Id*. Moreover, at its core, ripeness doctrine "is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect ... agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Safer Chems., Healthy Families v. EPA*, 943 F.3d 397, 411 (9th Cir. 2019) (citation omitted). There is accordingly no ripeness issue.

MaxLinear grounds its ripeness arguments on asserting they are contingent on the patents being essential to DOCSIS and repeats its flawed assertion that "Cox refuses to take a definitive position" on that issue. (DE 235 at 18). The argument is

meritless for the reasons described *supra*.

Even if MaxLinear were correct in ignoring the actual pleading, MaxLinear's understanding of ripeness contradicts, and would overwrite, Fed. R. Civ. P. 8(d)(2), which expressly allows for "2 or more statements of a claim or defense alternatively or hypothetically" and states "the pleading is sufficient if any one of them is sufficient." Courts have specifically applied this rule to FRAND breach claims, including in denying ripeness challenges. *See TCL Commc'ns Tech. Holdings Ltd v. Telefonaktenbologet LM Ericsson*, 2014 WL 12588293, at *4 (C.D. Cal. Sept. 30, 2014) (denying motion to dismiss because TCL could both argue that the "patents are not standard essential while reserving the right to pay the FRAND rate should the Court ultimately determine otherwise."); *Realtek Semiconductor Corp. v. LSI Corp.*, 2012 WL 4845628, at *5-6 (N.D. Calif. Oct. 10, 2012) (rejecting ripeness challenge to FRAND breach of contract claims because "Realtek can simultaneously pursue a determination of the RAND royalty rate while denying infringement or asserting invalidity, even though those issues may ultimately obviate the need for a license"). Cox can likewise simultaneously deny infringement while pursuing breach of contract and unjust enrichment claims should the patents prove essential.

Finally, MaxLinear nowhere claims that its ripeness argument applies to the declaratory judgment count. Nor can it. Cox has been sued now, for what Entropic's disclosure claims would be damages in the hundreds of millions. The counterclaims plausibly establish an immediate and concrete dispute over who actually owns the asserted patents and the very nature of MaxLinear's continued interest in the patents. The claim is ripe and should be heard now.

## B.   Cox Properly Pled a Breach of Contract Claim

MaxLinear's attack on the sufficiency of Cox's counterclaims proceeds from the premise that it can recharacterize Cox's claims and ignore the actual pleading. That's not how Rule 12 operates and, as demonstrated below, MaxLinear's challenges

to the sufficiency of Cox's averments fail.

### 1. Cox Plausibly Alleges it is a Third Party Beneficiary

MaxLinear's principal claim is that Cox is not an intended third party beneficiary under New York law. But MaxLinear misstates the law and further ignores the posture of this motion. First, as *FSI Architecture, P.C. v. Acheson Doyle Partners Architecture, P.C.*, 2022 WL 170646, at *4-5 (S.D.N.Y. Jan. 19, 2022) explained, the "third party need not be specifically mentioned in the contract," and although "New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement….In identifying the parties' intent, a court should consider the circumstances surrounding the transaction as well as the actual language of the contract." (citation omitted). *See also Henneberry v. Sumitomo Corp. of Am.*, 2005 WL 991772, at *12 (S.D.N.Y. Apr. 27, 2005).

Second, when assessing the pleadings "it is not required that intent to confer a third-party beneficiary right be proved on the pleadings." *In re Houbigant Inc.*, 914 F. Supp. 964, 986 (S.D.N.Y. 1995). It is sufficient to plead, even "on information and belief" provisions of a contact "were 'intentionally included for the direct benefit' of Plaintiffs.'" *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 477 (S.D.N.Y. 2021). Thus, a complaint was sufficient where it "clearly alleges that Plaintiffs were intended third-party beneficiaries of the agreements," as well as "states that the contracts contain language to that effect and that the provisions were intentionally included for Plaintiffs' benefit." *Id*.

