1  KILPATRICK TOWNSEND & STOCKTON LLP
   April E. Isaacson (SBN 180638)
2  aisaacson@kilpatricktownsend.com
   Two Embarcadero Center, Suite 1900
3  San Francisco CA 94111
   (415) 273 8306
4
   Sarah Y. Kamran (SBN 347617)
5  skamran@kilpatricktownsend.com
   1801 Century Park East, Suite 2300
6  Los Angeles CA 90067
   (310) 777 3733
7
   Mitchell G. Stockwell (*pro hac vice*)
8  mstockwell@kilpatricktownsend.com
   Vaibhav P. Kadaba (*pro hac vice*)
9  wkadaba@kilpatricktownsend.com
   Michael J. Turton (*pro hac vice*)
10 mturton@kilpatricktownsend.com
   Courtney S. Dabbiere (*pro hac vice*)
11 cdabbiere@kilpatricktownsend.com
   Christopher S. Leah (*pro hac vice*)
12 cleah@kilpatricktownsend.com
   1100 Peachtree Street, NE, Suite 2800
13 Atlanta GA 30309
   (404) 815 6500
14
15 *Attorneys for Defendants*
   *Cox Communications, Inc.; CoxCom, LLC; and*
16 *Cox Communications California, LLC*

17                   UNITED STATES DISTRICT COURT
18                   CENTRAL DISTRICT OF CALIFORNIA
19

20 ENTROPIC COMMUNICATIONS,        Case No. 2:23-cv-01049-JWH-KES
   LLC,
21                                 **COX COMMUNICATIONS, INC.,**
                Plaintiff,         **COXCOM, LLC AND COX**
22                                 **COMMUNICATIONS**
          v.                       **CALIFORNIA, LLC'S RESPONSE**
23                                 **TO ENTROPIC'S MOTION TO**
   COX COMMUNICATIONS, INC.;       **DISMISS COX'S**
24 COXCOM, LLC; and COX            **COUNTERCLAIMS**
   COMMUNICATIONS CALIFORNIA,
25 LLC,
26                Defendants.
27
28       __REDACTED DOCUMENT SOUGHT TO BE SEALED__

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COX COMMUNICATIONS, INC.;
COXCOM, LLC; AND COX
COMMUNICATIONS CALIFORNIA,
LLC,

                Counter-Claimants,

    v.

ENTROPIC COMMUNICATIONS,
LLC; MAXLINEAR, INC.; AND
MAXLINEAR COMMUNICATIONS
LLC,

                Counter-Defendants.

1

# TABLE OF CONTENTS

2

I.      INTRODUCTION ................................................................................9

3

II.     SUMMARY OF THE FACTS ..........................................................10

4

    A.     DOCSIS and the IPR Policy's Application to Cox..............................10

5

    B.     Plaintiff Improperly Purchases and Asserts Patents that are
        Encumbered by the DOCSIS License ................................12

6

    C.     The Counterclaims Address Plaintiff's Tortious
        Interference and Void Assignment and the Significant
        Harm it is Causing ........................................14

7

8

III.    LEGAL STANDARD ........................................................................15

9

IV.    ARGUMENT .....................................................................................16

10

    A.     Cox Sufficiently Pled a Claim for Tortious Interference......................16

11

        1.     Cox Plausibly Alleges It Is An Intended Beneficiary
            of the DOCSIS License and the DOCSIS License Is
            A Valid Contract ........................................16

12

13

        2.     Cox's Pleading Identifies Plaintiff's Knowledge of
            the Contract and Intentional Acts to Induce
            MaxLinear to Breach ........................................22

14

15

        3.     Cox Alleges Actual Breach or Disruption ................................26

16

        4.     Cox's Pleading Alleges Cognizable Harm ................................28

17

    B.     Cox Properly Seeks Declaratory Judgment Voiding the
        Assignments ........................................32

18

19

V.     IN THE ALTERNATIVE, THE COURT SHOULD GRANT
    COX LEAVE TO AMEND ........................................33

20

VI.    CONCLUSION ........................................................................33

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AP Links, LLC v. Russ*,
5
    2017 WL 3394599 (E.D.N.Y. Aug. 7, 2017) ....................................................29

6

*Apple Inc. v. Samsung Elecs. Co.*,
7
    2012 WL 1672493 (N.D. Cal. May 14, 2012)..............................................20, 21

8

*Artists Rts. Enf't Corp. v. Est. of Robinson*,
9
    2018 WL 1617890 (S.D.N.Y. Mar. 29, 2018).....................................................29

10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................15

11

*Bear Down Brands v. Bora Servs., S.R.L.*,
12
    2023 WL 5167355 (C.D. Cal. May 25, 2023)..................................17, 18, 22, 25

13

*Bell Atl. Corp. v. Twombly*,
14
    550 U.S. 544 (2007)...........................................................................................15

15

*Bowles v. Reade*,
16
    198 F.3d 752 (9th Cir. 1999) .............................................................................33

17

*Brandt v. Superior Court*,
18
    693 P.2d 796 (1985) ..........................................................................................31

19

*Chartwell RX, LLC v. Inmar, Inc.*,
20
    620 F. Supp. 3d 59 (S.D.N.Y. 2022) .................................................................27

21

*Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*,
22
    417 F.3d 727 (7th Cir. 2005) .............................................................................21

23

*Copenbarger v. Morris Cerullo World Evangelism, Inc.*,
    239 Cal. Rptr. 3d 838 (2018).............................................................................31

24

*DCD Programs, Ltd. v. Leighton*,
25
    833 F.2d 183 (9th Cir. 1987) .............................................................................33

26

*Debary v. Harrah's Operating Co., Inc.*,
27
    465 F. Supp. 2d 250 (S.D.N.Y. 2006) ...............................................................18

28

*Doe v. United States*,
  58 F.3d 494 (9th Cir. 1995) ................................................................. 15

*In re Facebook Priv. Litig.*,
  192 F. Supp. 3d 1053 (2016) ............................................................... 31

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mtg. Corp.*,
  525 F.3d 822 (9th Cir. 2008) ......................................................... 16, 24

*Foman v. Davis*,
  371 U.S. 178 (1962)............................................................................. 33

*FSI Architecture, P.C. v. Acheson Doyle Partners Architecture, P.C.*,
  2022 WL 170646 (S.D.N.Y. Jan. 19, 2022) ........................................ 19

*G+ Commc'ns, LLC v. Samsung Elecs. Co.*,
  2023 WL 3167416 (E.D. Tex. Apr. 28, 2023) ...................................... 18

*Gerritsen v. Warner Bros. Ent. Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ............................................... 30

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997), and 12(b)(6) ........................................ 15

*Guerra v. Sutton*,
  783 F.2d 1371 (9th Cir. 1986) ............................................................. 33

*Henneberry v. Sumitomo Corp. of Am.*,
  2005 WL 991772 (S.D.N.Y. Apr. 27, 2005) .................................. 18, 19

*In re Innovatio IP Ventures, LLC Pat. Litig.*,
  921 F. Supp. 2d 903 (N.D. Ill. 2013) .................................................. 20

*Int'l Minerals & Res., S.A. v. Pappas*,
  96 F.3d 586 (2d Cir. 1996) .................................................................. 29

*JMK USA Enterprises, Inc. v. Glob. Mail, Inc.*,
  No. CV 10-2213 CAS(AGRX), 2010 WL 11404591, at *2 (C.D.
  Cal. May 28, 2010) ....................................................................... 22, 23

*Kor. Supply Co. v. Lockheed Martin Corp.*
  (2003) 29 Cal. 4th 1134 ...................................................................... 25

*La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*,
  2021 WL 1164267 (S.D.N.Y. Mar. 25, 2021)...................................... 19

