| | |
|---|---|
| 1 | BITA RAHEBI (CA SBN 209351)<br>brahebi@mofo.com |
| 2 | ALEX S. YAP (CA SBN 241400)<br>ayap@mofo.com |
| 3 | ROSE S. LEE (CA SBN 294658)<br>roselee@mofo.com |
| 4 | MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard, Suite 6000 |
| 5 | Los Angeles, California 90017-3543<br>Telephone: (213) 892-5200 |
| 6 | Facsimile: (213) 892-5454 |
| 7 | [Additional counsel on signature page] |
| 8 | Attorneys for Counter-Defendants<br>MAXLINEAR, INC. AND MAXLINEAR |
| 9 | COMMUNICATIONS LLC |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | | Case No. 2-23-cv-01049-JWH-KES<br>(Lead Case) |
| Plaintiff, | | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |
| v. | | |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; AND COX COMMUNICATIONS CALIFORNIA, LLC, | | **COUNTER-DEFENDANTS MAXLINEAR, INC. AND MAXLINEAR COMMUNICATIONS LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS BY COX COMMUNICATIONS, INC., COXCOM, LLC, AND COX COMMUNICATIONS CALIFORNIA, LLC** |
| Defendants, | | |
| COX COMMUNICATIONS, INC.; COXCOM, LLC; AND, COX COMMUNICATIONS CALIFORNIA, LLC, | | |
| Counter-Claimants, | | Judge: Hon. John W. Holcomb |
| v. | | **Hearing:**<br>Date: March 29, 2024<br>Time: 9:00 a.m.<br>Place: Courtroom 9D, Santa Ana |
| ENTROPIC COMMUNICATIONS, LLC; MAXLINEAR, INC.; AND MAXLINEAR COMMUNICATIONS LLC, | | |
| Counter-Defendants. | | |

REPLY ISO MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................4

II. ARGUMENT ......................................................................................................4

   A. The Court Should Dismiss Cox's Counterclaims under 12(b)(1) ................4

      1. Cox is not entitled to rights under the DOCSIS Agreement......................4

      2. Cox fails to show it definitively alleged essentiality .................................5

      3. No MaxLinear actions concretely injured Cox...........................................6

      4. Cox's alleged injury remains unripe ...........................................................7

   B. Cox's Breach Claim Should Be Dismissed Under 12(b)(6) .........................7

      1. Cox is not a direct or intended third party beneficiary .............................7

         a. Cox cannot avoid the Agreement's plain language................................7

         b. Cox has not pled its vendors' status or performance.............................8

         c. Cox has not shown it is an implied licensee...........................................9

         d. Section 2.4 does not help Cox ................................................................9

      2. MaxLinear did not breach the DOCSIS Agreement................................11

      3. Cox has not alleged cognizable damages ....................................................11

   C. Cox's Declaratory Judgment Claim Falls with its Breach Claim ................12

   D. Cox's Quasi-Contract/Unjust Enrichment Counterclaim Fails....................12

      1. There is no choice-of-law conflict............................................................12

      2. The *Erie* doctrine does not save Cox's quasi-contract claim ...................13

      3. MaxLinear has not unjustly benefited .......................................................14

III. DISMISSAL WITH PREJUDICE IS APPROPRIATE...................................15

IV. CONCLUSION.................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
　529 F. Supp. 3d 1059 (N.D. Cal. 2021) ............................................................. 13

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
　692 F.3d 42 (2d Cir. 2012) ................................................................................ 10

*DCB Const. Co. v. Cent. City Dev. Co.*,
　965 P.2d 115 (Colo. 1998) ................................................................................ 13

*Georgia Malone & Co. v. Rieder*,
　19 N.Y.3d 511 (2012) ........................................................................................ 13

*Klein v. Chevron U.S.A., Inc.*,
　202 Cal. App. 4th 1342 (2012) .......................................................................... 14

*Longest v. Green Tree Servicing LLC*,
　74 F. Supp. 3d 1289 (C.D. Cal. 2015) ............................................................... 14

*Opperman v. Path, Inc.*,
　87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................. 5

*Safari v. Whole Foods Mkt. Servs., Inc.*,
　No. 22-cv-01562, 2023 WL 5506014 (C.D. Cal. July 24, 2023) ...................... 14