The counterclaims meet these standards. (DE 189-1, ¶¶ 282-87, 291-95, 302-03, 320-22). For example, the pleadings explain how Cox helped found CableLabs, which develops standards to enhance scale and reduce costs for cable operators like Cox, such as via the DOCSIS standards that state they were "developed for the benefit of the cable industry." (*Id*., ¶¶ 282-83). Cox then averred that the very purpose of "Contribution Agreements" like the DOCSIS License, was "to facilitate widespread

1    implementation of CableLabs Specifications, and reduce overall costs for … Cable

2    Operators" like Cox. (*Id.*, ¶ 284). The DOCSIS License, of course, is replete with

3    references to this DOCSIS standard and even defines the essential patents licensed by

4    reference to the standard that was created for Cox's benefit. Likewise, the opening

5    recital of the DOCSIS agreement explains the aim for Cable Labs to ████████

6    ████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████

8    ███████████████████████████████████████████." (*Id.*, ¶ 287).

9        MaxLinear claims Cox's pleadings are insufficient and cites multiple cases, all

10   of which are distinguishable. In *Nanomedicon, LLC v. Rsch. Found. of State Univ. of*

11   *New York*, the party bringing a breach of contract claim was not a contractual party,

12   "failed to allege that she is an intended third-party beneficiary of that agreement" and

13   "the documentary evidence conclusively establishe[d … that [she] is not an intended

14   third-party beneficiary of the licensing agreement." 976 N.Y.S.2d 191, 194 (2013)

15   (emphasis added). Cox did aver it is an intended third party beneficiary, pointed to

16   evidence of same and, as detailed below, the alleged "negating" clause is not. Rather,

17   it is simply a cropped quote that MaxLinear fabricated. Next, in *CWCapital Invs. LLC*

18   *v. CWCapital Cobalt VR Ltd.*, the agreement explicitly designated plaintiffs as "third

19   party beneficiaries ... under this Section 5,'" but did not say the same for section 4,

20   which showed "intent to exclude plaintiffs as third-party beneficiaries under that

21   section." 122 N.YS.3d 595, 600 (2020). There is no such clause at issue here. Finally,

22   *Sherman v. Pepperidge Farm, Inc*., applied California law, instead of the New York

23   law applicable in this case. 2023 WL 5207458, at *4 (C.D. Cal. Apr. 28, 2023). Unlike

24   the California law discussed in *Sherman*, under New York law "a court should

25   consider the circumstances surrounding the transaction as well as the actual language

26   of the contract" to determine if a party is an intended third party beneficiary. *FSI*

27   *Architecture*, 2022 WL 170646, at *4-5. Cox pled those legally relevant facts.

28

MaxLinear then raises various other challenges, but none have merit for the reasons summarized below:

**The sublicensee issue**: MaxLinear asserts that because Cox does not claim it is a sublicensee, it cannot be a third party beneficiary. MaxLinear's argument ignores that Cox has alleged it is an intended beneficiary in part because it is an implied licensee and beneficiary of the patent exhaustion that results from its purchasing equipment from its vendors who executed the DOCSIS License and joined the patent pool. (DE 189-1, ¶¶ 292, 322).

**The compliance issue**: MaxLinear incorrectly asserts that Cox cannot be an intended beneficiary because it has not alleged compliance with various provisions in the DOCSIS License Agreement that are inapplicable to Cox. The law is clear that a third party beneficiary need not perform the obligations of the contract, and MaxLinear recited no contrary rule. *See, e.g.*, *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003).