*LaSalle Bank v. Ernst & Young*,
   285 AD 2d 101 (N.Y. App. Div. 2001) ................................................. 18

*Leber Assocs., LLC v. Ent. Grp. Fund, Inc.*,
   2003 WL 21750211 (S.D.N.Y. July 29, 2003) ..................................... 24

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ............................................................... 30

*Microsoft Corp. v. Motorola, Inc.*,
   2011 WL 11480223 (W.D. Wash. June 1, 2011) ................................. 20

*Microsoft Corp. v. Motorola, Inc.*,
   864 F. Supp. 2d 1023 (W.D. Wash. 2012) ..................................... 20, 21

*Moore v. Apple, Inc.*,
   73 F. Supp. 3d 1191 (N.D. Cal. 2014) ................................................. 25

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ............................................................... 33

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   2013 WL 2151478 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124
   (9th Cir. 2015) ..................................................................................... 18

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   795 F.3d 1124 (9th Cir. 2015) ....................................................... 17, 18

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
   319 F. Supp. 2d 1059 (C.D. Cal. 2003) ............................................... 21

*Nestle USA, Inc. v. Best Foods LLC*,
   562 F. Supp. 3d 626 (C.D. Cal. 2021) ...................................... 26, 27, 28

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
   791 P.2d 587 (Cal. 1990) ............................................................... 27, 29

*Pollock v. Ridge*,
   310 F. Supp. 2d 519 (W.D.N.Y. 2004) ................................................ 17

*Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*,
   2011 WL 3962515 (S.D.N.Y. Sept. 7, 2011) ....................................... 29

*Rsch. in Motion v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ................................................ 20

*Sandow Fred Segal, LLC v. Cormackhill, LP*,
  2017 WL 5714542 (C.D. Cal. Apr. 17, 2017) .............................................26, 27

*Sebastian Int'l, Inc. v. Russolillo*,
  162 F. Supp. 2d 1198 (C.D. Cal. 2001) ...............................................................22

*Shapiro v. Hasbro, Inc.*,
  2015 WL 13357442 (C.D. Cal. Sept. 24, 2015), *aff'd*, 653 F. App'x
  568 (9th Cir. 2016) .............................................................................................30

*St. John's Univ. v. Bolton*,
  757 F. Supp. 2d 144 (E.D.N.Y. 2010) ...............................................16, 22, 24, 25

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
  726 F.3d 1306 ......................................................................................................31

*Thompson v. Davis*,
  295 F.3d 890 (9th Cir. 2002) ..............................................................................15

*Toretto v. Donnelley Fin. Sols., Inc.*,
  523 F. Supp. 3d 464 (S.D.N.Y. 2021) .................................................................17

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016) .......................................................................15, 16

*Tripharma, LLC, v. First Fruits Bus. Ministry LLC*,
  No. SACV 12-404 404 JVS (ANx), 2012 WL 12887079 (C.D. Cal.
  Aug. 21, 2012) ....................................................................................................23

*Tripharma, LLC v. First Fruits Bus. Ministry LLC*,
  2023 WL 2695476 (C.D. Cal. Feb. 15, 2023) .................................................25, 27

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ..............................................................................15

*Visto Corp. v. Sproqit Techs., Inc.*,
  360 F. Supp. 2d 1064 (N.D. Cal. 2005) ..............................................................29

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................15, 17

Fed. R. Civ. P. 12 ..............................................................................................*passim*

Fed. R. Civ. P. 15 ....................................................................................................33

Fed. R. Evid. 201 ............................................................................................. 30

# I.   INTRODUCTION

Cox's counterclaims arise out of the fact that the original owners of the asserted patents—the MaxLinear entities—participated in the development of DOCSIS standards through CableLabs and agreed to be bound by corresponding intellectual property rights policies. Cox was a founder of CableLabs, which aimed to develop DOCSIS standards for equipment to be used by Cox and interoperable among the various vendors Cox used. To participate in CableLabs' initiative, MaxLinear executed the DOCSIS License, through which MaxLinear granted irrevocable and perpetual licenses to any DOCSIS essential patents on a royalty-free basis to participants in the DOCSIS patent pool. Those participants were Cox's vendors and the entire point of the patent pool was to ensure that Cox, as a founder of CableLabs and a purchaser and user of DOCSIS-compliant products, would receive implied licenses or rights via patent exhaustion to use and sell all such equipment free of any claim of infringement of MaxLinear's DOCSIS essential patents.

Recognizing it could not monetize the asserted patents against Cox under the DOCSIS License, MaxLinear transferred numerous patents, including the asserted patents, to Plaintiff via assignments seeking to strip out the DOCSIS license encumbrances in exchange for payment and an interest in any profits Plaintiff may receive from their assertion. Through this transfer, MaxLinear breached the DOCSIS License by denying Cox and others the benefit of the fully paid-up license and violating assignment obligations, resulting in voidance of the assignment. Further, Plaintiff induced MaxLinear's breach to acquire the patents unencumbered so they could both reap an illegal profit. MaxLinear's breach has caused Cox significant harm.

Now, Plaintiff asserts patents it acquired from MaxLinear against Cox based on allegations that Cox practices various DOCSIS standards. Cox thus asserted claims for breach of contract and unjust enrichment against MaxLinear (Counts I and IV), a claim for tortious interference with contract against Plaintiff (Count III), and a

declaratory judgment claim against both parties that the assignment of the asserted patents was void (Count II). Plaintiff has moved to dismiss Counts II and III for failure to state a claim, repeatedly challenging the truth of Cox's allegations rather than their sufficiency. But the counterclaims do set forth facts identifying a valid contract and alleging Plaintiff's knowledge of the contract and MaxLinear's obligations thereunder. The counterclaims further plead facts alleging MaxLinear's transfer of the asserted patents to Plaintiff breached these obligations, causing harm to Cox and voiding the assignment. The counterclaims also make numerous factual allegations of Plaintiff's intentional acts inducing this breach, which are more than sufficient to state a claim for tortious interference.

Forced to face the consequences of its actions, Plaintiff seeks to muddle the issues by deliberately misreading the counterclaims and raising purported factual disputes that are inappropriate under the 12(b)(6) standard. Cox's pleading speaks for itself—Cox more than adequately pleads Counts II and III. Accordingly, this Court should deny Plaintiff's motion.

## II. SUMMARY OF THE FACTS

### A. DOCSIS and the IPR Policy's Application to Cox

Cable Television Laboratories, Inc. ("CableLabs") is a non-profit research and development consortium that is a "leading innovation and R&D lab for the cable industry." (DE 228-1 at 8; DE 189-1, ¶ 282). CableLabs was formed by, among others, cable companies like Cox that operate multiple cable systems. CableLabs evaluates new technologies and develops common specifications for interoperability, such as the DOCSIS standard, to help drive the sale of cable equipment and reduce costs for cable operators like Cox and its customers. (DE 189-1, ¶¶ 282-83).

Multiple entities participate in developing the specifications, which expressly aim to benefit cable operators like Cox. (DE 189-1, ¶ 283). For example, the DOCSIS 3.1 specification states it "is the result of a cooperative effort undertaken at the direction of Cable Television Laboratories, Inc. for the benefit of the cable

industry and its customers" and further explains in Section 1.1 that the "specification was developed for the benefit of the cable industry, and includes contributions by operators and vendors from North and South America, Europe, China and other regions." (*Id.*).