*San Diego Unified Port Dist. v. Monsanto Co.*,
　309 F. Supp. 3d 854 (S.D. Cal. 2018) ................................................................. 6

*Stark v. Patreon, Inc.*,
　635 F. Supp. 3d 841 (N.D. Cal. 2022) ............................................................... 13

*Xpendior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
　341 F. Supp. 2d 258 (S.D.N.Y. 2004) ............................................................... 12

**Other Authorities**

Fed. R. Civ. P.
　12(b)(1) ................................................................................................................ 4
　12(b)(6) ...................................................................................................... 4, 7, 12

## I. INTRODUCTION

Cox's opposition confirms that the Court should dismiss Cox's counterclaims with prejudice. All assume that the DOCSIS Agreement conveys rights to Cox, but Cox *still* has not established that the agreement even applies to it.

Cox does not dispute that it is not a sublicensee under the agreement, and it does not allege that its vendors satisfied the specific requirements for sublicensee status. Nor does Cox dispute that the agreement applies only to standards-essential patents—a determination that no court has made. As Cox lacks standing to assert its unripe counterclaims, their dismissal is appropriate under Rule 12(b)(1).

Cox's counterclaims also should be dismissed under Rule 12(b)(6) as implausible. MaxLinear could not have breached the DOCSIS Agreement by skirting its related obligations when conveying its patents to Entropic. Cox cannot dispute that the Patent Purchase Agreement ("PPA," ECF No. 221-1) expressly acknowledges MaxLinear's DOCSIS commitments, and Cox expressly pleads Entropic's knowledge of those commitments in its Amended Counterclaims.

Cox's remaining counterclaims are equally defective. Cox's declaratory judgment claim mirrors its breach claim and fails for identical reasons. Its quasi-contract/unjust enrichment claim requires Cox plead the absence of an enforceable contract, but Cox has not done this. Cox also fails to plead how MaxLinear was unjustly enriched. The Court should dismiss Cox's counterclaims with prejudice.

## II. ARGUMENT

### A. The Court Should Dismiss Cox's Counterclaims under 12(b)(1)

#### 1. Cox is not entitled to rights under the DOCSIS Agreement

Cox does not dispute that: (1) all counterclaims assume MaxLinear made commitments to Cox under the DOCSIS Agreement; (2) the agreement is between MaxLinear and CableLabs (not Cox); and (3) Cox is not a sublicensee.

Unable to explain how or why it allegedly possesses rights under that agreement, Cox disputes whether privity is relevant to standing. Per Cox, the very

4

1  nature of its counterclaims (for breach of contract, declaratory relief, and unjust
2  enrichment) confers standing automatically. (Opp. (ECF No. 267-1) at 12-13.)
3      This is illogical. Applying Cox's logic, *anyone* could bring claims based on
4  a contract to which it has no interest or rights. Courts routinely reject these types of
5  claims for lack of standing. *See, e.g.*, *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018,
6  1036 (N.D. Cal. 2014) ("[A] claim must be based on the plaintiff's own legal rights
7  and interests rather than the legal rights or interests of third parties").

### 2. Cox fails to show it definitively alleged essentiality

9      Cox does not dispute that the DOCSIS Agreement applies only to standards-
10 essential patents. (*See* Mot. (ECF No. 218-1) at 14-15.) Nor can it dispute that its
11 Amended Counterclaims do not take a clear position on standards-essentiality but
12 point instead to Entropic's alleged positions. (Opp. at 13-14 (again citing to
13 Entropic's Complaint, infringement contentions, and correspondence).)
14     To transform its obvious non-commitment into a plausible allegation of
15 standards-essentiality, Cox points to averments in its Amended Counterclaims. (*Id.*
16 at 14 (citing Am. Countercls. (ECF No. 189-1), ¶ 306.)) Noting paragraph 306's
17 references to "***Plaintiff's*** [*i.e.,* Entropic's] averments in its Complaint, ***Plaintiff's***
18 infringement contentions ***and/or*** the DOCSIS specifications themselves," Cox
19 argues that it has definitively alleged standards-essentiality. (Opp. at 14.) Not so.
20 Cox's references to *Entropic's* alleged positions hardly constitute a clear allegation
21 by *Cox* that the patents are standards-essential. Cox's various authorities, which
22 relate to the adequacy of a parties' infringement allegations, do not address the
23 issue at hand: whether it has adequately pled standards-essentiality. It has not.
24     Cox further alleges that MaxLinear "ignored" its averments on standards-
25 essentiality in paragraph 306 of its Amended Counterclaims. (*Id*. at 13.) This is
26 equally untrue. MaxLinear expressly quoted from paragraph 306 to underscore that
27 Cox refused to take a position on standards-essentiality. (Mot. at 15.)
28     Entropic's position does not help Cox in any event, as Entropic has made