MaxLinear's entire argument is legally irrelevant. It is also just wrong. MaxLinear argues Cox must provide a particular quid pro quo of licenses to its patents – but Cox's pleadings establish that it receives implied license due to its purchase and use of licensed equipment to operate the very DOCSIS network that creates the market for any DOCSIS-compliant equipment. Next, MaxLinear claims Cox needs to meet the marking requirements in the DOCSIS license. But this is also incorrect – Section 4.1 says sublicensees will "mark…in the form, manner and location agreed between Licensor [i.e., MaxLinear] and such sublicensee." (DE 94-1, §4.1). The marking provision plainly requires **MaxLinear** to have told each sublicensee what patent, location, etc. to use, yet MaxLinear points to nothing indicting it ever asked CableLabs or anyone else to so mark. Despite acknowledging Cox does not allege it is a sublicensee to the DOCSIS License, MaxLinear points to a provision applicable *only* to sublicensees. (*Id.*). MaxLinear does not identify any authority—nor is there

1   any—that such compliance is applicable to third party beneficiaries in California or

2   elsewhere. *See, e.g.*, *Nat'l Rural Telecomms. Coop*, 319 F. Supp. 2d at 1068. Thus,

3   that Cox does not allege it complies with the obligations of sublicensees is irrelevant

4   and does not negate its factual allegations of third party beneficiary status.

5       ***The non-existent negating clause***: Here is the actual Section 2.4 that

6   MaxLinear tortured through creative cropping to advance its meritless argument:

7
8
9
10

11  MaxLinear's creative cropping cannot overcome the truth: this clause establishes that

12  the "Agreement shall not be construed as granting" rights in "the proprietary rights of

13  … any third party," except as stated in prior provisions. In other words, the clause just

14  says ***MaxLinear does not get proprietary rights from Cox***.

15      Section 2.4 has nothing to do with whether Cox is an intended third party

16  beneficiary of MaxLinear's promise.  Indeed, Section 2.4 simply not the "negating"

17  clause MaxLinear asserts. For example, MaxLinear cites *Katz v. Pershing, LLC*, in

18  which the agreement "contain[ed] an explicit statement that it 'is not intended to

19  confer any benefits on third-parties including, but not limited to, customers of

20  [NPC].'" 672 F.3d 64, 73 (1st Cir. 2012). This is a negating clause, and from this the

21  court found that third parties could not claim the agreement's benefits. *Id*. But Section

22  2.4 is not such a clause, and the very fact that it omits an actual "no third party

23  beneficiary" clause like in *Katz* supports Cox's position under the reasoning and logic

24  of *CWCapital, supra.* Specifically, the fact that the DOCSIS Agreement expressly

25  precluded MaxLinear obtaining proprietary rights from third parties like Cox, but was

26  then silent as to the reverse situation demonstrates the parties understood and intended

27  third parties to benefit from the DOCSIS Agreement.

28

Other caselaw confirms that Section 2.4 **supports** Cox's status as an intended beneficiary. *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52-58 (2d Cir. 2012), for example, addressed a clause stating that third parties had no rights "except as otherwise specifically provided herein." The phrase was ambiguous and required the court to examine the whole contract to determine the parties' intent, after which it held that, "drawing all inferences in [the purported third party beneficiaries'] favor, it is plausible that the parties intended the [third parties] to benefit from the [agreement]." *Id*. Section 2.4 includes the language: "Except as expressly **set forth above,**" and, **as so set forth**, the DOCSIS License expressly grants sublicense to create the patent pool so that "equipment involved in the delivery of data over coax and hybrid fiber/coax networks" was sublicensed "on a royalty-free basis." (DE 189-1, ¶ 287 (citing DOCSIS Agreement)). Thus, the DOCSIS Agreement as a whole expressly contemplates granting rights or interests to Cox—the purchaser of the licensed equipment and operator of the fiber/coax network for delivery of data.

### 2.   Cox Addressed its Vendors' Status as DOCSIS Participants

MaxLinear claims that Cox must "show due performance of the conditions by the promisee for only in that event would the promisor be liable." (DE 235 at 23 (citation omitted). It then claims Cox did not show its **vendors** compliance with the DOCSIS agreement. These arguments are without merit.