To protect entities implementing or using essential DOCSIS technology, the DOCSIS License creates a royalty-free pool for intellectual property rights essential to practicing the DOCSIS standard. (DE 228-1 at 8; DE 189-1, ¶¶ 284, 286; DE 89-1). Companies that have signed a DOCSIS license agreement ("DOCSIS Licensors") granted CableLabs a non-transferable, worldwide, non-exclusive, royalty-free license, with the right to sublicense, to all current and future patents owned by the licensor or its affiliates essential for compliance with DOCSIS specifications. (DE 189-1, ¶ 286; *see also* DE 89-2). In return, DOCSIS Licensors obtained a non-transferable worldwide, non-exclusive, royalty-free license under all patents CableLabs had the right to license or sublicense to the extent necessary for compliance with the DOCSIS specifications. (DE 189-1, ¶ 286). As a DOCSIS Licensor, MaxLinear thus provided royalty-free licenses to any patents essential to compliance with DOCSIS.

Cox is an intended third-party beneficiary of the DOCSIS License and is thus entitled to the benefits of the IPR policies in the License. As a DOCSIS Licensor and signatory to CableLabs' applicable NDAs and Contribution Agreement, MaxLinear was aware that cable operators purchasing and using products compliant with DOCSIS, such as Cox, were intended to benefit from the DOCSIS License and would have been induced to rely upon the IPR commitments, representations and warranties made by MaxLinear in connection with DOCSIS. (DE 189-1, ¶¶ 285-92). Cox's counterclaims likewise aver that Plaintiff knew or should have known "Cox was a beneficiary of the DOCSIS License Agreements." (*Id.*, ¶¶ 302-03).

MaxLinear received enormous benefits by being a signatory to the DOCSIS License. It was able to develop, deploy and market DOCSIS-compliant equipment

and learn about draft specifications and participated in meetings to discuss and understand future development of cable industry technology. (*Id.*, ¶¶ 284-85). It successfully enticed industry participants to adopt DOCSIS, including by making false and misleading representations concerning its commitment to retaining rights to grant royalty-free licenses, and otherwise ensuring such obligations would always be strictly recognized by and imposed upon future assignees. (*Id.*, ¶¶ 294-95). Moreover, Plaintiff was aware of the relevant contractual obligations and tortiously interfered with MaxLinear's contractual obligations to Cox and other DOCSIS licensees, sublicensees, and intended beneficiaries by inducing MaxLinear to assign it the asserted patents free of any encumbrances. (*Id.*, ¶¶ 302-03).

### B. Plaintiff Improperly Purchases and Asserts Patents that are Encumbered by the DOCSIS License

Plaintiff was formed in 2021. (DE 1, ¶ 27). That same year, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (*Id.*; DE 189-1, ¶¶ 296-97). Entropic makes no products, engages in no research, and offers no services. Instead, Entropic was formed solely to monetize MaxLinear's patents through licensing and assertion.

When Plaintiff acquired these patents, however, they were already encumbered with numerous obligations MaxLinear incurred, including under the DOCSIS License. (DE 189-1, ¶¶ 302-07). Although Entropic disputes that the asserted patents are DOCSIS-essential in a footnote, its averments show otherwise. (DE 228-1 at 14). As set forth in Cox's counterclaims, Plaintiff's Complaint references charts that both compare one or more claims within the asserted patents to various DOCSIS compliant equipment provided by DOCSIS Licensors like ARRIS, Broadcom, Pace, Samsung and/or Technicolor, and reference various aspects of DOCSIS. (DE 189-1, ¶¶ 304-05). Entropic's argument that Cox's averment that "one or more of the Asserted Patents are

essential to compliance with the DOCSIS specifications" suggests the asserted patents are not essential is misleading and ignores the actual averments in Cox's counterclaims. (DE 228-1 at 14). Tellingly, the referenced statement is based on Plaintiff's averments in its Complaint. (DE 189-1, ¶ 304). Further, the counterclaims provide examples of additional averments by Plaintiff indicating the essentiality of the asserted patents. (DE 189-1, ¶¶ 305-07).

If the averments in Plaintiff's complaint are true, one or more of its asserted patents reasonably may contain patent claims essential to DOCSIS. (*Id.*, ¶¶ 302-07). Thus, the DOCSIS License is naturally relevant, as it continues to bind MaxLinear and Plaintiff—as Plaintiff now seeks to acknowledge (DE 228-1 at 16)—and both should have ensured any assignment complied with the License which encumbered the patents. But Plaintiff deliberately sought and obtained the patents free of encumbrances from MaxLinear and is now improperly asserting these patents for money to which it is not entitled under the DOCSIS License. (DE 189-1, ¶¶ 296-301). And Plaintiff did so by inducing MaxLinear to breach the DOCSIS License obligations by ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████. (DE 189-1, ¶¶ 312-13).

On March 31, 2021, MaxLinear Communications LLC executed two assignment agreements ("Assignments") that were filed with the U.S. Patent Office and purport to assign the asserted patents to Entropic. (*Id.*, ¶¶ 300-01; DE 89-3; DE 89-4). Notably absent from the ███████████████████ and Assignments is any provision assuming the obligations MaxLinear incurred under the DOCSIS License Agreements, or any acknowledgement that MaxLinear previously granted perpetual, royalty free and irrevocable licenses thereunder. (DE 189-1, ¶ 308). In fact, the Assignments purport to assign "all right, title, and interest" to the relevant asserted

patents and to make such assignment "free and clear of all liens, claims and encumbrances other than those" Plaintiff "expressly agreed in writing will continue to encumber the Patent Rights after execution and delivery of this Assignment of Patent Rights." (*Id.*, ¶¶ 309; DE 89-3; DE 89-4). Yet there is no accompanying express, written agreement by Plaintiff as to the continued existence of any encumbrance. (*Id.*). Likewise, the ==Patent Purchase Agreement improperly purports to transfer the asserted and other patents free of any encumbrances==, in direct violation of the DOCSIS License Agreement in view of the DOCSIS-essential nature of one or more of the asserted patents. (*Id.*, ¶ 310).

The assignments by which Plaintiff purportedly acquired title to the asserted patents violate the DOCSIS License and are void. (*Id.*, ¶ 311). Additionally, MaxLinear assigning the patents to Plaintiff to assist its effort to enforce patents potentially essential to DOCSIS constitutes a breach of MaxLinear's representation, covenant, and warranty that it was binding itself to the obligation in the DOCSIS License to grant royalty-free licenses for essential patents. (*Id.*, ¶¶ 323-24). Plaintiff was fully aware of MaxLinear's contractual and public commitments to DOCSIS and the relevant IPR policies thereunder. (*Id.*, ¶ 302). Nonetheless, Plaintiff induced MaxLinear's breaches and interfered with the contract to improperly assert ownership of the relevant patents and entitlement to damages or royalties. (DE 189-1, ¶ 318).

## C.   The Counterclaims Address Plaintiff's Tortious Interference and Void Assignment and the Significant Harm it is Causing

Cox has sustained substantial, direct injuries resulting from Plaintiff's improper assertion of these patents. (DE 189-1, ¶¶ 316-18). Accordingly, Cox asserts counterclaims against Plaintiff and MaxLinear. (DE 189-1). Count II asserts a claim for declaratory judgment that the patent assignments executed by Plaintiff and MaxLinear are void based on their violation of the obligations for assignments set forth in the DOCSIS License. (DE 189-1, ¶¶ 327-29).

Count III asserts a claim for tortious interference with contract based on

1  Plaintiff's awareness of the DOCSIS License and MaxLinear's obligations

2  thereunder, Plaintiff's inducement of a breach of MaxLinear's contractual obligations

3  by inducing MaxLinear to attempt to assign various patents for Plaintiff to enforce

4  and for Plaintiff to seek damages, despite Plaintiff's awareness that such patents may

5  reasonably contain essential patent claims, and MaxLinear's breach of its contractual

6  obligations resulting from Plaintiff's actions. (DE 189-1, ¶¶ 330-33).