1  clear its belief that the asserted patents are *not* standards-essential.  (ECF No. 228-1
2  at 13 n.7 ("Entropic's position is that none of the Asserted Patents are subject to the
3  DOCSIS License because none of their claims are 'essential for compliance with
4  the [DOCSIS] Specifications.'").)  Although Cox challenges MaxLinear's reliance
5  on Entropic's position, Cox cannot have it both ways:  it cannot simultaneously rely
6  on Entropic's alleged position but argue that MaxLinear cannot.  (Opp. at 14.)

7  Cox next argues that it has not had the opportunity to marshal evidence on
8  standards-essentiality through discovery.  (*Id.* at 14-15.)  This puts the cart before
9  the horse; Cox has not pled standards-essentiality, the DOCSIS Agreement does not
10 apply, and Cox lacks standing to assert its counterclaims.  Absent Cox's pleading of
11 sufficient and facially plausible counterclaims, it is not entitled to discovery at all.

### 3. No MaxLinear actions concretely injured Cox

13 Cox still does not show how or why it has been harmed by MaxLinear.
14 Without evidentiary support, Cox repeatedly states that MaxLinear "told Entropic
15 the patents were free of relevant encumbrances" or "made false representations."
16 (Opp. at 15-17.)  But Cox identifies no specific statement or false representation.
17 Nor does Cox address MaxLinear's express recognition of its DOCSIS
18 commitments and affiliation in the PPA.  (Mot. at 24-25 (citing PPA § 5.7, Ex. I).)
19 In view of MaxLinear's statements in the PPA, Cox's allegation that MaxLinear
20 misled Entropic about its DOCSIS commitments and relationship makes no sense.

21 Nor do Cox's litigation costs establish standing for Article III purposes.  Cox
22 does not distinguish *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d
23 854, 866 (S.D. Cal. 2018), MaxLinear's on-point authority.  Although Cox
24 distinguishes a single decision that *San Diego* cites, Cox is silent as to the three
25 other Ninth Circuit cases that *San Diego* cites and *San Diego* itself.  (Opp. at 17.)

26 Cox's various breach of contract cases do not help its litigation costs
27 argument.  (*See id.* at 17-18, 28.)  All of its authority involved breach of an
28 agreement to which both the plaintiff and defendant were parties.  Here, Cox is

neither a signatory to nor a sublicensee of the DOCSIS Agreement.

### 4. Cox's alleged injury remains unripe

Cox does not dispute that: (1) for the DOCSIS Agreement to apply, the asserted patents must be standards-essential; (2) no court has made that determination; or (3) dismissal is appropriate where the underlying dispute hangs on "future contingencies" and is "impermissibly speculative." (Mot. at 18.)

Rather than challenge these requirements for ripeness, Cox invokes cases in which a party simultaneously denies infringement while pursuing RAND rates. (*See* Opp. at 19.) That is not the situation here. Cox's counterclaims require the DOCSIS Agreement apply. If the patents are not standards-essential (which is Entropic's position), the agreement is irrelevant, and Cox's counterclaims fail. Until a court holds the asserted patents standards-essential, Cox's counterclaims are premature and speculative and should be dismissed.

## B. Cox's Breach Claim Should Be Dismissed Under 12(b)(6)

### 1. Cox is not a direct or intended third party beneficiary

#### a. Cox cannot avoid the Agreement's plain language

Rather than address the DOCSIS Agreement's plain terms, Cox focuses on unsupported statements in its Amended Counterclaims. But none of these statements adequately pleads Cox's entitlement to rights under that agreement.

Cox first emphasizes that its "pleadings explain how Cox *helped* found CableLabs." (Opp. at 20 (citing Am. Countercls. ¶¶ 282-83) (emphasis added)). But paragraphs 282 and 283 state only that "CableLabs was formed by, among others, cable companies *like* Cox that operate multiple cable systems . . . ." (Am. Countercls. ¶ 282 (emphasis added).) These paragraphs also say nothing about why CableLabs' formation entitles Cox to rights under the DOCSIS Agreement, especially as Cox is not a signatory or sublicensee that licensed assets to the pool.