The first flaw is that the "promise" that *Weinberger* references is one by MaxLinear, not Cox's vendors. In *Weinberger*, plaintiffs were shareholders in Kollmorgen Corporation, which had a contract with Vernitron Corp. that had a merger agreement. *Id*. at *1. Plaintiffs contended Vernitron breached the agreement, causing the stock price to drop and seeking damages from Vernitron. *Id*. In short, the relevant "promisee" was the defendant Vernitron, which allegedly breached its merger agreement with Kollmorgen. Here, Cox is claiming it is a beneficiary of the promise MaxLinear made to CableLabs to grant royalty-free licenses on any DOCSIS-

essential patents. That was more than adequately pled, and MaxLinear does not argue otherwise. MaxLinear's argument is, in short, legally flawed and entirely irrelevant.

It is also factually wrong. Cox specifically explained the process by which it and its vendors participated in creating the DOCSIS standard (DE 189-1, ¶¶ 283-84), and the general structure of the DOCSIS patent pool. (*Id.*, ¶ 286). Cox then pled how MaxLinear was "one of multiple vendors to have executed the DOCSIS License Agreement," which specifically aimed to provide royalty free rights to DOCSIS. (*Id.*, ¶ 287). Paragraphs 289-90 then explained that Cox purchases DOCSIS-compliant hardware from multiple other vendors who "are also DOCSIS Licensors" and provided Exhibit B, which lists those signatories. MaxLinear through its DOCSIS license gave CableLabs the right to sublicense to Cox's vendors and "CableLabs did, in fact, issue such sublicenses via the DOCSIS License Agreements." (*Id.*, ¶ 291).

In short, Cox pled all that was necessary—that its other relevant vendors also executed the DOCSIS License to receive the relevant sublicenses from MaxLinear via Cable Labs so as to create the relevant patent pool and ensure DOCSIS-compliant equipment was freely licensed on royalty free terms.

### 3. Cox Identified MaxLinear's Breaches

The fundamental character of a license is that it is a promise by the licensor not to sue. *Spindelfabrik Suessen–Schurr v. Schubert & Salzer*, 829 F.2d 1075, 1081, (Fed. Cir. 1987). MaxLinear's transactions with Entropic breached this promise. MaxLinear now argues this does not matter, but contrary to its position one cannot evade a contractual promise barring suit by transferring patents to a third party to strip out such encumbrances, fail to obligate the transferee to respect granted licenses, affirmatively promise the transferee help in prosecuting the resulting lawsuit and accept a share in the proceeds of same. Collectively, these actions clearly breach the fundamental promise of a license—not to bring suit over licensed conduct.

MaxLinear, of course, was fully aware of the character of its promise and its

applicability to DOCSIS-essential patents. And, it was aware that, if it were to assign any patent rights, it needed to ensure that such transfers ███████████████ ███████████████████████████████████████████████████. (DE 189-1, ¶ 293). This was not done—as the counterclaims detail, ███████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ (*Id.*, ¶¶ 296-97). ████████████ ████████████████████████████████████████████████████████████████

MaxLinear affirmatively "represented that the assigned patents were free of any encumbrances imposed by the DOCSIS license Agreements." (*Id.*, ¶¶ 298-301). Indeed, the ████████████████████ and the assignments lacked any provisions requiring Entropic to assume the obligations MaxLinear incurred under the DOCSIS Agreement. (*Id.*, ¶ 308). To the contrary, the actual assignment agreements did the opposite of what Section 9.6 required—they assigned patents "free and clear of all liens, claims and encumbrances" not identified in writing—and no such encumbrances were identified in the assignments.[2] (*Id.*, ¶ 309).

These averments demonstrate MaxLinear's complaints are meritless. It first claims it had "broad discretion" to sue for infringement. (DE 235 at 24). But that is incorrect as the counterclaims show Cox's relevant conduct is licensed, not infringing. (DE 189-1, ¶¶ 292, 332). It then says ██████████████████████████ and argues that "Cox does not cite any provision that requires MaxLinear to ensure Entropic's compliance with the Agreement." (DE 235 at 24-25). MaxLinear then cites the Section 9.6 Cox identified as breached, ████████████████████████████████

---

[2] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

1

2

3   (*Id*.) But that is the point, MaxLinear's assignments did ***not*** impose that

4   obligation on Entropic.  Instead, they made the ***opposite*** representations and sought

5   to strip away any such encumbrance.