7  **III.  LEGAL STANDARD**

8      Motions to dismiss for failure to state a claim are disfavored, *see Gilligan v.*

9  *Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), and 12(b)(6) dismissals are

10  proper only in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963,

11  966 (9th Cir. 1981). "A complaint should not be dismissed unless it appears beyond

12  doubt that the plaintiff can prove no set of facts in support of the claim that would

13  entitle the plaintiff to relief." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

14  Indeed, if the Court finds that a pleading fails to state a claim, the Court should grant

15  leave to amend unless the pleading cannot be cured by the allegation of other facts.

16  *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

17      Rule 8(a)(2) "requires only 'a short and plain statement of the [plaintiff's] claim

18  showing that the pleader is entitled to relief,'" which requires that the complaint

19  "'give the defendant fair notice of what the…claim is and the grounds upon which it

20  rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to

21  dismiss, a complaint need merely plead "enough factual matter" that, when taken as

22  true, "state[s] a claim to relief that is plausible on its face." *Id.* at 556, 570; *Ashcroft*

23  *v. Iqbal*, 556 U.S. 662, 679 (2009) (holding claim must be facially plausible to survive

24  motion to dismiss). In deciding a motion to dismiss, this Court must credit all factual

25  assertions made in the complaint, draw all reasonable factual inferences in favor of

26  Cox, and use those factual assertions and inferences to determine whether Cox is

27  plausibly entitled to relief. Fed. R. Civ. P. 8(a), 12(b)(6); *In re Tracht Gut, LLC*, 836

28  F.3d 1146, 1150-51 (9th Cir. 2016). Dismissal is proper only where there is a "lack

1  of a cognizable legal theory or…[an] absence of sufficient facts alleged under a
2  cognizable legal theory." *Tracht Gut*, 836 F.3d at 1151. Cox's counterclaims comply
3  with the Federal Rules and provide the requisite notice.

4  **IV.   ARGUMENT**

5     **A.   Cox Sufficiently Pled a Claim for Tortious Interference**

6     Contrary to Entropic's assertions (DE 228-1 at 10-18), Cox's counterclaim
7  fully identifies a valid contract, applicability of the contract, Cox's status and
8  performance as an intended third-party beneficiary, Entropic's knowledge of the
9  contract, and Entropic's acts that induced breach or disruption of the contract and
10 caused damage and injury to Cox. (DE 189-1, ¶¶ 284-96, 299-303). Thus, Cox has
11 alleged facts for every element of a tortious interference claim. *St. John's Univ. v.*
12 *Bolton*, 757 F. Supp. 2d 144, 172 (E.D.N.Y. 2010) ("Under New York law, the
13 elements of a tortious interference with contract claim are: (a) that a valid contract
14 exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party
15 intentionally and improperly procured the breach of the contract; and (d) that the
16 breach resulted in damage to the plaintiff.") (citation omitted); *see also Fam. Home*
17 *& Fin. Ctr., Inc. v. Fed. Home Loan Mtg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)
18 ("Under California law, a claim for intentional interference with contract requires:
19 "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of
20 the contract; (3) defendant's intentional acts designed to induce breach or disruption
21 of the contract; (4) actual breach or disruption; and (5) resulting damage.").

22    Plaintiff's attacks on the sufficiency of Cox's counterclaim are based on
23 Plaintiff's mischaracterizations of Cox's claim and, in fact, ignore the actual pleading.
24 But that is not how Rule 12 works and, as demonstrated below, Plaintiff's challenges
25 to the sufficiency of Cox's averments fail.

26     **1.   Cox Plausibly Alleges It Is An Intended Beneficiary of the**
27          **DOCSIS License and the DOCSIS License Is A Valid Contract**

28 Despite Plaintiff's assertions otherwise, Cox's counterclaims establish it is an

1    intended beneficiary of the DOCSIS License and therefore pleads a valid contract for

2    its counterclaim of tortious interference. The liberal notice pleading standard of the

3    Federal Rules of Civil Procedure requires only that a plaintiff provide sufficient

4    specificity in identifying contracts to allow a defendant to answer the complaint. *See*

5    *Bear Down Brands v. Bora Servs., S.R.L.*, 2023 WL 5167355, at *2 (C.D. Cal. May

6    25, 2023). Cox's counterclaim more than meets this requirement.

7          As detailed above, Cox's pleading identifies provisions in the DOCSIS License

8    and the DOCSIS standards they license establishing the parties to the License

9    intended to confer a benefit on third parties such as Cox through offering royalty-free

10   licenses to essential patents. (DE 189-1, ¶¶ 287, 294-98, 302-03, 310-18). This is more

11   than a "conclusory allegation," and more than sufficient at the pleading stage to put

12   Plaintiff on notice that Cox is an alleged intended third-party beneficiary. *E.g.*, *Bear*

13   *Down*, 2023 WL 5167355, at *2; *Pollock v. Ridge*, 310 F. Supp. 2d 519, 526-27

14   (W.D.N.Y. 2004) ("Although the Court has grave doubts about whether plaintiff

15   ultimately will prevail on this claim… dismissal of this claim is not warranted at this

16   time. In order to determine whether plaintiff is an intended beneficiary, the Court must

17   examine the language of the contract and perhaps other relevant evidence…As such,

18   the issue is better resolved on summary judgment or at trial. Suffice it to say that, for

19   now, plaintiff has met the minimum threshold pleading requirements of Fed. R. Civ.

20   P. 8 to state a claim against the Barbosa defendants as a third party beneficiary to a

21   contract."); *Toretto v. Donnelley Fin. Sols., Inc.*, 523 F. Supp. 3d 464, 476-77

22   (S.D.N.Y. 2021) (finding pleading "on information and belief" that provisions of

23   contract "were 'intentionally included for the direct benefit' of Plaintiffs" and

24   identifying contract provisions sufficient to aver third-party beneficiary status).

25         Nonetheless, Plaintiff "disputes that [Cox's allegation that it is an intended

26   beneficiary] would be sufficient to support a tortious interference claim under

27   *Name.Space*." (DE 228-1 at 11 (citing *Name.Space, Inc. v. Internet Corp. for Assigned*

28   *Names & Numbers*, 795 F.3d 1124 (9th Cir. 2015)). Plaintiff is incorrect. As an initial

matter, *Name.Space* does not deal with any allegations of intended beneficiary status for a tortious interference with contract claim. In the decision affirmed by the Ninth Circuit, the district court found conclusory the averments that "Plaintiff provides services to its clients using the gTLDs on its alternative Internet, that ICANN has knowledge of Plaintiff's relationships with its clients, and that ICANN's approval of another registry to operate any of the gTLDs Plaintiff has used would disrupt Plaintiff's relationships with its clients." *name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013), *aff'd*, 795 F.3d 1124 (9th Cir. 2015).

By contrast, Cox's claim specifically avers facts showing it is an intended beneficiary of the DOCSIS License, such as provisions in the License and corresponding specifications. This is more than sufficient under the liberal notice pleading standard. *See, e.g.*, *Bear Downs*, 2023 WL 5167355, at *2; *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, 2023 WL 3167416, at *5 (E.D. Tex. Apr. 28, 2023) ("Moreover, the Court finds that G+ has sufficiently pled that it was an intended beneficiary of the Samsung/ETSI contract. G+ alleges that Samsung is a signatory of ETSI, that ETSI members are bound to the ETSI IPR policy, that Clause 3.2 of the ETSI IPR policy requires members to 'reward' IPR holders irrespective of whether the IPR holder is a member or a third party, and that G+ is a third-party IPR holder. This is sufficient at the pleading stage to put Samsung on notice that G+ is an alleged third-party beneficiary.") (citations omitted).