Cox next alleges that its pleadings "specifically explained the process by which *it* and *its vendors* participated in creating the DOCSIS standard." (Opp. at 25

7

1  (citing Am. Countercls. ¶¶ 283-84) (emphasis added)).  But the cited paragraphs
2  only discuss CableLabs and vendors generally and do not mention "Cox" at all.
3       Citing paragraphs 284 and 287, Cox further argues that the DOCSIS standard
4  was created for Cox's benefit.  (Opp. at 20-21.)  But here, too, the cited paragraphs
5  and their quoted language from the DOCSIS Agreement never mention Cox at all.

6            **b.    Cox has not pled its vendors' status or performance**
7       As MaxLinear explained in its Motion, third-party "sublicensees" must:
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  (Mot. at 19-23; DOCSIS Agreement §§ 2.2, 4.1.)
10  Cox's Amended Counterclaims still do not explain how any third-party sublicensee
11  satisfied these requirements.  Cox does not identify any specific sublicensed
12  vendors, much less ones from whom Cox purchased the allegedly licensed products
13  at issue in this litigation.  Nor does it plead that it or its vendors have complied with
14  the requirements for a sublicensee, including marking.  (*See* Opp. at 22.)
15       Unable to plead compliance, Cox resorts to *ipse dixit*.  Cox baldly asserts that
16  it has "more than adequately pled" its status as an intended third-party beneficiary
17  and that "MaxLinear does not argue otherwise."  (*Id*. at 24-25.)  In its Motion (at
18  19-23), however, MaxLinear directly challenged Cox's third-party beneficiary
19  status and explained Cox's multiple pleading deficiencies.
20       Trying to shift blame to MaxLinear, Cox argues that MaxLinear was
21  somehow a bar to vendor compliance.  Cox alleges that MaxLinear was obligated to
22  inform sublicensees of where and how to mark their products with which patents
23  but did not.  (Opp. at 22.)  But Cox's argument highlights its pleading deficiencies.
24  Having failed to specify which vendors supplied which licensed products, Cox
25  cannot explain if they were marked or how MaxLinear impeded their marking.
26       Cox further argues that an alleged third-party beneficiary of a vendor
27  sublicense need not comply with the DOCSIS Agreement's requirements.  (*Id.*)
28  That is beside the point.  The issue is not whether Cox complied with those

8

requirements and thus is itself a sublicensee (it undisputedly is not), but whether the vendors from whom Cox claims beneficiary rights are. Cox has not shown that any vendors have performed. Having failed to plead a critical element of a breach of contract claim, Cox's counterclaims should all be dismissed. (*See* Mot. at 23.)

### c. Cox has not shown it is an implied licensee

Cox accuses MaxLinear of ignoring Cox's alleged status as an implied licensee and beneficiary of patent exhaustion, based on equipment purchases from DOCSIS-licensed vendors. (*See* Opp. at 22 (citing Am. Countercls. ¶¶ 292, 322.)) But Cox's cited paragraphs simply allege, without support, that Cox purchased "DOCSIS-compliant equipment" from unspecified vendors.[1] Even assuming that Cox had purchased DOCSIS-compliant equipment from licensed vendors, Cox has not pled its vendors' compliance with requirements for DOCSIS sublicense.

Cox's arguments also cannot be correct as a matter of logic. Per Cox, its purchases render it immune from infringement claims as to all patents in the DOCSIS pool—but it may still enforce its own data-over-coax patents against any DOCSIS member. That is inconsistent with the pool's purpose. As Cox is not a signatory or sublicensee under the DOCSIS Agreement and has not granted reciprocal licenses to CableLabs, Cox cannot benefit from the agreement.

### d. Section 2.4 does not help Cox

Section 2.4's ████████████████████████████████████████████████████████████████████████████████████████. According to Cox, Section 2.4 "has nothing to do with whether [it] is an intended third party beneficiary of MaxLinear's promise." (*Id.* at 23.) The language of Section 2.4 contradicts this.