### 4.    Cox Pled Damages from MaxLinear's Conduct

7        The counterclaims clearly plead injury and damages. MaxLinear disputes this,

8   first arguing there is no injury "because Cox has taken no action to secure any benefits

9   as a 'subliensee' under the DOCSIS Agreement." (DE 235, at 25). As explained,

10  *supra*, MaxLinear's premise is incorrect. Cox specifically pled the right to be free of

11  claims from MaxLinear's DOCSIS-essential patents due to its implied license and

12  patent exhaustion given its purchases from vendors who received the relevant

13  sublicenses. Cox has suffered injury both from disruption of its investment in

14  DOCSIS in reliance and expectation of being free from claims concerning

15  MaxLinear's essential patents, and from Entropic's suit, which would not have

16  occurred but for MaxLinear's breaches. (DE 189-1. ¶¶ 315-18).

17       MaxLinear next claims that there are no averments that MaxLinear caused Cox

18  damages, nor any damages even pled. (DE 235 at 26-27). Both points are incorrect.

19  MaxLinear is, first, incorrect on the law. As demonstrated above, the averments Cox

20  identified show facts entitling Cox to "[a]ny of 'expectation, reliance or restitution

21  damages'" as may be appropriate once proof is adduced that the "damages were

22  caused by Defendant's breach to a reasonable degree of certainty." *Xpedior Creditor*

23  *Trust v. Credit Suisse First Boston (USA) Inc*., 341 F. Supp. 2d 258, 271 (S.D.N.Y.

24  2004) (citation omitted). But, at this stage, Cox "need only put [MaxLinear] on notice

25  of its claims," and "it is not required to specify the measure of damages nor to plead

26  proof of causation." *Id*.

27       Moreover, Cox asserts a breach of contract counterclaim against MaxLinear,

28

the third party whose breach of contract caused Entropic to assert already-licensed patents, demand royalties and bring suit. (DE 189-1, ¶¶ 308-18). The costs of responding to Entropic's assertions count as Cox's damages for MaxLinear's breach of contract. Courts have long recognized such expenses are contractual damages under these circumstances. *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 844-847 (2018), expressly held that under *Brandt v. Superior Court*, 693 P.2d 796 (Cal. 1985), "the principle that attorney fees qua damages are recoverable as damages, and not as costs of suit, applies equally to breach of contract." 29 Cal. App. 5th at 10; *see also Korpak, Ltd. v. Williams Lea Inc.*, 2022 WL 375543, at *4 (S.D.N.Y. Feb. 7, 2022) (same, where complaint "refer[s]to the 'attorneys' fees incurred in defending this lawsuit'" (internal citations omitted)); *Empire Merchants, LLC v. Merinoff*, 2017 WL 5176384, at *6 (S.D.N.Y. Nov. 8, 2017) (plaintiff's "boilerplate allegations" that it suffered damages as result of defendant's breach of forum selection clause sufficed where only "damages" plaintiff could have suffered as result of breach were attorneys' fees and costs incurred from breach); *Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, 2011 WL 3962515, at *5 (S.D.N.Y. Sept. 7, 2011) (breach of contract damages allegations sufficed where plaintiff "alleges that, as a result of the lawsuits filed by Counterclaim Defendants, it has suffered damages including costs and attorneys' fees related to defending itself and its licensees and assigns in the three actions"). The Federal Circuit has recognized the same. *See Taurus IP.*, 726 F.3d at 1341-43 (Fed. Cir. 2013).

The breach claims are sufficient and Maxlinear's motion should be denied.

## C. Cox's Declaratory Judgment States a Cognizable Claim

The counterclaims' averments support a grant of declaratory judgment on the grounds that the patent assignments to Entropic are void. MaxLinear argues that Cox's declaratory judgment claim should be dismissed because Cox's breach of contract is deficient. But, as established above, Cox's breach of contract claim has been

sufficiently pled and Cox is a third party beneficiary.