Cox's averments are also sufficient under New York law, including the law Plaintiff cites, which considers whether a pleading of third party beneficiary status "sets forth any basis upon which [the court] could construe the existence of third-party rights and that plaintiffs were intended to be the third-party beneficiaries." *LaSalle Bank v. Ernst & Young*, 285 AD 2d 101, 108-109 (N.Y. App. Div. 2001); *see also* (DE 228-1 at 11 (citing *Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 262-263 (S.D.N.Y. 2006); *LaSalle*, 285 AD 2d at 108-109)); *Henneberry v.*

*Sumitomo Corp. of Am.*, 2005 WL 991772, at *12 (S.D.N.Y. Apr. 27, 2005) ("The Restatement (Second) of Contracts further guides New York courts, stating that a third party is an intended beneficiary if: 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and ... the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'") (citation omitted). While "the intention to create a third party beneficiary need not be expressed in the contract," the claimant must plead facts alleging that the parties' intent to benefit a third party is shown on the face of the agreement. *Henneberry*, 2005 WL 991772, at *12 (citations omitted). "In identifying the parties' intent, a court should consider the circumstances surrounding the transaction as well as the actual language of the contract." *FSI Architecture, P.C. v. Acheson Doyle Partners Architecture, P.C.*, 2022 WL 170646, at *4-5 (S.D.N.Y. Jan. 19, 2022) (citations omitted).

The averments in Cox's counterclaim put forth facts alleging the DOCSIS License's terms demonstrate the signing parties intended the agreement benefit Cox. (DE 189-1, ¶¶ 282-87, 291-95, 302-03, 320-22). Cox has met the pleading requirements articulated in *Henneberry* and *FSI Architecture*. *See also La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*, 2021 WL 1164267, at *3 (S.D.N.Y. Mar. 25, 2021) (finding intended beneficiary status pled where "the Agreement does not explicitly mention LPB1 or LPB2 or any other third-party beneficiary," "Defendants have cited no provision of the Agreement that rules out the intent to benefit LPB1 and LPB2," and "the Scope of Work contemplates services rendered to LPB1 and LPB2").

Attempting to disregard Cox's averments—and their sufficiency—Plaintiff argues that they "support only that Cox's ***suppliers*** may be intended beneficiaries." (DE 228-1 at 11). Not true. Cox's pleading alleges facts identifying provisions in the DOCSIS License and practices by DOCSIS Licensors, sublicensees, and cable operators, demonstrating that Cox is an intended beneficiary of the DOCSIS License.

(DE 189-1, ¶¶ 287, 294-98, 302-03, 310-18). Plaintiff's argument attempts to abrogate MaxLinear's commitments under the DOCSIS License by turning them from commitments to ***everyone*** practicing the standard into commitments to ***no one*** practicing the standard, or perhaps only those with whom Plaintiff decides it will deal. This is in direct conflict with one of the central tenets of such commitments—that ***anyone*** using the standardized DOCSIS technology is entitled to the pool license, expressly to avoid the dangers of "patent hold-up" in the standards-setting context. *See Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1027 (W.D. Wash. 2012) ("Such [RAND] rules help to insure that standards do not allow essential patent owners to extort their competitors or prevent competitors from entering the marketplace.").

Moreover, Plaintiff's argument ignores that courts have consistently upheld third-party beneficiary claims premised on breach of commitments made to a standards organization regarding licensing of alleged standard-essential patents. *See, e.g.*, *In re Innovatio IP Ventures, LLC Pat. Litig.*, 921 F. Supp. 2d 903, 923 (N.D. Ill. 2013) ("Here, the promises of Innovatio's predecessors to offer a RAND license to all users of the applicable IEEE standards plainly contemplate benefitting those users."); *Microsoft Corp. v. Motorola, Inc.*, 2011 WL 11480223, at *2-3 (W.D. Wash. June 1, 2011); *Rsch. in Motion v. Motorola, Inc.*, 644 F. Supp. 2d 788, 792, 797 (N.D. Tex. 2008); *Apple Inc. v. Samsung Elecs. Co.,* 2012 WL 1672493, at *11–12 (N.D. Cal. May 14, 2012).

MaxLinear's obligations that benefited Cox likewise were formed when it signed the DOCSIS License. (DE 189-1, ¶¶ 287, 291). Consistent with the widely recognized purpose of such IPR policies and RAND obligations in promoting broad adoption of standardized technologies, the DOCSIS License confirms MaxLinear granted ████████████████████████████████████████

1   ███████████████████████████████████████████. (*Id.*, ¶ 291). The DOCSIS

2   License Agreement thus ████████████████████████████████████████████████

3   ████████████████████ (*Id.*, ¶ 292). This assurance is made for the benefit of users and

4   implementers of the standards, such as Cox. (*Id*).

5       MaxLinear's commitments under the DOCSIS License formed binding

6   contracts, enforceable by implementers such as Cox, whether party to the contract

7   because of its membership in CableLabs or status as a third-party intended beneficiary

8   as an implementer of the standards that were developed for benefit of Cox, a cable

9   operator. *See, e.g.*, *Microsoft Corp.*, 864 F. Supp. 2d at 1031 ("[A] contract is formed

10  through Motorola's (or any essential patent holder's) commitments to the IEEE…to

11  license patents on RAND terms….Microsoft, as a potential user of the 802.11

12  Standard…is a third-party beneficiary of the agreements between Motorola and the

13  IEEE."); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005).

14  Thus, Cox has standing to maintain a claim of tortious interference as a third party

15  beneficiary.

16      Next, Entropic incorrectly asserts that Cox fails to allege it is an intended

17  beneficiary because it has not alleged it has complied with provisions in the DOCSIS

18  License Agreement that are inapplicable to Cox. (DE 228-1 at 12). Despite

19  acknowledging Cox does not allege it is a sublicensee to the DOCSIS License,

20  Entropic points to a provision applicable *only* to sublicensees. (*Id.*). Plaintiff points to

21  no authority—nor is there any—that such compliance is applicable to third party

22  beneficiaries in California or elsewhere. *See, e.g.*, *Nat'l Rural Telecomms. Coop v.*

23  *DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1068 (C.D. Cal. 2003). Thus, that Cox does

24  not allege it complies with the obligations of sublicensees is irrelevant and does not

25  negate its factual allegations of third party beneficiary status.

26      Finally, Plaintiff requests dismissal based on its opinion that Cox "is at best an

27  incidental beneficiary." (DE 228-1 at 12). This is not a proper challenge under Rule

28  12. Indeed, even if Cox had not demonstrated it is an intended—rather than an

incidental—beneficiary, this does not make the pleading insufficient as it provides adequate notice of the agreement and the facts giving rise to Cox's claim of third party beneficiary status. *JMK USA Enterprises, Inc. v. Glob. Mail, Inc.*, 2010 WL 11404591, at *2 (C.D. Cal. May 28, 2010) (finding pleading of third-party beneficiary status sufficient under Rule 12 where claimant "which is not a party to the alleged agreement, alleges that there is an agreement between Unishippers and DHL whereby DHL agreed not to compete with Unishipper's franchisees," "it is a franchisee of Unishipper and therefore an intended beneficiary of the alleged agreement"); *Bear Down*, 2023 WL 5167355, at *2 (noting "[t]o adequately allege the first element—a valid contract between the plaintiff and a third party—a plaintiff need not name the specific third party with which it has a contract") (citation omitted).

Under the liberal notice pleading standard of the Federal Rules of Civil Procedure, Cox has sufficiently pled the existence of a valid contract.