Cox's interpretation of the negating clause as allowing the grant of rights to third parties is inconsistent with the provision's grammatical structure. ████

---

[1] Elsewhere, Cox alleges "Cox, or its customers, purchase[d] [equipment] from Samsung Electronics Co., Systems, Inc ('Cisco') [*sic*], and ARRIS Group, Inc." (*Id.* ¶ 289). But Cox does not explain what equipment was purchased, whether that equipment was licensed, or who (Cox or its customers) made those purchases.

1 ████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████████████████████████████████████

4       Even if Cox's interpretation were correct, it would not help Cox. Cox

5 contends that Section 2.4(d) should be interpreted to bar MaxLinear from receiving

6 rights from CableLabs or other parties, "except as expressly set forth" elsewhere in

7 the agreement. (Opp. at 23.) A limitation on rights to *MaxLinear*, however, does

8 not prove that the agreement was intended to benefit *Cox* as a third-party customer.

9       *Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d

10 42 (2d Cir. 2012), lends Cox no aid. That case involved a clause that ambiguously

11 identified one third-party beneficiary by name while omitting another identified in

12 other sections. 692 F.3d at 53-55. Here, by contrast, ██████████████

13 ████████████████████████████████████████

14 ████████████████████████████████████████

15 ████████████████████████████████████████

16 ███████████████████████████████ Cox neither

17 satisfies those requirements nor points to others who have.

18       To try to overcome Section 2.4, Cox further argues that the DOCSIS

19 Agreement "expressly grants sublicense to create the patent pool so that ██████

20 ████████████████████████████████████████

21 ███████████████████████.'" (Opp. at 24.) Cox does not identify the

22 provision giving rise to this "express grant" of a "sublicense." This may be because

23 the language appears in the agreement's recitals—not the body of the agreement.

24 Elsewhere in the recitals, the agreement ████████████████████

25 ████████████████████████████████████

26 ████████████████████████████████████████

27 ██████████████████████████." Cox nowhere alleges that it satisfied the

28 agreement's reciprocal license requirements or otherwise qualifies as a sublicensee.

### 2. MaxLinear did not breach the DOCSIS Agreement

Cox alleges that "MaxLinear affirmatively 'represented that the assigned patents were free of any encumbrances imposed by the DOCISIS license Agreements.'" (Opp. at 26-27.) But Cox identifies no specific "affirmative" misrepresentation or action taken to "strip away any [ ] encumbrance[s]."

Worse, the PPA and Cox's own pleadings contradict this position, rendering it implausible. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (ECF No. 221-1.)

Moreover, Cox itself alleges that Entropic "knew of MaxLinear's contractual and public commitments to DOCSIS." (Am. Countercls. ¶ 302; *see also* Mot. at 24.) As the PPA and Cox's own pleadings confirm, MaxLinear's commitments ran with the patents, and it has not breached the DOCSIS Agreement.

### 3. Cox has not alleged cognizable damages

As discussed in Section II.A.3, Cox has failed to plead any MaxLinear action that injured Cox. Although it alleges that it has a "right to be free of claims from MaxLinear's DOCSIS-essential patents due to implied license and patent exhaustion given its purchases from [sublicensed] vendors" (Opp. at 27), this does not suffice to show injury. Cox does not identify these vendors or plead their compliance with the DOCSIS Agreement. Cox's position also is illogical: it would result in Cox being licensed despite its non-contribution to the DOCSIS pool.

To rebut its failure to sufficiently plead causation, Cox argues that its "identified" "averments . . . show facts." (*Id.* (citing Am. Countercls. ¶¶ 315-318.)) But each of its cited paragraphs consists of unsupported allegations. (*See* Am. Countercls. ¶ 315 (conclusorily alleging that, but for MaxLinear's breach, this case would not have been filed); ¶ 316 (alleging that Cox purchased DOCSIS-compliant equipment, but without identifying what equipment, which vendor, and whether

11

equipment is even the subject of this litigation); ¶ 317 (conclusorily alleging that Cox has not received the benefit of a DOCSIS license, without explaining why it is entitled to one); ¶ 318 (conclusorily blaming MaxLinear for Cox's litigation costs).)

Relying on *Xpendior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004), Cox argues that "it is not required to specify the measure of damages nor to plead *proof* of causation" (Opp. at 27 (emphasis added).) This ignores that Cox still must plead causation but has not.