In any event, breach of contract and declaratory judgment are different claims seeking two different types of remedies, and are not duplicative. *See Steen v. Am. Nat'l Ins. Co*., 609 F. Supp. 3d 1066, 1073 (C.D. Cal. 2022) (rejecting argument that such claims were duplicative because it "ignores the alleged future uncertainty that declaratory judgment would remedy that would not be remedied by damages for breach of contract."). Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986). Here the issues are particularly unsettled and in need of clarification. Entropic asserts infringement claims based on patents obtained through assignments that are void. MaxLinear never disputes that declaratory judgment in Cox's favor on this issue would clarify and settle issues—including Entropic's ability to make infringement claims. Cox's counterclaim is thus appropriate.

## D.     Cox's Unjust Enrichment Claim is Cognizable and Proper

MaxLinear urges that Cox's unjust enrichment claim is improper. MaxLinear is incorrect. Cox's unjust enrichment claim is proper under the applicable law of Colorado, as well as under the California law MaxLinear wrongly advocates.

### 1.     Colorado Law Applies if the Conflict MaxLinear Advocates Exists

MaxLinear assumes that California law applies to Cox's unjust enrichment claim and then argues that California does not recognize such claims, but instead only recognizes "quasi-contract" claims. MaxLinear's assumption and argument is incorrect. California resolve choice-of-law questions via the governmental interest test. *See Cassirer v. Thyssen-Bornemisza Collection Found*., 69 F.4th 554, 560-61 (9th Cir. 2023). If the relevant jurisdictions' laws are different and in conflict, the

court evaluates and compares each jurisdiction's interest in applying its own law to identify which state's interest would be more impaired and then applies that law. *Id*.

Here, the DOCSIS standards underlying Cox's unjust enrichment claim were developed by CableLabs, a Colorado headquartered non-profit, and the DOCSIS license agreement is governed by New York law. Cox contends that all California and each these other jurisdictions recognize an unjust enrichment claim. *See, e.g.*, *Stark v. Patreon, Inc*., 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022) (concluding that an unjust enrichment claim exists); *Robinson v. Colorado State Lottery Div*., 179 P.3d 998, 1007 (Colo. 2008) (unjust enrichment in Colorado requires a "that (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit"); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (same in New York).

If Cox is correct, there is no conflict and MaxLinear's arguments are meritless. But if MaxLinear is correct that California only recognizes a "quasi-contract" claim that imposes more requirements than an unjust enrichment claim, then there is a conflict between California law, on one hand, and that of Colorado or New York. Because DOCSIS was developed and overseen by CableLabs from its Colorado offices and the DOCSIS agreement has a clause stating that New York law applies, Colorado or New York have stronger interests than California in uniform treatment of the DOCSIS standards given CableLabs location and choice of law. Nor, given California's recognition of unjust enrichment as, at least, a remedy, is there any impairment to California in applying Colorado or New York law.

## 2.    Cox's Alternative Claim is Properly Pled Under Rule 8, Even Under California Law

Cox's Response to MaxLinear's Motion to Dismiss Counterclaims in lead case no. 2:23-cv-1043-JWH-KES (related case no. 2:23-cv-1047-JWH-KES), details why California recognizes unjust enrichment claims or, at least, their close "quasi-

contract" alternative, and why such claims may be alternatively pled under Rule 8(d)(3). Cox hereby incorporates that pleading and relevant arguments by reference.