## 2. Cox's Pleading Identifies Plaintiff's Knowledge of the Contract and Intentional Acts to Induce MaxLinear to Breach

Cox's counterclaim sufficiently pleads other elements of a tortious interference claim: Plaintiff's knowledge of the contract (DE 189-1, ¶¶ 302-07) and Plaintiff's intentional acts designed to induce MaxLinear's breach or disruption of the contract (DE 189-1, ¶¶ 308-14). Plaintiff does not dispute it was aware of the DOCSIS License. Rather, Plaintiff argues Cox must "allege facts showing Entropic ***knew or was substantially certain*** that the asserted patents are subject to the license—and that its actions would disrupt the DOCSIS License." (DE 228-1 at 17). Plaintiff's argument is based in neither fact nor law.

To allege a defendant's knowledge of a contract, the plaintiff need not allege the defendant knew about the particular contract in question; rather, the plaintiff need only allege the defendant "knew the plaintiff had contracts with a certain group or type of party." *Bear Down Brands*, 2023 WL 5167355, at *2 (citing *Sebastian Int'l, Inc. v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001); *see also St. John's*

*Univ.*, 757 F. Supp. 2d at 173 ("[O]n a motion to dismiss it is sufficient for Plaintiff to allege facts from which the court might reasonably infer that Spireas had such knowledge."). Cox does not, as Plaintiff posits, need to allege facts showing Entropic knew or was substantially certain the asserted patents were subject to the License. Indeed, this District has held that the existence of a contract may be alleged on information and belief. *See JMK USA Enterprises*, 2010 WL 11404591, at \*2. Here, Cox alleges Plaintiff knew about the DOCSIS License and MaxLinear's obligations thereunder at least because it was publicly available information and the asserted patents reference and/or implicate the DOCSIS standards. (DE 189-1, ¶ 302). This suffices.

Plaintiff's remaining challenges to Cox's allegations of Plaintiff's intentional interference with the DOCSIS License likewise fail. (DE 228-1 at 17-18).

First, Plaintiff incorrectly argues that Cox's counterclaims do not allege facts beyond conclusory allegations concerning whether Entropic knew its actions were certain or substantially certain to interfere with the DOCSIS License. (DE 228-1 at 17). Plaintiff's argument is belied by the plain language of the counterclaim. For example, Cox's counterclaim alleges facts showing Plaintiff knew of the DOCSIS License and its licensing terms, Plaintiff's Complaint alleges the asserted patents are DOCSIS essential, and Plaintiff's intentional acts inducing MaxLinear to breach the DOCSIS License and assign the patents without encumbrances. (*E.g.*, DE 189-1, ¶¶ 296-98, 302-03, 310-318). It further alleges that Plaintiff engaged in its tortious conduct despite knowing that harm to Cox was certain or substantially certain to occur as a result of Plaintiff asserting patents that are already licensed under the DOCSIS License. This meets all of the elements for tortious interference. *See, e.g.*, *Tripharma, LLC, v. First Fruits Bus. Ministry LLC,* 2012 WL 12887079, at \*16 (C.D. Cal. Aug. 21, 2012) (finding likelihood of success on merits of tortious interference claim based in part on evidence of intentional actions including "Defendant FFBM, with Catarino's personal involvement, acquired the 892 Patent and has purported to take

1    all rights to commercially exploit it, free and clear of TriPharma's rights").

2         Second, Plaintiff suggests the absence of allegations that "Cox's relationship

3    with its suppliers has been disrupted, or that Entropic intended to disrupt those

4    relationships" makes the claim insufficient. (DE 228-1 at 17). This is incorrect.

5    Plaintiff points to no legal authority for this proposition. Nor is there any. A claim for

6    tortious interference with contract requires intentional acts designed to induce breach

7    or disruption of the ***contract***, not necessarily disruption of Cox's relationships with

8    its suppliers. *E.g.*, *St. John's Univ.*, 757 F. Supp. 2d at 172; *Fam. Home & Fin. Ctr*,

9    525 F.3d at 825.

10        Consistent with this standard, Cox has affirmatively alleged that Plaintiff knew

11   of the DOCSIS License and licensing terms and that the asserted patents are essential

12   to complying with the DOCSIS standards, and engaged in intentional conduct,

13   including ███████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ██████████████████████ to induce MaxLinear to ████████████████

18   ████████████████████████████████████████████. (DE 189-1, ¶¶

19   302-313). Cox's averments sufficiently allege intentional acts by Entropic to induce

20   MaxLinear's breach. *See, e.g.*, *Leber Assocs., LLC v. Ent. Grp. Fund, Inc.*, 2003 WL

21   21750211, at *18 (S.D.N.Y. July 29, 2003) ("Improper intentional interference is

22   generally evidenced by a tortfeasor inducing or otherwise causing [a] third person not

23   to perform his contractual obligations to plaintiff.") (citation omitted).

24        Finally, Plaintiff argues that it could not have intended to disrupt the contract

25   because, ███████████████████████████████████████████████

26   ███████████████, MaxLinear represented to Entropic ██████████████

27   ███████████████████████████████. (DE 228-1 at 17). Plaintiff's

28   argument, however, acknowledges that not only was Plaintiff aware of DOCSIS and

1    that patents essential to practicing the DOCSIS standards are encumbered by a
2    DOCSIS license, but also Plaintiff filed this lawsuit to assert patents it pleads are
3    DOCSIS essential despite knowing such patents are subject to a license and Plaintiff
4    is violating it.

5         Moreover, Plaintiff's argument does nothing to change the facts alleged in
6    Cox's counterclaim establishing Plaintiff's intentional acts of inducement, which are
7    sufficient for purposes of Rule 12. Indeed, to be intentional, a defendant's primary
8    motive does not need to be disruption. *Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191,
9    1203 (N.D. Cal. 2014); *see also St. John's Univ.*, 757 F. Supp. 2d at 173 ("An actor
10   intentionally procures a breach of a third party's contract even where the breach 'is
11   incidental to the actor's independent purpose and desire but known to him to be a
12   necessary consequence of his action.'" (quoting Restatement (Second) of Torts § 766
13   cmt. J)). To satisfy the intent element for an intentional interference claim, a plaintiff
14   must allege either that the defendant desired to interfere with the plaintiff's contractual
15   agreements or, alternatively, that "the defendant knew that the interference was
16   certain or substantially certain to occur as a result of its action." *Kor. Supply Co. v.
17   Lockheed Martin Corp.*, (2003) 29 Cal. 4th 1134, 1153. "[I]t is sufficient to allege
18   that the defendant knew that interference with the plaintiff's contract with a third party
19   was certain or substantially certain to occur as a result of its actions." *Bear Down
20   Brands*, 2023 WL 5167355, at *2; *see also St. John's Univ.*, 757 F. Supp. 2d at 173
21   (finding pleadings adequately allege intentional inducement because "[i]t is
22   reasonable to infer that Spireas knew that Bolton's breach of the Agreements was
23   necessary to the fulfillment of his scheme to retain his interests in the Liquisolid
24   Patents and the licensing royalties, even if Bolton's breach of the Agreements was
25   incidental to that scheme"). Moreover, "[u]nlike tortious interference with a
26   prospective business advantage, which requires an independently wrongful act, the
27   interference with an existing contract is 'a wrong in and of itself.'" *Tripharma, LLC
28   v. First Fruits Bus. Ministry LLC*, 2023 WL 2695476, at *8 (C.D. Cal. Feb. 15, 2023).

As detailed above, Cox's claim alleges Plaintiff ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████ under Plaintiff's averments in the Complaint, the asserted patents are essential to the DOCSIS standards, and Plaintiff intentionally sought to acquire the asserted patents without the DOCSIS License encumbrance. (DE 189-1, ¶¶ 302-313). These allegations, taken as true, adequately plead Plaintiff knew interference was substantially certain to occur because of its improper acquisition of the asserted patents free of encumbrance. *See Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021); *Sandow Fred Segal, LLC v. Cormackhill, LP*, 2017 WL 5714542, at *3, *7 (C.D. Cal. Apr. 17, 2017) (citation omitted).