Cox also has no response to MaxLinear's observation that Cox would be liable for patent infringement regardless of whether MaxLinear has an interest in the litigation or whether the PPA is valid, rendering damages illusory. (Mot. at 26; Opp. at 27-28.) As noted, litigation costs cannot supply the requisite harm, and Cox is not a party to the DOCSIS Agreement. Cox's breach counterclaim therefore should be dismissed under Rule 12(b)(6) for failure to allege cognizable damages.

### C. Cox's Declaratory Judgment Claim Falls with its Breach Claim

Cox does not dispute that its declaratory judgment and breach counterclaims rely on the same underlying facts and issues. Although it tries to differentiate their potential remedies (Opp. at 29), there is none; both seek to void the PPA. (*Compare* Am. Countercls. ¶ 326 (seeking "a finding that, in view of MaxLinear's breaches," the PPA is void) *with* ¶ 329 (seeking judgment that the PPA is void).)

Cox also argues that its declaratory judgment counterclaim may provide clarity as to Entropic's ability to assert infringement of the asserted patents. (Opp. at 29.) But Cox does not explain why this is true or why resolution of its breach counterclaim would not provide the same clarity.

As Cox's declaratory judgment counterclaim is redundant with its breach counterclaim and deficient for the same reasons, the Court should dismiss it.

### D. Cox's Quasi-Contract/Unjust Enrichment Counterclaim Fails

#### 1. There is no choice-of-law conflict

Despite recharacterizing its original unjust enrichment counterclaim as one

12

sounding in quasi-contract (Mot. at 28), Cox pivots back in its opposition and argues that unjust enrichment remains a viable independent claim. In support, Cox relies on *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 857 (N.D. Cal. 2022). But Cox ignores subsequent authority effectively repudiating *Stark* and holding the contrary. *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-72 (N.D. Cal. 2021) (Koh, J.) (noting that California appellate courts have confirmed that unjust enrichment is *not* a viable independent claim post-*Hartford*).

Implicitly acknowledging the unfavorable California authority, Cox suggests that Colorado or New York law might be more appropriate. (Opp. at 29-30.) Confusingly, however, Cox itself applies California law when analyzing its quasi-contract/unjust enrichment counterclaim. (*Id.* at 30-32.)

Regardless, Cox does not explain how these jurisdictions' laws meaningfully differ. Although Cox proffers Colorado and New York cases recognizing an unjust enrichment claim, Cox overlooks that both jurisdictions equate "unjust enrichment" with a "quasi-contract" claim. *See Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) ("As we have stated on several occasions, the theory of unjust enrichment lies as a quasi-contract claim.") (cleaned up); *DCB Const. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 118 (Colo. 1998) ("DCB's claim of unjust enrichment is a legal claim in quasi-contract for money damages based upon principles of restitution."). Whether under California, Colorado, or New York law, Cox cannot maintain an unjust enrichment counterclaim separate from quasi-contract.

### 2. The *Erie* doctrine does not save Cox's quasi-contract claim

Cox does not dispute that its breach counterclaim depends on the validity of MaxLinear's DOCSIS commitments. Nor does Cox challenge MaxLinear's authority that a party cannot plead a quasi-contract claim without denying the existence of an enforceable contract—something Cox has not done.

Instead, impermissibly incorporating arguments and filings from co-pending litigation, Cox argues that the *Erie* doctrine permits alternative pleadings. But

Cox's breach and quasi-contract claims are not alternative pleadings. The former seeks to enforce a valid contract (*i.e.*, the DOCSIS Agreement) (Am. Countercls. ¶¶ 319-326), and the latter requires the same valid contract (*id.* ¶¶ 337-340). As Cox does not deny the existence of an enforceable contract, Cox's quasi-contract claim is dead on arrival. *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012) (dismissing claim that did not deny existence of enforceable contract).

Cox's cited cases are inapposite. The claims there involved true alternatives: (1) a legal remedy relying on the *existence* of a valid contract, or (2) an equitable remedy premised on the *absence* of a valid contract. *See Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1302 (C.D. Cal. 2015); *Safari v. Whole Foods Mkt. Servs., Inc.*, 2023 WL 5506014, at *13 (C.D. Cal. July 24, 2023).