### 3.   Cox Pled Sufficient Allegations for its Alternative Claim of Unjust Enrichment (or Quasi-Contract)

MaxLinear argues that Cox does not state a claim for quasi-contract, first saying any averments about benefits MaxLinear's received from DOCSIS do not matter because as "a DOCSIS Licensor…any benefit received was not unjust." (DE 235, at 29). But the rule underlying unjust enrichment is focused on "circumstances…such that, as between the two individuals, it is ***unjust*** for the person to ***retain***" the benefits. (DE 235, at 29 (citing *Copley v. Natera, Inc.*, 2023 WL 3772023, at *5 (N.D. Cal. May 8, 2023) (emphasis added in part))). The focus is thus ***not*** on the initial receipt of benefits when all was well, but instead on whether circumstances resulted that make retention of the benefits unjust. The counterclaims address that point, explaining how MaxLinear obtained the benefits by virtue of false representations "that its conduct was governed by standards bodies rules and regulations, and that continued compliance with such standards bodies rules and regulations were critical to its business." (DE 189-1, ¶ 337; *see also id*., ¶¶ 287, 291-95 (addressing underlying facts)). These averments and others show why retention of the benefits would be unjust.

MaxLinear next asserts that Cox has failed to meet Rule 9(b)'s pleading standards, contending that Cox must specify which and why statements were false or misleading, and when they occurred. But Rule 9(b) does not require such detail. *Ebeid ex rel. United States v. Lungwitz*, cited by MaxLinear, explains that Rule 9(b) is met if a complaint "provide[s] a reasonable basis to infer" a false or misleading statement, or "provide enough detail 'to give [Defendant] notice of the particular misconduct which is alleged to constitute the fraud charged so that [she] can defend against the charge and not just deny that [she has] done anything wrong.'" 616 F.3d 993, 998 (9th

1   Cir. 2010) (citation omitted). The counterclaims need only provide enough detail to
2   put MaxLinear on notice of the misconduct, rather than requiring the precise
3   statements that MaxLinear seeks. Cox's averments pass this test.

4         But even if Rule 9(b) did require Cox to precisely identify how and why which
5   statements were false or misleading, or when made, Cox did so. The counterclaims
6   state that "MaxLinear made false representations, including misrepresenting to the
7   public via its securities filings that its conduct was governed by standards bodies rules
8   and regulations, and that continued compliance with such standards bodies rules and
9   regulations were critical to its business" and detailed the exact date and language used
10  in MaxLinear's security filings with such representations. (DE 189-1, ¶¶ 294, 337).
11  Likewise, Cox pointed out the DOCSIS patent pool to which all DOCSIS contributors
12  were subject and identified the February 2012 DOCSIS License MaxLinear signed by
13  which it, ultimately falsely, represented its desire to grant royalty-free rights. (*Id.*, ¶¶
14  284-87, 291-96). The false and misleading nature of those statements is demonstrated
15  by averments that MaxLinear executed various agreements to transfer its essential
16  patents to be used against Cox in violation of the DOCSIS agreement and
17  MaxLinear's representations in exchange for cash payments and shares in
18  "monetization" proceeds. (*Id.*, ¶¶ 296-301, 308-318).

19        MaxLinear says Cox never pled that it "directly" conferred a benefit. (DE 235
20  at 30). No case is cited for this proposition. Even assuming it is required, Cox's
21  counterclaims explain how Cox helped found CableLabs to "develop[] common
22  specifications for interoperability to help drive the scale of cable equipment and
23  reduce costs for cable operators like Cox and their customers," and then explained
24  how DOCSIS was developed by CableLabs, Cox and its vendors for Cox and other
25  operator's benefit. (DE 189-1, ¶¶ 282-84). By virtue of its work with the organization
26  Cox founded, for the purpose of creating standards to help lower costs for Cox,
27  MaxLinear was able to enter the market and make and sell equipment. (*Id.*, ¶¶ 294-

28

95). The counterclaims then directly state that "Cox invested substantial money and resources in connection with supporting DOCSIS standards development and purchasing, implementing and using DOCSIS-compliant equipment," and that "MaxLinear received substantial benefits from Cox's support of DOCSIS in that the market for DOCSIS compliant equipment expanded and MaxLinear was able to develop, market and sell its own DOCSIS products." (*Id.*, ¶ 316). Only by interacting with CableLabs and "cable operators like Cox" was MaxLinear "able, among other benefits, to develop, deploy, market, make, and sell various DOCSIS compliant equipment to the cable industry free of any claim of infringement by other vendors via the DOCSIS License" and "learn of draft and actual DOCSIS specifications, the future progress of cable industry technology and the potential innovations important to the cable industry" which "assisted MaxLinear in developing…patents, including the Asserted Patents." (*Id.*, ¶¶ 335-336).