### 3.     Cox Alleges Actual Breach or Disruption

Cox's counterclaim sufficiently pleads actual breach or disruption of the DOCSIS License by MaxLinear. (DE 189-1, ¶¶ 287, 294-98, 302-08, 310-18). As set forth above in Section IV.A.1, the counterclaims plausibly demonstrate Cox is an intended third-party beneficiary to the DOCSIS License MaxLinear executed, Plaintiff's averments in the Complaint demonstrate one or more of the asserted patents are essential to compliance with DOCSIS standards, and MaxLinear's assignment of those patents constituted a breach. In addition, MaxLinear agreed ███████████ █████████████████████████, and in doing so, has breached its agreement under the DOCSIS License to grant Cox a ██████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████. (*Id.*, ¶¶ 302-03, 324).

Plaintiff argues that Cox does not plausibly allege actual breach for two reasons, neither of which has merit. First, Plaintiff argues that Cox's allegation that MaxLinear breached the DOCSIS License by ████████████████████████

██████████ is insufficient because Cox does not allege a specific provision in the DOCSIS License this conduct violates. (DE 228-1 at 15). This is factually incorrect and unsupported by the law. As set forth above, Cox's counterclaim alleges facts showing the DOCSIS License obligated MaxLinear to ████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████. (DE 189-1, ¶¶ 302-03, 324). The provisions giving rise to these obligations are set forth in Paragraphs 287 and 291 of Cox's counterclaim, and Cox's counterclaim identifies specific acts by MaxLinear breaching these obligations, e.g., assigning the asserted patents free of these obligations so it could recover otherwise unrecoverable payment from Cox. (*Id.*). This is more than sufficient to plead breach or disruption in a New York tortious interference claim. *See, e.g.*, *Tripharma,* 2023 WL 2695476, at *9 ("To adequately plead 'actual breach or disruption,' a party may allege that the interference made performance of its contract 'more expensive or burdensome'—an actual breach is not required.") (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 590 (Cal. 1990)); *Nestle USA*, 562 F. Supp. 3d at 633 ("Mere 'disruption of the contractual relationship' is all Plaintiffs must show to demonstrate the disruption element.") (citation omitted); *Chartwell RX, LLC v. Inmar, Inc.*, 620 F. Supp. 3d 59, 77 (S.D.N.Y. 2022) (denying motion to dismiss tortious interference claim and finding allegations that "Inmar intentionally and successfully induced the Distributors into breaching their contracts with Chartwell by issuing unauthorized credit notifications to the Distributors, which caused the Distributors to improperly debit Chartwell's account for improper returns in breach of their contracts with Chartwell" sufficient).

Second, Plaintiff purports that the DOCSIS License does not require special language when assigning patents subject to the License and the associated obligations would run with the patents automatically, thus Cox cannot plausibly allege MaxLinear

breached the License by assigning the patents free of any encumbrances. (DE 228-1 at 16). Plaintiff's argument, however, ignores Cox's averments showing MaxLinear's assignments *affirmatively* sought to strip out any encumbrance, including encumbrances caused by the DOCSIS License, so that Plaintiff was unconstrained by the royalty-free license obligations to which MaxLinear was constrained. (DE 189-1, ¶¶ 308-18, 331-32). It is irrelevant whether the obligations under the DOCSIS License run with the patents or the patents are DOCSIS essential; Cox has sufficiently pled that the ███████████████████████████████████████████████████ ███████████████████████████████████, and MaxLinear's execution of this Agreement breached the DOCSIS License provision mandating that the ███████ ████████████████████████████████████████████████████. (DE 89-1, § 9.6; DE 189-1, ¶ 293). These allegations, taken as true, adequately plead actual breach or disruption. *See, e.g.*, *Nestle USA, Inc.*, 562 F. Supp. 3d at 633.

### 4.    Cox's Pleading Alleges Cognizable Harm

Contrary to Entropic's assertions, Cox has pled numerous forms of direct, legally cognizable injuries caused by Entropic's unlawful actions, including causing Cox to incur the expense of defending this case that would not otherwise have been brought. (DE 189-1, ¶¶ 288-93, 295, 302-07, 314-18, 331-33). Cox's counterclaim includes averments that the asserted patents, Plaintiff's complaint, and Plaintiff's infringement contentions allege the asserted patents include DOCSIS-essential claims.[1] (*Id.*, ¶¶ 302-307). Cox has not received the intended benefits of the DOCSIS licenses and standards, including the ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████. (*Id.*, ¶¶ 317-18, 325, 333). Quite the opposite as Cox has been sued now, for what Entropic's disclosure in this case claims

---

[1]Plaintiff's suggestion that because Cox's counterclaim states "one or more of the Asserted Patents contain claims essential to compliance with [DOCSIS] standards," Cox does not allege all eight Asserted Patents contain DOCSIS-essential claims, is simply incorrect in light of the actual averments. (DE 228-1 at 14).

1   would be damages of $200 million and has incurred—and will continue to incur—
2   significant costs defending this improper action.

3         Plaintiff posits that Cox's alleged harm is not cognizable because of the
4   litigation privilege. (DE 228-1 at 13), but Plaintiff's argument mischaracterizes the
5   facts and law. Cox's counterclaim asserts a claim for tortious interference with
6   contract against Plaintiff and that a resulting harm is having to defend against this
7   lawsuit. The litigation privilege Plaintiff identifies applies when the alleged
8   interference is bringing of the lawsuit. *E.g.*, *Pac. Gas & Elec. Co.*, 791 P.2d at 594;
9   *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1071 (N.D. Cal. 2005). That
10  is not the case here. As set forth above, Cox's counterclaim alleges Plaintiff interfered
11  with the DOCSIS License by inducing MaxLinear's breach of that License. Thus, the
12  litigation privilege does not preclude Cox's claim or render its harm unviable.

13        For the same reasons, Plaintiff's assertion that Cox must allege the litigation
14  was brought without probable cause and concluded in Cox's favor—which Cox
15  cannot do because the underlying patent infringement case is still being litigated—is
16  based on its erroneous application of the law. (DE 228-1 at 14-15). Cox's claim is for
17  tortious interference, and the harm Cox identifies in its counterclaim is proper and
18  cognizable. *Cf. Reach Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*, 2011 WL
19  3962515, at *5 (S.D.N.Y. Sept. 7, 2011), amended on denial of reconsideration, 2012
20  WL 695461 (S.D.N.Y. Mar. 5, 2012) (finding damages allegations for breach of
21  contract sufficient where plaintiff "alleges that, as a result of the lawsuits filed by
22  Counterclaim Defendants, it has suffered damages including "costs and attorneys'
23  fees related to defending itself and its licensees and assigns in the three actions");
24  *Artists Rts. Enf't Corp. v. Est. of Robinson*, 2018 WL 1617890, at *6 (S.D.N.Y. Mar.
25  29, 2018) ("[A] plaintiff in a tortious interference with contract case is entitled to
26  'damages in the amount of the full pecuniary loss of the benefits of the contract.'")
27  (citing *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 589 (2d Cir. 1996)); *see*
28  *also AP Links, LLC v. Russ*, 2017 WL 3394599, at *8 (E.D.N.Y. Aug. 7, 2017).

Even so, Plaintiff incorrectly contends Cox could not allege this suit was brought in bad faith because Plaintiff had a good faith belief that the asserted patents are not subject to the DOCSIS License. (DE 228-1 at 14). In support, Plaintiff first feigns ignorance as to the essentiality of the asserted patents based on the fact that MaxLinear represented that the assigned patents are not subject to licensing commitments under the DOCSIS License by not listing it as an encumbrance in the ███████████████████. (DE 228-1 at 15). MaxLinear's representation, and Plaintiff's reliance on it, however, is precisely why Cox had to bring this counterclaim—Plaintiff's Complaint makes averments demonstrating the asserted patents *are* DOCSIS-essential, yet Plaintiff understood it was acquiring the asserted patents from MaxLinear without DOCSIS licensing obligations thus confirming the parties' efforts to strip the patents of their encumbrances so Plaintiff could monetize them through litigation.