### 3.  MaxLinear has not unjustly benefited

Cox argues that MaxLinear has unjustly benefited by falsely representing "that its conduct [would be] governed by standards bodies rules and regulations." (Opp. at 31.) That assumes, of course, that MaxLinear made a false representation. This is not plausible, as MaxLinear expressly acknowledged its commitment to DOCSIS in the PPA. (ECF No. 221-1 at § 5.7, Ex. I.) In its Amended Counterclaims, Cox also alleges that Entropic "knew of MaxLinear's contractual and public commitments to DOCSIS." (Am. Countercls. ¶ 302.) Because MaxLinear's commitments ran with the patents and Cox offers no evidence that MaxLinear has repudiated them, MaxLinear could not have been unjustly enriched.

The PPA similarly debunks Cox's remaining allegations. Cox points to MaxLinear's securities filings that discuss its compliance with industry standards. (Opp. at 32; Am. Countercls. ¶¶ 294, 337.) Cox contends that these statements necessarily were false, because "MaxLinear executed various agreements to transfer its essential patents to be used against Cox in violation of the DOCSIS agreement." (Opp. at 32.) But the DOCSIS Agreement permits transfer of ownership, and the PPA effected a valid transfer while acknowledging a

1 commitment to DOCSIS. (Mot. at 24.) Nothing about its patent transfers violated the DOCSIS Agreement. The same is true of Entropic's lawsuit and MaxLinear's related interests, as the DOCSIS Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (*See id.*; DOCSIS Agreement § 6.2.)

Repeating prior arguments, Cox alleges that its counterclaims "explain how Cox helped found CableLabs" and that "DOCSIS was developed . . . for Cox and other operator's benefit." (Opp. at 32.) Even ignoring that Cox is not a signatory, sublicensee, or intended third party beneficiary, these allegations are irrelevant. They do not inform how *MaxLinear* (not Cox) allegedly was unjustly enriched.

Unable to identify any non-nebulous, unjust, and direct benefit to MaxLinear, Cox accuses MaxLinear of lacking authority to support its positions. (*Id.* at 32.) Cox overlooks MaxLinear's citation to the Witkin's authoritative treatise, which collects cases requiring a direct benefit to prove unjust enrichment. (Mot. at 30 (citing 1 Witkin, Summary 11th Contracts § 1055 (2023).)) It is Cox, not MaxLinear, that cites no support for its position that alleging MaxLinear's participation in DOCSIS suffices to plead unjust enrichment. (*See* Opp. at 32-33.) Nor does Cox cite authority to support its position that MaxLinear's receipt of the same benefits as other DOCSIS participants somehow is "unjust." (*Id.* at 33.)

## III. DISMISSAL WITH PREJUDICE IS APPROPRIATE

The procedural history favors dismissal of all counterclaims with prejudice. Despite knowing of its pleading deficiencies from MaxLinear's prior motion, Cox has not shown standing or ripeness. Nor has it presented a plausible counterclaim after a second chance. There is no reason to believe Cox would cure its pleading defects via further amendments. Cox is also wrong that MaxLinear seeks to dismiss only Cox's breach claim with prejudice. (Opp. at 34.) All of Cox's claims hinge on its deficient breach claim and should be dismissed with prejudice together.

## IV. CONCLUSION

MaxLinear urges the Court to dismiss Cox's counterclaims with prejudice.

| | |
|---|---|
| Dated: March 15, 2024 | MORRISON & FOERSTER LLP |
| | By: */s/ Richard S.J. Hung*<br>    Richard S.J. Hung |
| | BITA RAHEBI (CA SBN 209351)<br>brahebi@mofo.com<br>ALEX S. YAP (CA SBN 241400)<br>ayap@mofo.com<br>ROSE S. LEE (CA SBN 294658)<br>roselee@mofo.com<br>MORRISON & FOERSTER LLP<br>707 Wilshire Boulevard, Suite 6000<br>Los Angeles, California 90017-3543<br>Telephone: (213) 892-5200<br>Facsimile:  (213) 892-5454 |
| | RICHARD S.J. HUNG (CA SBN 197425)<br>rhung@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, California 94105-2482<br>Telephone: (415) 268-7000<br>Facsimile:  (415) 268-7522 |
| | Attorneys for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC |

16

REPLY ISO MAXLINEAR'S MOTION TO DISMISS COX'S COUNTERCLAIMS
CASE NO. 2:23-CV-01049-JWH-KES

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Counter-Defendants MAXLINEAR, INC. and MAXLINEAR COMMUNICATIONS LLC, certifies that this brief contains 3920 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 15, 2024                                    By: */s/ Richard S.J. Hung*
                                                                                Richard S.J. Hung