Finally, MaxLinear's argument that it "received the same benefits as other participants in the DOCSIS license pool" (DE 235 at 30) is irrelevant to Cox's claims and MaxLinear provides no contrary authority. Such an argument cannot outweigh the actual averments that MaxLinear retained various benefits unjustly as a result of its false and misleading statements. (DE 189-1, ¶¶ 337-41).

## IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT COX LEAVE TO AMEND

MaxLinear's arguments misstate the law and ignore the many factual allegations in Cox's counterclaims. But if the Court is inclined to dismiss any claims Cox requests that it be given leave to amend the counterclaims to address any deficiencies. There is a strong public policy in favor of permitting amendment, and the Ninth Circuit has made clear that "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Without specifically finding undue delay, bad faith, dilatory

1  motive, repeated failure to cure deficiencies by prior amendments, prejudice to the
2  opposing party, or futility of amendment, it is an abuse of discretion to refuse to grant
3  leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v.*
4  *Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

5      Disregarding these standards, MaxLinear makes a specific request for dismissal
6  without leave only as to the breach of contract claim. (DE 235 at 26-27). But the
7  relevant factors do not justify even this limited request. Cox did not delay and has not
8  acted in bad faith or with dilatory motive. Courts in this district have found no undue
9  delay even where, unlike here, a party seeks to amend their pleading just months
10  before the close of discovery. *See Am. Honda Motor Co., Inc. v. LKQ Corp.*, 2022
11  WL 4596559, at *3 (C.D. Cal. Aug. 11, 2022). Contrary to MaxLinear's assertion,
12  Cox has only amended its counterclaims once, and it did so in good faith. Moreover,
13  the Court has not ruled that any deficiencies exist in Cox's counterclaims to date. This
14  factor weighs in favor of granting amendment and/or supplementation.

15      MaxLinear bears the burden of showing any specific prejudice or futility. *DCD*
16  *Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). Its general allegations
17  of prejudice are insufficient because "bald assertions of prejudice cannot overcome
18  the strong policy reflected in Rule 15(a) to facilitate a proper disposition on the
19  merits." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 2019 WL 1409854, at *3 (S.D.
20  Cal. March 27, 2019). "[A]mendment is futile when no set of facts can be proved
21  under the [proposed] amendment to the pleadings that would constitute a valid and
22  sufficient claim or defense." *See Am. Honda Motor*, 2022 WL 4596559, at *3 (internal
23  quotation marks omitted). That is not the case here, where *all* of the issues identified
24  in MaxLinear's motion amount, at most, to assertions that it cannot understand Cox's
25  claims without additional words to further address elements of the claims.

26  **V.  CONCLUSION**

27      Cox requests that the Court deny Plaintiff's Motion to Dismiss in its entirety.

28

1

Dated: March 1, 2024                 KILPATRICK TOWNSEND & STOCKTON LLP

2

By:   */s/ DRAFT* _____

3

April E. Isaacson
4       aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
5       San Francisco CA 94111
(415) 273 8306

6

Sarah Y. Kamran
7       skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
8       Los Angeles CA 90067
(310) 777 3733

9

Mitchell G. Stockwell
10      mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba
11      wkadaba@kilpatricktownsend.com
Michael J. Turton
12      mturton@kilpatricktownsend.com
Courtney S. Dabbiere
13      cdabbiere@kilpatricktownsend.com
Christopher S. Leah
14      cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
15      Atlanta GA 30309
(404) 815 6500

16

*Attorneys for Defendants*
17      *Cox Communications, Inc.;*
*CoxCom, LLC; and Cox Communications*
18      *California, LLC*

19

20

21

22

23

24

25

26

27

28