Plaintiff also contends Cox cannot show this suit was brought in bad faith because a court in the Eastern District of Texas ruled on summary judgment that three of the asserted patents are not DOCSIS-essential. (DE 228-1 at 15). Plaintiff's reliance on this ruling is improper. Courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). Thus, to the extent the Court takes judicial notice of the Texas court's rulings, which it should not (*see* Cox's Opp. to Entropic's RJN filed concurrently), the "[t]he truth of the content, and the inferences properly drawn from them ... is not a proper subject of judicial notice under Rule 201." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1032 (C.D. Cal. 2015) (citation omitted); *see also Lee*, 250 F.3d at 690; *Shapiro v. Hasbro, Inc.*, 2015 WL 13357442, at *3 (C.D. Cal. Sept. 24, 2015), *aff'd*, 653 F. App'x 568 (9th Cir. 2016). Accordingly, for purposes of Rule 12, Plaintiff cannot rely on the findings of the Eastern District of Texas court. Even so, Plaintiff is inappropriately challenging the truth of Cox's factual allegations. At this stage, the

Court must take Cox's allegations as true and draw all reasonable inferences in Cox's favor, and thus Plaintiff's challenge does not support dismissal.

Plaintiff also urges that, if not barred by the litigation privilege, Cox's counterclaim is an improper effort to recover attorneys' fees. Plaintiff is incorrect. Courts have long recognized that monetary damages in the form of litigation expenses associated with an improper suit, such as the one here, are, in fact, contractual damages for that type of breach. *Copenbarger v. Morris Cerullo World Evangelism, Inc.*, 239 Cal. Rptr. 3d 838, 844-847 (2018), for example, addressed whether attorneys' fees incurred in defending an action brought in breach of a settlement agreement constituted damages for purposes of the breach of contract claim. *Copenbarger* expressly held that under *Brandt v. Superior Court*, 693 P.2d 796 (1985), "the principle that attorney fees *qua* damages are recoverable as damages, and not as costs of suit, applies equally to breach of contract." 239 Cal. Rptr. 3d at 845. The Federal Circuit has recognized the same point in a patent infringement case involving counterclaims for breach of contract. *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306. 1341-43 (Fed. Cir. 2013) (recognizing attorneys' fees are available as damages for pursuit of patent suit in breach of warranty). Moreover, courts have recognized that contract actions involving only nominal damages present injuries that confer standing. For example, *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053 (2016), the court held that injury in fact was shown because plaintiffs could recover at least nominal damages and had alleged "concrete" injuries in the form of specifically breached contract terms applicable to plaintiff. *Id.*, at 1062. The counterclaim here identifies the same sorts of specific and breached contractual terms applicable to Cox.

Finally, Plaintiff argues that Cox's claim is not viable because Cox does not have support for its claim that but-for MaxLinear's breach and Plaintiff's actions inducing such breach, this litigation would not have been filed. (DE 228-1 at 15). While Plaintiff asserts that MaxLinear ***could have*** brought this action if it were still

1 | the patent owner ignores that MaxLinear **did** own the patents and **did not** bring suit,
2 | presumably because it recognized the asserted patents are DOCSIS-essential and
3 | therefore licensed to Cox. Thus, contrary to Plaintiff's assertion, the alleged breaches
4 | do make a difference—MaxLinear cannot circumvent the provisions of the DOCSIS
5 | License it agreed to that preclude it from asserting its DOCSIS-essential patents
6 | against Cox by using a third party to do so. Accordingly, the counterclaim fully
7 | addresses Plaintiff's attacks on the adequacy of Cox's claim. And under the applicable
8 | law, Cox's counterclaim sufficiently pleads a claim for tortious interference.

**B.   Cox Properly Seeks Declaratory Judgment Voiding the Assignments**

10 | Contrary to Plaintiff's assertion, Cox has alleged a set of facts that could lead
11 | to a grant of declaratory judgment on the grounds that the patent assignments to
12 | Plaintiff are void.

13 | According to Plaintiff, the assignments are "not voidable" because either the
14 | DOCSIS License obligations continue to run with the patents or the patents were
15 | never subject to the DOCSIS License. (DE 228-1 at 19). Plaintiff's argument is
16 | incorrect and misses the point. The crux of Cox's counterclaim seeking declaratory
17 | judgment is that Plaintiff and MaxLinear affirmatively sought to strip out any
18 | encumbrance on the patents through their assignment and doing so was a violation of
19 | the DOCSIS License assignment policies the remedy for which is the assignment is
20 | void. (DE 189-1, ¶ 328).

21 | Cox's averments show that Plaintiff and MaxLinear's assignments
22 | *affirmatively* sought to strip out any encumbrance, including encumbrances caused by
23 | the DOCSIS License, so that Plaintiff was unconstrained by ██████████████████
24 | ██████████ to which MaxLinear was constrained. (DE 189-1, ¶¶ 308-18, 328-29). It
25 | is irrelevant to Cox's counterclaim whether the obligations under the DOCSIS
26 | License run with the patents or whether the patents are DOCSIS essential; Cox has
27 | sufficiently pled that MaxLinear and Plaintiff sought to assign the patents free of any
28 | obligations under the DOCSIS License in violation of the License, and the License

mandates that such assignment is void. This is sufficient at the pleading stage.

Moreover, declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton,* 783 F.2d 1371, 1376 (9th Cir. 1986). Plaintiff does not dispute that declaratory judgment in Cox's favor would clarify and settle issues in this case. For this additional reason, Cox's counterclaim is appropriate.

## V.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT COX LEAVE TO AMEND

Plaintiff's arguments misstate the law and ignore the many factual allegations in Cox's counterclaims, which put Plaintiff on notice of the claims against it. But if the Court is inclined to dismiss one or more claims, Cox requests that it be given leave to amend the counterclaims to address any deficiencies. There is a strong public policy in favor of permitting amendment, and the Ninth Circuit has made clear "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Without specifically finding undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 538 (9th Cir. 1989).

The party opposing amendment bears the burden of showing prejudice, which Plaintiff has not even attempted to do. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The factors weigh in favor of granting leave to amend. Cox did not delay and has not acted in bad faith or with dilatory motive. Cox has only amended its counterclaims once, and it did so in good faith. Moreover, the Court has not ruled that any deficiencies exist in Cox's counterclaims to date.

## VI.   CONCLUSION

For these reasons, Cox requests that the Court deny Plaintiff's Motion.

Dated: March 1, 2024

KILPATRICK TOWNSEND & STOCKTON LLP

By:   */s/ April E. Isaacson*

April E. Isaacson
aisaacson@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco CA 94111
(415) 273 8306

Sarah Y. Kamran
skamran@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles CA 90067
(310) 777 3733

Mitchell G. Stockwell
mstockwell@kilpatricktownsend.com
Vaibhav P. Kadaba
wkadaba@kilpatricktownsend.com
Michael J. Turton
mturton@kilpatricktownsend.com
Courtney S. Dabbiere
cdabbiere@kilpatricktownsend.com
Christopher S. Leah
cleah@kilpatricktownsend.com
1100 Peachtree Street, NE, Suite 2800
Atlanta GA 30309
(404) 815 6500

*Attorneys for Defendants*
*Cox Communications, Inc.;*
*CoxCom, LLC; and Cox Communications*
*California, LLC*